8

Westlaw.

Slip Copy                                                                                        Page 1
2005 WL 503317 (E.D.Pa.)
**(Cite as: 2005 WL 503317 (E.D.Pa.))**

Only the Westlaw citation is currently available.


United States District Court,
E.D. Pennsylvania.
Princoais LEWIS, Plaintiff,
v.
CONSOLIDATED FREIGHTWAYS CORP. OF
DELAWARE, a/k/a and d/b/a Consolidated
Freightways Corp., Redwood Systems, Inc., CF
Airfreight Corp., Leland James
Service Corp., CF Movesu.com, Inc., CFCD 2002,
LLC, CFCD 2002A, LLC, CFCD 2002
Member LLC, Defendants.
**No. Civ.A.04-6102.**

Feb. 28, 2005.

T. Jonathan Hankin, Wapner, Newman & Assoc.,
Philadelphia, PA, for Plaintiff.

Allison L. Corboy, Koch & Corboy, Jenkintown,
PA, Douglas J. Kent, Marshall, Dennehey, Warner,
Coleman And Goggin, Philadelphia, PA, for
Defendants.

*MEMORANDUM AND ORDER*

JOYNER, J.

*1 Presently before the Court are Plaintiff's Motion
to Remand this action to the Philadelphia Court of
Common Pleas, and Defendant Consolidated
Freightways Corporation of Delaware's Motion for
Leave to File an Amended Notice of Removal. For
the reasons which follow, we will grant Defendant
leave to amend the Notice of Removal, and will deny
without prejudice Plaintiff's Motion to Remand.

*Factual Background*

This personal injury action arises from a fall Plaintiff
suffered on September 2, 2002 while working on
premises owned and operated by one or more of the
Defendants. After Defendants filed petitions for
Chapter 11 Bankruptcy Relief, Plaintiff submitted a
Proof of Claim form to the United States Bankruptcy
Court, Central District of California, on March 11,
2003, asserting a claim in the amount of $500,000.

Plaintiff filed this personal injury action before the
Philadelphia Court of Common Pleas on December 2,
2004. On December 30, 2004, Defendant

Consolidated Freightways Corporation of Delaware
("Consolidated Freightways") filed a Notice of
Removal on the basis of diversity of citizenship
between the parties. None of the seven other named
Defendants joined in the Notice. Plaintiff now moves
to remand this action to the Philadelphia Court of
Common Pleas, offering four arguments as to why
removal was improper and remand is now
appropriate.

*Discussion*

A defendant may remove a civil action filed in state
court to federal district court if the federal court
would have had original jurisdiction to hear the
matter. 28 U.S.C. § 1441(b). The notice of removal
must be filed within thirty days after the removing
defendant receives the initial pleading setting forth
the claim for relief and basis for removal. 28 U.S.C. §
1446(b). If the removing defendant does not meet his
burden of establishing federal jurisdiction and
complying with all procedural requirements for
removal, the district court may remand the action to
state court. 28 U.S.C. § 1447(c); Winnick v. Pratt,
No. 03-1612, 2003 U.S. Dist. LEXIS 8523 at 3, 2003
WL 21204467 (E.D.Pa.2003). As the removal
statutes are strictly construed, all doubts should be
resolved in favor of remand. Boyer v. Snap-On Tools
Corp., 913 F.2d 108, 111 (3rd Cir.1990).

1. Defendant's Failure to Establish Diversity

Plaintiff first alleges that the Notice of Removal was
defective because it failed to provide proof of the
Defendants' citizenship sufficient to establish
diversity jurisdiction. The Notice indicated that
Defendant Consolidated Freightways is not a citizen
of Pennsylvania, but a Delaware corporation with its
principal place of business in Washington. The
Notice further asserted, upon information and belief,
that the co-Defendants are Delaware corporations and
not Pennsylvania citizens.

Where federal jurisdiction is based on 28 U.S.C. §
1332, the party seeking federal jurisdiction must
affirmatively plead the "essential elements" of
diversity, including allegations of citizenship. Wiacek
v. Hammermill Paper Co., No. 88-6178, 1989 U.S.
Dist. LEXIS 3094 at 2, 1989 WL 29256
(E.D.Pa.1989) (citing McNutt v. General Motors
Acceptance Corp., 298 U.S. 178, 188-89, 56 S.Ct.
780, 80 L.Ed. 1135 (1936)). Neither allegations of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 503317 (E.D.Pa.)
**(Cite as: 2005 WL 503317 (E.D.Pa.))**

residence alone nor negative statements that a party is not a citizen of particular state are sufficient to establish jurisdiction. *McCracken v. Murphy,* 328 F.Supp.2d 530, 532 (E.D.Pa.2004). Defective allegations of jurisdiction may be freely amended, however, where such amendment is in the interests of justice. 28 U.S.C. § 1653; *See also Horowitz v. Federal Kemper Life Assur. Co.,* 861 F.Supp. 1252, 1256 (E.D.Pa.1994) (citing *Kinney v. Columbia Savings & Loan Ass'n.,* 191 U.S. 78, 24 S.Ct. 30, 48 L.Ed. 103 (1903)).

**\*2** Inasmuch as the Notice of Removal failed to allege with specificity the citizenship of each of the Defendants, we will grant Defendant leave to amend the Notice pursuant to 28 U.S.C. § 1653. In the event of further jurisdictional challenges, this Court will consider the full record in determining whether Defendant has established jurisdiction by a preponderance of evidence. *See Coggins v. Carpenter,* 468 F.Supp. 270, 276 (E.D.Pa.1979) (citing *McNutt,* 298 U.S. at 189).

2. Lack of Unanimous Consent to Removal

Plaintiff further contends that the Notice of Removal was defective because the removing Defendant failed to obtain unanimous consent to removal from the remaining co-Defendants.

In order for removal to be proper, all defendants must unanimously join or consent to the removal through a timely-filed, express written indication of consent. *See Shepard v. City of Philadelphia,* No. 00-6076, 2001 U.S. Dist. LEXIS 783 at 4, 2001 WL 92300 (E.D.Pa.2001); *Ogletree v. Barnes,* 851 F.Supp. 184, 188 (E.D.Pa.1994). This general requirement of unanimity may be disregarded only where (1) the non-joining defendant is a nominal party; (2) a defendant been fraudulently joined; or (3) a non-resident defendant has not been served at the time the removing defendants filed their petition. *Shepard,* 2001 U.S. Dist. LEXIS 783 at 4, n. 1; *Lewis v. Rego Co.,* 757 F.2d 66, 68 (3rd Cir.1985). To avail himself of one of these exceptions, the removing defendant must set forth in the removal petition an explanation for the absence of the co-defendant's joinder. *Knowles v. American Tempering Inc.,* 629 F.Supp. 832, 835 (E.D.Pa.1985) (citing *Lewis,* 757 F.2d at 68). However, the removing defendant's failure to include such an explanation is merely a technical omission, rather than a jurisdictional defect, and may be cured by filing an amended petition if the state court record provides grounds therefor. *See Miller v. Principal Life Ins. Co.,* 189 F.Supp.2d 254, 258 (E.D.Pa.2002) (an amended removal notice may be filed to explain that co-defendant was merely nominal, where the state court record put the parties on notice of this fact); *Showell v. Boddie-Noell Enterprises, Inc.,* No. 91- 2386, 1991 U.S. Dist. LEXIS 8535 at 2, 1991 WL 114669 (E.D.Pa.1991) (granting leave to amend a petition of removal to indicate that co-defendants has not been served, where this fact was evidenced by the state court docket); *Knowles,* 629 F.Supp. At 835 (if the state court file reveals a jurisdictional fact relating to a co-defendant's absence that was omitted from the removal petition itself, a court may grant leave to amend).

In this action, Defendant alleges that the rule of unanimity is inapplicable both because the co-Defendants have not yet been served, and because they are merely nominal parties. However, neither of these allegations were set forth in the Notice of Removal which was filed on December 30, 2004.

**\*3** Initially, there appears to be some dispute among the parties as to whether the co-Defendants have been properly served with a summons and a copy of the Complaint. [FN1] However, Plaintiff has made no efforts to contest Defendant's position that the co-Defendants who did not join the Notice of Removal are merely nominal. A nominal party is one who, in a genuine legal sense, has no interest in the result of the suit, or no actual interest or control over the subject matter of the litigation. *American Soc. for Testing & Materials v. Corrpro Companies, Inc.,* 292 F.Supp.2d 713, 718, n. 5 (E.D.Pa.2003); *Bumberger v. Insurance Co. of North America,* 952 F.2d 764, 767 (3rd Cir1991); *see also Thorn v. Amalgamated Transit Union,* 305 F.3d 826, 833 (8th Cir.2002) (nominal defendants are those against whom no real relief is sought). The remaining Defendants have been identified in a bankruptcy proceeding before the United States Bankruptcy Court, Central District of California, as the "affiliated debtors" of Defendant Consolidated Freightways, and Defendant seems to allege that these co-Defendants are merely aliases or "doing business as" entities. Defendant further alleges that no real relief is sought from these alternate entities because the Bankruptcy Court's order permits Plaintiff to prosecute his action against Defendants only to the extent of available insurance proceeds. We will grant Defendant leave to amend the notice of removal to explain why the co-Defendants did not join, and will consider Plaintiff's objections to the nominality and service claims upon further motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 503317 (E.D.Pa.)
**(Cite as: 2005 WL 503317 (E.D.Pa.))**

FN1. Service of the Summons and Complaint was effectuated by certified mail upon Kim Mingo at "Consolidated Freightways, Corporate Legal, 805 Broadway, Suite 205, Vancouver, WA 98660." While an Affidavit of Kim Mingo indicates that she is authorized to accept service on behalf of Consolidated Freightways Corporation, Redwood Systems Inc., CF Airfreight Corporation, Leland James Service Corp. and CF MovesU.Com, Inc., she admits only to receiving service of process directed at Consolidated Freightways Corporation of Delaware. Plaintiff, on the other hand, contends that the Summons and Complaint were directed at "Defendant, Consolidated Freightways Corporation of Delaware, a/k/a and d/b/a Consolidated Freightways, et al.," and that service was accepted on behalf of all defendants by Kim Mingo.

3. Timeliness of the Notice of Removal

Plaintiff further contends that the Notice of Removal was procedurally defective because it was filed more than thirty days after the date of service of the initial pleading indicating a basis for removal. The Summons was served upon Defendant on September 7, 2004. The Complaint itself was filed on December 2, 2004 and served on December 3, 2004. Defendant filed the Notice of Removal on December 30, 2004.

Pursuant to 28 U.S.C. § 1446(b), a notice of removal must be filed within thirty days after the defendant receives the first "amended pleading, motion, order, or other paper" from which it may be ascertained that the case is removable. *See also Foster v. Mutual Fire, Marine & Inland Ins. Co., 986 F.2d 48, 50-51* (3rd Cir.1993). The Third Circuit in *Foster,* in considering the kinds of documents which will trigger § 1446(b), established that, at a minimum, the documents must be "something of the type filed with a court," such as a writ of summons, praecipe, or complaint. *Foster, 986 F.2d at 54* (citing *Rowe v. Marder, 750 F.Supp. 718, 721, n. 1.* (W.D.Pa.1990)). The inquiry into whether a document constitutes notice of grounds for removal is succinct, and "begins and ends within the four corners of the pleading." *Foster, 986 F.2d at 53* (citing *Rowe, 750 F.Supp. at 721).*

*\*4 The Summons which was served on Defendant on September 7, 2004 indicated the address, but not the citizenship, of Defendants; the civil cover sheet indicated that the amount in controversy is greater than $50,000. Plaintiff contends that the Summons was sufficient to put Defendant on notice that the action was removable, because a Proof of Claim had already been filed before the United States Bankruptcy Court indicating a claim by Plaintiff in the amount of $500,000. While a Proof of Claim is "something of the type filed with a court" and thus falls within technical bounds of the Third Circuit's definition, the discussion in *Foster* did not consider whether § 1446(b) might be triggered by documents filed before a different court in a separate proceeding. Indeed, the Third Circuit's analysis in *Foster* seems limited to documents filed (or potentially filed) before the state court where the action was originally brought. This Court is not in a position to extend the Third Circuit's holding in *Foster* to allow § 1446(b) removal of an action before the Philadelphia Court of Common Pleas to be triggered by a document filed with the United States Bankruptcy Court in the Central District of California. As the Complaint, the first pleading setting forth the jurisdictional basis for removal of this action, was filed on December 2, 2004, we find that Defendant's Notice of Removal was timely filed.

4. Implications of the Bankruptcy Stipulation

Finally, Plaintiff moves to remand on the grounds that Defendant improperly reneged on an agreement to allow the action to proceed in state court. Plaintiff suggests that, by filing a Stipulation for Relief from the Bankruptcy Stay permitting the Plaintiff to file an action before the Philadelphia Court of Common Pleas, Defendants' counsel in some way agreed to continuing the action in that forum. As the Stipulation in question is permissive rather than exclusive, and by no means forecloses the possibility of removal if appropriate, we find Plaintiff's argument to be without merit.

An appropriate Order follows.

*ORDER*

AND NOW, this 28th day of February, 2005, upon consideration of Plaintiff's Motion For Remand (Doc. No. 3), Defendant's Opposition to Plaintiff's Motion For Remand and Motion for Leave to File Amended Notice of Removal (Docs. No. 5, 6), and Plaintiff's reply thereto (Doc. No. 7), it is hereby ORDERED that Plaintiff's Motion For Remand is DENIED WITHOUT PREJUDICE. It is FURTHER ORDERED that Defendant's Motion For Leave to File Amended Notice of Removal is GRANTED and the Clerk of Court is directed to file and docket the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 503317 (E.D.Pa.)
**(Cite as: 2005 WL 503317 (E.D.Pa.))**

Page 4

attached Amended Notice of Removal.

