# TAB 1

LEXSEE 1997 DIST. LEXIS 22902

**ALLIEDSIGNAL, INC., Plaintiff, v. COOPER AUTOMOTIVE, INC., Defendant.**

**Civil Action No. 96-540 - SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*1997 U.S. Dist. LEXIS 22902*

**July 30, 1997, Decided**

**DISPOSITION:** [*1] Defendant's motion to transfer action (D.I. 45) denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff manufacturer filed suit against defendant company alleging that it had manufactured platinum-tipped spark plugs by using a process which infringed on the manufacturer's patent, and the company filed a motion to transfer venue.

**OVERVIEW:** The company sought a change of venue from its state of incorporation to the district in which allegedly infringing spark plugs were manufactured. The court, in denying the motion, held that the manufacturer's choice of venue was entitled to great deference, and that a defendant challenging venue in its state of incorporation had to establish a unique or unexpected burden. A defendant did not meet its burden when the reasons for transfer were in equilibrium, and convenience weighed in favor of the company only slightly.

**OUTCOME:** The court found that the company had not met its burden and denied the motion for change of venue.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Change of Venue Generally*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] *28 U.S.C.S. § 1404*(a) provides that for the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Civil Procedure > Venue > General Venue*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2] Because plaintiff's choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Plaintiff's choice of forum is paramount.

*Civil Procedure > Venue > General Venue*
*Civil Procedure > Venue > Forum Non Conveniens*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3] For a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. Absent some showing of a unique or unexpected burden, corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient. Technological advances have substantially reduced the burden of having to litigate in a distant forum. These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Civil Procedure > Venue > Change of Venue Generally*
*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4] When a defendant expresses legitimate reasons for transfer, they are not sufficient to carry its burden when all that is established is that the balance with regard to convenience is in equilibrium and to the extent

1997 U.S. Dist. LEXIS 22902, *

that convenience weighs in favor of the defendant it does so only slightly.

**COUNSEL:** For ALLIED SIGNAL INC, plaintiff: Richard K. Herrmann, Blank, Rome, Comisky & McCauley, Wilmington, DE.

For COOPER AUTOMOTIVE, INC., defendant: William J. Marsden, Jr., Potter Anderson & Corroon, LLP, Wilmington, DE. R. Eric Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM ORDER**

**I. INTRODUCTION**

Plaintiff AlliedSignal, Inc. ("AlliedSignal") filed suit against defendant Cooper Automotive, Inc. ("Cooper") alleging that it has manufactured platinum-tipped spark plugs by using a process which infringes United States Patent No. *4,810,220* ("the *'220* patent"). Defendant answered the complaint and has denied infringement. (D.I. 19)

Presently before this court is defendant's motion to transfer the case from this District to the United States District Court for the Northern District of Ohio n1 pursuant to *28 U.S.C. § 1404.* (D.I. 46) For the reasons discussed below, the motion to transfer shall be denied.

> n1 The Northern District of Ohio is divided into the Eastern Division and the Western Division. Defendant seeks to have this case transferred to the Western Division which is located in Toledo, Ohio.

[*2]

**II. BACKGROUND**

Plaintiff AlliedSignal is a Delaware corporation with its manufacturing plant located in Fostoria, Ohio. (D.I. 46) Defendant Cooper, also a Delaware corporation, operates a research and development facility in Toledo, Ohio. (D.I. 46) AlliedSignal claims that, in response to demands from automobile manufacturers, it developed platinum-tipped spark plugs that "had a longer life, could operate under more severe conditions, and were substantially more resistant to corrosion than

conventional [ones]." (D.I. 52) The method to produce these platinum-tipped spark plugs is allegedly claimed by the *'220* patent. AlliedSignal has alleged in its complaint that, in 1995, defendant began manufacturing platinum-tipped spark plugs using the process described in the *'220* patent. (D.I. 52)

Cooper has filed a motion for transfer of venue. It claims that Ohio is "the better choice of forum for this action," and offers in support that "the balance of public and private interests, the availability of compulsory process only in Ohio, and the interests of justice overcome any deference which might otherwise be due [plaintiff's] choice of forum here." (D.I. 46)

**III. [*3] DISCUSSION**

**A. Transfer of Venue**

[HN1] Title 28, Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988).* "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court. " *SportsMEDIA Technology Corp. v. Upchurch, 839 F. Supp. 8, 9 (D. Del. 1993).*

The parties do not dispute that this action could have been brought in Ohio. Both parties also have acknowledged, as a threshold matter, that a plaintiff's choice of forum should be accorded deference. (D.I. 46 at 5; 52 at 12) As a general rule, [HN2] "because plaintiff['s] [*4] choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses **strongly** favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970))* (emphasis added). Plaintiff's choice of forum is "paramount." E.g., *Wesley-Jessen Corp. v. Pilkington Visioncare, 157 F.R.D. 215, 216, 863 F. Supp. 186 (D. Del 1993).* In the present case, plaintiff has a legitimate

reason for choosing this forum: defendant Cooper is incorporated in Delaware. As this court has previously held:

> At the outset, the fact that [defendant] incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that [defendant] desired the benefits that it believed Delaware provides to chartered corporations. [Defendant] chose Delaware as its legal home and should not now complain that another [party] has decided to sue [defendant] in Delaware.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993).*

### 1. Convenience of Parties [*5] and Witnesses

Defendant contends that Delaware has only a remote connection to the suit because the manufacturing facilities of both parties are located in Ohio. (D.I. 46 at 10) Furthermore, defendant claims that "Cooper personnel developed the accused process at Cooper's facility in Toledo, Ohio," and that plaintiff has not listed "**any** employee allegedly having knowledge relevant to the issue in this lawsuit who is located outside of the Northern District of Ohio." (D.I. 46) (emphasis in original). Defendant also details the inefficient flight schedules that would have to be employed if parties or witnesses chose to fly to Delaware. (D.I. 46) Consequently, defendant asserts that it would be more convenient for both parties to travel to the federal courthouse in Toledo than to the one in Delaware. (D.I. 46)

Even if the Northern District of Ohio were the more convenient trial forum for both the parties and the non-party witnesses, this factor would not be sufficient to compel a transfer. This court in Wesley-Jessen analyzed a similar situation, and concluded that transfer was inappropriate for three reasons. First, the court noted that, [HN3] for a company engaged in business [*6] throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *157 F.R.D. at 218.* Defendant in the case at bar operates nationally. The second factor noted by the court in Wesley-Jessen is the incorporation of defendant in Delaware. Here again, the court outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient." Id. Finally, the court noted the somewhat archaic nature

of the "convenience of the parties" factor in determining a motion to transfer:

> A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum... These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

Id. Accordingly, the court finds that Cooper has not demonstrated [*7] that litigation in Delaware imposes on it a unique or unexpected burden, especially since Delaware is its legal home.

### 2. Interests of Justice

Cooper argues that a transfer is warranted in the interests of justice. In analyzing this claim, the court must consider judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, 821 F. Supp. at 966.* Defendant contends that a transfer would not have an impact on judicial resources and would affect positively the cost to the parties:

> Toledo is literally minutes away from Cooper's facility there, which is where some of Cooper's fact witnesses will travel from . . . . Toledo is also much closer than Wilmington for any AlliedSignal employees from the Fostoria and Perrysburg facilities who may testify at trial. Transfer to Ohio, therefore, would substantially reduce the **total** travel time, logistical burden, and overall expenses for **both parties.** In addition, the federal court docket in Toledo is not backlogged and there is no reason to believe that this case would proceed any slower to trial there to the prejudice of AlliedSignal.

(D.I. 46 at 15) (emphasis [*8] in original). [HN4] While defendant has expressed legitimate reasons for transfer, they are not sufficient to carry its burden. "All that [defendant has] established is that the balance with regard to convenience . . . is in equilibrium . . . [and] to the extent that the convenience . . . weighs in favor of the [defendant], it does so only slightly, and thus does not

warrant transfer." *In re ML-Lee Acquisition Fund, 816 F. Supp. 973, 977 (D. Del. 1993)*. n2

n2 It is significant to note that the discovery process will take place over the course of months in various locations nationally, regardless of where trial is scheduled to occur. Therefore, the burden of trying the case in Delaware (assuming the case, unlike 80% of civil cases, does not settle) is not substantial.

