IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WERNER L. POLAK,

          Plaintiff,

vs

JOHN M. KOBAYASHI,

          Defendant,

and

POKOBO, L.L.C.,

          Nominal Defendant

C.A. No. 05-330 (JJF)

---

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

CONNOLLY BOVE LODGE & HUTZ LLP
Kevin F. Brady (Bar No. 2248)
Christos T. Adamopoulos (Bar No. 3922)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
Phone: (302) 658-9141
Fax:     (302) 656-0116

*Attorneys for Defendant,*
*John M. Kobayashi*

OF COUNSEL:

John P. Akolt III
John C. Akolt
Law Offices of Akolt & Akolt, L.L.C.
1022 Pearl Street
Denver, Colorado 80203
Telephone: 303-903-7029
Fax:     303-659-6077

Dated: June 29, 2005

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .......................................... 3

SUMMARY OF ARGUMENT ....................................................................... 4

ARGUMENT ................................................................................................... 6

  1. DEFENDANT HAS MET THE BURDEN OF ESTABLISHING
     SUBJECT MATTER JURISDICTION ..................................................... 6

  2. COMPLETE DIVERSITY DOES EXIST BETWEEN THE REAL
     PARTIES IN THIS ACTION AND THIS COURT HAS SUBJECT
     MATTER JURISDICTION ........................................................................ 8

    A. POKOBO'S CITIZENSHIP IS NOT CONSIDERED FOR
       PURPOSES OF DETERMINING WHETHER DIVERSITY
       JURISDICTION EXISTS ..................................................................... 8

    B. PLAINTIFF'S CLAIMS ARE DIRECT AND NOT
       DERIVATIVE. THE CITIZENSHIP OF POKOBO IS
       THUS NOT A FACTOR IN DETERMINING DIVERSITY
       JURISDICTION .................................................................................. 9

    C. POKOBO IS NEITHER NECESSARY NOR INDISPENSABLE
       TO THIS PROCEEDING AND SHOULD NOT BE RETAINED AS
       A PARTY WHERE SUCH WOULD DEFEAT DIVERSITY
       JURISDICTION ................................................................................ 15

    D. IF THIS COURT DETERMINES THAT POKOBO IS A
       REAL PARTY IN INTEREST, THAT INDEPENDENT
       DERIVATIVE CLAIMS ARE ASSERTED ON BEHALF OF
       POKOBO AND THAT POKOBO IS AN INDISPENSABLE
       PARTY, DEFENDANT URGES THIS COURT TO FULLY
       CONSIDER THE NATURE OF DELAWARE LIMITED
       LIABILITY COMPANIES FOR THE DETERMINATION OF
       FEDERAL DIVERSITY JURISDICTION ....................................... 18

    E. FEES AND COSTS ARE NOT PROPERLY ASSESSED ............... 22

  3. DECLINING TO EXERCISE JURISDICTION ON
     ABSTENTION GROUNDS IS NOT APPROPRIATE IN THIS CASE ............... 23

CONCLUSION................................................................................................ 27

ii

## TABLE OF AUTHORITIES

Page

**Cases**

*Alessi v. Beracha,*
  244 F. Supp. 2d 354 (D. Del. 2003)...............................................................6

*Andrews Bros. Co. v. Youngstown Coke Co.,*
  86 F. 585 (1898).......................................................................................21

*Anglo American Security Fund, L.P.*
  *v. S.R. Global International Fund, L.P.*
  829 A.2d 143 (Del. Ch. 2003)...............................................................11, 12

*Bumberger v. Ins. Co. of North A.,*
  952 F.2d 764 (3rd Cir. 1991)...............................................................8, 23

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943)...........................................................................23, 24

*Carden v. Arkoma Assocs.,*
  494 U.S. 185 (1990)...........................................................................passim

*Chapman v. Barney,*
  129 U.S. 677 (1889)..................................................................................20

*Cosgrove v. Bartolotta,*
  150 F.3d 729 (7th Cir. 1998) ....................................................................19

*Curley v. Brignoli,*
  915 F.2d 81 (2nd Cir. 1990).........................................................................6

*Dawson v. Columbia Trust Co.,*
  *197 U.S. 178 (1905)* .................................................................................8

*Delta Financial Corp. v. Comanduras,*
  973 F.2d 301(4th Cir. 1992) ......................................................................17

*Employers Ins. of Wassau v. Crown Cork and Steele,*
  905 F.2d 42 (3rd Cir. 1990) .........................................................................8

*GMAC Comm. Credit LLC v. Dillard Dept. Stores, Inc.,*
  357 F.3d 827 (8th Cir. 2004) .....................................................................19

*Great Southern Fire Proof Hotel Co. v. Jones,*
  177 U.S. 449 (1900)..................................................................................20

*Handelsman v. Bedford Village Assoc. ltd.,*
  213 F.3d 48 (2nd Cir. 2000)........................................................................19

*HB General Corp. v. Manchester Partners, L.P.,*
  95 F.3d 1185(3rd Cir. 1996) .................................................................passim

*In re Cencom Cable Income Partners, L.P. Litig.,*
   *2000 WL 130629 (Del. Ch.)* ............................................................ 12, 13, 14

*In re Gaylord Container Corporation Shareholder's litigation,*
   *Del. Ch. C.A. No. 14616, Strine V.C. August 10, 1999)* .......................... 14

*In re Tricord Sys., Inc.*
   2003 WL 1873523 (D. Del.) ............................................................... 8

*John Birch Society v National Broadcasting Co.,*
   377 F.2d 194 (2nd Cir. 1967) ............................................................ 6

*Ketterson v. Wolf,*
   2001 WL 940909 (D. Del.) .................................................................. 19

*Kramer v. Western Pacific Industries, Inc.,*
   546 A.2d 348 (Del.1988) ..................................................................... 11

*Litman v. Prudential-Bache Properties, Inc.,*
   611 A.2d 12 (Del.Ch.1992) ................................................................. 11

