# EXHIBIT B

Westlaw.

Not Reported in A.2d  
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294  
(Cite as: 2000 WL 130629 (Del.Ch.))

Page 1

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.  
In re CENCOM CABLE INCOME PARTNERS, L.P. Litigation  
No. C.A. 14634.

Jan. 27, 2000.

Pamela S. Tikellis and James C. Strum of Chimicles & Tikellis, Wilmington, Delaware, Lawrence P. Kolker and Robert Abrams of Wolf Haldenstein Adler Freeman & Herz, LLP, New York, New York, for Plaintiffs, of counsel.

Daniel A. Dreisbach and Michael D. Allen of Richards, Layton & Finger, Wilmington, Delaware, Stephen B. Higgins and Robert J. Wagner of Thompson Coburn LLP, St. Louis, Missouri, for Defendants, of counsel.

*MEMORANDUM OPINION*

STEELE, Vice Chancellor.

*1 I am asked to decide whether claims brought by limited partner plaintiffs related to liquidation of the partnership are derivative claims or direct claims. The general partner defendant contends the claims are derivative and should therefore be dismissed for failing to meet the pleading requirements of Court of Chancery Rule 23.1. Plaintiffs disagree and ask that I certify a class action so that they may pursue these claims directly.

If: (1) a business association consists of only two parties in interest, one a putative class of injured plaintiffs and the other the defendant party that controls the business association; and, (2) the business association is effectively ended, but for the winding up of its affairs; and, (3) the two sides oppose each other in the final dispute over the liquidation of that association; then a claim brought in that context is direct. Under those circumstances, which are the facts of this case, classifying claims of collective injury as derivative ignores the reality that the dispute is really between the *only* two entities that make up the business association--the limited partner class and the general partner. It is not an action brought on behalf of the partnership itself.

Accordingly, I deny defendant's motion for judgment on the pleadings and grant the plaintiffs' motion for class certification.

Defendants have also filed a motion to dismiss plaintiffs' supplemental complaint which seeks to enjoin the general partner's advancement of litigation expenses to itself from partnership funds. Defendant's motion to dismiss this complaint rests exclusively on the argument that the claims in the complaint are derivative. For the same reasons articulated above, I deny the motion to dismiss the supplemental complaint. Further, for reasons explained below, I grant plaintiffs' request for a permanent injunction. Defendant is ordered to refrain from taking additional advances and to account for and return all prior advances.

I. Background

In late 1995, limited partners of Cencom Cable Income Partners, L.P sought to enjoin the sale of partnership assets being conducted by the general partner as part of the partnership's dissolution. On February 15, 1996, I denied the limited partners' motion to enjoin the sale.

On October 19, 1996, the plaintiffs filed a consolidated amended class action complaint alleging that the defendant general partner breached the partnership agreement and breached its fiduciary duties to a putative class of all limited partners. In early February, 1997, the defendant moved for summary judgment. In March, 1997, the plaintiffs moved for certification of a class of:

All unitholders of Cencom Cable Income Partners, L.P. as of October 3, 1995, or their successors in interest, except defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

The parties agreed to stay the class certification motion until the Court had ruled on the defendants' motion for summary judgment. On October 15, 1997, I granted summary judgment to the general partner on all but five claims. The five remaining claims are:

*2 1. Breach of a duty, voluntarily assumed by the general partner in the sale's disclosure statement, to have the law firm of Husch and Eppenberger provide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

an independent legal evaluation of the sale transaction upon which the limited partners could rely.

2 Breach of the partnership agreement by improperly terminating priority cash distributions owed to the limited partners under § 7.3 of the agreement.

3. Breach of the fiduciary duty of candor by failing to disclose the cash flows underlying the valuations of the Partnership.

4. Breach of the duty of loyalty by giving certain information to only one of three separate appraisers valuing the partnership's assets, allegedly in order to manipulate the ultimate appraisal figures.

5. Breach of the Partnership Agreement by not valuing the assets on a "going concern" basis, resulting in the partnership receiving less than the assets were worth.

In late February, 1998, the general partner moved for judgment on the pleadings on these five remaining claims, arguing that they are derivative claims that plaintiffs did not properly plead because plaintiffs never pleaded demand refused or, alternatively, pleaded why demand would be futile. [FN1]

> FN1. Court of Chancery Rule 23.1.

Later in 1998, the limited partners filed a supplemental complaint seeking to enjoin preliminary and permanently the general partner from advancing itself litigation expenses from partnership funds and to force it to repay any litigation expenses already advanced. The limited partners allege that these advances violate the Partnership Agreement. The general partner also moves to dismiss this claim on grounds that the claim is derivative and has not been properly pleaded.