 2005 WL 503317 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9

Westlaw.

Not Reported in F.Supp.2d

2003 WL 138093 (D.Del.)

**(Cite as: 2003 WL 138093 (D.Del.))**

**c**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
NOMURA ASSET CAPITAL, Plaintiff,
v.
OVERLAND COMPANY, INC., et al., Defendants.
**No. C.A. 02-1604 GMS.**

Jan. 8, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** Nomura Asset Capital Corporation ("NACC")
filed the above-captioned action on September 25,
2002 in the Delaware Court of Chancery. On
November 4, 2002, the defendants, Overland
Company, Inc. ("OCI") and Overland Land Fund II,
L.P. ("the Partnership"), filed their notice of
removal based on diversity jurisdiction to the
present court.

Presently before the court is NACC's motion for
remand because the court lacks subject matter
jurisdiction over this action. For the following
reasons, the court will grant this motion.

II. BACKGROUND

NACC is a Delaware corporation and the
Partnership's sole limited partner. OCI is a
California corporation and the Partnership's sole
general partner. NAAC maintains that it
commenced this action in the Delaware Court of
Chancery against OCI and the Partnership, not only

to enforce the Partnership Agreement, but to
vindicate and carry out the purposes of the
Partnership. Prior to bringing the action, NACC
contends that it attempted, without success, to urge
OCI to properly perform its obligations as the
Managing General Partner of the Partnership.
According to NACC, for at least two years prior to
the commencement of the action, OCI had failed to
provide to either NACC, or the Partnership, with
the information it was required to provide under the
Partnership Agreement. NACC contends that OCI's
nonperformance subjected it, and the Partnership, to
OCI's whims.

The complaint pleads two causes of action. In the
first cause of action, NACC asserts that it, and the
Partnership, have been damaged as a result of OCI's
breach of the Partnership Agreement. Specifically,
it alleges that OCI failed to fulfill the Partnership's
clearly-stated purposes because it did not dispose of
all the Partnership assets by November 24, 2000. In
breach of the Partnership Agreement, OCI allegedly
refused to dispose of all the Partnership property.
Additionally, for at least the past two years, it has
allegedly failed to provide the Partnership or NACC
with the required business plans and other reports.
According to NACC, in derogation of its
obligations as the Managing General Partner of the
Partnership, OCI announced its intention to develop
the remaining real estate asset of the Partnership,
rather than dispose of it as required. The complaint
further alleges that, "[a]s a direct and proximate
result of OCI's actions, both the Partnership and
NACC have been damaged." Complaint at ¶ 24.

The Partnership Agreement expressly provides that
money damages may be an inadequate remedy for
violation of the terms of the Partnership Agreement.
Thus, equitable relief, including specific
performance or judicial dissolution may be
required. Accordingly, in its first cause of action,
NACC seeks a judgment declaring that OCI is in
breach of the Partnership Agreement and directing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 2

2003 WL 138093 (D.Del.)

**(Cite as: 2003 WL 138093 (D.Del.))**

OCI to specifically perform its obligations under the Partnership Agreement.

In its second cause of action, NACC asserts that OCI is a "defaulting partner" under the terms of the Partnership Agreement as a result of its breach in refusing to fully dispose of the Partnership property. On June 18, 2002, NACC gave written notice to OCI that an "Event of Default" had occurred. However, according to NACC, OCI failed to take any steps to cure the default. Indeed, OCI failed to respond to NACC's demand. Thus, NACC maintains that, under the express terms of the Partnership Agreement, OCI, as a defaulting partner, may be removed as the Managing General Partner. A new manager may be appointed who will conduct the affairs of the Partnership so as to fulfill its purposes, including the dissolution of the Partnership, liquidation of its assets, and distribution of the proceeds thereof to the partners. Therefore, NACC's second cause of action seeks a judgment declaring that OCI is a defaulting partner and must be removed as the Managing General Partner, or alternatively, that the Partnership be dissolved.

### III. DISCUSSION

**\*2** NACC requests that this action be remanded due to the lack of diversity jurisdiction. The parties do not contest that both NACC and the Partnership are Delaware citizens. The defendants do contest, however, NACC's argument that the Partnership's citizenship is relevant for purposes of establishing diversity jurisdiction. For the following reasons, the court concludes that it is relevant.

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. art. III, § 2. Thus, under the United States Constitution, the court does not have the power to hear the present action unless OCI can prove that the action is a "[c]ontroversy ... between Citizens of different States." *Id.* As the United States Supreme Court has stated, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary lies upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375,

377 (1994).

Moreover, pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The United States Court of Appeals for the Third Circuit has further stated that the removal statutes are to be strictly construed against removal and that all doubts should be resolved in favor of remand. *Abels v. State Farm Fire and Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985); *see also Batoff v. State Farm Ins. Co.,* 977 F .2d 848, 851 (3d Cir.1992) (stating that the removing party carries a "heavy burden of persuasion").

In *Carden v. Arkoma,* the Supreme Court held that, for diversity purposes, a limited partnership must be counted as a resident of every state where each limited partner resides. 494 U.S. 185, 195 (1990). The Court further stated that, "we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members." ' *Id.* at 195-196. *Carden,* however, involved the specific issue of claims brought for harms sustained by the limited partnership itself, and not a direct claim by the shareholders for injuries to themselves. Thus, post-*Carden* courts have followed its mandate only to the extent that the cases before them concerned derivative claims. *See e.g. Lenz v. Associated Inns and Restaurants Co.,* 833 F.Supp. 362, 378 (S.D.N.Y.1993); *Buckley v. Control Data Corp.,* 923 F.2d 96, 98 (8th Cir.1991) ; *Bankston v. Burch,* 27 F.3d 164, 165 (5th Cir.1994) (noting that "[b]ecause the claims the limited partner pleaded derive from the partnership's rights, the partnership's citizenship must be considered in determining whether federal diversity jurisdiction exists.").

It is apparent then, that before the court may determine whether the Partnership's citizenship must be considered for diversity purposes, the court must first address whether the instant action is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2003 WL 138093 (D.Del.)

**(Cite as: 2003 WL 138093 (D.Del.))**

derivative or direct in nature. The test to distinguish between derivative claims and direct claims is well-established. "In a derivative suit, a shareholder [or limited partner] sues on behalf of the corporation [or partnership] for harm done to the corporation [or partnership]." *Lenz,* 833 F.Supp. at 380. By contrast, a plaintiff bringing a direct action "must be injured directly or independently of the corporation [or partnership].... Similarly, to bring a direct representative action against a general partner, a limited partner must demonstrate either direct injury or an injury that exists independently of the partnerships." *Id; see also Kenworthy v. Hargrove,* 855 F.Supp. 101, 106 (E.D.Pa.1994) (explaining that the determination hinges on "whether the primary injury alleged in the complaint is to the partnership or to the individual plaintiffs.").

**\*3** Applying this standard, the court concludes that the primary goal of the present suit is derivative in nature. NACC argues that the Partnership has been damaged by OCI's failure to dispose of all the assets of the Partnership within the six-year time period required by the Partnership Agreement. NACC continues that, instead of acting on behalf of the Partnership in accordance with its stated purposes, OCI decided to manage the Partnership without regard to its clearly defined obligations to the Partnership. Specifically, OCI failed to provide the partners with the required business plans and other documents necessary for the partners to monitor, and approve, OCI's actions. According to NACC, this was in conflict with, and in complete derogation of, the purposes of the Partnership as expressed in the Partnership Agreement. These allegations of mismanagement, among others, indicate possible substantial harm done to the Partnership itself. *See Blasberg v. Oxbow Power Corp.,* 934 F.Supp. 21, 27 (D.Mass.1996) (noting that claims against a general partner for actions such as mismanagement and failure to perform elements of the partnership agreement have been properly characterized as derivative claims.). That the alleged wrongs may have also impacted NACC as a limited partner does not change the court's conclusion that the primary nature of this suit is derivative.

Due to the derivative nature of the plaintiff's claims, the court finds that the Partnership is more than a nominal party. Thus, in accordance with the Supreme Court's mandate in *Carden,* the court must consider the Partnership's citizenship for purposes of determining the existence of diversity jurisdiction. Because both the defendant Partnership and the plaintiff NACC are Delaware citizens, the court concludes that it is divested of jurisdiction to hear this case.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:
    1. The Plaintiff's Motion to Remand (D.I.4) is GRANTED.
    2. This matter is hereby REMANDED to the Delaware Court of Chancery.

2003 WL 138093 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:02CV01604  (Docket)
                                    (Nov. 04, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw Attached Printing Summary Report for MUFFLEY,MARY 5148424**

| | |
|---|---|
| Date/Time of Request: | Tuesday, June 14, 2005 14:00:00 Central |
| Client Identifier: | 51866 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 298 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d

Page 1

2001 WL 940909 (D.Del.)

**(Cite as: 2001 WL 940909 (D.Del.))**

**C**
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Quentin KETTERSON, et al., Plaintiffs,
v.
Douglas H. WOLF, et al., Defendants.
**No. Civ.A. 99-689-JJF.**

Aug. 14, 2001.

Charlene Davis, and Richard L. Abbott, of the Bayard Firm, Wilmington, Delaware, Z. Lance Samay, Morristown, New Jersey, for Plaintiffs, of counsel.

R. Franklin Balotti, and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Richard J. Idell, of Idell, Berman & Seitel, San Francisco, California, for Defendant Douglas H. Wolf, of counsel.

R. Franklin Balotti, and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Richard B. Cooper, and Erik W. Kvam, of Cooper, Brown & Behrle, P.C., New York, New York, for Defendant Richard G. Buckingham, of counsel.

Andre G. Bouchard, and Joel Friedlander, of Bouchard Margules & Friedlander, Wilmington, Delaware, Robert L. Fila, Columbia, Maryland, for Defendant W. Lawrence Patrick, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I.75), and Defendant W. Lawrence Patrick's Motion to Dismiss (D.I.79), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court will grant the motions.

BACKGROUND

The Amended Complaint filed in this action alleges the following facts. Plaintiff Quentin Ketterson ("Mr.Ketterson") is an investment banker based in New Jersey who is engaged in the business of facilitating transactions in the broadcast and computer software industries. Mr. Ketterson created Plaintiff Triangle Broadcasting Company, L.L.C. ("Triangle")(collectively "Plaintiffs"), which is a Delaware limited liability company, in the fall of 1995 "for the express purpose of specializing in acquiring control of, or in any way facilitating the sale of, the stock of broadcasting companies, which own groups of TV and/or radio stations." Defendant Douglas H. Wolf ("Mr.Wolf"), from San Francisco, California, and Defendant Richard G. Buckingham ("Mr.Buckingham"), from New York, are both attorneys and businessmen who specialize in "facilitating tax-driven business transactions." Defendant W. Lawrence Patrick ("Mr.Patrick") is a Maryland attorney who owns Patrick Communications Corporation, a radio and television station brokerage firm (the individual defendants are collectively "Defendants").

Mr. Ketterson and Mr. Patrick, who were introduced by a mutual friend in early 1995, agreed to become equal partners in a business of "soliciting broadcast station sellers, buyers and brokers." In July of 1995, as a result of their initial work on this venture, Mr. Ketterson and Mr. Patrick were introduced to Mr. Buckingham, who at the time was affiliated with Mr. Wolf in an unincorporated association. Mr. Ketterson and Mr. Patrick were impressed with some of Mr. Buckingham's business proposals and sought to work with him in the future. In anticipation of working with Mr. Buckingham and Mr. Wolf, on or about August 1, 1995, Mr. Ketterson and Mr. Patrick executed a letter

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2001 WL 940909 (D.Del.)

**(Cite as: 2001 WL 940909 (D.Del.))**

agreement establishing a partnership in which they would equally share any compensation earned as a part of their dealings with Mr. Buckingham and Mr. Wolf. At the end of October 1995, after several weeks of frequent communications among all four individuals, Mr. Ketterson and Mr. Patrick agreed with Mr. Buckingham and Mr. Wolf to formalize their business relationship by executing an agreement to create Triangle, a Delaware limited liability company, in which each individual would have a 25% interest. According to the terms of the agreement, Triangle's existence was effectuated on November 20, 1995. The purpose of Triangle was to "pursue and facilitate broadcast station sales transactions."

During the ensuing months, Mr. Ketterson and Mr. Patrick began working on Triangle's behalf, when, in February of 1996, they learned that Mr. Buckingham and Mr. Wolf had recently completed a $165 million broadcast station stock sale separate from Triangle's business operations. Mr. Ketterson and Mr. Patrick continued to learn of other independent business activities in which Mr. Buckingham and Mr. Wolf had been engaging, and the controversy among the four escalated in July of 1996 when Mr. Wolf expressed reluctance "to honor his contractual commitment to share equally Triangle's earnings with [Mr. Ketterson and Mr. Patrick]."

**\*2** Despite their concerns about Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick continued to work in securing transactions for Triangle, and they regularly sent Mr. Buckingham and Mr. Wolf update letters to detail their progress. In response to one of these letters, in August of 1996, Mr. Buckingham and Mr. Wolf informed Mr. Ketterson and Mr. Patrick of their desire to "redefine" their relationship. Rather than resisting and possibly irreparably damaging their relationship with Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick drafted a modification of their agreement reducing their respective share of Triangle's profits.