With respect to the compulsory process issue, Cooper maintains that several important witnesses, including the sole inventor of AlliedSignal's patented process, David J. Moore, reside in Ohio, outside of this court's subpoena power. (D.I. [*9] 46) Cooper contends that since these witnesses are not within the subpoena power of Delaware, they cannot be compelled to appear in Delaware to testify. Moreover, counsel for Cooper filed an affidavit asserting that he has been informed by certain third-party witnesses of their unwillingness to testify without a subpoena. (D.I. 46, App. 9) Defendant claims that three of its former employees, who were involved in the development of the accused process, "either will not or cannot appear voluntarily . . . ." (D.I. 46 at 14) In particular, Cooper asserts, in the affidavit, that (1) a former employee with information regarding the machinery used in the accused process said he would not voluntarily appear in Delaware; (2) a former employee who contributed to the industrialization of the accused process "said that he could not say that he would be absolutely unwilling to come to Wilmington;" and (3) a former employee with knowledge of the welding specifications and testing procedures of the accused process was willing to travel to Delaware, but his current employer "would permit him to testify only if subpoenaed." (D.I. 46, App. 9) Additionally, Cooper claims that certain employees of Taylor-Winfield [*10] Co., n3 who would be called as witnesses, are also outside of the subpoena power of the District of Delaware. Consequently, according to Cooper, the appearance of these witnesses cannot be guaranteed.

n3 Taylor-Winfield Co., located in Brookfield, Ohio, contracted with AlliedSignal to assist with the production of platinum-tipped spark plugs during the time when Mr. Moore was alleged to have invented the process claimed in the *'220* patent.

While the appearance of these witnesses may not be guaranteed, neither is their nonappearance written in stone. Furthermore, Cooper has not persuaded the court that these witnesses are material. While they do possess knowledge of the patented and accused processes, Cooper has not demonstrated that these are the only witnesses with this valuable information. This factor, therefore, does not weigh substantially in favor of transfer.

The court does recognize, however, that Cooper has a valid concern regarding the availability of witnesses who are outside of the subpoena power [*11] of the District of Delaware. n4 As was expressed above, however, Cooper has not offered sufficient support for its claim that key witnesses will refuse to appear in Delaware. If it becomes apparent that defendant will be prejudiced by a refusal of key witnesses to appear in Delaware, then the court would be willing to re-examine this issue.

n4 "It [is not] satisfactory that the . . . witnesses could appear by video deposition at trial. Video depositions of product development are unlikely to hold the rapt attention of a jury." *Sherwood Medical Co. v. IVAC Medical Sys., 1996 U.S. Dist. LEXIS 18194,* at *13, No. 96-305 (D. Del. Nov. 25, 1996).

With respect to access to proof, defendant contends that transfer is appropriate because evidence and witnesses essential for its defense are located or reside in or near the Northern District of Ohio. As noted above, defendant has not established sufficiently that material witnesses would be unavailable to testify in Delaware. For this reason, the court finds that [*12] defendant has not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendant has failed to demonstrate that the interests of justice dictate transferring this action.

## IV. CONCLUSION

Therefore, at Wilmington, this 30th day of July, 1997, IT IS ORDERED that defendant's motion to transfer this action (D.I. 45) is denied.

Sue L. Robinson

United States District Judge

109JSB

********** Print Completed **********

Time of Request:     June 16, 2005  04:58 PM EDT

Print Number:        1862:49054587
Number of Lines:     196
Number of Pages:

Send To:  MUFFLEY, MARY
          MORRIS NICHOLS ARSHT & TUNNELL
          1201 N. MARKET STREET
          WILMINGTON, DE 19801

# TAB 2

Westlaw.

Not Reported in F.Supp.

1998 WL 24354 (D.Del.)

(Cite as: 1998 WL 24354 (D.Del.))

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
BERING DIAGNOSTICS GMBH and Behring
Diagnostics, Inc., Plaintiffs,
v.
BIOSITE DIAGNOSTICS, INC., Defendant.
**No. Civ.A. 97-501 MMS.**

Jan. 6, 1998.
David J. Baldwin, and Joanne Ceballos, of Potter
Anderson & Corroon, Wilmington, Delaware; of
counsel, Herbert F. Schwartz, Kenneth B. Herman,
Marta E. Gross, and Keith D. Agisim, of Fish &
Neave, New York City, for plaintiffs.

Jeffrey Bove, of Connolly, Bove, Lodge & Hutz,
Wilmington, Delaware; of counsel: Richard G.
Greco, and Deborah A. Marrone, of Kaye, Scholer,
Fierman, Hays & Handler, LLP, New York City, for
defendants.

**OPINION**

SCHWARTZ, Senior J.

**I. Introduction**
*1 Behring Diagnostics GmbH, Behring
Diagnostics, Inc., and their parent company, Dade
International, Inc. (collectively "Behring") brought
this patent infringement action against Biosite
Diagnostics, Inc. ("Biosite") for infringing Behring
GmbH's U.S. Patent No. 4,336,241 (the " '241
Patent"). [FN1] Biosite answered this complaint
and counterclaimed seeking a declaratory judgment
that the '241 Patent is invalid, unenforceable, and
not infringed. The product accused of infringement
is Biosite's Triage Panel For Drugs of Abuse

("Triage DOA"), which is an immunoassay device
which is used for the detection of drugs of abuse in
urine.

> FN1. Initially, on September 2, 1997, this
> action was commenced in the name of
> Behringwerke GmbH and Behring
> Diagnostics, Inc.; but this complaint was
> never served. On September 9, 1997,
> Behring Diagnostics GmbH and Behring
> Diagnostics, Inc. refiled and served this
> present complaint.
> In addition, Dade International, Inc., is in
> the process of changing its name to Dade
> Behring, Inc., effective January 1, 1998.
> At that time, Dade Behring, Inc. will be
> substituted as a party for Dade
> International, Inc.

Pending before the Court now is Biosite's motion to
transfer this action to the United States District
Court for the Southern District of California
("Southern District of California"). The Court has
jurisdiction over this action under 28 U.S.C. §
1338(a). The motion to transfer will be denied.

**II. Factual Background**
**A. *The Parties***

Biosite is a Delaware Corporation with its
principal, and only, place of business in San Diego,
California. Founded in 1988, Biosite develops,
manufactures and markets diagnostics products to
detect, *inter alia,* the presence in urine of
commonly abused substances. Biosite has
currently 210 employees and a market capitalization
of $100 million, with approximately $28 million in
gross sales. All of its management, scientists, and
other employees (except for 20 sales people) are
located at the San Diego facility. The accused
product, the Triage DOA, was invented and
developed in Biosite's San Diego facility and is
manufactured at the same San Diego facility.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 2

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

The Behring companies are a subsidiary of Hoescht AG and also develop, manufacture, and market diagnostics products to detect, *inter alia,* the presence in urine of commonly abused substances. Behring Diagnostics GmbH is a German corporation with its principal place of business in Marburg, Germany. Behring Diagnostics Inc. is at present a Delaware Corporation with its principal place of business in Westwood, Massachusetts. It is currently responsible for being the United States marketer of products manufactured by Behring GmbH. Behring Diagnostics GmbH became the current assignee of the '241 Patent when the Behring companies acquired Syva Company ("Syva") in 1995.

Dade International, Inc., a Delaware corporation, is the owner of Behring Diagnostics GmbH and is also the owner, through a holding company, of Behring Diagnostics, Inc. On January 1, 1998, Dade International Inc. intends to change its name to Dade Behring Inc. It will be the same corporate entity it is now, with only a name change. The new entity will also be a Delaware corporation with its principal place of business in Deerfield, Illinois. Dade Behring will be owned in part by Hoescht AG. Dade International Inc., soon to be Dade Behring Inc., has a branch office in Glasgow, Delaware which employs approximately 1000 people and has 25 sales and service offices throughout Delaware.

**B. *Subject Matter of this Lawsuit***

**\*2** Behring's '241 Patent, which was initially issued on December 28, 1982, to Henry K. Tom ("Tom") and Gerald L. Rowley ("Rowley"), is entitled "Concentrating Zone Method in Heterogeneous Immunoassays". The patent was subsequently assigned to Syva. The '241 Patent is directed to an assay device which can identify the presence of specific antigens in a sample solution such as urine or blood. Such devices are used for, among other things, the detection of drugs of abuse including cocaine and marijuana. Behring asserts Biosite's Triage DOA infringes upon the '241 Patent. The Triage DOA is a diagnostic device capable of detecting, in urine, a broad spectrum of commonly

overdosed prescription and illicit drugs. Triage DOA is used by over 2,600 hospitals across the country, including hospitals in Delaware. Over 4.6 million Triage DOA devices have been sold worldwide since the product's introduction.

**III. Standards for Motion to Transfer**

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1993). The parties concede that this action could have been brought in the Southern District of California. [FN2] *See* D.I. 28, at 11 n. 2.