*Navarro Sav. Ass'n v. Lee,*
   466 U.S. 458, 100 S. Ct. 1779, 1782, 64 L.Ed.2d. 425 (1980) ................... 8

*Newman-Green, Inc. v. Alfonzo-Larrain,*
   490 U.S. 826 (1989) .......................................................................... 17

*Poore v. Fox Hollow Enterprises,*
   1994 WL 150872 (Del. Super.) ............................................................ 22

*Quackenbush v. Allstate Ins. Co.,*
   517 U.S. 706 (1996) .................................................................... 25, 26

*Ross v. Bernhard,*
   396 U.S. 531 (1970) .......................................................................... 17

*Steele Valley Authority v. Union Switch and Signal,*
   809 F.2d 1006 (3rd Cir. 1987) ........................................................... 6

*Steeleworkers v. Bouligny,*
   382 U.S. 145 (1965) .......................................................................... 20

**Statutes**

28 U.S.C. § 1332................................................................................... passim

28 U.S.C. § 1332(a) ............................................................................... 1

28 U.S.C. § 1332(c) ................................................................... 2, 20, 21, 22

28 U.S.C. § 1653.................................................................................... 6

**Other Authorities**

12B *Fletcher's Cyclopedia of Corporations* § 5911, at 483-84 ........................................ 11

*Moore's Federal Procedure Section* 107.14[2][c] ............................................................ 8

**Rules**

Fed. R. Civ. P. 21 ........................................................................................................ 17, 18

**Treatises**

*The Emergence of the Limited Liability Company,*
   The Business Lawyer, Vol. 51, November, 1995 ......................................................... 19

<u>PRELIMINARY STATEMENT</u>

This court is the proper forum for this case in that there is complete diversity of citizenship between Plaintiff, a citizen of New York, and Defendant Kobayashi, a citizen of Colorado. The citizenship of the nominal defendant, Pokobo (as characterized by the Plaintiff in his Complaint), was properly disregarded by Defendant Kobayashi in the determination of diversity of citizenship between the parties under 28 U.S.C. § 1332(a).

Because Plaintiff's initial characterization of Pokobo as "nominal" undercuts his ability to object to Defendant's removal action, Plaintiff is forced to re-characterize Pokobo as a *real* party with its own independent claim against Kobayashi. Analysis of the claims that the Plaintiff seeks to characterize as *derivative* on behalf of Pokobo, however, are not, in fact, derivative but, in accord with Delaware judicial precedent, are *direct claims* that have been asserted by the Plaintiff individually. And as a result, the citizenship of the nominal defendant Pokobo remains irrelevant.

Next, the claims that the Plaintiff asserts as "individual" are fundamentally identical to the claims that he purports to assert as "derivative." As the Plaintiff and the Defendant are the sole members of Pokobo, all of the persons who could be affected by adjudication of the Plaintiff's claims are before the Court. In such circumstance Pokobo is neither a necessary nor an indispensable party. Moreover, where the participation of Pokobo would destroy the diversity jurisdiction of this Court, Pokobo as a separate entity should be dismissed.

Plaintiff's assertion that he seeks equitable relief solely on claims arising under state law, noting the interest of the state courts in regulating and governing business entities within their jurisdiction ignores that the fundamental claim that is the basis of

1

each of the five counts asserted by the Plaintiff is a breach of contract claim for which the Plaintiff seeks both equitable and legal remedies. The fundamental issue to be resolved in this case is thus one of breach of contract for which damages are claimed. The action is not only for equitable relief *within* the governance of Pokobo as a Delaware limited liability company, but for an alleged breach of an oral contract that was to be performed in Hawaii and which involved real property in Hawaii. Policies applicable to *corporate governance* are not determinative of the breach of contract claim that forms the basis of the Plaintiff's Complaint.

Finally, if this Court determines that Pokobo is an indispensable party to this proceeding and that the Plaintiff asserts genuine independent *derivative* claims on behalf of Pokobo, Defendant requests that this Court further consider the nature of limited liability companies under Delaware law as has continued to be developed under Delaware law and determine that for diversity purposes a Delaware Limited Liability Company should be considered to be a "corporation" and not a "limited partnership" thus maintaining diversity jurisdiction in this proceeding.

Regarding the subject matter jurisdiction of this Court, Defendant believes that it will not be necessary for the Court to consider the citizenship of Pokobo, a Delaware limited liability company, for determination of its diversity jurisdiction under 28 U.S.C. § 1332(c) after the nature of the asserted derivative claims is properly considered. However, if this Court does decide that it is necessary for it to make such determination, the Defendant requests the opportunity to develop a full factual basis for presenting his legal position on this issue. The basis for this request is set forth in more detail below.

## NATURE AND STAGE OF THE PROCEEDINGS

Because of the timing of the Notice of Removal, the Motion for Transfer of Venue and the supporting briefs that have been filed in support and in opposition thereof, the parties have already submitted several statements of the Nature and Stage of the Proceedings to this Court. The Defendant relies upon and references his Statement of the Nature and Stage of the Proceedings as set forth in his Opening and Reply Briefs in Support of his Motion to Transfer Venue.

## SUMMARY OF ARGUMENT

1. The Defendant accepts that he has the burden of establishing the subject matter for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

2. The Defendant has sustained his burden by showing that there is complete diversity between the real parties in this proceeding. The Plaintiff is a citizen of the State of New York. The Defendant is a citizen of the State of Colorado. The citizenship of the limited liability company, Pokobo, is not a consideration for the determination of diversity jurisdiction because (i) the Plaintiff has characterized Pokobo as a *nominal party*; (ii) the nature of the claims and issues asserted by the Plaintiff are *direct* and not *derivative* claims, in which case Pokobo is not a real party in interest and its citizenship is not considered for diversity jurisdiction; (iii) Pokobo is neither a necessary nor indispensable party to this proceeding and should be dismissed, and (iv) if required to address the citizenship of Pokobo in this matter, the Defendant requests that this Court further consider the nature of limited liability corporations under Delaware law in the context of federal diversity jurisdiction under 28 U.S.C. § 1332 such that a definitive determination of this issue may be rendered within the Third Circuit of the United States.