Presently, I must rule on: (1) defendant's motion for judgment on the pleadings on the five remaining claims; (2) defendant's motion to dismiss the supplemental complaint; (3) the plaintiffs' motion for certification of a class of all limited partners; and, (4) the plaintiffs' motion for preliminary and permanent injunction.

II. Discussion

This case presents a situation very familiar to this Court: passive investors in a business enterprise seek redress against the entity controlling the affairs of that enterprise for alleged breaches of duties owed to those passive investors. When this dispute arises in the corporate context, the Court of Chancery is well served by a highly developed body of common law explaining principles that govern resolution of these disputes. Mechanistically applying the corporate common law rules surrounding derivative claims can sometimes defeat efficient resolution of claims made in other contexts, however. In cases like the present one involving alternative business entities, the Court looks at corporate law precedent but, while doing so, recognizes the need for flexibility in determining its applicability.

I will begin by addressing the five remaining claims, dealing first with the three of these claims that are clearly direct and then with the other two of these claims, which only appear to be derivative. I will then briefly discuss class certification. Finally, I will discuss the plaintiff's motion for preliminary and permanent injunction.

III. The Five Remaining Claims: Derivative Versus Direct

A. The Legal Standard

*3 Determining whether a claim is derivative or direct requires application of a rather subtle test. [FN2] The distinction between direct and derivative claims depends upon " 'the nature of the wrong alleged' and the relief, if any, which could result if the plaintiff were to prevail." [FN3] In drawing this distinction, I must look to the body of the complaint itself and not to either party's characterization of the claims. [FN4]

> FN2. DONALD J. WOLFE, JR. AND MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 9-2(a), at 517 (1998).
>
> FN3. *Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1213 (1996) (quoting *Kramer v. Western Pacific*, 546 A.2d 348, 352 (1988), quoting *Elster v. American Airlines, Inc.*, Del.Ch., 100 A.2d 219, 221-23 (1953)).
>
> FN4. *Litman v. Prudential Bache Properties, Inc.*, Del. Ch., 611 A.2d 12, 15 (1992).

A direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights. [FN5] On the other hand, a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00330-SLR    Document 13-3    Filed 06/29/2005    Page 4 of 9

Not Reported in A.2d                                                                                              Page 3
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

derivative claim states injury against and seeks relief for a business association as a whole. Any relief flowing to the association's participants as individuals only comes to them indirectly, by way of their pro-rata stake in the association.

> FN5. *Moran v. Household Int'l, Inc.,* Del Ch., 490 A.2d 1059, 1070 (1985)

In the partnership context, the relationships among the parties may be so simple and the circumstances so clear-cut that the distinction between direct and derivative claims becomes irrelevant. I find this to be true where a partnership is in liquidation and *all* non-defendant partners in the resulting litigation constitute a uniform class of limited partners. When this is the case, superimposing derivative pleading requirements upon claims needlessly delays ultimate substantive resolution and serves no useful or meaningful public policy purpose.

B. The Clearly Direct Claims

(i) Voluntary Duty to Provide Counsel for Limited Partners

Plaintiffs allege that the general partner breached a voluntarily assumed duty to ensure that the law firm of Husch & Eppenberger would provide the limited partners independent counsel on which they could rely in deciding how to vote on the sale of partnership assets. As I stated in my Second Memorandum Opinion, the general partner appears to have assumed this duty to "actually confer a benefit on the Limited Partners or ... to induce their approval." [FN6] It is clear to me that a breach of this duty directly injures the limited partners. Accordingly, I deny defendant's motion for judgment on the pleadings for this claim.

> FN6. *In re Cencom Cable Income Partners, L.P. Litig.,* Del. Ch., C.A. No. 14634, mem. op. at 16, Steele, V.C. (Oct. 15, 1997), *motion for reargument denied, In re Cencom Cable Income Partners, L.P. Litig.,* Del. Ch., C.A. No. 14634, Steele, V.C. (Nov. 26, 1997).

(ii) Termination of Distributions

Plaintiffs allege that the general partner improperly terminated the limited partners' priority cash distributions in violation of § 7.3 of the Partnership Agreement. Defendant attempts to portray this claim as accruing to the entire partnership and, thus, as a derivative claim. I am simply not persuaded by defendants' attempt to gloss over the plain fact that § 7.3 clearly confers an economic benefit exclusive to the limited partners.