In October 1996, Mr. Ketterson received a copy of a letter authored by Mr. Patrick that indicated that

Mr. Ketterson had been completely excluded from a number of completed and pending Triangle transactions. On November 11, 1996, Mr. Ketterson received a letter from Mr. Buckingham and Mr. Wolf in which the two "purported to 'withdraw' from Triangle retroactively to August 1996." Mr. Ketterson quickly objected in writing to "the impropriety of the action of [Mr. Buckingham and Mr. Wolf in totally usurping Triangle's business and circumventing the LLC Agreement." In December 1996, Mr. Buckingham and Mr. Wolf informed Mr. Patrick that he could maintain his financial relationship with them, and could be indemnified by them, only if Mr. Patrick agreed to (1) withdraw from Triangle, (2) accept $140,000 as his share of earnings for all of his contributions to Triangle to that date, (3) exclude Mr. Ketterson from any future broadcast station transaction, and (4) deprive Mr. Ketterson of any monies owed to him and of any legal rights that he may have possessed. Mr. Patrick eventually sent a letter to Mr. Ketterson on December 24, 1996, that expressed his desire to formally end his business relationship with Mr. Ketterson and stating that he would continue doing business with Mr. Buckingham and Mr. Wolf. On May 27, 1997, Mr. Ketterson authored a letter to Mr. Buckingham and Mr. Wolf which demanded an accounting of all of Triangle's profits, but Mr. Ketterson received no response. His follow-up phone calls in late 1997 and early 1998 also went unanswered.

On November 10, 1998, Plaintiffs (Mr. Ketterson and Triangle) filed an action in the United States District Court for the District of New Jersey. (D.I. 88 at 1). Plaintiffs' Amended Complaint asserts claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duties, (4) conversion, (5) oppressive conduct, (6) fraud and conspiracy to defraud, (7) unjust enrichment, and (8) tortious interference with business opportunities, and it also demands an accounting of all of Triangle's profits. On October 14, 1999, the New Jersey court transferred the action to this Court because of improper venue. (D.I. 88 at 2). Defendants filed the instant motions on March 10, 2000, seeking dismissal of Plaintiffs' Amended Complaint due to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

2001 WL 940909 (D.Del.)

**(Cite as: 2001 WL 940909 (D.Del.))**

lack of subject matter jurisdiction. (D.I. 88 at 2).

DISCUSSION

**\*3** In order for the Court to have subject matter jurisdiction of an action containing only state law claims, there must be "complete diversity [of citizenship] between all plaintiffs and all defendants ." *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 158 (3d Cir.1995). The burden to establish jurisdiction is on the plaintiff. *Kokkonen v. Guardian Life Ins. Co of Am.,* 511 U.S. 375, 377 (1994). Thus, in this case, if Plaintiffs fail to establish that the citizenship of every Defendant is different than the citizenship of every Plaintiff, the Court lacks jurisdiction and it must grant Defendants' motions.

A. Citizenship of a Delaware Limited Liability Company

In order to resolve Defendants' motions, the Court must resolve the issue of a Delaware limited liability company's citizenship for diversity of jurisdiction purposes. After a review of the available case law, the Court concludes that a limited liability company is a citizen of the states of which its individual members are citizens. *See Carden v. Arkoma Assocs.,* 494 U.S. 185, 187-192 (1990)(holding that only corporations, and not other business entities such as limited partnerships, are considered citizens of the state which created it); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51-52 (2d Cir.2000)(holding that limited liability companies have the citizenship of all of its members).

Since Plaintiff Triangle is a Delaware limited liability company and Defendants were all indisputably members of Triangle, the only way for there to be complete diversity in the instant case is if each Defendant effectively withdrew from Triangle, and that after such withdrawal, each Defendant was a citizen of a different state than each Plaintiff. However, as explained below, the Court concludes that Plaintiffs have failed to adequately allege such facts.

B. Defendants' Motions Raise Facial Challenges to

the Court's Jurisdiction

Two types of Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may be brought by a defendant. One is a facial challenge to the Court's jurisdiction. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir.2000). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would not be sufficient to establish the court's jurisdiction. *Id.* In deciding a facial challenge, a Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* However, a defendant can also assert a factual challenge to the court's subject matter jurisdiction, which contends that the allegations in the complaint establishing jurisdiction are not sufficiently supported by the facts. *Id.* When considering a factual challenge, a court can consider evidence outside of the pleadings. *Id.*

In the instant case, Defendants' motions present facial challenges to the Court's jurisdiction. In their motions, Defendants contend that Plaintiffs refuse to allege in their Amended Complaint that Defendants effectively withdrew from Triangle. (D.I. 96 at 7)(noting that the Amended Complaint repeatedly refers to Defendants' "purported" withdrawal). Thus, the Court concludes that it can only review and consider the Amended Complaint and its attached documents when resolving Defendants' motions.

**\*4** After reviewing Plaintiffs' Amended Complaint, it is clear that Plaintiffs do not allege that Defendants effectively withdrew from Triangle. Thus, Plaintiffs have failed to satisfy their burden of pleading the basis for the Court's jurisdiction, and Defendants' motions to dismiss must be granted.

C. Plaintiffs Do Not Even Contend that the Amended Complaint Sufficiently Pleads the Basis of the Court's Jurisdiction

Plaintiffs contend that the Court should not construe Defendants' challenge as a facial challenge because there is a dispute of material fact as to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 4

2001 WL 940909 (D.Del.)

**(Cite as: 2001 WL 940909 (D.Del.))**

whether or not Defendants effectively withdrew from Triangle. In particular, Plaintiffs cite to a complaint and its attached documents that Defendants filed in the Delaware Court of Chancery ("Chancery Court") seeking a declaratory judgment that Defendants had effectively withdrawn from Triangle in 1996. [FN1] (D.I. 88 at 2, 11-12). Because Defendants' present motions raise facial challenges to the Court's jurisdiction, the Court concludes that whether or not Defendants actually withdrew is irrelevant. What is relevant is whether Plaintiffs have pleaded facts that establish that Defendants withdrew. Plaintiffs have not, and therefore, their contentions in opposition to Defendants' motions are unsupported. [FN2]

> FN1. The Chancery Court action has been stayed pending resolution of the instant action. (D.I. 88 at 2).

> FN2. It appears that Plaintiffs have made certain tactical decisions when drafting their pleadings, but the Court is limited by the facts pleaded when deciding Defendants' motions. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.,* 177 F.3d 210, 222 n. 13 (3d Cir.1999) (stating that, even if the parties do not dispute that diversity of citizenship exists, the complaint still must allege facts establishing diversity, or dismissal is warranted).

Plaintiffs contend that the Chancery Court complaint can be considered by the Court in resolving the instant motions, despite the Court's conclusion that Defendants' motions raise facial challenges, because the complaint is a public record. (D.I. 88 at 11)(citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196-97 (3d Cir.1993)). However, the cases that have allowed consideration of public records involved Rule 12(b)(6) motions to dismiss, and the Court concludes that to allow consideration of public records on a Rule 12(b)(1) facial challenge would be to disregard the facial challenge/factual challenge distinction. *See Gould,* 220 F.3d at 176 n. 6 (extending *Pension Benefit* to allow consideration

of documents attached to a complaint when deciding a Rule 12(b)(1) facial attack, but not discussing whether or not it would also allow consideration of public records); *Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n,* 107 F.Supp.2d 653, 658-59 (E.D.Pa.2000)(discussing how Courts can consider public records when analyzing Rule 12(b)(6) motions to dismiss, but recognizing that Rule 12(b)(1) motions to dismiss are analyzed under a different standard than Rule 12(b)(6) motions, and further, that can courts can consider documents outside the pleadings when analyzing Rule 12(b)(1) motions only if the motion presents a factual challenge). [FN3]

> FN3. One court has held that public records can be considered by a court in deciding a Rule 12(b)(1) facial challenge. *Hunter v. United States,* 2000 WL 1880257, at *3 (M.D.Pa. Dec. 15, 2000). The court noted that, when discussing what materials may be considered by a court in determining a Rule 12(b)(1) facial challenge, the *Gould* court cited *Pension Benefit,* which involved a Rule 12(b)(6) motion. *Id.* Since the *Pension Benefit* court allowed consideration of public records, the court in *Hunter* reasoned that *Gould* implicitly allows for the consideration of public records when deciding a Rule 12(b)(1) facial attack. *Id.* The court reasoned that this conclusion "comports with the fact that both a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack argue that the propriety of dismissal is apparent from the face of the complaint." *Id.*

The Court concludes that the reasoning in *Hunter* is not helpful for two reasons. First, the Court believes *Hunter* inaccurately characterizes the *Gould* court's citation of *Pension Benefit. Gould* merely cited *Pension Benefit* for the proposition that the Third Circuit could "think of no principled reason why a court, in resolving a 12(b)(1) facial attack should not also consider documents *attached to the complaint." Gould,* 220 F.3d at 176 n. 6 (emphasis

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 5

2001 WL 940909 (D.Del.)

**(Cite as: 2001 WL 940909 (D.Del.))**

added). *Gould* did not hold that public records can be considered in resolving a Rule 12(b)(1) facial challenge. Second, even if *Gould* had intended to suggest that public records could be considered in resolving a Rule 12(b)(1) facial attack, the Court concludes that the instant circumstances present a "principled reason" why they should not be considered. Plaintiffs hope to avoid dismissal on jurisdictional grounds by relying on public records, but Plaintiffs also do not want to be "bound" by the allegations in the public records for other issues, such as damages. It would be unfair to Defendants to allow Plaintiffs to rely on public records for purposes of jurisdiction, yet avoid having to plead the same facts in their Complaint because they may adversely affect other issues in the case.

Plaintiffs also contend that the Court should deny Defendants' motions because (1) it would be an abuse of discretion to rule on the jurisdictional issue without affording them an opportunity to conduct jurisdictional discovery, and (2) the decision resolving the jurisdictional issue should be postponed until trial because the jurisdictional issue is so intertwined with the merits of the case. (D.I. 88 at 13-16). As to Plaintiffs' first contention, because the Court concludes that Plaintiffs' Amended Complaint is facially deficient, the deficiency could not be cured by discovery. As to Plaintiffs' second contention, the Court concludes that it would be inappropriate to accept jurisdiction and consider the case on its merits where the challenge to the Court's jurisdiction is facial in nature. *See Society Hill Towers Owners, Ass'n v. Rendell,* 210 F.3d 168, 175 (3d Cir.2000)(noting that the Supreme Court "has recently cautioned against the practice of assuming jurisdiction and reaching the merits of a dispute," because issuing a decision based on such "hypothetical jurisdiction" is essentially an advisory opinion)(quoting *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 93 (1998)).

**\*5** In sum, the Court concludes that Plaintiffs fail to meet their burden to affirmatively plead facts

necessary to establish the basis of the Court's jurisdiction. Thus, the Court concludes that Defendants' motions should be granted.

CONCLUSION

For the reasons discussed, the Court will grant Defendants' motions to dismiss for lack of subject matter jurisdiction.

An appropriate Order will be entered.

*ORDER*

At Wilmington this 14 day of August, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
    1. Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I.75) is *GRANTED.*
    2. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I.79) is *GRANTED.*
    3. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I.73) is *DENIED AS MOOT.*

2001 WL 940909 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

10

Westlaw.

Not Reported in F.Supp.2d

Page 1

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. Mississippi,
Jackson Division.
PEOPLES BENEFIT LIFE INSURANCE
COMPANY and VETERANS LIFE INSURANCE
COMPANY
Plaintiffs
v.
George DALE, Commissioner of Insurance of the
State of Mississippi in His
Capacity as Liquidator of First National Life
Insurance Company; First National
Life Insurance Company; Douglas Sizemore,
Commissioner of Insurance of the
State of Tennessee in His Capacity as Rehabilitator
of Franklin American Life
Insurance Company; Franklin American Life
Insurance Company; Thunor Trust;
Liberty National Securities; John A. Hackney; Gene
L. McKinney; Frances Y.
Burnette; Dennis L. Roos; Wade A. Willis; Judith
C. Lowery; and Martin R.
Frankel Defendants
**No. CIV.A. 3:99CV537BN.**

Dec. 29, 1999.

OPINION AND ORDER

BARBOUR, District J.

**\*1** This cause is before the Court on motions to dismiss filed by each of Defendants George Dale, Douglas Sizemore, [FN1] Thunor Trust, John A. Hackney and Wade A. Willis. The Court has considered the motions, the responses of Plaintiffs, and the supporting and opposing memoranda. The Court finds that motions to dismiss of Defendants Dale and Sizemore should be granted in part. The motions to dismiss of Defendants Hackney, Thunor Trust and Willis are well taken and are hereby granted.

    FN1. The Court has been informed that Ann Pope has been appointed to succeeded Douglas Sizemore as the Tennessee Commissioner of Insurance and as liquidator of Franklin American Life Insurance Company. The Court also notes that neither has moved to substitute Pope for Sizemore as the party in interest pursuant to Rule 25 of the Federal Rules of Civil Procedure. The Court will, therefore, continue to refer to the Tennessee Commissioner as Sizemore.