> FN2. A civil action for patent infringement "may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established business." 28 U.S.C. § 1400(b) . Since Biosite is not only headquartered in San Diego, and its only facility is located there, there is no question that the Southern District of California, in which San Diego lies, is an appropriate venue.

As the text of § 1404(a) indicates, the Court must examine (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice, in determining whether transfer is proper. The Court of Appeals for the Third Circuit has emphasized this is a broad inquiry: a district court must examine "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). While cautioning "there is no definitive formula or list of factors to consider," *id.,* the court identified potential factors which it characterized as either private or public interests.

The private interests include: (1) plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

as indicated by their relative physical and financial condition, (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (6) the location of books and records (similarly to the extent that the files could not be produced in the alternative forum). *See id.* (citations omitted).

Among the public interests are: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, and (5) the public policies of the fora. *See id.* (citations omitted).

*3 Although the factors listed by the *Jumara* Court are merely illustrative and by no means exhaustive, the Court will address the *Jumara* factors which are applicable to the facts of this case as they represent a good point of departure for considering Biosite's motion to transfer. Omnipresent in a transfer analysis is the fact that Biosite bears the heavy burden of establishing the need for transfer. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Sunds Defibrator, Inc. et. al. v. Durametal Corp.,* 1997 WL 74660, at *2 (D.Del. January 31, 1997). The *Shutte* Court further stated: "[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte,* 431 F.2d at 25 (emphasis added); *see also Critikon v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 964 (D.Del.1993) ("[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer.").

### IV. Discussion
**A.** *Private Interests*

#### 1. Plaintiffs' Forum Preference

A plaintiff's choice of forum is entitled to substantial deference and "should not be lightly

disturbed." *Shutte,* 431 F.2d at 25. This deference is particularly due when the plaintiffs have chosen their forum because of "legitimate, rational concerns." *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.,* 775 F.Supp. 759, 764 (D.Del.1991).

Biosite contends that there are no rational factors that weigh in favor of Behring's choice of forum. Biosite points out that Delaware is not the home of Behring Diagnostics GmbH, nor is it the physical home of the soon to be formed Dade Behring, Inc., which is based in Illinois. Moreover, Biosite cites the "home turf" rule for the proposition that because Delaware is not Behring's "home turf," the Court should accord less weight to Behring's choice of forum. Lastly, Biosite maintains that a statutory place of incorporation is entitled to less weight than if the physical presence of the company was in the selected jurisdiction. Biosite concludes that even though Delaware is the place of incorporation of Behring Diagnostics, Inc. and will be for the newly-formed Dade Behring, that fact has no practical bearing on the logistics of trial, and is entitled to little weight.

Behring, on the other hand, asserts that even though Delaware is not its principal place of business, its choice of forum is entitled to deference, and should not be upset unless the defendant can show the balance of convenience strongly favors transfer. Behring contends that its choice of forum is legitimate and rational because Syva is, and Dade Behring will be, a Delaware corporation, Biosite is a Delaware corporation, Biosite pursues business activities in Delaware, Behring's counsel would like to pursue mediation with Magistrate Judge Trostle of this District because of past satisfying experiences, and because Biosite is selling the infringing product in Delaware and is actively inducing infringement of the '241 Patent by such sales in Delaware.

*4 The Delaware district court has not always been consistent as to what level of deference a plaintiffs' status as a Delaware corporation should play in the motion to transfer calculus. *Compare Joint Stock Soc'y v. Heublein, Inc.,* 936 F.Supp. 177, 187

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

(D.Del.1996) ("[Plaintiff's] mere status as a plaintiff Delaware corporation is not entitled to great weight in determining whether to grant a motion to transfer, especially because [plaintiff's] principal place of business is elsewhere."), *with Critikon,* 821 F.Supp. at 965 ("[T]he fact that [plaintiff] incorporated in Delaware should not be taken lightly. By incorporating in Delaware, it can be assumed that [plaintiff] desired the benefits it believed Delaware provides to chartered corporations."). Suffice it to say that, "[i]t is legitimate and rational ... for a plaintiff to choose to litigate in a forum in which it is incorporated." *See Joint Stock Soc'y,* 936 F.Supp. at 187.

Moreover, Biosite's reliance on the "home turf" rule is misplaced. Although the vitality of the home turf rule has recently been put in doubt, *see Sunds Defibrator,* 1997 WL 74660, at *2 n. 2, to date it has not received a formal internment. To the extent, if any, that weak vital signs remain, it would not be applicable on the presented facts. The home turf rules applies when the forum closest to a plaintiff's principal place of business is selected in order that personal service over the defendant can be obtained. [FN3] This is simply not the situation in this case.

> FN3. This Court has recently cast doubt on this rule's existence in *Sunds Defibrator,* in which the Court stated: "[A] strong argument can be made that the 'home turf rule' is now subsumed in the *Jumara* private interest factor with emphasis on 'plaintiff's forum preference.' " *Sunds Defibrator,* 1997 WL 74660, at *2 n. 2.

Lastly, the Court finds that the other factors identified by Behring for bringing this case in Delaware are legitimate and rational reasons for Delaware to be the plaintiff's choice of forum. *See Waste Distillation,* 775 F.Supp. at 764 ("[S]uffcient that the forum is near the plaintiff's principal place of business and/or that it is consistent with the plaintiff's legitimate concerns."). The fact that Biosite conducts a substantial amount of business in Delaware and that the infringing product continues to be sold in Delaware counsels in favor of Behring

picking Delaware as its forum of choice. *See In re ML-Lee Acquisition Fund II, L.P,* 816 F.Supp. 973, 976 (D.Del.1991); *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.,* 707 F.Supp. 1429, 1437 (D.Del.1989). In addition, in cases where a plaintiff, like Biosite, is itself a Delaware corporation, the Court has stated: "[Where defendant] chose Delaware as its legal home ..., [it] should not now complain that another corporation has decided to sue [it] in Delaware." *Critikon,* 821 F.Supp. at 965. Further, the fact that Behring's counsel has had previously good experiences with mediation in this district with Magistrate Judge Trostle, cannot be said to be an illegitimate or irrational reason to pick the Delaware forum. For all these reasons, Delaware is a choice of forum based on the rational and legitimate concerns of Behring and plaintiff's selection is due substantial deference.

**2. Convenience of the Parties**

**\*5** Biosite contends that there is no practical or logical reason for this case to be tried in Delaware because the named parties do not have their operations in Delaware. Biosite also maintains the presence of key personnel at litigation on the East Coast would disrupt the companies' operations. Lastly, Biosite asserts Behring Diagnostics, Inc., will no longer be an existing entity after the merger with Dade International and in any event, because Behring Diagnostics, Inc. was never alleged to be the owner or exclusive licensee of the '241 Patent, it has no standing to sue. Biosite therefore alleges that the convenience of the parties strongly favors transferring this litigation to the California forum.

Behring, on the other hand, argues that Delaware is not an inconvenient forum for Biosite. Behring points out that Biosite is a national company with thousands of Triage DOA units sold in Delaware every year. In addition, Behring challenges Biosite's contention that loss of key personnel would disrupt its operations, as only four witnesses from Biosite have been identified. Behring also contends that Biosite is not a small company and would have no problem trying this case in Delaware. Lastly, Behring asserts that Delaware is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

a convenient forum in which to litigate because Behring's three offices that are most involved in this dispute--the Behring Diagnostics, Inc. office in San Jose, California, soon to be a Dade Behring office, the Dade Behring headquarters in Deerfield, Illinois, and Behring Diagnostics GmbH in Marburg, Germany--are all approximately equidistant to Delaware.

The Court finds that the convenience of the parties factor does not militate strongly in favor of either of the parties and this factor therefore does not strongly favor transfer. First, both parties are national corporations with revenues in the millions of dollars. *See The Media Group, Inc. et. al. v. Turtle Wax, Inc. et. al.*, 1996 WL 756760, at *5 (D.Del. December 23, 1996). As such, the relative economic burden to Biosite in litigating in Delaware is minimal. *See id.* Second, although it is true that Biosite has its business operations in San Diego and it would be more convenient for key personnel to attend trial in the Southern District of California, it is also true that Delaware represents a good compromise for Behring since its relevant companies are located anywhere between San Jose and Germany. Third, Biosite's contention that Behring Diagnostic does not have standing to sue is not properly before this Court on a motion to transfer. As such, the Court declines to address that issue at this time.

Given the above analysis, the convenience of the parties does not strongly weigh in favor of transferring this action to the Southern District of California.