3. To preserve his request for abstention, the Plaintiff seeks to distance himself from his claims for damages for breach of contract. This claim, however, is identical to the base upon which his equitable claims are founded. The crux of the litigation is an alleged oral contract between the Plaintiff and the Defendant concerning the acquisition of the 17-Acre Parcel in their individual capacities.

Plaintiff asserts both legal and equitable remedies for the alleged breach of contract. This claim cannot be severed, as a matter of law, on the basis of the relief

4

requested.  Nor does the determination of this fundamental issue involve any statutory scheme governing limited liability companies.  The Plaintiff's substantive claim is a breach of contract.  The *relief* requested is variously asserted to be:  damages, constructive trust, *quantum meruit* and judicial dissolution of Pokobo.  The Plaintiff cannot seek to reserve his claim for *damages* for breach of contract, and have this Court remand the determination of the central issue as solely an *equitable* matter.  The Plaintiff's claims include monetary damages, and upon such basis applicable law does not provide for abstention.

The Plaintiff has the burden of establishing the basis for abstention.  He has not shown sufficient grounds upon which this Court should partially abstain from adjudicating this matter.

<u>ARGUMENT</u>

## 1. DEFENDANT HAS MET THE BURDEN OF <br> <u>ESTABLISHING SUBJECT MATTER JURISDICTION</u>

The Defendant accepts that the party seeking removal to the district court of the

United States bears the burden of establishing the basis upon which federal jurisdiction is

based. The Defendant further accepts that the removal statutes are to be "strictly

construed". It is misleading, however, for the Plaintiff to state, at page 6 of his Opening

Brief, that such constitutes a "strong presumption against removal." Indeed, 28 U.S.C. §

1653 provides that defective allegations of jurisdiction may be amended in the trial or

appellate courts. This section is to be construed *liberally* to permit the action to be

maintained if it is at all possible to determine from the record that jurisdiction does in fact

exist. *See Curley v. Brignoli*, 915 F.2d 81 (2nd Cir. 1990); *John Birch Society v National*

*Broadcasting Co.*, 377 F.2d 194 (2nd Cir. 1967).

Nor do *Alessi v. Beracha*, 244 F. Supp. 2d 354 (D. Del. 2003) or *Steele Valley*

*Authority v. Union Switch and Signal*, 809 F.2d 1006 (3rd Cir. 1987) cited by the Plaintiff

support his assertion that there is a "strong presumption against removal". *Alessi, supra,*

remanded the matter to the state court on the basis that there was an express "Delaware

carve out" of the Securities Litigation Uniform Standard Act for the claims at issue and

thus there was no federal question jurisdiction to support the federal jurisdiction. *Alessi,*

*supra,* establishes only that if there is no federal question supporting the federal

jurisdiction, the matter is to be remanded. Moreover, *Steele Valley, supra,* is consistent

with the Defendant's position in that: (i) it confirms that a court may disregard *nominal*

or fraudulently joined parties in its determination of diversity jurisdiction (Id., at 1010);

and (ii) the court needs to consider whether a party is indispensable if the joinder of such

6

party would destroy the diversity jurisdiction over the matter before it *(Id. at 1015)*. If a non-diverse party is indispensable, it need be considered. If the party is determined to be indispensable and diversity is not present, the case need be dismissed or remanded to the state court with jurisdiction over the claims. The Defendant's position in this case is not inconsistent with *Steele, supra.*

Federal courts properly require showing of their subject matter jurisdiction, but they do not have a "strong presumption" against their own jurisdiction.

2.  COMPLETE DIVERSITY DOES EXIST BETWEEN THE REAL
PARTIES IN THIS ACTION AND THIS COURT HAS
SUBJECT MATTER JURISDICTION.

A.  POKOBO'S CITIZENSHIP IS NOT CONSIDERED FOR
PURPOSES OF DETERMINING WHETHER
DIVERSITY JURISDICTION EXISTS

The Defendant agrees with the Plaintiff that "in determining whether to remand

the court 'must focus on the plaintiff's complaint at the time the petition for removal was

filed, and assume all factual allegations therein as true.'" [Plaintiff's Opening Brief, page

7, citing *In re Tricord Sys., Inc.* 2003 WL 1873523 (D. Del.)].

As initially plead, the Plaintiff characterizes Pokobo as a *nominal* party.

Assuming the truth of such allegation the Plaintiff cannot now try to re-characterize

Pokobo as a *real party in interest* asserting a genuine independent derivative claim (*see

Opening Brief,* pages 8-9).  The issue is not one of *realignment* of Pokobo, as Plaintiff

addresses on page 8 of his Opening Brief, citing *Employers Ins. of Wassau v. Crown

Cork and Steele,* 905 F.2d 42 (3rd Cir. 1990), *Dawson v. Columbia Trust Co., 197 U.S.

178 (1905)* and *Moore's Federal Procedure Section* 107.14[2][c]; but rather the issue is

the nature of the claims that the Plaintiff believed he had asserted against the Defendant

Kobayashi and the *nominal* Defendant Pokobo.

Nominal parties, as decided by the Third Circuit Court of Appeals, are not

considered for diversity purposes:

> Still, "a federal court must disregard nominal or formal parties and rest
> jurisdiction only upon the citizenship of real parties to the controversy." *Navarro
> Sav. Ass'n v.* Lee, 466 U.S. 458, 461, 100 S. Ct. 1779, 1782, 64 L.Ed.2d. 425
> (1980). *Bumberger v. Ins. Co. of North A.,* 952 F.2d 764, *at* 767 (3rd Cir. 1991).