The defendants argue that this claim is derivative because plaintiffs make "no claim that certain limited partners were treated more or less favorably than others ... this action is alleged to injure all limited partners in equal proportion to the amount of the units owned." [FN7] They say that a claim for which the injury "falls equally upon all investors ... must be pursued derivatively." [FN8] While I agree with their view that the alleged injury applies to *all* limited partners, I find that this injury affects only these limited partners as a distinct class within the partnership and is not brought to benefit the entire partnership. It is the limited partners alone that allegedly suffer injury here based upon the general partner's alleged failure to confer the economic benefit to which the limited partners are entitled by contractual right under § 7.3 of the Partnership Agreement. In the corporate context, if a class of preferred shareholders alleged that they were denied a priority right conferred exclusively on them by the controlling substantive corporate documents (i.e. charter, by-laws, or by a certificate), they would have a direct action. This basic premise likewise applies in the context of a limited partnership.

> FN7. Opening Brief in Support of Defs.' Mot. for Judgment on the Pleadings at 9.

> FN8. Id.

*4 Defendant's motion for judgment on the pleadings for this claim is denied.

(iii) Disclosure of Valuation Summaries

Plaintiffs allege that the defendant breached its duty of candor by failing to disclose the cash flows underlying the valuations of the partnership assets. It is easily conceivable that this type of disclosure would bear directly upon each Limited Partner's individual judgment about how to vote on the challenged transaction. Inadequate disclosures bearing on individual investors' right to cast a fully informed vote constitute direct claims. [FN9] Thus, this claim is direct and defendant's motion for judgment on the pleadings for this claim is denied.

> FN9. *Wells Fargo & Company v. First Interstate Bancorp.,* Del. Ch., C.A. No. 14696, 14623, mem. op. at 8, Allen, C. (Jan.

Case 1:05-cv-00330-SLR    Document 13-3    Filed 06/29/2005    Page 5 of 9

Not Reported in A.2d                                                                Page 4
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

18, 1996) ("disclosure claim(s) ... are quite obviously individual as they affect the right to vote or the personal right to determine if one will sell or not one's investment").

C. Claims that appear Derivative

The two remaining claims of the five that survived summary judgment, breach of duty of loyalty and breach of the partnership agreement in connection with the appraisal process, at first appear derivative in nature since the alleged injury devalues the partnership's assets. Such a devaluation is a collective type of injury that appears only to affect the plaintiffs through the partnership form.

In this case, however, the partnership's business is complete, the liquidation sale is over, and the only two parties to the partnership are now clearly adversaries. Further, the remaining claims only challenge the conduct of the general partner in the final sale transaction, not any ongoing conduct, and the claims have already survived one summary judgment motion. For those reasons, the purposes for classifying claims as derivative and, in particular, the reasons for its attendant demand rule, are not present here. As a result, I find that my imposing derivative requirements on these two claims would only set up a legal artifice that has no justification and, therefore, put plainly, makes no sense.

Classifying claims to be derivative has two discernible purposes. First, it ensures that injury to a whole association is adjudicated on behalf of that whole and not just for the benefit of the individuals who have undertaken to pursue the claims. Second, it carries out the desired public policy of galvanizing a governing entity within the business association into taking action to redress injury on behalf of the business. Demand on the entity to do so is required unless there is reasonable doubt regarding the entity's disinterest or valid exercise of business judgment. [FN10]

> FN10. *Aronson v. Lewis.* Del.Supr. 473 A.2d 805 (1984)

(i) Reason # 1 for Derivative Actions: Claim Consolidation

As to the first reason above for derivative classification (to ensure claims owing to an entire business association are brought on its behalf) I find that the claims here are not derivative, but direct, because the *only* injured party that may recover on these claims is in fact a class of all limited partners. It is an elementary principle of equity that defendants found liable for breaches of either fiduciary duties or contractual arrangements should not benefit from any remedy for these breaches. The practical effect of this is to exclude the defendant from the group of those that may potentially recover.

*5 In *Wells Fargo & Company v. First Interstate Bancorp,* [FN11] Chancellor Allen noted how the often murky distinction between derivative and direct claims may turn upon the scope of the class of claimants seeking relief. Though Chancellor Allen writes in the corporate context he suggests a practical approach that I find instructive:

> FN11. Del. Ch., C.A. No. 14696, 14623, mem. op. at 7, Allen, C. (Jan. 18, 1996).