I. Background

Plaintiffs filed suit in this matter on July 30, 1999. The Complaint alleges the following facts. On October 30, 1998, the Plaintiff insurance companies entered into a reinsurance agreement with Defendant First National Life Insurance Company (hereinafter referred to as FNLIC). Plaintiffs decided to enter into the reinsurance agreement after consulting with the officers of FNLIC and Franklin American Life Insurance Company (hereinafter referred to as FALIC). Defendants Hackney and Willis are two of those officers. During the aforementioned consultations, certain representations were made regarding the financial stability of FNLIC, which Plaintiffs claim were false. [FN2] Pursuant to the reinsurance agreement, Plaintiffs transferred a group of insurance policies to FNLIC along with a fund totaling $14,689,593.00 (hereinafter referred to as the $14 million fund or the fund).

    FN2. Plaintiffs had already rejected FALIC as a potential reinsurer because its "financial rating" was not high enough.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Complaint ¶ 20.

Defendant Thunor Trust owned, directly or indirectly, all of the stock in FNLIC and part of the stock in FALIC. Thunor Trust was itself established by Defendant Martin Frankel for the purpose of acquiring ownership interests in insurance companies. Frankel also owned Defendant Liberty National Securities, a firm with which the $14 million fund was allegedly deposited by FNLIC. This, Plaintiffs allege, put the fund under the complete control of Frankel. Sometime after the fund was deposited with Liberty National Securities, it "disappeared." [FN3] Plaintiffs allege that the officers of FNLIC knew, or should have known, not to trust Frankel with the fund.

> FN3. Frankel is under indictment for embezzling money from various insurance companies.

Plaintiffs next allege that the reinsurance agreement was not to become effective until it was approved by the Mississippi Commissioner of Insurance, Defendant George Dale. However, at some point prior to receiving approval of the agreement, FNLIC was ordered into rehabilitation under the Mississippi Insurers Rehabilitation and Liquidation Act, Miss.Code Ann. § 83-24-1 et seq. (hereinafter referred to as the Mississippi Act). The rehabilitation was required because of the insolvency that resulted from the embezzlement of funds by Defendant Frankel. FNLIC was eventually ordered into liquidation under the Mississippi Act. [FN4] The liquidation proceedings are presently pending in the Chancery Court of Hinds County, Mississippi. Plaintiffs assert that because the reinsurance agreement was never approved by Defendant Dale, the agreement never became effective and that, therefore, the $14 million fund and insurance policies should be returned to Plaintiffs.

> FN4. Defendant Dale was appointed Liquidator for FNLIC. He was given control over all assets of FNLIC. FNLIC no longer exists independently from Defendant Dale as Liquidator of the estate.

Therefore, the Court will consider them as a single entity for purposes of the motion to dismiss filed by Defendant Dale, even though they are named as separate defendants.

**\*2** Meanwhile, on May 11, 1999, FALIC was ordered into receivership under the Tennessee Insurers Rehabilitation and Liquidation Act, Tenn.Code Ann. § 56-9-101 et seq. (hereinafter referred to as the Tennessee Act). Defendant Sizemore was given regulatory and administrative control over FALIC. On October 25, 1999, subsequent to filing the motion to dismiss before this Court, the Chancery Court for the Twentieth Judicial District, Davidson County Tennessee, entered a Consent Final Order of Liquidation, placing FNLIC in liquidation, which proceedings are now pending. [FN5]

> FN5. This puts FALIC in a similar posture to that of FNLIC, and the Court will accordingly consider FALIC and Sizemore as a single entity for purposes of the present motion to dismiss. *See supra* note 3.

Plaintiffs have alleged various state law causes of action, including: (1) assumpsit for money had and received, (2) breach of contract, (3) interference with contractual relations, (4) breach of trust, (5) negligent misrepresentation, (6) negligent entrustment, and (7) conversion. On each of these claims, Plaintiffs seek money damages in an amount equal to the $14 million fund. Plaintiffs also seek declaratory judgment relief on two issues: (1) that the $14 million fund is property of Plaintiffs and not property of the liquidation estate of FNLIC, and (2) that the fund was being held in trust by FNLIC.

## II. Discussion
### A. The Motions of Defendants Dale and Sizemore to Dismiss

The issues raised by Dale and Sizemore boil down to a question of whether this Court or the state courts, which have already exercised jurisdiction over the defunct FNLIC and FALIC, should decide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

who owns the $14 million fund, if and when it is ever recovered from Frankel. The answer to that question is that the state courts should decide who owns the fund. For the reasons stated below, therefore, the motions to dismiss of Defendants Dale and Sizemore are granted to the extent that the declaratory judgment claims of Plaintiffs are dismissed. All further proceedings in this Court with regard to this case are stayed pending the state court liquidations of FNLIC and FALIC.

Defendant Dale, as Liquidator of FNLIC, raises the following issues: (1) whether the claims against FNLIC should be dismissed on abstention grounds; (2) whether the liquidation order of the Mississippi court, which contains an injunction purporting to prohibit the present suit from being commenced, controls, thereby giving the state court exclusive jurisdiction over the fund as an asset of the liquidation estate; and (3) whether federal jurisdiction over the claims raised by Plaintiffs is "reverse preempted" by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., by which Congress granted the states exclusive jurisdiction to regulate the insurance business. Finally, Dale asserts that the claims against the other defendants should be dismissed because, as causes of action belonging generally to all creditors of FNLIC, the right to bring such actions is vested in Dale as liquidator pursuant to the Mississippi Act.

For the most part, Sizemore raises arguments identical to those raised by Dale on behalf of FNLIC. [FN6] Therefore, the Court will address the two motions concurrently.

> FN6. The Court notes that Sizemore added, as a ground for dismissal, failure to state a claim. The Court also notes that the only allegations in the complaint concerning FALIC are that the FALIC and FNLIC commingled funds and that the officers of FALIC, which were in large part also the officers of FNLIC, misrepresented the financial stability of FNLIC. However, as to the claims raised against FALIC the motion to dismiss is granted on other grounds, which makes it

unnecessary to address this additional issue.

1) The Abstention Argument

**\*3** Defendants urge the Court to dismiss this cause under the abstention doctrine established by the United States Supreme Court in *Burford v. Sun Oil Co.,* 319 U.S. 315, 87 L. Ed 1424 (1943). Under that doctrine, federal courts should abstain from exercising jurisdiction over cases where to do so would infringe on "state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. V. United States,* 424 U.S. 800, 814, 47 L.Ed.2d 496 (1976) . [FN7] Plaintiffs, on the other hand, argue that the Supreme Court recently refined the *Burford* doctrine in such a way that disposes of Defendants' argument. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 135 L.Ed.2d 1 (1996).

> FN7. Although Defendants argue that *Burford* and *Colorado River* provide separate doctrines of abstention, this Court finds that *Colorado River* is merely one in a line of cases that have developed the doctrine of abstention first established in *Burford.*

In *Quackenbush,* the Insurance Commissioner of California, who had been appointed liquidator of the Mission Insurance Company and its affiliates, sued Allstate Insurance Company in state court in an effort to recover assets of the defunct company which were allegedly held by Allstate. *Id.* at 709. Particularly, the Commissioner sought damages on a breach of contract theory for the failure of Allstate to perform on certain reinsurance agreements. *Id.* at 729. Allstate counterclaimed for setoff of its own breach of contract claims against the plaintiff. *Id.* at 709. Allstate removed the case to federal court on diversity grounds. *Id.* The Commissioner moved for remand arguing that the court should abstain from hearing the case under *Burford* because resolution of the dispute, specifically the setoff claims, by the federal court would interfere with the regulation of the insolvency by the state of California under California law. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

In the *Quackenbush* opinion, the Supreme Court, through Justice O'Connor, discussed the development of the abstention doctrine over the years. *Id.* at 716-22. The Court noted that the abstention doctrine has its origin in the equity powers of the federal courts. *Id.* In particular, the Court stated that "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity." ' *Id.* at 717 (quoting *Fair Assessment in Real Estate Assn., Inc. v. McNary,* 454 U.S. 100, 120, 70 L.Ed.2d 271 (1981) (Brennan, J. concurring)). The Court stated that "*Burford* allows a federal court to dismiss a case only if it presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' or if its adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' *Id.* at 726-27 (citations omitted). The decision whether to abstain from the exercise of jurisdiction in a given case:

> balances the strong federal interest in having certain classes of cases, and certain federal rights, adjudicated in federal court, against the State's interests in maintaining "uniformity in the treatment of an 'essentially local problem" ' ... and retaining local control over "difficult questions of state law bearing on policy problems of substantial public import," .... *This balance only rarely favors abstention, and the power to dismiss recognized in Burford represents an " ' extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.*" '

*\*4 Id.* at 728 (citations omitted) (emphasis added). The Court noted that abstention principles had been applied to "actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether." *Id.* at 719. Finally, the Court stated the rule of law that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or *otherwise discretionary.*" *Id.* at 731. (emphasis added). The Court held that, because the relief sought was of a legal nature, that

is a damages action on a breach of contract theory, the district court's application of *Burford* to remand the case was "unwarranted." *Id.*

In a case with almost identical facts to those of *Quackenbush,* the United States Court of Appeals for the Fifth Circuit recognized that *Quackenbush* established that an action seeking damages never warrants abstention. *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d 697, 701 (5th Cir.1999). The Fifth Circuit went on to say that *Quackenbush* imposes "an ironclad, per se bar to" dismissing or remanding a "damages action." *Id.* at 702.

There are two differences between the facts of the case sub justice and those of the *Quackenbush* case. First is the fact that Plaintiffs sued the Mississippi and Tennessee Commissioners of Insurance instead of visa versa. The second difference is that Plaintiffs here seek declaratory judgment relief in addition to various tort damages. Otherwise, this Court is faced with an almost identical lawsuit in that it involves a dispute over assets of the liquidation estate, although Plaintiffs in this case raise an issue as to whether the fund is actually an asset of the estate in the first place.

Plaintiffs have alleged several damages claims, which this Court, under *Quackenbush,* clearly may not dismiss on abstention grounds. In particular, the Court may not abstain from hearing the damages claims based on breach of contract, interference with contractual rights, negligent misrepresentation, negligent entrustment, and conversion. Complaint, Prayer for Relief ¶¶ (B), (C), (E), (F), (G), and (H).

The Court is left with two questions. First, the Court must decide whether the two requests for declaratory relief contained in Paragraphs (A) and (D) of the Prayer for Relief are "otherwise discretionary" actions such that the Court may abstain under *Quackenbush.* The second question is whether the damages actions, from which the Court may not abstain, should be stayed pending the outcome of the state court liquidation and receivership proceedings.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

This Court, through Judge Tom S. Lee, has recognized that "[a]n action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." *KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp.,* 947 F.Supp. 262, 266 (S.D.Miss.1996) (citations omitted). However, regardless of the nature of the underlying claim "[a] district court has broad, but not unfettered discretion to retain or dismiss a declaratory judgment suit." *American States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998). In *Wilton v. Seven Falls Co.,* 515 U.S. 277, 132 L.Ed.2d 214 (1995), the United States Supreme Court stated that in determining whether to retain or dismiss a declaratory judgment action, a district court must consider "the scope of the pending state court proceeding ... [and] whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding," among other factors. *Id.* at 283. (citing *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 86 L.Ed. 1620 (1942)). The Court went on to say that "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' if it permitted the federal declaratory action to proceed." *Id.*

**\*5** According to these precedents, this Court has broad discretion as to whether to entertain the requests for declaratory relief alleged by the Plaintiffs. Therefore, those two claims are such "otherwise discretionary" actions to which the abstention principles apply. *Quackenbush,* 517 U.S. at 731. The Court finds that *Burford* abstention is appropriate in this case to the extent Plaintiffs ask this Court to determine who owns the $14 million fund. By declining the opportunity to make this determination, the Court avoids interfering with "state efforts to establish a coherent policy with respect to a matter of substantial public concern," which in this case is the administration of the liquidation estates of FNLIC and FALIC. *Colorado River,* 424 U.S. at 814. This is especially true in light of the fact that the rehabilitation and liquidation statutes of Mississippi and Tennessee

each provide procedures for litigating disputed claims, which provide an "opportunity for ventilation" of the claim Plaintiffs make to the $14 million fund. *Wilton,* 515 U.S. at 283. *See* Miss.Code Ann. § 83-24-77 and Tenn.Code Ann. § 56-9-327.

Plaintiffs argue that the state courts have no jurisdiction to administer their claim against FNLIC and FALIC because the $14 million fund is not an asset belonging to either company. Plaintiffs argue that since the reinsurance agreement was never approved, the deal was never completed and the fund never became property of FNLIC. Plaintiffs assert that Defendants' arguments for abstention, as well as all other grounds for dismissal, presuppose that the fund is an asset subject to administration in the state proceedings. Plaintiffs insist in their memoranda that they are not asking this Court to order the fund returned to them, but are simply asking this Court to declare that the fund belongs to Plaintiffs. [FN8] However, the Court finds that this argument itself begs the very question that Plaintiffs want this Court to answer, a question which the Court finds is more appropriately addressed by the state courts. The very purpose of the state statutes, at least in the case of a liquidation, is to provide a mechanism for determining what the assets of the insurer are, collecting those assets and distributing those assets to the proper creditors. As further justification for this holding, the Court notes that the Fifth Circuit has indicated that it will not accept the very argument raised by Plaintiffs. *Munich American Reinsurance Co. v. Crawford,* 141 F.3d 585, 594 n. 6 (5th Cir.1998). For these reasons, the Court finds that it should abstain from hearing the declaratory judgment claims of Plaintiffs.

> FN8. The Court notes that this argument is not completely consistent with the complaint. In the Prayer for Relief, Plaintiffs expressly ask the Court to declare that the "the fund should be returned to [Plaintiffs]" and that "[Plaintiffs] are entitled to its return."