**3. Convenience of the Witnesses**

Under § 1404(a), "the Court must determine whether the convenience to all witnesses weighs strongly in favor of a transfer." *Pursuit Athletic Footwear v. Save Power Ltd.*, 1996 U .S.Dist. LEXIS 8158, at *22 (D.Del. June 7, 1996). "While convenience of the witnesses is a factor, it is important only to the extent the witnesses would be unavailable for trial in one of the fora. Each party is able to procure the attendance of its own employees for trial." *Sunds Defibrator*, 1997 WL

74660, at *3.

*6 Biosite contends that the convenience of the witnesses "entirely" favors the Southern District of California. Biosite argues that all of the most likely witnesses are in California, and many of the most important witnesses-- including the two inventors and two attorneys that prosecuted the patent--are third parties and could only be compelled to appear in California. Behring, on the other hand, asserts that as the inventors, Tom and Rowley, are now consultants for Behring, these witnesses have agreed to testify in Delaware. In addition, Behring maintains that Dr. Ullman, another third-party witness identified by Biosite, is also employed as a consultant for Behring and has agreed to appear in Delaware. As for the two patent attorneys, Dr. Leitereg and Betrand Rowland, Behring avers that Rowland will voluntarily appear in Delaware and because Dr. Leitereg is sick, he would probably be unable to appear in California or Delaware.

The Court does not find that convenience of the witnesses strongly favors transfer. It is true that mere assurances that a witness has agreed to testify in the fora is not equivalent to having the actual subpoena power of assuring a witnesses' presence. *See Schering Corp. v. Amgen Inc.*, 969 F.Supp. 258, 269 (D.Del.1997) (citing *Sherwood Medical Co. v. IVAC Medical Systems, Inc.*, 1996 WL 700261, at *5 (D.Del. November 25, 1996)). While counsel for Behring cannot guarantee that these witnesses will appear in Delaware, they would all certainly be within the subpoena power of the Southern District of California as California citizens.

However, both parties at oral argument conceded that if it became clear shortly before trial that one of these critical witnesses, i.e ., Tom, Rowley, Ullman or Rowland, refused to come to Delaware, and was capable testifying live in California, it would be in the Court's power to transfer the case to the Southern District of California. Biosite points out, however, that such a late transfer may not be practical and may cause significant delay. Be that as it may, to the extent that the convenience of the witnesses weighs in favor of Biosite, it does not do

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 6

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

so strongly given the option available to the Court to transfer this case later in the proceedings should it appear necessary to defendant.

**4. Location of Documents**

Biosite makes much of the argument that most of the relevant documents are located in California. But as Behring correctly observes, "transferring documents form the West Coast to Delaware poses no large obstacle." *See Schering,* 969 F.Supp. at 269. Further, this factor is only relevant to the extent that files could not be produced in the alternative forum. *See Jumara,* 55 F.3d at 879. Because there has been no showing that any relevant document could not be produced in Delaware or that transferring documents to Delaware would pose a significant burden, the Court concludes that this factor does not strongly favor transfer.

Thus, although one of the private factors considered above, namely the convenience of the witnesses, may weigh to some extent in favor of transfer, when construed in light of the strong deference paid to plaintiff's choice of forum, the private interests do not **strongly** favor transfer to the Southern District of California.

**B. Public Interests**

**1. Practical Considerations of Efficiency and Expense**

*7 Biosite asserts the relative congestion of the courts does not favor Delaware over the Southern District of California. To support its argument, Biosite cites court statistics that show the mean time from filing to disposition is slightly shorter in the Southern District of California than in the District of Delaware. Biosite also observes that since Syva previously brought an action for infringement of the same '241 Patent against Hybritech, Inc., *see Syva Company, Inc. v. Hybritech Inc.,* 1989 U.S.Dist. LEXIS 16678 (S.D.Cal.1989), the California forum would be more appropriate for this litigation. Behring, on the other hand, contends that one of the reasons it chose to litigate in Delaware was because

of the relatively light docket and speedy disposition of cases. In addition, Behring points out that the Southern District of California has little knowledge or memory of the underlying technologies discussed in the *Syva* case.

Delaware's light docket "has been repeatedly recognized as a legitimate reason by both the Third Circuit Court of Appeals and this district." *Media Group,* 1996 WL 756760, at *7. In addition, pursuant to Delaware's Civil Justice Expense and Delay Reduction Plan and the Civil Justice Reform Act of 1990, "trial [in Delaware] shall be scheduled to occur within 12 months, if practicable, and no later than 18 months, after the filing of the complaint." *See* 28 U.S.C. § 471 (1993); D.Del.LR 16.2(c). Lastly, the Court finds no significance in the fact that the *Syva* case, which occurred almost ten years ago and involved two different parties, was in California. The Court therefore holds that this factor also does not weigh strongly in favor of transfer.

**2. The Local Interest and Public Policies of Fora**

Biosite contends that since it is headquartered in California, has research and manufacturing facilities in California, and most of the relevant events occurred in California, the public interest favors transfer to California. Biosite urges the Court to adopt the "center of gravity" test. Briefly stated, that test states that when the center of gravity of the patent infringement suit is not the plaintiff's preferred forum, less weight should be given to plaintiff's choice of forum. *See, e.g., Renzetti v. D.H. Thompson, Inc.,* 1997 U.S.Dist. LEXIS 6121, at *9 (E.D.Pa. May 2, 1997). Biosite maintains that the center of gravity is California and therefore, California is the appropriate forum for this patent litigation. Behring asserts because Biosite sells their products in Delaware and because there have been acts of infringement in Delaware, Delaware is just as an appropriate forum as California.

The *Schering* Court, in a similar patent transfer case, directly answered Biosite's "center of gravity" challenge in the following manner:
    First, although headquartered in California,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 7

1998 WL 24354 (D.Del.)

**(Cite as: 1998 WL 24354 (D.Del.))**

[defendant] is a Delaware corporation. More significant, however, is the nature of the dispute in this case. [The allegedly infringing product] is sold internationally and generates millions of dollars in revenues. The dispute over the [patent in suit] can hardly be described as a local California controversy, or implicating public policies unique to California. Accordingly, the public interests in this case do not tip the balance of convenience strongly in favor of [defendant].

**\*8** *Schering,* 969 F.Supp. at 269. This holding applies equally to the facts of this case. The Court holds that the public interests, represented by the public policies of the fora and the local interest of deciding controversies at home, do not weigh strongly in favor of transfer.

Because, on balance, both the public and private interests therefore do not weigh strongly in favor of transferring this litigation to the Southern District of California, Biosite's motion to transfer will be denied.

An appropriate order will issue.

1998 WL 24354 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:97CV00501  (Docket)
(Sep. 02, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DATASTRIP (IOM) LIMITED,                 :

      Plaintiff,                         :

      v.                                 :          C.A. No. 97-70-JJF

SYMBOL TECHNOLOGIES, INC. and            :
THE TRACKER CORPORATION
OF AMERICA,                              :

      Defendants.                        :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel:  Milton Springut, Esquire, and David A. Kalow,
Esquire of KALOW, SPRINGUT & BRESSLER, New York, New York.
Attorneys for Plaintiff.

Howard M. Handelman, Esquire of BOUCHARD, FRIEDLANDER &
MALONEYHUSS, Wilmington, Delaware.
Of Counsel:  Arnold Sprung, Esquire, Nathanial D. Kramer,
Esquire, and Esther H. Steinhauer, Esquire of SPRUNG, KRAMER,
SCHAEFER & BRISCOE, Tarrytown, New York.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

November **25** , 1998
Wilmington, Delaware

Farnan, Chief Judge.

Presently before the Court is Defendants' Motion To Transfer This Action To The Eastern District Of New York (D.I. 21). By their Motion, Defendants, Symbol Technologies, Inc. and The Tracker Corporation of America, seek relief based upon 28 U.S.C. §1404(a) which provides that a district court has discretion to transfer any civil action to any other district or division where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. In opposition, Plaintiff, Datastrip (IOM) Limited, asserts that Defendants have failed to demonstrate that the interest of justice favors transfer, or that the convenience of the parties and witnesses outweigh the deference that should be given to Plaintiff's choice of forum. For the reasons discussed, the Court will deny Defendants' Motion To Transfer This Action To The Eastern District Of New York (D.I. 21).

## I.  BACKGROUND

Both Plaintiff and Defendant Symbol are engaged in the business of designing, manufacturing and selling bar code scanning products. Defendant Tracker is engaged in the business of making and reselling kits for marking personal possessions with a bar code label. A bar code consists of a pattern of printed bars and spaces which is used to input information into a computer by means of optical scanning.