The Plaintiff is presumed to have known his complaint as he filed it and to have

understood that the true nature of his claims are *direct* and not *derivative* through

Pokobo. As such, Pokobo is properly considered as a *nominal* party however aligned, and the citizenship of Pokobo is not a factor in determining diversity jurisdiction.

### B. PLAINTIFF'S CLAIMS ARE DIRECT AND NOT DERIVATIVE. THE CITIZENSHIP OF POKOBO IS THUS NOT A FACTOR IN DETERMINING DIVERSITY JURISDICTION

The Plaintiff asserts at length (Opening Brief, pages 9-11) that the claims asserted on behalf of Pokobo are independent *derivative* claims seeking recovery on behalf of Pokobo's benefit as an independent entity. Analysis of the actual claims asserted by the Plaintiff do not support his characterization; but rather confirms that the claims are *direct* and not *derivative*. Indeed, it should be noted that four of the five counts constituting the Complaint are not even claimed to be *derivative* in nature. And, the count that is asserted to be *derivative* in nature is premised upon the acquisition and management of the 17-Acre Parcel, which is the same factual basis upon which all the other direct claims are based.

Where the claims in controversy are determined to be *direct claims* between the LLC members themselves, the claims are not *derivative* in nature and the corporation has no separate claims to pursue. In such circumstance, as is presented in this case, the controversy is between the Plaintiff and the Defendant between whom there is complete diversity and the subject matter jurisdiction of this Court is satisfied.

The fundamental issue to be resolved in this action is the acquisition by the Defendant of the 17-Acre Parcel in 1999. This allegation is the core of every count of the Complaint – including the alleged *derivative* claim.[1] The Plaintiff himself notes the

---

[1] Count I, *Judicial Dissolution,* paragraph 43; Count II, *Breach of Contract,* paragraph 49; Count III, *Breach of Fiduciary Duty*, paragraph 53; Count IV, *Declaratory Judgment [constructive trust]*, paragraph 58; and Count V, *Unjust Enrichment*, paragraph 63.

commonality of this issue throughout the entire Complaint where at page 11 of his

Opening Brief he states that his claims are based upon: "the failure of Defendant to title

the 17-Acre Parcel in Pokobo's name --- *a fact central to each of Plaintiff's claims* –

[emphasis supplied].

Critical for the characterization of each of the Plaintiff's claims that are based

upon the 17-Acre Parcel is that the Plaintiff asserts that any right of Pokobo to obtain title

to the 17-Acre Parcel is based upon an alleged oral agreement between the Plaintiff and

the Defendant *as individuals*.

In paragraph 14 of his Complaint the Plaintiff alleges:

> *Plaintiff and defendant agreed* that Defendant would contribute to Pokobo the
> funds necessary to cover the full purchase price of the 17-Acre Parcel by making
> a capital contribution to Pokobo in the amount of approximately $194,000.
>
> * * *
> Although the purchase of the 17-Acre parcel was funded by Defendant, title to the
> 17-Acre Parcel was to be placed in Pokobo's name. [Emphasis Supplied].

The claimed oral agreement between the Plaintiff and Defendant also forms the basis for

the *derivative claim* in Count 3 of the Complaint as follows:

> When the parties purchased the 17-Acre Parcel, *they agreed* that Pokobo would
> be the owner of the property. In breach of his fiduciary duties, Defendant has
> misappropriated the 17-Acre Parcel for his personal use by titling the property to
> his own name. [Complaint, paragraph 53, emphasis supplied].

These are not allegations that the Defendant misappropriated the 17-Acre Parcel

that was already titled to Pokobo, or that wrongfully titled property to his name that was

acknowledged to be a corporate asset, in the same manner as embezzlement of corporate

funds by an officer. These are not allegations that the Defendant usurped a corporate

opportunity. Nor are they allegations that Pokobo had sufficient funds available to it to

10

pursue the purchase of the 17-Acre Parcel on its own account. What is alleged is a contract between two members of Pokobo in their *individual* capacities.

If the Plaintiff does not prevail on his claim of the breach of the oral contract, there is no basis upon which Pokobo, as an entity, has any right to the 17-Acre Parcel and any *derivative* claim relating to the 17-Acre Parcel fails. Any right that Pokobo could have to the 17-Acre Parcel is entirely dependent upon the alleged oral agreement between the parties in their individual capacities. The fundamental claim, the allegation that the Plaintiff himself describes as "*a fact central to each of Plaintiff's claims. . .*" is clearly a *direct* and not a *derivative* claim.

Where the *derivative* claims asserted on behalf of Pokobo are correctly determined to be *direct,* Pokobo is not a real party in interest and its citizenship is not considered for federal diversity jurisdiction.

"[T]he general rule that whether an action is derivative or direct depends on whether the harm alleged by the plaintiff is independent of harm suffered by the corporation or partnership itself." *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1194 (3rd Cir. 1996). citing: *Kramer v. Western Pacific Industries, Inc.,* 546 A.2d 348 (Del.1988); *Litman v. Prudential-Bache Properties, Inc.,* 611 A.2d 12 (Del.Ch.1992); 12B *Fletcher's Cyclopedia of Corporations* § 5911, at 483-84. The Complaint alleges individual damages independent of any harm suffered by the corporation itself. The nature of such a claim is *direct.*

In *Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P.* 829 A.2d 143 (Del. Ch. 2003) the Delaware Chancery Court distinguished between *direct* and *derivative* claims in the context of a limited partnership. It determined that the test

for distinguishing direct from derivative claims is substantially the same as that used

when the underlying entity is a corporation.  At page 150 of its decision the Court stated:

> The test looks to the nature of the injury and to the nature of remedy that could
> result if the plaintiffs are successful.  When a plaintiff alleges either an injury that
> is different from what is suffered by other shareholders (or partners) that is
> independent of the entity's right, the claim is direct.