Perhaps the best way to view these kinds of cases is to consider the remedy that may be appropriate. Where the remedy in a shareholder action will necessarily affect *all shareholders* .... not only is such a case permissible as a class claim (Rule 23(b)(1)) but, speaking prudentially, protection of all interests require that it be litigated once, for all (Rule 23.1). A derivative characterization accomplishes that result. [FN12]

> FN12. *Id.* (Emphasis added)

Reading Chancellor Allen's analysis reinforces my finding that the plaintiffs' claims are best suited to Rule 23(b)(1), not Rule 23.1.

Similarly, in the Court's recent decision in *In re Gaylord Container Corporation Shareholders' Litigation,* [FN13] Vice Chancellor Strine incisively analyzed how the potential inclusion of culpable parties in the class due relief may affect the distinction between the derivative and direct claims. While Vice Chancellor Strine's decision in *Gaylord* fell in the context of fiduciary duty breaches (under *Unocal v. Mesa* [FN14]) resulting from corporate defensive takeover measures, I find that his comments support a finding that the limited scope of the group of claimants seeking relief justifies labeling these claims as direct. [FN15]

> FN13. Del. Ch., C.A. No. 14616, Strine, V.C. (August 10, 1999).
>
> FN14. Del.Supr., 493 A.2d 946 (1985).
>
> FN15. *Id.* at 8, stating,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00330-SLR   Document 13-3   Filed 06/29/2005   Page 6 of 9

Not Reported in A.2d
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

Page 5

A consideration of which stockholders should recover damages in a case where the directors, as well as the public stockholders, hold stock and the plaintiffs demonstrate ... monetary harm to the stockholders also suggests an individual characterization of claim. *Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1213 (1996) (indicating that the relief which would flow to plaintiff is relevant to the derivative-individual claim distinction). In a case where wrongfully erected defenses are proved to have damaged the stockholders ... should the directors be entitled to recover damages for the economic injury they inflicted on themselves as stockholders? If the answer is no because of the fact that they created the harm, this factor would support awarding relief to the class of innocent stockholders, not to the corporation.

*(ii) Reason # 2 for Derivative Actions: The Demand Rule*

"The demand rule is intended [1] to act as a gatekeeper to both encourage extra judicial intra-corporate solutions to internal problems and [2] to bar meritless claims of self-interested decision making." [FN16] Imposing demand requirements here would serve neither of these purposes.

> FN16. *Seaford Funding Limited Partnership v. M & M Associates II, L.P.*, Del. Ch., 672 A.2d 66, 71 (1995).

As the partnership is in liquidation, there is no need to push plaintiffs into pursuing intra-partnership remedies. Further, I do not find that the general partner's authority is undercut by permitting a limited partner class to directly pursue these two claims.

Second, derivative classification here will not serve the purpose of barring "meritless claims of self-interested decision-making." These two claims have been shown meritorious enough to survive a motion for summary judgment. At this post-liquidation phase in the life of the partnership, and as the general partner obviously opposes all of the claims in this litigation, it is difficult for any reasonable person to expect that demand could be made with any hope of success. Application of the rule in this context evokes vestiges of arcane medieval canon law.

I find this case quite different from *Litman v. Prudential-Bache Properties, Inc.*, in which Vice Chancellor Chandler found a claim alleging diminution of value of partnership units in an *ongoing* partnership to be derivative. In the present case, the partnership is not ongoing, but is ended. Once the enterprise is terminated and the fiduciaries have acted to wind up the finances of the enterprise, the demand rule's purposes become irrelevant. To now classify these claims as derivative, purely as a matter of form, and to institute "demand analysis" only serves to impede efficient and final resolution of the remaining claims against those fiduciaries.

Equity holds Substance over Form

*6 Plaintiffs argue that since they seek relief from the general partner's actions the imposition of derivative and demand requirements exalts the partnership form over the substance of this intra-partnership dispute. I agree with plaintiffs. With the partnership in dissolution the "partnership" entity is simply an artifice representing the relationship between two legally juxtaposed parties and is no longer relevant as a distinct legal creature for the purpose of resolving the final claims between these parties.

I am not prone to mechanistic or formalistic application of pleading requirements where doing so only tends to frustrate efficient claim resolution. "Unless prevented by some positive and mandatory law, equity regards substance rather than form." [FN17] I find the claims for breach of fiduciary duty and breach of the partnership agreement are, in substance, direct claims and may be prosecuted by a class of the limited partners, under Rule 23(b)(1). The defendant's motion for judgment on the pleadings on these two claims is denied.