As for the issue of staying the damages claims, Plaintiffs argue that a stay in this case would have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

the same effect as a dismissal. It is true that at the end of the liquidation proceedings FNLIC and FALIC will no longer exist. However, the Court notes that each of the damages claims made by Plaintiffs is for the exact same amount of damages, and is for an amount equal to the $14 million fund. It is clear that the goal of the Plaintiffs is to get their money back from any of the Defendants and under any theory that may possibly work. Therefore, it appears that Plaintiffs will be satisfied with return of the $14 million fund, regardless of source. In light of this, and in the interest of judicial economy, the Court finds that it should await the outcome of the state court proceedings. Plaintiffs should take advantage of the statutory mechanisms for litigating the claims against FNLIC and FALIC. If the Court allowed Plaintiffs to proceed with litigation of their damages claims against FNLIC and FALIC at this point, the Court would essentially be making the very determination that it has already found to be more appropriately made by the state court. It may very well be that the state court, or courts, will determine the issue of ownership of the $14 million fund in favor of Plaintiff, in which case Plaintiffs may find it unnecessary to proceed with the federal litigation. On the other hand, after the state court proceedings are ended, the damages claims against the remaining Defendants will still exist if Plaintiffs have failed to recover everything they seek. The Court notes the concern of Plaintiffs that this holding will require them to litigate their claim to the fund in state court, but as discussed above, that is the more appropriate procedure. Moreover, with respect to overall judicial economy and efficient administration of the insurers' estates, it is more appropriate that all of the creditors of FNLIC and FALIC be required to litigate their claims against FNLIC and FALIC in a single forum, as opposed to the state liquidator or receiver being required to litigate claims in numerous forums. For these reasons, the Court finds that the appropriate course of action is to stay all further proceedings before this Court regarding the damages claims of Plaintiffs.

2) The Reverse Preemption and State Court Injunction Arguments

*6 In addition to the abstention arguments discussed above, Defendants Dale and Sizemore also make two other arguments for dismissal of this action with respect to FNLIC and FALIC. Defendants first argue that the diversity jurisdiction of this court is reverse preempted by the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. The Court rejects this argument. The Fifth Circuit has repeatedly rejected the argument that the McCarran-Ferguson Act reverse preempts the diversity jurisdiction of federal courts. *See Martin Ins. Agency v. Prudential Reinsurance Co.,* 910 F.2d 249, 254 (5th Cir.1990); *Munich American,* 141 F.3d at 595 (5th Cir.1998).

Next, Defendants argue that the state court liquidation and rehabilitation orders contained injunctions against the commencement of lawsuits which precluded Plaintiffs from instituting the present lawsuit and that this Court should give full faith and credit to the state court injunctions to bar the declaratory action claims of Plaintiffs. *See e.g., United States v. Bank of New York & Trust Co .,* 296 U.S. 463, 477 (1936); *Clark v. FitzGibbons,* 105 F.3d 1049, 1051-52 (5th Cir.1997). However, because the Court has dismissed the declaratory judgments claims on abstention grounds, it is unnecessary to decide this additional issue.

3) The Argument for Dismissal of Claims Against Other Defendants

Defendant Dale raises one final issue. He argues that the claims against all other Defendants, except Defendant Sizemore, are claims held in general by all creditors of FNLIC against the officers of FNLIC, the Thunor Trust, Liberty National Securities and Martin Frankel. Dale argues that as Liquidator of the estate of FNLIC, and pursuant to Miss.Code Ann. § 83-24-41, he is vested with the exclusive power to "exercise and enforce all the rights, remedies and powers of any creditor ...." Miss.Code Ann. § 83-24-41(u). Dale argues that the damages claims of Plaintiffs against all other defendants, except Defendant Sizemore, fall under the purview of this exclusive power. The Court disagrees.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

The Court finds that the damages claims of Plaintiffs are based on specific instances of alleged tortious conduct toward Plaintiffs. Plaintiffs do not seek redress for wrongs suffered equally by all creditors of FNLIC. Therefore, they are not causes of action vested in Defendant Dale. The Court thus denies Defendant Dale's Motion to Dismiss on this ground.

B. The Motions of Defendants Hackney, Thunor Trust and Willis to Dismiss

Defendants John A. Hackney, Thunor Trust and Wade A. Willis each move this court to dismiss the claims against them for lack of personal jurisdiction. For the reasons below, the Court finds that the motions are well taken and are granted.

1) Personal Jurisdiction Generally

For a federal court sitting in diversity, as this Court is in this case, the determination of whether personal jurisdiction exists over a non-resident defendant requires a two step inquiry: (1) whether the long-arm statute of the state in which the federal court sits grants the court jurisdiction, and (2) if so, whether that grant of jurisdiction comports with due process. *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997). Therefore, "[a] federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." *Id.*

*7 The Mississippi long-arm statute, Miss.Code Ann. § 13-3-57, states, in pertinent part, the following:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be ... subjected to the jurisdiction of the courts of this state.

A court may, therefore, exercise jurisdiction over a defendant under this statute only if one of three situations exist: (1) the defendant entered into a contract with a Mississippi resident, (2) the defendant committed at least some element of a tort in Mississippi, or (3) the defendant did business in Mississippi. The jurisdiction conferred by the Mississippi long-arm statute is not coextensive with the limits of due process. *Allred,* 117 F.3d at 282. This means that a court must first analyze the scope of jurisdiction provided by the statute before an analysis of due process requirements is required. Because the Court finds that the Mississippi long-arm statute does not give the Court jurisdiction over Defendants Hackney, Thunor Trust and Willis, there is no need to discuss due process requirements for personal jurisdiction.

2) No Jurisdiction Over Defendants Hackney and Willis

Defendants Hackney and Willis are both residents of Tennessee. Hackney is the trustee of Thunor Trust, which owns all of the shares in FNLIC. Hackney is also a director of FNLIC. Willis is a director of FNLIC. Plaintiffs allege that Hackney and Willis, as directors of FNLIC committed the torts of negligent misrepresentation, negligent entrustment, and conversion of the $14 million fund. Plaintiffs also allege that Hackney, as trustee of Thunor trust interfered with the contractual rights of Plaintiffs.

The Court first notes that "[t]he existence of jurisdiction, pursuant to the Mississippi long-arm statute, over a corporate defendant does not, in and of itself, confer jurisdiction over the corporation's officers." *Moore Video Distributors v. Quest Entertainment,* 823 F.Supp. 1332, 1340 (S.D.Miss.1993). There must exist independent grounds for exercising jurisdiction over the officers of a corporation. *Id.* Therefore, the Court must determine whether the Mississippi long-arm statute establishes jurisdiction over Hackney and Willis individually and independently. Of course, it is well settled that " 'when a corporate officer directly participates in or authorizes the commission of a tort, even on behalf of the corporation, he may be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

held personally liable." ' *Sourth Cent. Ins. Corp. v. Balboa Ins. Co.,* 747 F.Supp. 1213, 1215 (N.D.Miss.1990) (quoting *Mississippi Printing Co. v. Maris, West and Baker, Inc.,* 492 So.2d 977, 978 (Miss.1986)).

**\*8** Defendants first argue that the long-arm statute does not confer jurisdiction over them in this case because the Plaintiffs themselves are corporations which, although they have qualified to do business in Mississippi, are not residents of Mississippi. Plaintiff Peoples Benefit Life Insurance Company is a Missouri corporation. Plaintiff Veterans Life Insurance Company is an Illinois corporation. However, the argument of Defendants is dispatched by *C.H. Leavell & Co. v. Doster,* 211 So.2d 813 (Miss.1968), in which the Supreme Court of Mississippi held that a foreign corporation qualified to do business in Mississippi was a resident of Mississippi for purposes of applying the long-arm statute, at least with respect to the tort prong of the statute. *Id.* at 814. [FN9] Therefore, at least with respect to the tort prong of the long-arm statute, Plaintiffs are residents of Mississippi for purposes of applying the statute to Hackney and Willis.

> FN9. There is some question whether Plaintiffs are residents for purposes of applying the contract and "doing business" prongs of the Mississippi long-arm statute. *See Smith v. DeWalt Prod. Corp.,* 743 F.2d 277, 279 (5th Cir.1984) (holding that the "doing business" prong of the statute is not available to nonresidents). However, the Court need not address this issue because Plaintiffs have not alleged that Defendants Hackney and Willis conducted any business or entered into any contracts in their individual capacity in Mississippi, and those prongs of the statute, therefore, do not apply. *See infra.*

However, the allegations in the complaint, which the Court accepts as true for purposes of the present motions to dismiss, [FN10] do not establish this Court's jurisdiction over Hackney and Willis under any of the three prongs of the Mississippi long-arm statute. First, the complaint fails to allege that either

Hackney or Willis personally entered into a contract with Plaintiffs. The only contractual relationship referred to in the complaint is the one between Plaintiffs and FNLIC. Any participation that Hackney or Willis had in that relationship was on behalf of, and in their capacities as corporate officers of, FNLIC. Second, the complaint fails to allege that either Hackney or Willis personally conducted business in Mississippi. Any business that Hackney or Willis may have conducted in Mississippi was on behalf of, and in their capacities as corporate officers of, FNLIC.

> FN10. *See Latshaw v. Johnston,* 167 F.3d 208(5th Cir.1999).

The application of the tort prong of the statute warrants a little more discussion. For this prong of the long-arm statute to confer jurisdiction, the defendant must commit a tort in whole or part within the geographical boundaries of Mississippi. However, the rule is well settled that "with respect to Mississippi's long-arm statute[,] a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury." *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 619 (5th Cir.1989). Of the various tort claims Plaintiffs make against Hackney and Willis, as well as other named defendants, not a single one is alleged to have occurred in Mississippi. In fact, the allegations of the complaint, particularly with respect to misrepresentation and conversion, fail to allege where the torts occurred. Not even the damages element of any of the torts alleged in the complaint could have occurred in Mississippi. The only damage alleged by Plaintiffs is loss of the $14 million fund. However, according to the discovery disclosures provided by Plaintiffs, the fund was transferred from a bank in Maryland to a bank in Tennessee. Therefore, the $14 million fund was never in Mississippi, and the damage incurred by Plaintiffs necessarily occurred outside Mississippi. The damage that Plaintiffs assert occurred in Mississippi, that is the economic effect that the loss of the fund has had, or may have, on Mississippi policyholders and Plaintiffs, amounts only to the "economic consequences" of the loss of the fund, which is not sufficient for the long-arm statute to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 33545578 (S.D.Miss.)

**(Cite as: 1999 WL 33545578 (S.D.Miss.))**

apply. *Cycles, Ltd.,* 889 F.2d at 619. For these reasons, the Court finds that the Mississippi long-arm statute does not give this Court jurisdiction over Defendants Hackney and Willis, and their motions to dismiss for lack of personal jurisdiction are hereby granted.

3) No Jurisdiction Over Defendant Thunor Trust

**\*9** The analysis of this Court's jurisdiction over Thunor Trust differs from the analysis above in only one respect. Thunor Trust is the sole shareholder of FNLIC. If the corporate veil of FNLIC could be pierced, which the Court finds may not be done in this case, Thunor Trust would be held accountable on the contract between Plaintiffs and FNLIC, thus giving the Court jurisdiction over Thunor Trust under the contract prong of the Mississippi long-arm statute. Otherwise, Plaintiffs have failed to allege that Thunor Trust independently committed a tort, or any element of a tort, in Mississippi. Plaintiffs also failed to allege that Thunor Trust has conducted any business in Mississippi. To the contrary, the complaint expressly alleges that Thunor Trust is a Tennessee corporation with its principal place of business in Tennessee.

Under Mississippi law, in order to pierce the veil of a corporation and impose personal liability on the shareholders, the plaintiff must show three things: (1) a frustration of the legitimate expectations of the plaintiff regarding the entity to whom he looked for contract performance; (2) a flagrant disregard for the corporate formalities by the principals of the corporation and; (3) some indication of fraud or equivalent malfeasance by the corporate principals. *Gray v. Edgewater Landing, Inc.,* 541 So.2d 1044, 1047 (Miss.1989). Plaintiffs have not alleged that the principals of FNLIC disregarded corporate formalities. In fact, not only have Plaintiffs not alleged that FNLIC is a sham corporation, they have *relied* upon the *validity* of the FNLIC corporate entity by alleging causes of action against FNLIC.

Paragraph 47 of the complaint, which alleges that Thunor Trust is a sham organization totally controlled by Martin Frankel, is the only allegation in the complaint that comes close to alleging that

any corporate veil should be pierced. However, this does not affect the analysis above because that allegation would only allow the Court to hold Frankel liable on a claim against Thunor Trust. The FNLIC corporate veil is still intact. For these reasons, the Court finds that the motion to dismiss of Thunor Trust is well taken and is hereby granted.

III. Conclusion
For the foregoing reasons:

IT IS THEREFORE ORDERED that the motions to dismiss of Defendants Dale [13-1] and Sizemore [28-1] are granted to the extent that the declaratory judgment claims of Plaintiffs contained in Paragraphs (A) and (D) of the Prayer for Relief of the Complaint are hereby dismissed.

IT IS THEREFORE FURTHER ORDERED that all proceedings before this Court with regard to this case are hereby stayed pending the outcome of the FNLIC and FALIC liquidation proceedings pending before state courts in Mississippi and Tennessee respectively.

IT IS THEREFORE FURTHER ORDERED that the motions to dismiss of Defendants Hackney [27-1], Thunor Trust [25-1], and Willis [37-1] are hereby granted.