In this action, Plaintiff asserts that Defendants infringed

the United States Patent No. 4,782,221 ("'221 Patent") owned by Plaintiff. The '221 Patent covers the invention of a two-dimensional bar code. Plaintiff alleges that Defendant Symbol made certain modifications and additions to the technology of the '221 Patent, and filed its own patent application based on these changes. Specifically, Plaintiff claims that Defendant Symbol's Patent No. 5,304,786 ("'786 Patent") and its other patents on technology used in conjunction with printed bar codes have deprived Plaintiff of its patent rights and induced infringement of the '221 Patent. Additionally, Defendant Tracker manufactures and sells kits which are alleged by Plaintiff to incorporate a bar code of the type covered by the '221 Patent and thus to directly infringe Plaintiff's '221 Patent.

The parties have exchanged their initial disclosures as required by Rule 26(a)(1) and have served initial discovery requests. Plaintiff has sought and received permission from the Court to defer Rule 26(a)(1) disclosure of its damage theories until January, 1998.

## II.  DISCUSSION

A.  <u>STANDARD OF REVIEW</u>

Pursuant to 28 U.S.C. §1404(a), a district court may transfer any civil action to any other district in which the action may have been brought, if the transfer is necessary for the convenience of the parties and witnesses, and it is in the

interest of justice to do so.  When considering whether to transfer an action, the Court must first determine whether the action could have originally been brought in the transferee forum; however, because Plaintiff does not contest that this action could have been brought in the Eastern District of New York, the Court will address whether (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice warrant a transfer in this case.  28 U.S.C. §1404(a).

In determining whether a transfer is appropriate, the United States Court of Appeals for the Third Circuit has emphasized that a district court should examine all relevant factors to determine whether the litigation would proceed more conveniently and whether the interests of justice would be better served by a transfer to a different forum.  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995).

**B.**     **<u>FACTORS WEIGHED BY THE COURT</u>**

1.     <u>Plaintiff's Forum Preference</u>

A plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed.  <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted). The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of the requested transfer. <u>Id.</u>  A transfer will be denied if the factors are evenly balanced

3

or weigh only slightly in favor of the transfer.  <u>Allied-Signal,</u>
<u>Inc. v. Honeywell, Inc.</u>, C.A. No. 90-395, 1991 WL 495770, at *1
(D.Del. Feb. 6, 1991) (citations omitted).

In this case, Defendants argue that Plaintiff's choice of
forum is entitled to less weight because Delaware is not the
"home turf" of Plaintiff, nor is it where the acts giving rise to
the lawsuit occurred.  Further, Defendants contend that the only
relationship that Delaware has to the instant action is that
Defendants are incorporated here.

This Court has previously addressed the effect of a
plaintiff's choice of a non-home-turf forum on the determination
of the appropriateness of a transfer under Section 1404(a).  In
<u>In re ML-Lee Acquisition Fund II, L.P.</u>, the Court stated:

> While transfer of a case will generally be regarded
> as less inconvenient to a plaintiff if the plaintiff
> has not chosen its home turf or a forum where the
> alleged wrongful activity occurred, the plaintiff's
> choice of forum is still of paramount consideration,
> and the burden remains at all times on the defendants
> to show that the balance of convenience and the
> interests of justice weigh strongly in favor of
> transfer.

816 F.Supp. 973, 976 (D.Del. 1993) (citations omitted).[1]  The

---

[1]  Defendants cite to <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d
873, 879 (3d Cir. 1995) as support for its home-turf argument.
Recently, this Court has addressed the decision in <u>Jumara</u> and has
noted that the home-turf rule is now subsumed in the <u>Jumara</u>
private interest factor with emphasis on "plaintiff's forum
preference."  <u>Sunds Defibrator, Inc. v. Durametal Corp.</u>, C.A. No.
96-483, 1997 U.S. Dist. LEXIS 1859, at *7 (D.Del. Jan. 31, 1997).
Furthermore, this Court found in <u>Sunds</u>, that the concept of home
turf was not meaningful in that case because the plaintiff's home

Court is persuaded that it would be inappropriate to disregard the deference the Court must give to Plaintiff's choice of forum under <u>Shutte</u> where, as here, Plaintiff has a rational and legitimate reason for choosing Delaware as the forum for the instant action.  See <u>Joint Stock Society v. Heublein, Inc.,</u> 936 F.Supp. 177, 187 (D.Del. 1996).

The fact that Defendants have incorporated in Delaware is one rational and legitimate reason for choosing to sue Defendants here.  <u>Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership</u>, 882 F.Supp. 359, 363 (D.Del. 1994).  Such a factor should not be regarded lightly, and the Court will presume that by incorporating in Delaware, Defendants sought whatever substantial benefits they believed Delaware corporations enjoy.  Now, having received the benefits incident to Delaware incorporation, Defendants should not complain that another corporation has decided to sue them here.  <u>Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.</u>, 821 F.Supp. 962, 965 (D.Del. 1993).  In addition to being incorporated in Delaware, Plaintiff maintains and Defendants do not contest that Defendants also do business in Delaware.

Another rational and legitimate reason for choosing to

---

offices were in Sweden.  <u>Id.</u>  As in <u>Sunds</u>, Plaintiff in the instant case has its home offices in the British Isles and therefore, the fact that Delaware is not Plaintiff's home turf should not be relevant to the decision.

proceed against Defendants in Delaware is the fact that Plaintiff's sole United States subsidiary is located in Delaware. Additionally, courts in the District of Delaware have considerable experience with patent cases, and the period of time between filing an action and the commencement of trial is shorter in this district than in many others. Since sound reasons exist for Plaintiff's choice of forum, Plaintiff's choice should be accorded the deference suggested by <u>Shutte</u>.

    2.   <u>Defendant's Forum Suggestion</u>

Defendants contend that this action should be transferred to the Eastern District of New York, where this action could have initially been brought. In support of their application, Defendants point out that Defendant Symbol is headquartered in the Eastern District of New York, and Defendant Tracker transacts business there which gave rise to this action. Additionally, the agreement between Defendants Tracker and Symbol, under which Defendant Tracker has been purchasing bar code scanning devices, was negotiated in the Eastern District of New York, and Defendant Tracker allegedly has hundreds of customers for its kits and labels there.

In response, Plaintiff asserts that another reason for choosing Delaware as the forum for this action is because it is relatively convenient for Defendants and more neutral than the Eastern District of New York, which is Defendants' principal

place of business and residence. Courts have recognized this
neutrality argument as a legitimate and rational reason for
choosing a forum. <u>Joint Stock Society v. Heublein, Inc.</u>, 936
F.Supp. 177, 186-87 (D.Del. 1996). Therefore, in light of
Plaintiff's objective and compelling arguments in support of its
forum choice, the Court finds the business activity of Defendants
in New York to be insufficient to justify transfer of this
action.

    3.  <u>Convenience of the Parties</u>

     Defendants contend that a transfer is warranted under 28
U.S.C. §1404(a) because it is necessary for the convenience of
the parties. Defendants note at the outset that personal
jurisdiction over both Defendants is easily obtainable in the
Eastern District of New York. Specifically, Defendants maintain
that Defendant Symbol has its headquarters, manufacturing
facilities, research and development facilities and the bulk of
its relevant documents in the Eastern District of New York.
Defendant Tracker transacts business in that district and this
action allegedly arises from said business transactions.
Additionally, Defendants argue that Symbol's chief operating
officer and other personnel should not be required to attend
trial so far from their workplace. Finally, Defendants contend
that Plaintiff has its headquarters in the British Isles and thus
would be largely unaffected by a transfer to New York.

The technological advantages available to most major businesses in the 1990's make it difficult to establish that most reasonably selected litigation sites are inconvenient for the parties.  Tuff Torq, 882 F.Supp. at 363.  This is especially true when the defendants are substantial companies doing business in the national and international marketplace, as Defendants are here.  Joint Stock, 936 F.Supp. at 189 (citations omitted).  For example, Defendant Symbol is a worldwide, high technology company, which describes itself as the "largest manufacturer of bar code-driven data management systems" and maintains customer support operations and sales organizations throughout the United States and around the world.[2]

Under such circumstances, Defendants must show that litigating the case in an unwanted venue will cause an unusual burden on their business operations.  Id.  Specifically, Defendants must demonstrate that litigation in the forum will strain their relative physical and financial condition.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted).  In this case, the Court concludes that both parties can bear the financial and administrative burdens of

---

[2]  This Court has even held that where a large company, having a nationwide business, makes a claim that conducting litigation away from the most convenient forum is burdensome, that claim is suspect.  Discovision Associates v. Disc Manufacturing, Inc., C.A. No. 95-21, Memo. Order at 8 (D.Del. May, 18, 1995).

litigating away from home.  Plaintiff must travel regardless of
the forum, and Defendants have not established that litigating in
Delaware will create unreasonable or undue hardship, financially
or administratively.