In *Anglo, supra,* the claims involved the withdrawal of funds by the manager of

an investment fund without advising the other members of the fund of this occurrence

such that they were denied the opportunity to withdraw their investment in a declining

market.  The claims of the limited partners were determined to be *direct* and not

*derivative* because the result of recovery on behalf of the Fund was directly passed

through to the current partners, and any incoming partners would receive a windfall if

they were to recover damages for diminution of the Fund value prior to their admission to

the partnership.  Citing *In re Cencom Cable Income Partners, L.P. Litig., 2000 WL

130629 (Del. Ch.),* the Court in *Anglo, supra,* characterized the partners' claims as *direct*

if (i) any remedy recovered on behalf of the entity also conferred benefits on wrongdoers

or provided windfalls to the uninjured and (ii) a derivative claim need provide a gate

keeping function that will both promote corporate resolution of internal problems and

deter strike suits.  *Anglo, supra* at page 152.  Both tests, in the present action, result in

characterizing the Plaintiff's claims as *direct* not *derivative.*

Also in *Anglo, supra,* one of the claims was that the report of the general manager

of the Fund was incomplete and misleading.  Quarterly reports were required by the

limited partnership agreement.  *(See: Anglo, supra at page 154).*  In the present case, the

Plaintiff asserts the failure to provide accounting is a *derivative* claim; such a claim is not

derivative, but *direct.*  As characterized in *Anglo, supra* at page 154:

Section 12.05 of the Agreement specifies the obligations of the general partner to report to the limited partners—unaudited quarterly reports of the fund performance, an audited financial report annually, and a year-end report to each partner indicting the necessary gain and loss information for Federal income tax purposes. Thus the 1999 Statement was contractually required to be provided to the partners and any claims that it was incomplete, or materially false or misleading would state a *direct* claim.

In *Cencom, supra,* the limited partners sought to enjoin the sale of partnership assets being conducted by the general partner. The claims asserted were: breach of duty; breach of the partnership agreement; breach of fiduciary duty of candor by failing to disclose cash flows and values; breach of duty of loyalty; and breach of the Partnership Agreement by improperly valuing the assets of the organization. Then Vice Chancellor, now Chief Justice Steele, was asked to decide whether such claims were *derivative* or *direct* under Delaware law (*Cencom, supra at page* \*1). In determining this issue, the Court stated:

> The distinction between direct and derivative claims depends upon "'the nature of the wrong alleged' and the relief if any, which could result if the plaintiff were to prevail." [citation omitted]. In drawing this distinction, I must look to the body of the complaint itself and not to either party's characterization of the claims. [citation omitted]. *Id. at* \*3.

In making his determination, the Court noted:

> "Inadequate disclosures bearing on individual investors right to cast a fully informed vote constitute *direct* claims" [*Id. at* \*4].

The circumstances under which a claim is brought also was determined to be a factor in classifying a claim as *derivative* or *direct.* In *Cencom,* as in this case, the Plaintiff seeks a decree of judicial dissolution of the corporate entity, Pokobo. Under such circumstances in *Cencom, supra,* Vice Chancellor Steele found no need to push the parties into intra-partnership remedies (i.e. *derivative* claims). Where the entity was in dissolution, the entity was determined to be simply an artifice representing the

13

relationship between two legally juxtaposed parties and is no longer relevant as a distinct legal creature for the purpose of resolving final claims between the individual parties. At page *6 of the decision in *Cencom, supra,* the Court thus determined that:

> ". . . claims for breach of fiduciary duty and breach of the partnership agreement are, in substance, *direct claims.* . ."

Finally, the nature of the relief requested by a plaintiff is considered in classifying his claim as *derivative* or *direct.* In the present case, the Plaintiff seeks an equitable order for the imposition of a constructive trust and conveyance of the 17-Acre Parcel to Pokobo. While it appears anomalous that the requested relief has a bearing on the nature of the claim, the rationale is clear: it is a basic principle of equity that a defendant found liable for breaches of either fiduciary duties or contractual arrangements should not benefit from any remedy for those breaches. In the present case, among other remedies, the Plaintiff seeks the conveyance of the 17-Acre Parcel for the benefit of Pokobo. Notwithstanding that the Defendant is alleged to be the "wrongdoer", the imposition of a constructive trust upon the 17-Acre Parcel and conveyance of such property to Pokobo, would "benefit" the Defendant to the extent of his 50% ownership interest in Pokobo.

Analyzing how such an anomaly affects the characterization of a claim as *derivative* or *direct*, the Court in *Cencom determined, supra* at page *5:

> Similarly, in the Court's recent decision in *In re Gaylord Container Corporation Shareholder's litigation, Del. Ch. C.A. No. 14616, Strine V.C. August 10, 1999)* [rev'd on other grounds] Vice Chancellor Strine incisively analyzed how the potential inclusion of culpable parties in the class due relief may affect the distinction between derivative and direct claims. While Vice Chancellor Strine's decision in *Gaylord* fell in the context of fiduciary duty breaches (under *Unocal v. Mesa* [citation omitted], resulting from corporate defensive takeover measures, I find that his comments support a finding that the limited scope of the group of claimants seeking relief justifies labeling these claims as direct.

> The determination is not whether a culpable party can escape liability for

14

whatever action he may have done. Rather it is whether the remedy requested would necessarily include the wrongdoer in the class of benefited parties by the remedy sought. If the culpable party is included in the class of "benefited" parties if a claim were to be determined to be *derivative*, the characterization of such claim, and the manner in which such claim must thus be prosecuted is determined to be *direct*.

It is the obligation of the Court to independently determine the nature of the claims that are asserted in an action before it. In the present case it is clear that the Plaintiff's claims are fundamentally based upon a contract alleged to exist between the Plaintiff and the Defendant as individuals. The claims all assert that the Plaintiff, individually and as a member of Pokobo, was damaged differentially from the Defendant as a 50% member of Pokobo. Further, the Plaintiff's claim for damages and for equitable remedies that cannot be entered as requested without also "benefiting" the Defendant, all result in the nature of the claims being determined to be "direct" and not "derivative" claims.