> FN17. *Phillips Petroleum Co. et al. v. Arco Alaska, Inc. et al.*, Del. Ch., C.A. No. 7177, mem. op. at 13, Jacobs, V.C. (July 9, 1986) (citing *Judah v. Shanghai Power Co.*, Del.Supr., 494 A.2d 1244, 1249 (1985), *Monroe Park v. Metropolitan Life Insurance Co.*, Del.Supr., 457 A.2d 734, 737 (1983).).

D. Certification of the Limited Partner Class

Pursuant to Court of Chancery Rule 23(b)(1) the plaintiffs request certification of a class of all limited partners (excluding any defendants here) for pursuing the remaining claims. The only opposition to this motion came on grounds that the claims were derivative and thus not the subject matter of a Rule 23(b)(1) class action, but of Rule 23.1 derivative action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d   Page 6
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

I have ruled that Rule 23.1 does not apply in these circumstances and in doing so have rejected the sole argument raised against certification of a class of limited partners. I find that the facts of this case lend themselves to certification of a plaintiff class consisting of:

> All unitholders of Cencom Cable Income Partners, L.P. as of October 3, 1995, or their successors in interest, except defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the defendants.

The plaintiffs' motion for class certification is granted.

E. Supplemental Complaint for Preliminary and Permanent Injunction

In their supplemental complaint, plaintiffs move to enjoin the general partner's use of partnership monies to fund its defense in this litigation and seek the return of any advances already made. Specifically, the plaintiffs argue that § 4.6C of the partnership agreement prohibits the general partner from advancing itself litigation expenses in any lawsuit brought by a limited partner.

(i) Motion to Dismiss the Supplemental Complaint

For the same reasons that I found the above claims direct, I find that derivative treatment here would ignore the reality of this litigation and the facts of this case. Further, "courts have been more prepared to permit the plaintiff to characterize the action as direct when the plaintiff is seeking only injunctive or prospective relief." [FN18] The defendant's motion to dismiss the supplemental complaint is denied.

> FN18. *Grimes v. Donald,* Del.Supr., 673 A.2d 1207, 1213 (1996) (quoting § 7.01 Comment D, The American Law Institute Principles of Corporate Governance: Analysis and Recommendations (1992)).

(ii) The Merits of the Complaint

*7 Plaintiffs may obtain a preliminary injunction if they establish the following three elements: (1) a reasonable likelihood of success on the merits, (2) imminent, irreparable harm will result if an injunction is not granted and (3) the damage to Plaintiff if the injunction does not issue will exceed the damage to the defendants if the injunction does issue. [FN19] For a permanent injunction the factors are the same, except that the plaintiff must actually succeed on the merits. This relief is extraordinary and the test is stringent.

> FN19. *Mills Acquisition Co. v. Macmillan, Inc.,* Del.Supr., 559 A.2d 1261, 1279 (1989).

(a) Success on the Merits

The plaintiffs not only demonstrate reasonable likelihood of success but they have conclusively shown that the Partnership Agreement prohibits advances to the general partner for any litigation in which the limited partners are plaintiffs.

§ 4.6C of the Partnership Agreement [FN20] states, in pertinent part:

> FN20. Supplemental Compl., Ex. 2.

Expenses incurred by an Indemnitee in defending any legal action subject to this Section 4.6 shall, from time to time, be advanced by the Partnership prior to the final disposition of such legal action; provided that (i) such legal action relates to the performance of duties or services by such Indemnitee on behalf of the Partnership, (ii) such legal action is initiated by a third party who is not a Limited Partner, and (iii) the Partnership has received an undertaking given by or on behalf of the Indemnitee to repay such amount unless it shall be determined that such an Indemnitee is entitled to be indemnified as authorized in Section 4.6. [FN21]

> FN21. "Indemnitee" is defined as "the General Partner and its affiliates" individually. The Agreement, § 4.6B.

I am asked to choose here between two readings of this provision. The plaintiffs argue that this provision sets out the only conditions under which the general partner will be advanced litigation expenses. They say the above three limitations, in particular the limitation conditioning advances on the plaintiffs' not being limited partners, must be fulfilled or no advances will be paid.

The defendant answers that the use of the word "shall" means that § 4.6C merely specifies conditions under which advances are mandatory. Defendant suggests that, absent a mandatory negative limitation, it may make these advances discretionarily, pursuant to its exclusive authority to "manage and control the business affairs of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294  
**(Cite as: 2000 WL 130629 (Del.Ch.))**

Page 7

Partnership ... and to take all such actions ... as it deems necessary or appropriate to accomplish the purposes of the Partnership." [FN22] Defendant also contends its right to these advances is consistent with its right to indemnification under the Agreement and under Delaware limited partnership law, 6 Del. C. § 17-108 (1990).