**Motions, Pleadings and Filings (Back to top)**

• 3:99CV00537  (Docket)
                                        (Jul. 30, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11

Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

**c**
Not Reported in A.2d, 2000 WL 364199
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Chancery of Delaware.
THE PEPSI-COLA BOTTLING COMPANY OF
SALISBURY, MARYLAND, a Maryland
corporation, Plaintiff,
v.
Randall C. HANDY, Jr., Handy Realty, Inc., a
Delaware corporation, Willow Creek Estates, LLC,
a Delaware Limited Liability company, Michael
Ginsburg, and C. Larry McKinley, Defendants.
**No. 1973-S.**

March 15, 2000.

Eric C. Howard , Esquire, Wilson, Halbrook &
Bayard , Georgetown, Delaware; A. Gillis Allen, II
, Esquire, Allen & Associates, Chtd., Salisbury,
Maryland; Attorneys for Plaintiff.
Michael J. Goodrick , Esquire, Theisen, Lank,
Mulford & Goldberg, P.A., Wilmington, Delaware;
Attorney for Defendants C. Larry McKinley,
Michael Ginsburg and Willow Creek Estates, LLC.
J. Everett Moore , Esquire, Moore & Rutt, P.A.,
Georgetown, Delaware; Attorney for Defendants
Randall C. Handy, Jr. and Handy Realty, Inc.

MEMORANDUM OPINION

JACOBS, Vice Chancellor.
**\*1** This case arises out of the purchase by the
plaintiff, The Pepsi-Cola Bottling Company of
Salisbury, Maryland ("Pepsi"), from the defendants,
of a 66.19 acre parcel of undeveloped real property
in Delmar, Delaware. Certain defendants (the "
moving defendants") have moved to dismiss all five
counts of the complaint under Rule 12(b)(6), or
alternatively, to transfer the case to the Superior
Court under 10 *Del. C.* § 1902 on the ground that
this Court lacks subject matter jurisdiction.

For the reasons stated below, both motions will be
denied.

I. BACKGROUND FN1

> FN1. The facts narrated here are derived
> from the well-pleaded allegations of the
> complaint, including documents
> incorporated therein by reference. The
> only document incorporated into the
> complaint by reference is the Coastal
> Wetlands Report, described at pp. 2-3,
> *infra.*

The plaintiff, Pepsi, is a Maryland corporation that
bottles soft-drink beverages. Pepsi's principal place
of business is in Salisbury, Maryland.

The five named defendants are: (i) Handy Realty,
Inc. ("Handy Realty"), which is a Delaware
corporation engaged in the development, sale, and
brokering of real property in Delaware; (ii) Willow
Creek Estates, LLC ("Willow Creek"), which is a
Delaware limited liability company created on
August 18, 1997 to develop and sell real property in
Delaware; FN2 (iii) Randall C. Handy, Jr. ("Handy"
), who at all relevant times was, an officer, director,
and shareholder of Handy Realty and was also a
member and the manager of Willow Creek; and (iv)
Michael Ginsburg ("Ginsburg") and (v) C. Larry
McKinley ("McKinley"), both of whom were
members of Willow Creek.

> FN2. Willow Creek is the only
> non-moving defendant.

On April 5, 1997, Handy, acting on his own behalf
and the behalf of Ginsburg and McKinley,
contracted to purchase a 66.13 acre parcel of
undeveloped real property (the "Property") FN3
for development into a residential subdivision

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 2

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

called "Willow Creek Estates." Before settling on the contract to purchase, Handy began taking steps to develop the Property into a residential subdivision. Shortly after he began development planning, Handy learned, from a study by Coastal & Estuarine Research, Inc. ("Coastal"), that the Property contained wetlands-a fact that adversely affected the Property's value and development potential.

> FN3. The Property is located on the east side of State Route 68 in Delmar, Delaware.

Handy had retained Coastal to perform a wetlands jurisdictional determination on the Property. From and after April 21, 1997, Coastal performed site tests that revealed field evidence of wetlands. A later report by Coastal (the "Coastal Wetlands Report") detailed Coastal's examination of the Property, including its determination that a portion of the land contained federally protected wetlands or waters. The Coastal Wetlands Report established preliminary wetlands boundary lines on the Property. FN4 It also included photographs that showed various specific wetlands areas on the Property, and a map that showed where the preliminary wetlands boundary lines had been established.

> FN4. The Coastal Wetlands Report relevantly states:
> "A preliminary 404 (Federal) wetland line has been established and flagged on site. Wetlands on site consist of two large areas in the rear (eastern), cut-over section of the site...; two wet swales (depressions) located between rows or loblolly pines...; and a shallow ditch in the center of the wooded area.... The larger drainage ditches have been flagged as waters of the U.S." (Exhibit C)

After learning that the Property contained wetlands, the defendants abandoned their plans to develop the Property, and instead opted to sell it. To advertise and promote that sale, a Handy Realty sign was placed on the Property. The sign announced that the Property had "Excellent Development Potential," and remained on the Property at all relevant times.

*2 In June, 1997, Pepsi became interested in the Property as a possible site to construct a new soft-drink bottling facility. Unaware of the existence of wetlands, Pepsi acquired an option to purchase the Property from Handy on August 5, 1997. At that time, Willow Creek had not yet been formed and Handy had not yet purchased the Property. Handy, Ginsburg, and McKinley formed the LLC, Willow Creek, on August 18, 1997.

During the option period, Pepsi hired soil engineering consultant John D. Hynes & Associates, Inc. to conduct a Phase I environmental investigation of the Property. As part of its investigation the Hynes firm interviewed Handy and sent him an "Owner/Operator Questionnaire." In his written answers to specific questions about the Property, Handy did not disclose on that questionnaire that the Property contained wetlands or that Coastal had already performed a written preliminary wetlands determination the month before. Moreover, in his response to the question whether any analytical tests or inspections had previously been performed on the Property, Handy falsely represented that no "analytical tests or inspections [had] been conducted on the groundwater, surface water, or soil of the Property." By that point Willow Creek had been formed, and Handy was acting as the agent on behalf of all defendants in their efforts to sell the Property.

On September 4, 1997, the defendants, through Willow Creek, settled on and took title to the Property for a purchase price of $174,000. Four months later, the Defendants, again through Willow Creek, sold the Property to Pepsi for $455,000. Willow Creek's members-Handy, Ginsberg, and McKinley-realized a profit of $281,000 on the sale.

After Pepsi learned that the Property contained wetlands, it brought this action for rescission and damages.

## II. THE CONTENTIONS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 3

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

Pepsi's complaint asserts five counts. Those counts allege: (1) violation of the Consumer Fraud Act, (2) common law fraud, (3) equitable fraud, (4) breach of express warranty, and (5) unjust enrichment. Although the counts plead different legal theories, all are grounded upon the same essential pleaded facts, namely that (i) neither Handy nor any other defendant told Pepsi that the Property contained wetlands, and (ii) the defendants knew that if Pepsi had been told about the wetlands, Pepsi would not have paid $455,000 for the Property. The prayer for relief, which also is common to all Counts, seeks either "resci[ssion of] Plaintiff's purchase of the Property and [an] order [for] the full return and refund of the purchase price, together with such other and further relief as required to reimburse Pepsi for all costs, damages and losses incurred as the result of its purchase of the Property," *or*, alternatively, "monetary damages suffered as a result of Defendants' actions." FN5

FN5. Complaint at 15.

The defendants have moved to dismiss all five counts under Court of Chancery Rule 12(b)(6) , or, in the alternative, to transfer the case to the Superior Court under 10 *Del. C.* § 1902. The motion to dismiss does not attack the sufficiency of the claims. Rather, it is grounded upon the argument that even if the claims are legally sufficient, no relief can be granted because there can be no recovery against individual members of the LLC in this particular case.

*3 In the alternative, the moving defendants ask the Court to transfer this case to the Superior Court, because an adequate remedy at law is available, and Pepsi asserts no claims arising in equity and seeks no purely equitable remedies. Moreover, the defendants argue, they have a constitutional right to a trial by jury, which is available only at law.

These arguments are now considered.

### III. ANALYSIS

#### A. The Motion to Dismiss

In considering a motion to dismiss under Court of Chancery Rule 12(b)(6), this Court will assume the truth of all well-pleaded allegations, giving the plaintiff the benefit of all reasonable inferences that can be drawn from the complaint. FN6 The Court may dismiss the complaint if there are no facts in the pleadings from which the Court could infer that the plaintiff could prevail. FN7

> FN6. *Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1213-14 (1996).

> FN7. *In re USACAFES, L.P. Litig.*, Del. Ch., 600 A.2d 43, 47 (1991).

The essence of the moving defendants' argument is that the plaintiff cannot recover directly against the movants as LLC members, because none of the movants ever directly held legal or equitable title to the Property. The defendants argue that a plaintiff can recover distributions made to members of an LLC only if (i) the plaintiff pierces the LLC's corporate veil, or (ii) 6 *Del. C.* § 18-607 is applicable. Section 18-607(b) provides that if an LLC member receives a distribution that results in the LLC becoming insolvent, and knew at that time that the LLC would become insolvent as a result of the distribution, the LLC member is liable to the LLC for the amount of the distribution. The defendants argue that because neither of these two circumstances is alleged, the complaint must be dismissed as against Ginsburg, McKinley, and Handy, who are being sued in their capacity as members of Willow Creek.

Any analysis of the defendants' position begins with 6 *Del. C.* § 18-303(a), which codifies the liability of LLC members to third parties. That statute provides:

> Except as otherwise provided by this chapter, the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, *and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 4

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

*liability company.* FN8

> FN8. 6 *Del. C.* § 18-303(a)(emphasis
> added). Section 18-202(b) permits an LLC
> member or manager to agree, in the LLC
> agreement or other contract, to become
> obligated personally for any debt,
> obligation, or liability of the LLC.

Section 18-303(a) protects members and managers
of an LLC against liability for any obligations of the
LLC solely by reason of being or acting as LLC
members or managers. But, its phrase, "solely by
reason of being a member..." does imply that there
are situations where LLC members and managers
would not be shielded by this provision. As two
leading Delaware corporation law treatise
commentators have observed:

> The word "solely," which is used in Section
> 18-303, indicates that a member or manager will
> not be liable for the debts, obligations, or
> liabilities of a Delaware LLC only by reason of
> being a member or manager; however, other acts
> or events could result in the imposition of liability
> upon or assumption of liability by a member or
> manager." FN9

> FN9. R. Franklin Balotti and Jesse A.
> Finkelstein, *The Delaware Law of
> Corporations & Business Organizations*
> 20-6 (3rd ed.1998).

**\*4** The issue presented is whether the defendants
here are being sued "solely by reason of being a
member" of Willow Creek (the LLC) where the
claim is based upon fraudulent acts committed by
the LLC members before the LLC was formed and
took title to the Property. To express it in terms of
the facts at bar, if a person makes material
misrepresentations to induce a purchaser to
purchase a parcel of land at a price far above fair
market value, and thereafter forms an LLC to
purchase and hold the land, can that person later
claim that his status as an LLC member protects
him from liability to the purchaser under § 18-303?
I think not.

In this case the complaint alleges that the sequence
of relevant events is as follows:

- *April 5, 1997*-Handy contracts to purchase the
Property with intent of forming an LLC with
Ginsburg and McKinley for the purpose of
building a residential community on the Property.
- *April 21, 1997*-Coastal provides conclusive
evidence that the Property contains wetlands.
Handy, Ginsburg, and McKinley abandon
construction plans and instead decide to sell the
Property.
- *August 5, 1997*-Pepsi and Handy negotiate an
option to purchase the Property. Pepsi discloses
its intent to build a bottling facility on the
Property and Handy has not disclosed the
existence of wetlands.
- *August 18, 1997*-Defendants Handy, Ginsburg,
and McKinley form Willow Creek Estates, LLC.
- *During option period*-Pepsi hires Hynes to do
Phase I, during which time Hynes specifically
asks Handy about the existence of wetlands, to
which Handy responds in the negative.
- *September 4, 1997*-The defendants, through
Willow Creek, settle and take title to the Property.
- *Four months later*-The defendants, through
Willow Creek, sell the unimproved Property to
Pepsi for over twice the amount of their purchase
price, and do not disclose the existence of
wetlands.

Because the facts alleged in the complaint establish
that the LLC was not formed (and the Property was
not acquired by the LLC) until after the allegedly
critical wrongful acts had been committed, it
follows that the defendants could not have been
acting "*solely* as members of the LLC when they
committed those acts." FN10 Therefore, the
defendants are not protected by § 18-303.

> FN10. The complaint alleges specifically
> that at least one of the members (Handy)
> had direct knowledge of the Coastal report,
> and made fraudulent represents to sell the
> Property, before the formation of Willow
> Creek. It is also inferable from the
> complaint that Ginsburg and McKinley
> had at least constructive knowledge that
> the Property contained wetlands and that

Not Reported in A.2d                                                                                                    Page 5

Not Reported in A.2d, 2000 WL 364199
(Cite as: Not Reported in A.2d)

the LLC would attempt to sell the Property without disclosing that fact.

The defendants' next argue that they are protected by 6 *Del. C.* § 18-607(a), which provides:
A limited liability company shall not make a distribution to a member to the extent that at the time of the distribution, after giving effect to the distribution, all liabilities of the limited liability company, other than liabilities to members on account of their limited liability company interests and liabilities for which the recourse of creditors is limited to specified property of the limited liability company, exceed the fair value of the assets of the limited liability company, except that the fair value of property that is subject to a liability for which the recourse of creditors is limited shall be included in the assets of the limited liability company only to the extent that the fair value of that property exceeds that liability.