Additionally, Defendants have failed to demonstrate that a
trial in Delaware will result in prolonged absences of its
officers or that the absence of a small number of employees will
significantly disrupt its operations.  The Court notes that such
a disruption would be difficult to establish when, as here, the
employees will only be traveling approximately 100 miles to the
trial.  See Joint Stock, 936 F.Supp. 177, 189 (D.Del. 1996).

4.  Convenience of Witnesses

Defendants contend that the convenience of the witnesses
justifies transfer.  All or most of the witnesses for Defendants
live and work in the Eastern District of New York, and Defendants
assert that they are unaware of a single trial witness who lives
or works in this forum.  Defendants allege that the following are
fact witnesses who live and/or work in New York and will be
inconvenienced if the trial is held in Delaware: Mr. Pavlidis and
Dr. Swartz, two of the inventors of the technology; Mr. Fusco,
the Senior Director of the technology group; and Mr. Schuessler
and Ms. Barkan, two individuals who were instrumental in the
adoption and use of the technology as a national standard.

As this Court has noted, "'[c]onvenience of the witnesses'

9

is a phrase encompassing geographic location of witnesses relative to the forum and an 'interest of justice' consideration." <u>Sherwood Medical Co. v. IVAC Medical Systems, Inc.</u> C.A. No. 96-305, 1996 WL 700261, at *4 (D.Del. Nov. 25, 1996). The interest of justice factor is based on the policy that each party should be able to procure the attendance of their own employees for trial and contemplates a situation where witnesses may be physically unavailable for trial in a particular forum. In this case, Defendants do not assert that its witnesses would not be able to attend the trial, but rather, argue the inconvenience to them is sufficient to warrant transfer of this matter to New York. In the Court's view, the mere fact that many or all of a defendant's witnesses reside in a possible transferee forum does not, by itself, justify a transfer. A defendant must demonstrate that trial in a particular forum will result in prolonged absences of its employees from work, or that the absence of the employees will disrupt the work of the defendant. After considering these principles, the Court finds that because Delaware is within driving distance of New York and several different means of public transportation from New York to Delaware are readily available, Defendants will certainly be able to produce any of its employees it chooses for trial with little or no difficulty. Absent the prospect of unavailability, the Court will not disturb a plaintiff's choice of forum.

5.    Location of Books and Records

Defendants rely on the fact that the documents they need for trial are located at Symbol's New York office.  The Third Circuit has noted that the location of the books and records to be used for litigation is relevant to the limited extent that the files could not be produced in the original forum.  Jumara, 55 F.3d at 879 (citations omitted).  Defendants have not alleged that they are unable to produce the files in Delaware.  Rather, Defendants have only asserted that the files are all located in New York, and therefore it would be easier to access them in New York.

In this case, Plaintiff has to bring its files from the British Isles to a forum in the United States, while Defendants will simply have to bring their files from New York to Delaware. In the Court's view, this is not a significant burden for Defendants because the distance between these two states is minimal, and technology has made the exchange of information easier in various formats.  Therefore, the Court finds that the location of the documentation to be presented at trial does not present a strong justification for transfer.

6.    Interests of Justice

Defendants assert that the interests of justice warrant transfer.  In particular, Defendants argue that there will likely be third party witnesses within the subpoena power of the Eastern District of New York but not within the subpoena power of this

11

Court.

The availability of compulsory process for third-party witnesses is a factor to consider in determining whether a transfer is warranted. Magee v. Essex-Tec Corp., 704 F.Supp. 543, 550 (D.Del. 1988). Specifically, Defendants list four of the named inventors of the patent, Mr. Glaberson, Mr. Mason, Mr. Santulli and Mr. Roth, as residing in Connecticut, which is outside Delaware's subpoena power, but within New York's subpoena power. Defendants also contend that the patent solicitor, Mr. Johnson, maintains offices in Connecticut, and likewise will be outside of Delaware's subpoena power. Although this is a critical factor, courts often require a party to do more than demonstrate that the subpoena power does not apply. Specifically, parties are required to present evidence that a witness is unwilling to testify. Critikon Inc. v. Becton Dickinson Vascular Access, Inc., 821 F.Supp. 962, 967 (D.Del. 1993).

Here, the Court finds that Defendants' have not represented that the third party witnesses would be unwilling to testify, and therefore, the Court assumes that the witnesses are willing to testify without a subpoena. Plaintiff alleges that they have information that at least two of the witnesses will voluntarily testify at trial. Even if the witnesses are unwilling to testify, Defendants have not explained why the use of videotaped

12

depositions would not be an adequate substitute. See Micheel v. Haralson, 586 F.Supp. 169, 173 (E.D. Pa. 1983). Accordingly, the Court finds that the availability of compulsory process in New York does not tip the balance in favor of a transfer.

7.    Relative Administrative Difficulty Because of Court Congestion

The relative case backlog of a court is another factor that may be considered in determining whether to grant a transfer. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 882-83 (3d Cir. 1995). Here, Plaintiff has shown that there will likely be an efficient resolution of this action in Delaware. In Delaware, this case has already been scheduled for trial and discovery is underway. The District of Delaware statistically has a lighter docket than that of the Eastern District of New York. Because the District of Delaware has a less congested docket, the Court finds that this District will be able to resolve this action as expeditiously as the Eastern District of New York.

8.    Local Interests in Deciding Local Controversy

Defendants contend that this dispute does not involve a local interest, and therefore, it is unreasonable to burden a community that has no interest in the litigation with jury duty. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). Although Defendants may be headquartered in New York, they are Delaware corporations. Furthermore, the instant dispute can

13

hardly be considered a local New York controversy, nor does it implicate public policy unique to New York. The dispute concerns patent rights which are not local or state law matters, but rather involve a patented product which is sold internationally generating millions of dollars in revenues. Therefore, the Court finds that the local interest factor does not support a transfer.

9.    <u>Public Policy of Fora</u>

As emphasized above, this case does not involve a local or state law matter with unique public policies, but rather is a patent case involving federal law. As such, the public policy of Delaware will not play a role in this case and is not a factor relevant in determining the instant motion.

10.    <u>Familiarity of Trial Judge with Application of State Law in Diversity Cases</u>

This case is based on claims of patent infringement, and thus, the familiarity of the trial judge with the application of state law is not applicable.

After considering all of the factors relevant to a transfer in this case, the Court concludes that the balance of both the private and public interests weigh in favor of deferring to Plaintiff's original choice of forum, rather than transferring venue to the Eastern District of New York. <u>See Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970). The small savings in cost, the slightly greater convenience for witnesses and the

14

availability of compulsory process do not substantially outweigh Plaintiff's legitimate reasons for filing in Delaware. Consequently, Defendant has failed to demonstrate that the balance of the private and public interests outweighs Plaintiff's original choice of forum, thus warranting a transfer. Therefore, the Court declines to transfer this cause of action.

### III.    CONCLUSION

For the reasons discussed, the Court will deny Defendants' Motion To Transfer This Action To The Eastern District Of New York (D.I. 21).

An appropriate Order has been entered.

15

TAB 4

Westlaw.

Not Reported in F.Supp.2d

2004 WL 323109 (D.Del.)

**(Cite as: 2004 WL 323109 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
JONES PHARMA, INC. and King
Pharmaceuticals, Inc., Plaintiffs,
v.
KV PHARMACEUTICAL CO., Defendant.
**No. Civ.A. 03-786 JJF.**

Feb. 17, 2004.

Paul E. Crawford, and Patricia S. Rogowski, of Connolly Bove Lodge & Hutz LLP, Wilmington, Delaware, F. Dominic Cerrito, Daniel L. Malone, and John C. Martin, of Pennie & Edmonds LLP, New York, New York, for Plaintiffs Jones Pharma, Inc., and King Pharmaceuticals, Inc., of counsel.

Josy W. Ingersoll, and Christian Douglas Wright, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, for Defendant KV Pharmaceutical Co.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is Defendant KV Pharmaceutical Co.'s ("KV") Motion To Transfer To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a). (D.I.8.) For the reasons set forth below, the Court will deny KV's Motion.

BACKGROUND
This case is a Hatch-Waxman patent infringement action under 35 U .S.C. § 271(e)(2) arising from an Abbreviated New Drug Application KV submitted for approval in order to sell a generic version of Jones Pharma, Inc.'s ("Jones") drug Levoxyl. By its

Motion, KV seeks a transfer of the instant action to the Eastern District of Missouri.