In consideration of all of the above, the Plaintiff's claims are *direct* not *derivative* and as a result Pokobo, as an entity, is not a real party in interest. Where the nature of the claims asserted is direct, the citizenship of Pokobo is not considered for diversity purposes. There being complete diversity of citizenship between the Plaintiff and the Defendant, this court does have subject matter jurisdiction over this action.

### C. POKOBO IS NEITHER NECESSARY NOR INDISPENSABLE TO THIS PROCEEDING AND SHOULD NOT BE RETAINED AS A PARTY WHERE SUCH WOULD DEFEAT DIVERSITY JURISDICTION

In determining the propriety of including the entity in litigation that is essentially between the individual members of a closely held organization where such inclusion

would destroy diversity jurisdiction, this Circuit has determined that the inclusion of such a party is neither necessary nor appropriate.

In the present case there are only two members of the limited liability company, Pokobo. Both members are before the Court. While the individual claims asserted by the Plaintiff are clearly *direct*, he additionally asserts claims on behalf of the LLC which could defeat the diversity jurisdiction of this Court if such claims are decided by this Court to be valid *derivative* claims.

However, even in the event that the Court determines that any of the claims asserted by the Plaintiff are derivative, this Court is required to further consider whether the individual litigants that are before the Court adequately represent all the partners such that the inclusion of the entity as a party to the proceeding is basically irrelevant.

In *HB General Corp. v. Manchester Partners,* 95 F.3d 1185 (3rd Cir. 1996), the Third Circuit Court of Appeals was faced with the joinder of a limited partnership in an action involving the failure of a defendant to meet a capital call for the limited partnership. Applying *Carden, supra.* to the facts presented, including the partnership in the action as a *derivative* plaintiff would have defeated the diversity jurisdiction of the Court. There, as here, all the members of the organization are personally before the Court. The Court recognized that the partnership, as the beneficiary of the capital call, had an interest in the case. Notwithstanding, particularly where the partnership consisted of only three partners, the Court determined that the partnership's interest in the case was adequately represented by the parties before the court and joinder of the entity that would have destroyed diversity jurisdiction was not required. The Court concluded, quoting from *Delta Financial Corp. v. Comanduras,* 973 F.2d 301, 303-304 (4th Cir. 1992):

16

"[T]his action arises out of a strictly internal conflict between the partners, all of whom, after our decision today, will be before the district court. PDS has failed to establish that Vanguard itself has any interest distinct from the interests of the several partners. Thus, we are satisfied that "complete relief [may] be accorded among those already parties," and that Vanguard claims no interest different from the interest of the partners that may be impaired by the imposition of the case and that Vanguard's absence will not "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. [*HB General, supra.* at 1193].

The Court in *HB General* further noted that while in the context of a formal corporation, the Supreme Court determined that the corporation is an indispensable party in stockholder derivative actions, citing *Ross v. Bernhard,* 396 U.S. 531 (1970), the Court declined to extend that rule to limited partnerships. In the context of the closely held limited partnership in *HB General, supra at page 1196,* the Court stated that where the partnership consisted of essentially two members, "...we are easily able to determine that the individual partners effectively represent the Partnership." Where, as here, the interests of the organization are fully represented by the individual parties before it who represent 100% of the ownership interest of the entity, and if the continued presence of the entity would have the effect of destroying the diversity jurisdiction of the court, the Second Circuit Court of Appeals has expressly determined that it is both proper and appropriate to dismiss a dispensable party whose presence prevents statutory diversity jurisdiction. This authority was determined to be founded upon Fed. R. Civ. P. 21 and confirmed by the United States Supreme Court in *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989).

Pokobo is a dispensable party to this proceeding. The claims asserted by the Plaintiff are properly characterized as *direct* not *derivative* and the interest of the entity are fully represented by the parties before the Court, who aggregate 100% of the

members of the organization. If necessary to preserve the jurisdiction of this Court, other than to characterize Pokobo as a *nominal* party only, this Court should dismiss Pokobo as a party to this action pursuant to Fed. R. Civ. P. 21.

> D. IF THIS COURT DETERMINES THAT POKOBO IS A REAL PARTY IN INTEREST, THAT INDEPENDENT DERIVATIVE CLAIMS ARE ASSERTED ON BEHALF OF POKOBO AND THAT POKOBO IS AN INDISPENSABLE PARTY, DEFENDANT URGES THIS COURT TO FULLY CONSIDER THE NATURE OF DELAWARE LIMITED LIABILITY COMPANIES FOR THE DETERMINATION OF FEDERAL DIVERSITY JURISDICTION.

For all of the reasons set forth in the previous sections, Defendant believes that it is not necessary for the Court to address the citizenship of Pokobo for the purpose of determining diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332. If, however, the Court deems it necessary to make such a determination, the Defendant believes that the determination is a matter of substantial significance that is deserving of full development before this Court, both as a matter of fact and law. Toward this end, the following discussion is considered to be an outline of the legal issue to be resolved. Resolution of this, however, is also dependent upon the presentation of substantial facts which cannot be presented solely within the confines of this Brief. If the Court does determine to address this issue, the Defendant requests that this matter be set for hearing and reasoned resolution such that a controlling precedent can be established by this Circuit.

The general significance of the issue of the determination of the citizenship of a limited liability company for the purpose of diversity jurisdiction can be inferred from the explosive growth of such entities from their 1977 debut under Wyoming law to nationwide authorization and tens of thousands of limited liability companies within a

decade. *See The Emergence of the Limited Liability Company,* The Business Lawyer, Vol. 51, November, 1995 at page 3. The limited partnership principles applied to limited liability companies basically forecloses access to the federal courts for a class of business organization that has the potential to become a substantial section of commerce within this country.