FN22. § 4.1 of the Agreement.

I reject the defendant's arguments wholesale. First, I find that the defendant's reading of this provision would render the limiting language completely superfluous:
> "Expenses incurred by an Indemnitee ... shall be advanced ... provided that ... (ii) such legal action is initiated by a third party who is not a Limited Partner."

From this the parties present two conflicting readings:
*8 (1) Plaintiff's reading:
The legal action for which the general partner seeks advancement must have been initiated a third party, not a limited partner or the expenses incurred by an Indemnitee (the general partner) shall not be advanced.
(2) Defendant's reading:
Even if this legal action is initiated by a Limited Partner, expenses incurred by an Indemnitee (the general partner) *may* be advanced based on the Indemnitee's general discretion.

In my view, the defendant's reading simply does not comport with the existence of the limiting language, because it renders the limitation on the Indemnitee wholly illusory. The only reasonable reading of § 4.6C is that while it ensures the conditions under which advances shall be made, it also specifies, by reverse inference, when the advances shall *not* be made.

After misconstruing the language of § 4.6C, defendant goes on to argue that it has "discretionary" authority to award these advances based on its own broad, general management powers under § 4.1 of the Agreement. I find this highly dubious, given the clarity of the § 4.6C limitation. In short, defendant asks me to believe that § 4.1 grants it the discretionary power to circumvent the plain limitation of § 4.6C. It is obvious that the defendant did not have the benefit of reading the Court's recent decision in *Sanders v. Wang* [FN23] which reflects an adherence to the principle that general discretionary provisions in contracts, such as found in § 4.1 here, may not be fairly read as negating explicit limitations found elsewhere in the contract. Accordingly, defendant violates the Partnership Agreement by advancing itself any Partnership funds in this litigation.

FN23. Del. Ch., C.A. No. 16640, mem. op. at 9, Steele, V.C. (November 10, 1999).

(b) Balancing of the Equities

I find that the equities heavily favor the plaintiffs. The plaintiffs are passive investors who have raised colorable claims about the defendant's conduct. Further, § 4.6C provides them a reasonable expectation that their investment will not be drained by the general partner in defending itself against their grievances. No investor in an entity party to an agreement *with a provision such as § 4.6C* should expect to be forced to fund the litigation for the very party that it has hailed into court.

Conversely, I find the defendant's advances indefensible. Defendant's actions are precisely the conduct that the Agreement sought to prevent: the general partner's draining the fixed resources of the partnership to defend itself from claims brought by limited partners.

(c) Imminent, Irreparable Harm

I find that the element of imminent, irreparable harm also favors the plaintiff. The partnership is possessed of fixed assets at this stage and the insurance proceeds from which it may draw have a definite ceiling. The fact that this litigation has not even reached trial indicates that any advancement of funds to the general partner to defend itself will continue to deplete partnership assets at increasing risk to the limited partners.

*9 It is true that this complaint seeks return of monies already paid. It also seeks to prevent further actions breaching a clear agreement which makes injunctive relief inappropriate. The fact that this relief consists of easily calculable dollar amounts or that they are merely advances which *may* be repaid at some late date does not convince me that injunctive relief should not be awarded here. [FN24] The bottom line is that, quantifiable or not, the funds were wrongfully advanced and will continue to be absent injunctive relief. Imminent, irreparable harm will continue absent immediate injunction relief and the mandatory return of improperly advanced funds.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                    Page 8
2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294
**(Cite as: 2000 WL 130629 (Del.Ch.))**

> FN24. See *Cantor Fitzgerald, L.P. v. Cantor,* Del. Ch., 724 A.2d 571, 579 (1998) (holding the elements of an injunction are not necessarily evenly weighted; and a strong showing on one element may overcome a weak showing on another element).

### IV. Conclusion

I grant plaintiffs' motion for a permanent injunction. Defendant is ordered to cease any further use of partnership funds in this action, to account for all funds already advanced, and to return these funds to the partnership's general account.

Defendant's Motion for Judgment on the Pleadings and to Dismiss the Supplemental Complant *are denied.* Plaintiff's Motion for Class Certification is *granted.*

Plaintiff will provide an appropriate order approved as to form.

2000 WL 130629 (Del.Ch.), 26 Del. J. Corp. L. 294

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.