**\*5** The movants interpret this language as limiting the right of third parties to bring direct claims against LLC members to cases where the LLC makes a distribution to LLC members who know, at the time, that the distribution would leave the LLC insolvent. Section 12-607(b) provides, in that circumstance, that an LLC member who knew of that fact at the time it received the distribution is liable to the LLC for the amount of the distribution. FN11 Here, the defendants contend that (i) § 18-607 is the only provision that allows a third party to recover from an LLC member without piercing the LLC's corporate veil, and (ii) because the complaint does not allege a claim under § 18-607, they cannot be held liable.

> FN11. § 18-607(b) provides:
> A member who receives a distribution in violation of subsection (a) of this section, and who knew at the time of the distribution that the distribution violated subsection (a) of this section, shall be liable to a limited liability company for the amount of the distribution. A member who receives a distribution in violation of subsection (a) of this section, and who did

not know at the time of the distribution that the distribution violated subsection (a) of this section, shall not be liable for the amount of the distribution. Subject to subsection (c) of this section, this subsection shall not affect any obligation or liability of a member under an agreement or other applicable law for the amount of the distribution.

Section 18-607 prohibits the stripping of corporate assets so as to render an LLC insolvent, and creates a corporate cause of action against LLC members who improperly receive a distribution of those assets. The defendants, however, give a far more expansive reading to § 18-607 than its language warrants. They claim that the statute shields LLC members against *any* other claims against them, *i.e.,* against *all* claims except those that arise under § 18-607. Nothing in § 18-607 so provides. Moreover, and as previously discussed, under § 18-303, a third party may recover from an LLC member on claims that do not arise "*solely* by reason of being a member or acting as a manager of the limited liability company."

Because all five counts of the complaint are based on conduct that occurred before the LLC was formed, those claims are not barred by § 18-303. Under the Limited Liability Company Act, no protection against liability is afforded to LLC members who (as here) are sued in capacities other than as members of the LLC. Accordingly, there is no reason to address the alternative argument that the corporate veil of the LLC must be pierced in order to state a cognizable claim.

For the above reasons, the motion to dismiss Pepsi's claims will be denied.

### B. The Motion To Transfer

The moving defendants next contend that even if the Rule 12(b)(6) motion is denied, this action must be transferred to the Superior Court under 10 *Del. C.* § 1902, because this Court lacks subject matter jurisdiction over the claims being asserted.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

10 *Del. C.* § 341 provides that, "The Court of Chancery shall have jurisdiction to hear and determine all matters and causes in equity." 10 *Del. C.* § 342 provides that, "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute before any other court of jurisdiction of the State." Thus, implicit in § 342 is that the Court of Chancery has concurrent jurisdiction over cases where the remedy available at law is insufficient. FN12

> FN12. *Harman v. Masoneilan International, Inc.,* Del.Supr., 442 A.2d 487, 497 (1982).

The defendants' subject matter jurisdiction argument is that the plaintiff does not assert any purely equitable claims or seek any purely equitable remedies, and, moreover, that an adequate remedy at law is available. The defendants further contend that they have a constitutional right to a trial by jury, which is not available in this Court.

*6 The argument lacks merit because its premise is flawed. Two of the five claims, Count III and Count V, invoke this Court's exclusive jurisdiction under § 341. Because the remaining claims arise out of the same set of facts as Counts III and V, this Court has discretion, under the "clean up doctrine," to exercise subject matter jurisdiction over those claims.

Count V, which alleges unjust enrichment, constitutes an independent basis for this Court's exercise of subject matter jurisdiction. Unjust enrichment is defined as "the unjust retention... of money or property of another against the fundamental principles of justice or equity and good conscience." FN13 Delaware case law recognizes this Court's power to adjudicate claims of unjust enrichment that require restitution when one person is unjustly enriched at the expense of another. FN14 As the Delaware Supreme Court has stated:

> FN13. *Fleer Corp. v. Topps Chewing Gum, Inc.,* Del.Supr., 539 A.2d 1060,

> 1062 (1988).

> FN14. *See Jackson Nat'l Life Ins. Co. v. Kennedy,* Del. Ch., 741 A.2d 377 (1999) ; *Topps v. Fleer,* Del. Ch., C.A. No. 6781, Harnett, V.C. (Sept. 1, 1983), *aff'd,* Del.Supr., 539 A.2d 1060 (1988) ; *Nash v. Schock,* Del. Ch., C.A. No. 14721, Steele, V.C. (April 8, 1997); *Krueger v. Cedars Academy,* Del. Ch., C.A. No. 14726, Jacobs, V.C. (April 26, 1996); *Taylor v. Truitt,* Del. Ch., C.A. No. 1300, Hartnett, V.C. (Jan. 23, 1990); *Balin v. Amerimar Realty Co.,* Del. Ch., C.A. No. 12896, Jacobs, V.C. (Dec. 23, 1993); *Hills Stores Co. v. Bozic,* Del. Ch., C.A. Nos. 14527, 14460, and 14787, Balick, V.C. (Mar. 25, 1997); *Smith v. Smitty McGee's, Inc.,* Del. Ch., C.A. No. 15668, Steele, V.C. (May 8, 1998); *Cairnes v. Gelmon,* Del. Ch., C.A. No. 16062, Jacobs, V.C. (May 21, 1998).

[A] right of recovery under the doctrine of unjust enrichment is essentially *equitable,* its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. A person who has been unjustly enriched at the expense of another is required to make restitution to the other. FN15

> FN15. *Fleer,* Del.Supr., 539 A.2d at 1062 (citations omitted) (emphasis added); *Schock v. Nash,* Del.Supr., 732 A.2d 217, 232 (1999).

This Court also has held that a claim for unjust enrichment is equitable and confers subject matter jurisdiction upon this Court. FN16 Thus, this Court has subject matter jurisdiction over Pepsi's claim in Count V for unjust enrichment.

> FN16. *Krueger v. Cedars Academy,* Del. Ch., C.A. No. 14726, Jacobs, V.C. (April 26, 1996).

Count III, which alleges equitable fraud, is also a

Not Reported in A.2d

Page 7

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**

claim that may be pursued in this Court. In *Snyder v. Butcher & Co.,* the Superior Court, in denying a motion to dismiss for lack of subject matter jurisdiction, held that "[i]n no event may the equitable [fraud] theory be pursued in the legal forum." The *Snyder* Court found that because a claim for equitable fraud has elements different from a claim for common law fraud, an equitable fraud claim may proceed only in this Court. FN17 Therefore, this Court also has subject matter jurisdiction over Count III.

> FN17. The Court stated that "the distinction between fraud at law and fraud in equity is the legal requirement of scienter, which is not present in the equitable form of the claim." *Snyder v. Butcher,* Del.Super., C.A. No. 91C-04-0289, Goldstein, J., Mem. Op. at 3 (Sept. 15, 1992).

The defendants respond that because the only relief that plaintiff seeks is money damages, these counts can be adequately adjudicated at law. That is not correct, for two reasons. First, Pepsi seeks, in addition to the recovery of its purchase money, an accounting of the profits and the imposition of a constructive trust on those profits. Second, even if Pepsi were seeking only money damages, that would not oust this Court of subject matter jurisdiction, because "...equitable jurisdiction will also lie where monetary damages are wholly adequate if the claim or theory of prosecution itself is not legal but equitable in nature." FN18 Here, two of the five counts are equitable in nature.

> FN18. *Harman,* 442 A.2d at 498; *accord, Snyder v. Butcher,* Del.Super., C.A. No. 91-C-04-0289, Goldstein, J., Memo Op. at 7 (Sept. 15, 1992) (Stating that, "[t]he contention that Plaintiffs seek only monetary and therefore only legal damages is inapposite. Where the theory of wrong is purely equitable, the relief therefrom is necessarily equitable as well. In other words, there is no such thing as legal damages for a purely equitable claim; and

monetary damages are not inherently legal.")

The remaining issue is whether this Court should assert jurisdiction over the remaining purely (legal) counts, even though those counts could independently be maintained in a court of law. It is well-established that, "where a party properly invokes this Court's jurisdiction by virtue of an equitable claim, this Court may hear and decide the remaining legal claims as well." FN19

> FN19. *Cranston v. Capano Development,* Del. Ch., Berger, V.C. (Oct. 6, 1986) *see also Park Oil. Inc. v. Getty Refining and Marketing Co.,* Del.Supr., 407 A.2d 533, 535 (1979) ("Under settled principles of equity jurisprudence, once equity jurisdiction has attached, as it did here, the Court properly proceeded to deal with the whole matter.")

**\*7** The policy considerations that favor this Court hearing all the claims include the need to resolve common factual issues, to avoid multiplicity of suits, to promote judicial efficiency, do full justice and avoid expense, and to afford complete relief in one action. FN20 Here, the parties, claims, facts, issues, witnesses, evidence and remedies that are "so intertwined that it is undesirable or impossible to sever them." FN21 Three of the moving defendants are the individual members of Willow Creek (the only non-moving defendant), and the fourth is the defendants' real estate broker. All moving defendants will be engaged both as principals and as witnesses in any trial involving Willow Creek. The case involves a single parcel of real property and a single course of dealing among all the parties. Finally, there is a common prayer for relief. Having considered these factors, I conclude that to transfer the remaining (legal) counts would require multiple trials in two courts, which would lead to unnecessary and unreasonable waste, and would unnecessarily burden the resources of both the parties and the judiciary.

> FN20. *Getty Refining and Marketing Co.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                          Page 8

Not Reported in A.2d, 2000 WL 364199
**(Cite as: Not Reported in A.2d)**


> *v. Park Oil, Inc.,* Del. Ch., 385 A.2d 147,
> 150 (1978).

> FN21. *Id.*

Lastly, the moving defendants contend that they will
be deprived of their Constitutional right to a trial by
jury if the claims against them are not transferred to
a court of law . FN22 But, defendants are *not*
entitled to a Superior Court jury trial of claims that
are cognizable in this Court. "[T]he right to a jury
trial... applies to an action at law; it does not apply
in an equity suit." FN23


> FN22. *See* U.S. Constitution Amendment
> VII ; 1897 Delaware Constitution, Article
> I, Section 4.

> FN23. *Park Oil,* 407 A.2d at 535

For these reasons, the Court will entertain all counts
of the complaint, and declines to transfer the purely
legal counts to the Superior Court.


## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss
and the motion to transfer the case to the Superior
Court are denied. IT IS SO ORDERED.

Del.Ch.,2000.
Pepsi-Cola Bot. Co. of Salisbury, Md. v. Handy
Not Reported in A.2d, 2000 WL 364199

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12

Westlaw.

Slip Copy

Page 1

2005 WL 400198 (D.Del.)

**(Cite as: 2005 WL 400198 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
SHAMROCK HOLDINGS OF CALIFORNIA,
INC., Shamrock Capital Advisors, Inc., Eugene
I. Krieger, George J. Buchler and Bruce J. Stein,
Plaintiffs,
v.
Avie ARENSON, Selk, LLC and Laurel Equity
Group, LLC, Defendants.
**No. Civ. 04-1339-SLR.**

Jan. 27, 2005.
S. Mark Hurd, Morris, Nichols, Arsht & Tunnell,
Wilmington, DE, for Plaintiffs.

Sean J. Bellew, Cozen & O'Connor, Wilmington,
DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On September 13, 2004, plaintiffs Shamrock
Holdings of California, ("Shamrock"),
Shamrock Capital Advisors, Inc. ("SCA"), Eugene
I. Krieger, ("Krieger"), George J. Buchler
("Buchler") and Bruce J. Stein ("Stein")
commenced this action against defendants, Avie
Arenson ("Arenson"), SELK, LLC ("SELK") and
Laurel Equity Group, LLC ("Laurel"), in the
Chancery Court of Delaware seeking declaratory
relief pursuant to 10 Del. C. §§ 6501 *et seq.* (2004).
(D.I. 16 at 2) On October 6, 2004, defendants
removed this action from the Chancery Court to this
court. (D.I.1) After removing this case, defendants

filed separate motions to dismiss. (D.I.3, 4) On
October 22, 2004, the parties stipulated that the
motions to dismiss would be stayed until the
resolution of plaintiffs' motion to remand, filed on
November 5, 2004. (D.I.6, 15) Pending before the
court is plaintiffs' motion to remand.

II. BACKGROUND

Defendants were investors in ALH Holdings, Inc.
[FN1] ("ALH"), a limited liability company
organized in 1998 under the laws of Delaware to
engage in home-building. (D.I. 20, Ex. A at 1)
Ultimately, ALH was an unsuccessful venture, and
investors lost their investments. (*Id.*) In response to
their losses, defendants threatened to sue plaintiffs
for breach of fiduciary duty, self-interest and
wrongful conduct. (*Id.* at 3) Defendants asserted
that plaintiffs owed them "millions of dollars" in
order to make them whole again. (*Id.*)

> FN1. As owner of Arenson Holdings and
> D.A. Gardens, defendant Arenson invested
> $1.4 million. Both Arenson Holdings and
> D.A. Gardens are class B stock holders.
> (D.I. 20, Ex. A at 4) SELK, LLC, invested
> approximately $2.9 million and was a
> Class B member. *Id.* Laurel invested $2.9
> million and was also a class B member.
> Plaintiff Shamrock invested $9.1 million in
> ALH. Shamrock holds about 62% of the
> Class A membership interest and about
> 38% of ALH. (D.I. 20, Ex. A at 3)

A. Citizenship of Parties

Plaintiffs Krieger, Buchler and Stein are all citizens
of California. (D.I. 20 at ¶ 14) All three were
employees of Shamrock, served on ALH's
supervisory board and performed "substantial
services for SCA." (*Id.*)

Buchler and Krieger were the supervisory board

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

2005 WL 400198 (D.Del.)

**(Cite as: 2005 WL 400198 (D.Del.))**

representatives for the Class A members of ALH. ( *Id.*) The class A members were citizens of Arizona, California, Colorado and Nevada. (*Id.* at ¶ 15)

Stein represented the class D members on the supervisory board. The only class D member was a Delaware limited liability company, Lion ALH Capital LLC. The members of this limited liability company were citizens of Delaware and New York.