I. Parties' Contentions

KV contends that the instant action could have been brought in Missouri. Further, KV contends that Jones did not file the instant action on its "home turf," and therefore, Jones's decision to file in Delaware is not entitled to the deference ordinarily accorded to a plaintiff's choice of forum. KV also contends that the private and public interests favor transfer to Missouri.

In response, Jones contends that although its principal place of business is not in Delaware, both KV and it are Delaware corporations. Therefore, Jones contends that the Court should give strong deference to its decision to file the instant action in Delaware. Further, Jones contends that the private and public interests do not strongly favor transfer to Missouri.

DISCUSSION
28 U.S.C. § 1404(a) provides the standard for a convenience transfer to another jurisdiction. Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Third Circuit has not limited itself to the factors listed in Section 1404(a), instead requiring courts to consider the private and public interests protected by Section 1404. The private interests include:
plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties ..., the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forum).
*Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

The public interests include "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest ..., [and] the public policies of the fora." *Id.* (citations omitted). "The burden of establishing the need for transfer ... rests with the movant." *Id.* Unless the movant demonstrates that the balance of conveniences strongly favors transfer, plaintiff's forum choice should prevail. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970).

I. Whether Plaintiffs' Choice Of Forum Is Entitled To "Paramount Consideration"

*2 Ordinarily, a court will give "paramount consideration" to a plaintiff's choice of forum. *See Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). However, absent a legitimate, rational reason, if the plaintiff chooses to litigate away from his or her "home turf," the defendant's burden is lessened. *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.,* 775 F.Supp. 759, 764 (D.Del.1991). Under Section 1404(a), "home turf" refers to a corporation's principal place of business. *Id.* A corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. *Stratos Lightwave, Inc. v. E20 Communications, Inc.,* C.A. No. 01-309 JJF, 2002 WL 500920 at *2 (D.Del. March 26, 2002). Applying these principles to the circumstances in this case, the Court will give "paramount consideration" to Jones's decision to file the instant action in Delaware.

Both Jones and KV are Delaware corporations. And, as the Court observed in *Stratos,* a corporation's decision to incorporate in a state is a rational and legitimate reason to file an action in that forum. 2002 WL 500920 at *2. Therefore, to prevail on its Motion, KV must demonstrate that the *Jumara* factors strongly favor a transfer to Missouri.

II. Whether The Private Interests Strongly Favor Transfer

Although the claim arose and the parties have their principal places of business in Missouri, the Court concludes that these factors, along with the remaining *Jumara* private interest considerations, do not strongly favor a transfer to Missouri. First, the Court concludes that the convenience of the parties does not favor venue in one jurisdiction over the other. Neither party would be unduly burdened by litigating this action in Delaware or Missouri. *See Pennwalt Corp. v. Purex Inds., Inc.,* 659 F.Supp. 287, 290 (D.Del.1986) (taking into account the burden a small company would encounter in litigating an action in a jurisdiction where it did not reside). KV's annual sales approximate $240 million (D.I. 12; Ex. 1) and Jones's annual sales approximate $245 million. (D.I. 14; Ex. D.) Therefore, the Court concludes that litigating this action in Delaware will not "place a significant and onerous burden" on either party. *Pennwalt,* 659 F.Supp. at 290. Further, although both parties have their principal places of business in Missouri, both parties are incorporated in Delaware. And, as KV chose to avail itself of the laws of Delaware, it may not now complain because Jones decided to sue it in this state. *SAS of Puerto Rico, Inc. v. Puerto Rico Tel. Co.,* 833 F.Supp. 450, 453 (D.Del.1993).

Next, although KV contends that the books and records necessary to litigate this action are in Missouri, KV does not contend that they could not be produced or would be unavailable in Delaware. Therefore, the Court does not consider the location of the books and records as weighing in favor of a transfer to Missouri. *See Jumara,* 55 F.3d at 879 (indicating that a court should consider the location of books and records only to the extent that the files "could not be produced in the alternative forum."). Further, all of the witnesses relating to the formulation and development of its generic drug that KV intends to call at trial, save Mr. Franz, are current KV employees. (D.I.10.) These employee witnesses are party witnesses and are presumed willing to testify at trial. *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 203 (D.Del.1998) ("Party witnesses or witnesses who are employed by a party

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 323109 (D.Del.)

**(Cite as: 2004 WL 323109 (D.Del.))**

carry no weight in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial."). With respect to Mr. Franz, the Court is not persuaded by KV's contention that Mr. Franz's retirement from KV and residence in Missouri strongly favors a transfer of the instant action. As noted above, the movant bears the burden in motions to transfer, *Jumara,* 55 F.3d at 879, and KV has provided the Court with no evidence that Mr. Franz, KV's former CEO, would be unwilling to testify on its behalf. Accordingly, the Court gives little weight to Mr. Franz's status as a non-party witness and residence in Missouri.

III. Whether The Public Interests Strongly Favor Transfer

**\*3**  The Court also concludes that the public interests do not weigh strongly in favor of a transfer to Missouri. First, the Court is unpersuaded by KV's contention that the congestion of the Delaware courts strongly favors a transfer. *See Affymetrix,* 28 F.Supp.2d at 206 (noting that the congestion of a court's docket is a legitimate factor to be considered in a motion to transfer). The median time for completion of non-jury trials in the District of Delaware is twenty-seven months, compared to twenty-three months in the Eastern District of Missouri. (D.I. 9; Ex. B.) The Court considers this four-month difference as, at most, only minimally favoring a transfer.

Further, there is no strong local interest in litigating this action in Missouri. The instant action is a patent infringement case, and, as the Court held in *Stratos,* rights relating to patents are not local or state matters. 2002 WL 500920 at \*2. Therefore, patent rights cannot give rise to a local controversy or implicate local interests. *Id.* Accordingly, the Court concludes that the fact that the alleged infringement occurred in Missouri does not weigh strongly in favor of transferring the instant action.

CONCLUSION

Based upon Jones's decision to file the instant lawsuit in Delaware and the absence of strong private or public interests favoring transfer to

Missouri, the Court concludes that the *Jumara* factors do not strongly favor a transfer of the instant action under 28 U.S.C. § 1404(a). Accordingly, the Court will deny KV's Motion.

An appropriate Order will be entered.

*ORDER*
At Wilmington, this 17th day of February, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that KV Pharmaceutical Co.'s Motion To Transfer To Eastern District Of Missouri Pursuant To 28 U.S.C. § 1404(a) (D.I.8) is *DENIED.*

2004 WL 323109 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00786 (Docket)

(Aug. 07, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 5

Westlaw.

Slip Copy

Page 1

2005 WL 123744 (D.Del.)

**(Cite as: 2005 WL 123744 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Paul KUCK, Plaintiff,
v.
VERITAS SOFTWARE CORPORATION, Edwin
J. Gillis and Gary L. Bloom, Defendants.
**No. Civ. 04-831-SLR.**

Jan. 14, 2005.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 14th day of January, 2005, having considered defendants' motion to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I.4) is denied, for the reasons that follow:

1. Introduction. On July 7, 2004, plaintiff Paul Kuck ("Kuck") filed this complaint against defendants Veritas Software Corporation ("Veritas"), Edwin Gillis ("Gillis") and Gary L. Bloom ("Bloom") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 28 U.S.C. § 78(j) and § 78(t). [FN1] (D.I.1) Plaintiff contends that the individual defendants caused Veritas to issue a materially false and misleading press release regarding expectations on revenue and earnings. (D.I.1) On July 19, 2004, defendants moved to transfer to the Northern District of California. (D.I.4, 5) Plaintiff opposes the motion (D.I.13) and defendants have filed their reply. (D.I.14)

> FN1. There are two related cases: *Bennet v. Veritas Software Corporation,* Civ. No. 04-867-SLR; and *Choon v. Veritas*

*Software Corporation,* Civ. No. 04-872-SLR. Although formal motions to transfer have not been filed in the related cases, the parties have agreed that the instant motion shall apply to all three cases. (D.I.13) Additionally, a securities class action was filed on July 29, 2004 in the Northern District of California involving the same claims at bar. *Malone v. Veritas Software Corp.,* 3:04-CV-3088-MJJ (N.D.Cal.2004).