Defendant acknowledges the decision of this Court in *Ketterson v. Wolf,* 2001 WL 940909 (D. Del.). It is also true, however, that there is no controlling decision from the Third Circuit determining the nature of limited liability companies in the context of federal diversity jurisdiction under 28 U.S.C. § 1332.

The Second Circuit decision in *Handelsman v. Bedford Village Assoc. ltd.,* 213 F.3d 48 (2nd Cir. 2000) referenced by this Court in *Ketterson,* supra, provided little if any rationale as to why it extended the rationale of *Carden v. Arkoma Assocs.,* 494 U.S. 185 (1990) from limited *partnerships* to limited *companies.* Other circuits in accord with *Handelsman* similarly provide very little discussion of their basis for extending the limited partnership analysis from *Carden* to the emergent new class of business entities, limited liability *companies. See Cosgrove v. Bartolotta,* 150 F.3d 729 (7th Cir. 1998); *GMAC Comm. Credit LLC v. Dillard Dept. Stores, Inc.,* 357 F.3d 827 (8th Cir. 2004).

Defendant submits, however, that *Carden, supra,* is not determinative of the question of the characterization of limited liability companies for the purpose of federal diversity jurisdiction, and a rational basis exists for distinguishing between limited liability partnerships, the subject of *Carden,* and limited liability companies that have not been directly addressed by the Supreme Court.

*Carden*, itself a five to four decision of the U.S. Supreme Court, declined to extend the treatment of corporations under 28 U.S.C. § 1332 (c) to limited liability partnerships. While even this was a narrowly decided case, *Carden* followed a consistent line of decisions that declined to extend treatment as a corporation to business organizations of various sorts that were not true "corporations". *See Chapman v. Barney*, 129 U.S. 677 (1889) –a joint stock company that was a "mere partnership"; *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900) – a limited partnership; *Steeleworkers v. Bouligny*, 382 U.S. 145 (1965) -- labor unions.

*Carden* determined that the entity (a limited liability partnership) was *not* a "corporation" within the meaning of 28 U.S.C. § 1332(c), but it did not set forth the definitive characteristics of an entity that *would be* within the definition of "corporation" under 28 U.S.C. § 1332(c). This is the significant issue that remains to be determined with regard to modern limited liability companies: specifically, what are the defining characteristics of an organization to distinguish between a "corporation" and an "association" for federal diversity purposes?

Federal law does not define the specific characteristics of what an entity must have so as to fall within the definition of a "corporation" for federal diversity purposes. State corporation codes vary extensively from state to state and within each state for various types of corporate entities. There are business corporations, non-profit corporations, municipal corporations, professional corporations and special purpose corporations, such as bridge and toll way corporations, telegraph corporations, pipeline corporations, ditch and reservoir corporations. With hugely varying terms of organization, all are "corporations" within the ambit of 28 U.S.C. § 1332 (c).

20

"Pass-through" taxation of an entity is not determinative of the status of a business entity as a corporation under 28 U.S.C. § 1332 (c) in that there is no disqualification of Subchapter S Corporations from qualifying as "corporations" under 28 U.S.C. § 1332; while there is no requirement that a limited liability corporation include provisions that will provide for pass-through taxation under Revenue Ruling 88-76 (the IRS ruling that initiated the stampede for LLC formation).

The question of when is an entity a "corporation" for diversity purposes, and the various standards and factors that are to be considered is not a recent issue, and the Sixth Circuit case of *Andrews Bros. Co. v. Youngstown Coke Co.,* 86 F. 585 (1898), decided more than a century ago has relevance for the considerations involved, even though its conclusions are probably no longer compatible with the decision in *Carden.*[2]

Defendant submits that prior to making a determination of whether Delaware limited liability companies are "corporations" within the meaning of 28 U.S.C. § 1332 (c), the characteristics of such entities in comparison to those organizations that have been determined to be "corporations" and those entities that have been determined not to be "corporations" for federal diversity jurisdiction purposes need be evaluated.

Without fully developing the applicable legal standard for determining when a company is a "corporation" for federal diversity purposes, which the Defendant believes must be based upon a fully developed factual base, the Defendant believes that the growing recognition of the "entity theory" for limited liability companies, as contrasted with the "aggregation theory" is the controlling principle.

---

[2] While not expressly over-ruled by *Carden,* its decision that a limited partnership was a "corporation" for federal diversity purposes is inconsistent with the ruling in *Carden.*

Consistent with the "entity" theory for Delaware limited liability companies is then Judge, now Chief Justice Steele's decision in *Poore v. Fox Hollow Enterprises*, 1994 WL 150872 (Del. Super.). In *Poore*, Judge Steele distinguished the concept of limited liability *companies* from limited liability partnerships, requiring a limited liability company to appear in court only through counsel, which such is not so required of limited liability partnerships.

In summary, the Defendant asserts that while it is not necessary to address the citizenship of Pokobo as a Delaware Limited Liability Company to sustain the diversity jurisdiction of this Court, if the Court decides that this issue need be resolved, such should be determined only after a full factual basis for such determination has been made, since the matter could not only become the basis for a controlling decision from the Third Circuit, but prospectively provide the United States Supreme Court with the opportunity to decide whether its decision in *Carden, supra,* is to be further extended to limited liability companies.

Defendant believes that there is a factual and legal basis for determining that limited liability companies are "corporations" within the meaning of 28 U.S.C. § 1332 (c) and, if necessary, requests the opportunity to present the factual basis for its position to this Court for its informed decision.

### E. FEES AND COSTS ARE NOT PROPERLY ASSESSED

Plaintiff requests that he be awarded his fees and costs in opposing Removal to this Court. Such award is inappropriate on multiple grounds. First, the Plaintiff himself characterized Pokobo as a *nominal defendant*. Defendant Kobayashi is entitled to have relied upon the Plaintiff's characterization of his own complaint, and it is clearly

established law in this Circuit that a nominal party is not to be considered in the determination of federal diversity jurisdiction. *See Bumberger, supra* at page 7.