Plaintiff Shamrock is a corporation organized under the laws of California with its principal place of business in California. (D.I. 20 at ¶ 13) Plaintiff SCA is a Delaware corporation with its principal place of business in California. (*Id.*)

Defendant Arenson is a citizen of Israel and was the Class B representative on ALH's supervisory board. (D.I. 18 at 13) The class B members were A. Arenson Holdings, Ltd., D.A. Gardens, Ltd., J12ALH, Associates LLC and defendants SELK and Laurel. (D.I. 20, Ex. B at Ex. B) A. Arenson Holdings, Ltd. is a Israeli corporation with its principal place of business in Israel. (D.I. 24 at 10) D.A. Gardens, Ltd., is a Panamanian corporation with its principal place of business in Panama. (*Id.*) J12ALH is a Delaware LLC whose members are Erica Jesselson, a citizen of New York, and Jays Twelve, LLC. (*Id.*) The members of Jays Twelve, LLC are all New York citizens. (*Id.*)

*2 Defendant SELK is a limited liability company formed under the laws of Delaware. (D.I. 20, Ex. A at 5) Its members are Shalom Lamm, a resident of New York, and NACA Holding, Inc. ("NACA"), a British Virgin Islands corporation with, defendants allege, a principal place of business in Tortola, British Virgin Islands. (D.I. 24 at 11) NACA, however, cannot conduct business with residents of the British Virgin Islands or have any interest in real property in the British Virgin Islands other than a lease for business purposes. (D.I. 28 at Ex. B)

Defendant Laurel is a Delaware limited liability company; its members are Mark Frankel, Chesky Frankel and Sallervale Company. (*Id.*) Mark Frankel is a citizen of New Jersey, Chesky Frankel is a citizen of New York and Sallervale Company is a Bahamian corporation with, defendants allege, a principal place of business in Nassau, Bahamas. (*Id.*) The Sallervale Company, however, cannot conduct business with a Bahamian resident, nor own an interest in property greater than a lease for business purposes. (D.I. 28 at Ex. A)

B. Content of the Removal Notice

Paragraphs 2-4 of the removal notice identify the dates at which the defendants were served with plaintiffs' complaint. The notice states that the "matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because [p]laintiffs allege in paragraph 6 of this [d]eclaratory [a]ction that [d]efendants 'have demanded millions of dollars." ' (D.I. 20, Ex C at 2) The notice details what it believes to be the citizenship of the plaintiffs. (*Id.*) It states the citizenship of the members of each of defendant limited liability companies, but not who the members are. [FN2] For example, the notice states "[SELK] was, and still is a limited liability corporation with its members being citizens of New York and the British Virgin Islands." (*Id.*) Finally, the notice states that it was made within 30 days after the first defendant received process. (*Id.* at 3)

> FN2. In the notice, defendants stated the Laurel members were citizens of New Jersey, New York and Belgium, but in their answer to plaintiffs' motion for remand, the defendants state that the members are citizens of New Jersey, New York and the Bahamas. (D.I. 20, Ex. C at 3; D.I. 28, Ex. B)

III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a) (2004). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. *Shamrock Oil & Gaz Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 400198 (D.Del.)

**(Cite as: 2005 WL 400198 (D.Del.))**

Page 3

(2004). The party seeking removal bears the burden to establish federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.,* 809 F.2d 1006 (3d Cir.1987); *Zoren v. Genesis Engery, L.P.,* 195 F.Supp.2d 598, 602 (D.Del.2002) . In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein as true. *Id.*

IV. DISCUSSION

**\*3** Plaintiffs argue that this case was inappropriately removed from the Court of Chancery because there is no diversity of citizenship and because the Notice of Removal was inadequate. [FN3] (D.I.16)

> FN3. Plaintiffs argue that defendants SELK and Laurel should not be allowed to remove this case because they are Delaware citizens. If defendants are citizens of the state in which the action was brought, then the action cannot be removed to federal court. *See* 14B Charles Alan Wright et al., Federal Practice and Procedure § 3721 (3d ed.1998). As stated in Part IV.A.1, however, SELK and Laurel are not Delaware citizens.

A. Diversity of Citizenship

Plaintiffs argue that there is no diversity of citizenship because plaintiff SCA is a Delaware corporation, defendants SELK and Laurel are Delaware limited liability companies and defendant Arenson can be considered a Delaware citizen, as he represented Delaware residents on the ALH supervisory board. Plaintiffs also assert that plaintiff Stein is a New York resident because he represented New York residents on the ALH supervisory board, and defendants SELK and Laurel are New York residents because they have members who are New York residents. Defendants argue that the citizenship of a limited liability company is determined by the citizenship of its members, not by the states in which the limited

liability companies are formed; therefore, SELK and Laurel are not Delaware citizens. Defendants also assert that plaintiff Stein and defendant Arenson cannot be considered residents of Delaware and New York simply because they represented citizens of those states on the ALH board. Therefore, according to defendants, diversity of citizenship does exist.

1. Citizenship of Stein

Plaintiffs argue that the alleged wrongful actions taken by plaintiff Stein were taken in his representative capacity; thus, he should be considered a representative for jurisdictional purposes. Defendants argue that under the ALH Operating Agreement, plaintiff Stein can be independently liable for his actions and the complaint does not indicate he is suing defendants in a representative capacity; therefore, for jurisdictional purposes, only his individual citizenship should be considered.

It is axiomatic that a person who is a party to litigation is a citizen of the state of his/her domicile. Nevertheless, "a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity" and can be a citizen of the states in which the individuals he/she represents are citizens. *Alexander v. Todman,* 361 F.2d 744, 746 (3d Cir.1966).

Delaware law prohibits individual liability of members or managers of limited liability companies, to other members or managers, unless such liability is provided for in the operating agreement. *See* 6 Del. C. § 18-1101(d) (2004). Section 6.2(f) discusses the liability of representative board members and states:
   Neither the Manager nor any Representative or Deputy Representative shall be liable, responsible, or accountable in damages or otherwise to the Company or any of the Members for any failure to take any action or the taking of any action within the scope of authority conferred on it, him or her by this Agreement made in good faith, except that the Manager, Representative and Deputy Representatives shall be liable,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 4

2005 WL 400198 (D.Del.)

**(Cite as: 2005 WL 400198 (D.Del.))**

responsible and accountable for their own fraud, criminal action, bad faith or gross negligence. Nothing in this Section 6.2(f) shall be deemed to make the Manager or any Representative or Deputy Representative liable, responsible or accountable to any Person other than the Company or the Members.

**\*4** (D.I. 20, Ex. B at 27)

In this case, the Operating Agreement explicitly states that representatives can only be liable for their own actions. Therefore, defendants could only sue Stein in his individual capacity, and Stein would only have standing to bring a declaratory judgment action in his individual capacity. Under this analysis, Stein is a citizen of California for jurisdictional purposes.

2. Citizenship of SELK and Laurel

The citizenship of artificial entities, such as limited liability companies, has been considered by the Supreme Court and numerous appellate courts. In *Cardon v. Arkoma Assoc.*, 494 U.S. 185, 197, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), the Supreme Court declined to extend to partnerships its precedent and 28 U.S.C. § 1332(c), which provide that a corporation is a citizen of the state in which it was incorporated and the state where it has its principal place of business. The Court concluded that changing federal diversity jurisdiction was a Congressional responsibility and, unless Congress acted to include partnerships in the purview of § 1332(c), the citizenship of partnerships would depend on the citizenship of the partners.

This rationale applies equally to limited liability companies. In *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir.1998), the Seventh Circuit concluded that, "[g]iven the resemblance between an LLC and a limited partnership, and what seems to have crystalized as a principle that members of associations are citizens for diversity purposes unless Congress provides otherwise ... the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members." *Id.* at 731 (citing *Carden*, 150 F.3d 185 and *United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382

U.S. 145, 152-53, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)). *See also Rolling Green MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022 (11th Cir.2004) (finding that a LLC is a citizen of any state of which a member of the company is a citizen); *Belleville Catering Co. v. Champaign Mkt. Place, LLC*, 350 F.3d 691, 692 (7th Cir.2003) (holding that LLCs are not like corporations for jurisdictional purposes, and the citizenship of a LLC depends on the citizenship of its members); *Ketterson v. Wolf*, No. Civ.A. 99-689-JJF, 2001 WL 940909, at \*3 (D.Del. Aug.14, 2001) (concluding that a LLC is a citizen of the states in which its individual members are citizens). Therefore, without Congressional action redefining the citizenship of a limited liability company, this court declines to conclude that the citizenship of a limited liability company is determined by anything other than the citizenship of its members.

The citizenship of SELK and Laurel depends, therefore, on the citizenship of their respective corporate members. Their corporate members, Sallervale and NACA Holdings, are considered citizens of where they were incorporated and where their principal places of businesses are. *See* 28 U.S.C. § 1332(c)(1) (2004). The Third Circuit has stated that a principal place of business is determined by business activities, for example, "where the corporation 'conducts its affairs' " and not necessarily just " 'where ... final decisions are made on corporate policy." ' *Grand Union Supermkts., of the Virgin Is., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 411 (3d Cir.2003) (quoting *Kelly v. U.S. Steel Corp. .*, 284 F.2d 850, 854 (3d Cir.1960)).

**\*5** The evidence of record with respect to Sallervale and NACA Holdings is negligible. On the one hand, the record indicates that, although they are incorporated in the Bahamas and the British Virgin Islands, respectively, neither is permitted to conduct business with local residents or own an interest in local real estate. Defendants aver in a conclusory fashion that the principal places of business for Sallervale and NACA Holdings are the same as their places of incorporation. Defendants, however, fail to provide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

2005 WL 400198 (D.Del.)

**(Cite as: 2005 WL 400198 (D.Del.))**

any detail as to the corporations' business activities, for example, what business affairs are conducted and where, and where final decisions are made on corporate policy. It could be that these corporations conduct no business, but without any information in this regard, the court declines to accept defendants' averments carte blanche and find federal jurisdiction on this basis. Therefore, if defendants choose to, they may supplement the record as to these corporate entities. Otherwise, the court does not have a good faith basis upon which to find diversity of citizenship.

B. Adequacy of Defendants' Notice of Removal

Federal diversity jurisdiction requires that the amount in controversy be at least $75,000. *See* 28 U.S.C. § 1332(a) (2004). The Third Circuit uses the "plaintiff's-view rule" to determine the amount in controversy; thus, the amount in controversy is usually the amount sought by the plaintiff. *In re LifeUSA Holding, Inc.,* 242 F.3d 136, 143 (3d Cir.2001); *In re Corestates Trust Fee Litig.,* 39 F.3d 61, 64 (3d Cir.1994). Generally, this would mean that declaratory judgment actions could not be removed because plaintiffs in such actions do not ask for monetary sums. However, typically the amount in controversy can include the worth of the issue being litigated. *See Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 339-40, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Recently the Third Circuit considered the monetary amount of a threat to sue by defendants when determining the amount in controversy in a declaratory action. *See Liberty Mut. Fire Ins. Co. v. Yoder,* No. 03-3623, 2004 WL 2360987 (3d Cir. October 19, 2004). [FN4] In this case, defendants satisfied the notice requirement by quoting the complaint, which stated that defendants had threatened to sue plaintiffs for "millions of dollars." The court finds this allegation sufficient to pass muster under 28 U.S.C. § 1332(a).

> FN4. Although this case is not published and, therefore, not precedential, it serves as guidance regarding how the Third Circuit would apply the "plaintiff's-view rule" to a declaratory judgment action.

V. CONCLUSION

Therefore, at Wilmington this 27th day of January, 2005, having reviewed plaintiffs' motion to remand and defendants' responses thereto;

IT IS ORDERED that, on or before February 22, 2005, defendants may supplement the record with respect to Sallervale Company and NACA Holdings, Incorporated. NOTE: FAILURE TO TIMELY SUPPLEMENT WILL RESULT IN PLAINTIFFS' MOTION FOR REMAND (D.I.15) BEING GRANTED.

**Motions, Pleadings and Filings (Back to top)**

• 1:04CV01339  (Docket)

(Oct. 06, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CERTIFICATE OF SERVICE

I, Susan W. Waesco, hereby certify that on June 15th, 2005 I electronically filed **APPENDIX OF UNREPORTED CASES CITED IN PLAINTIFF'S OPENING BRIEF IN SUPPORT OF HIS MOTION TO REMAND**, with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Kevin F. Brady, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 1007 North Orange Street
Wilmington, Delaware 19801

I also certify that copies were caused to be served on June 15th, 2005 upon the following in the manner indicated:

**BY HAND**
Kevin F. Brady, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building, 1007 North Orange Street
Wilmington, Delaware 19801

/s/ Susan Wood Waesco
Susan Wood Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
swaesco@mnat.com
  Attorneys for Plaintiff