2. Background. Veritas, a Delaware corporation, is a leading provider of software storage products and services. (D.I.5, 13) Gillis is the Executive Vice President and Chief Financial Officer of Veritas. Bloom is the Chairman of the Board, President and Chief Executive Officer. (D.I.7)

3. Veritas employs over 6,500 people worldwide, with approximately 3,800 employed in the United States. (*Id.*) About 1,061 employees work at the corporate headquarters in Mountain View, California. The remaining employees work at 120 offices worldwide, located in 28 states and 36 countries. Veritas does not have any offices, employees or documents in Delaware. Its legal, accounting, finance and marketing departments are located at the Mountain View corporate headquarters. General counsel is also located within the Northern District of California. Veritas' common stock is traded on the NASDAQ market. (D.I. 13 at 4)

4. Plaintiff has moved on behalf of himself and of "all other persons similarly situated (the "Class") who purchased or acquired the publicly traded securities of Veritas between April 21, 2004 and July 6, 2004." (D.I. 13 at 4) To that end, motions for consolidation, appointment as lead plaintiff and approval of selection of lead counsel have been filed. (D.I.16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26,)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2

2005 WL 123744 (D.Del.)

**(Cite as: 2005 WL 123744 (D.Del.))**

5. Standard of Review. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988); *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 208 (D.Del.1998).

6. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, 567 (D.Del.2001); *Shutte,* 431 F.2d at 25.

**\*2** 7. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.,* 997 F.Supp. 556, 562 (D. Del 1998); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* 2001 WL 1617186 (D.Del. Nov. 28, 2001); *Continental Cas. Co. v. American Home Assurance Co.,* 61 F.Supp.2d 128, 131 (D.Del.1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

8. The Third Circuit Court of Appeals has indicated that the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

9. The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

10. Discussion. Defendants assert that the convenience of the parties factor is the most compelling reason to transfer. All witnesses, parties, and the legal team are located within the Northern District of California. Moreover, the principal documents regarding internal projections, forecasts and results as well as the SEC filings and press releases related to plaintiff's allegations are located at the Mountain View headquarters. Defendants submit that the expense of travel and shipping would be greatly reduced by moving the case to California.

11. Plaintiff contends his choice of forum should be afforded deference and that transfer should not be liberally granted. *Argos v. Orthotec LLC,* 304 F.Supp.2d 591, 598 (D.Del.2004). Further, since Veritas is a Delaware corporation enjoying all the benefits and protections of this state's laws, it cannot credibly contend that litigation in the state is inconvenient. (D.I.13)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

2005 WL 123744 (D.Del.)

**(Cite as: 2005 WL 123744 (D.Del.))**

**\*3** 12. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the Northern District of California are insufficient to warrant a transfer. Defendants' complaints about litigating here are outweighed by the fact that Veritas has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction. Moreover, defendants have not provided specific information about problems of certain witnesses being unavailable or unwilling to travel to Delaware for trial. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant conducting world-wide business, is not overly burdensome.

13. Conclusion. For the reasons stated, defendants' motion to transfer (D.I.4) is denied.

2005 WL 123744 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 6

Westlaw.

Not Reported in F.Supp.2d

2004 WL 883395 (D.Del.)

**(Cite as: 2004 WL 883395 (D.Del.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PRAXAIR, INC. and Praxair Technology, Inc.,
Plaintiffs,
v.
ATMI, INC. and Advanced Technology Materials,
Inc., Defendants.
**No. Civ. 03-1158-SLR.**

April 20, 2004.
Jack B. Blumenfeld, Morris, Nichols, Arsht &
Tunnell, Wilmington, DE, for Plaintiffs.

Robert H. Richards, III, Richards, Layton &
Finger, Wilmington, DE, for Defendants.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington, this 20th day of April, 2004,
having reviewed the motion of defendants to
transfer (D.I.12), and the memoranda submitted
therewith;

IT IS ORDERED that the motion to transfer
(D.I.12) is denied for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present
action asserting that defendants infringe U.S. Patent
Nos. 5,937,895, 6,007,609, and 6,045,115
(collectively the "Praxair patents"). (D.I.1) On
March 8, 2004, defendants filed their answer,
denying plaintiffs' claims of infringement and
counterclaiming for declaratory judgment of
invalidity and noninfringement of the Praxair

patents. (D.I.10) A scheduling conference was held
on April 8, 2004.

2. Plaintiffs and defendants are Delaware
corporations and all parties are headquartered in
Danbury, Connecticut. (D.I.1) The Praxair patents
relate to a fluid storage and gas dispensing system
for fabricating semiconductor devices. Prior to
plaintiffs filing the present action, defendants
brought suit in the Southern District of New York
on defendants' patents, U.S. Patent Nos. 6,101,816
and 6,3543,476 BI (collectively the "ATMI
patents"). That suit, filed on July 11, 2003, has
subsequently been amended to include state law
claims relating to false advertising and unfair
competition. Discovery began in the New York
litigation in February 2004.

3. Defendants move the court to transfer this matter
pursuant to 28 U.S.C. § 1404(a) to the United States
District Court for the Southern District of New
York. Section 1404(a) provides: "For the
convenience of the parties and witnesses, in the
interests of justice, a district court may transfer any
civil action to any other district or division where it
might have been brought." 28 U.S.C. § 1404(a)
(2003). A plaintiff's choice of forum is to be
accorded substantial weight and courts should only
transfer venue if the defendant is truly regional in
character. *See Bergman v. Brainin,* 512 F.Supp.
972, 973 (D.Del.1981) (citing *Shutte v. Armco Steel
Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). A defendant
has the burden of establishing that "the balance of
convenience of the parties and witnesses strongly
favors" transfer. *Id.* Accordingly, "[d]efendants
brought into suit in Delaware must prove that
litigating in Delaware would pose a 'unique or
unusual burden' on their operations" for a Delaware
court to transfer venue. *See Wesley-Jessen Corp. V.
Pilkington Visioncare, Inc.,* 997 F.Supp. 556, 562
(D.Del.1993). A motion to transfer venue may also
be granted if there is a related case which has been
first filed or otherwise is the more appropriate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 883395 (D.Del.)

**(Cite as: 2004 WL 883395 (D.Del.))**

vehicle to litigate the issues between the parties. *See American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* 1999 U.S. Dist. LEXIS 12455, *18 (D.Del.1999).

4. In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in § 1404(a). Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citations omitted). In *Jumara,* the Third Circuit provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

*2 5. In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as this is the situs of incorporation for all the parties. By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily

exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' "home turf." (D.I. 13 at 2, 22)

6. The court is wholly unimpressed by defendants' contentions that Delaware is an inconvenient forum for the parties. First, defendants' contention that proximity to defendants' headquarters should be a factor for this court to consider is disingenuous at best. While the Southern District of New York is certainly closer to the parties' respective headquarters in Danbury, Connecticut, the court takes notice of the fact that there are four district courthouses in Connecticut, all of which are geographically closer to Danbury than the courthouse in Manhattan. If commuting time to court for the parties's employees were an issue, defendants' own choice of forum is not reflective of that concern. Second, the court is unpersuaded by defendants' myopic assertions that Wilmington would be a difficult place for defendants to litigate their case. The fact that New York City has three airports and a subway system are not compelling factors in the consideration of a motion to transfer venue. (D.I. 13 at 7-8, 22; D.I. 24 at 14-15,) Third, defendants' contentions regarding convenience of the witnesses is similarly unpersuasive. [FN1] The convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something which defendants have not shown to be the case here.

> FN1. Defendants' assert that for certain witnesses located in Florida and Texas, "travel to Wilmington would be less convenient than to New York City, as they would first have to fly into Philadelphia." (D.I. 13 at 22) Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

2004 WL 883395 (D.Del.)

**(Cite as: 2004 WL 883395 (D.Del.))**

located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

7. In considering the public interest factors under *Jumara,* the court is similarly unpersuaded by defendants' arguments. First, defendants suggest that transfer would reduce duplicative litigation; this assertion does not bear scrutiny. While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities. As a consequence, a finding of validity or infringement in the New York litigation is not relevant to the case before this court. Moreover, the fact that defendants filed their complaint related to the ATMI patents first has no bearing on the propriety of plaintiffs' decision to bring suit for infringement of the Praxair patents in this court.

8. Finally, the court does not find that New York state has a special interest in the outcome of the litigation. Patent cases are explicitly federal issues and the rights determined thereunder are national in scope. While the location of infringing activity provides a basis for venue under § 1400, the residency of defendants is no less compelling. 28 U.S.C. § 1400. Consequently, defendants have failed to demonstrate that any of the public interest factors under *Jumara* weigh strongly toward transfer.

*3 9. Therefore, the court concludes that defendants have failed to demonstrate that litigating the present case in Delaware presents a unique or undue burden and their motion is denied. (D.I 12)

2004 WL 883395 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV01158  (Docket)

(Dec. 22, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.