Second, the Plaintiff has not properly characterized the nature of the claims that he purports to assert derivatively on behalf of Pokobo. The nature of the claims are *direct* not *derivative*, and Pokobo is properly considered to be a *nominal party* that is dispensable to this proceeding. In such case, removal is proper and the plaintiff is not entitled to the award of any costs or fees for opposing removal.

Third, even in the event that this Court should remand this matter back to the Delaware court on jurisdictional grounds, the issue of citizenship of a Delaware limited liability company has not been definitively addressed by this Circuit. The Defendant has presented a grounded legal and factual basis for this Court to address the issue of citizenship of a limited liability company.

For all of the above reasons, any award of fees and costs to the Plaintiff is unwarranted.

### 3.  DECLINING TO EXERCISE JURISDICTION ON ABSTENTION GROUNDS IS NOT APPROPRIATE IN THIS CASE.

Analysis of the claims that are set forth by the Plaintiff show a clear distinction between this matter and the substantial matters of statewide concern that were presented in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) from which the *Burford* doctrine arose.

In *Burford* the court was presented with an elaborate regulatory process that the court noted not only concerned the governance of every oil and gas well in the state of Texas, but would affect the revenue of the entire state of Texas and every educational and eleemosynary institution in the state. Under such circumstances, the Supreme Court

23

found it appropriate for the federal courts not to provide a "second level" of judicial review from that which the state courts of Texas had already provided.

In the present case there are not "difficult questions of state law bearing on policy problems of substantial public import…" as the Plaintiff asserts (Opening Brief, page 13). In fact, as has been discussed in the Defendant's briefs in support of his motion to transfer venue of this case to the District of Hawaii, the Defendant believes that the law of the State of Delaware is not even applicable to the operative facts upon which the Plaintiff's claims lie. The crux of the litigation is an alleged contract that was to be performed in Hawaii and which solely involves land situate in that state. Further, the Plaintiff seeks a *judicial sale* of the Hawaii property that is presently the subject of two pending cases in the state of Hawaii. To effectuate a judicial sale of the Hawaiian property (which the Defendant believes is not only improper but not within the jurisdiction of the Courts of Delaware to implement) Hawaiian law and procedures for judicial sales should control.

Thus, not only is the resolution of this case likely to have limited if any precedential effect other than resolving a dispute  two members of a limited liability company, but it is unlikely that the law of the state of Delaware will even be involved in resolving the central issue of fact to be decided in this case. The *Burford* doctrine is wholly inapplicable to a case of this nature.

Finally, the Plaintiff himself notes the limitation upon remand to a state court where a party seeks legal relief in the form of damages, as in this case. Seeking to avoid the direct limitation preventing remand in such circumstance, as set forth by the Supreme Court in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996), the Plaintiff seeks to split

his legal and equitable claims, representing in paragraph 4 of his Affidavit that *if* he prevails on *all* his claims in the Delaware state court, he would not pursue his damage claim for breach of contract in this Court.

Attempting to split his claims, and having this Court bifurcate the "breach of contract", reserving that "claim" to this Court and remanding all the other claims back to the Delaware courts so as not to directly run afoul of the *Quackenbush* limitation, is wholly impractical and prejudicial to the Defendant.

As discussed above, the breach of contract claim is the claim that will determine whether the Plaintiff or Pokobo has any rights whatsoever to the 17-Acre Parcel is a central issue to be determined in every one of the Plaintiff's counts. Plaintiff apparently seeks only to bifurcate the *remedy* arising from the breach of contract claim, not the issue itself, for if the matter is remanded, the entitlement of the plaintiff and Pokobo will be wholly dependent upon the Plaintiff prevailing on his breach of contract claim. Absent a determination of the contract issue in the Plaintiff's favor, there would be no basis for the equitable relief requested in the remaining counts of the Complaint.

The "breach of contract" claim is inseparable from the counts through which the Plaintiff seeks equitable relief. But it is not simply the *relief* that can be reserved to this Court under the Plaintiff's theory, but is the entire *cause of action* for breach of contract. If resolution of that issue is, in fact, reserved from this Court's remand of this action to the courts of Delaware, the central basis upon which the Plaintiff seeks relief – *i.e.* his claimed entitlement to an interest in the 17-Acre Parcel – could not be adjudicated. The "breach of contract" claim is central to the Plaintiff's entire Complaint, and cannot be bifurcated from the remainder of his action.

The Plaintiff has not proposed to dismiss his breach of contract claim nor the claim for damages arising from that claim. This claim thus remains in the case as a central issue to be determined in *all* the counts asserted by the Plaintiff. In such circumstance, *Quackenbush* is a direct bar to the partial remand proposed by the Plaintiff.

CONCLUSION

For the forgoing reasons, the Defendant respectfully requests that this Court deny

the Plaintiff's Motion to Remand and maintain this action on the docket of this Court for

further action as may be just and proper in the premises.

CONNOLLY BOVE LODGE & HUTZ LLP

Kevin F.  Brady (Bar No. 2248)
Christos T. Adamopoulos (Bar No. 3922)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE  19899-2207
Phone:  (302) 658-9141
Fax:      (302) 656-0116

*Attorneys for Defendant,*
*John M. Kobayashi*

OF COUNSEL:
John P. Akolt III
John C. Akolt
Law Offices of John P. Akolt III, P.C.
1022 Pearl Street
Denver, Colorado 80203
Telephone:  303-903-7029
Fax:          303-659-6077

27

## CERTIFICATE OF SERVICE

I certify that on June 29, 2005, I caused copies of Defendant's Answering Brief in

Opposition to Plaintiff's Motion to Remand to be served electronically to the following counsel

of record:

Susan Wood Waesco, Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Kevin F. Brady
(Bar No. 2248)