# EXHIBIT C

Westlaw

Not Reported in F.Supp.2d
2001 WL 940909 (D.Del.)
(Cite as: 2001 WL 940909 (D.Del.))

Page 1

C
Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Quentin KETTERSON, et al., Plaintiffs,
v.
Douglas H. WOLF, et al., Defendants.
**No. Civ.A. 99-689-JJF.**

Aug. 14, 2001.

Charlene Davis, and Richard L. Abbott, of the Bayard Firm, Wilmington, Delaware, Z. Lance Samay, Morristown, New Jersey, for Plaintiffs, of counsel.

R. Franklin Balotti, and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Richard J. Idell, of Idell, Berman & Seitel, San Francisco, California, for Defendant Douglas H. Wolf, of counsel.

R. Franklin Balotti, and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, Delaware, Richard B. Cooper, and Erik W. Kvam, of Cooper, Brown & Behrle, P.C., New York, New York, for Defendant Richard G. Buckingham, of counsel.

Andre G. Bouchard, and Joel Friedlander, of Bouchard Margules & Friedlander, Wilmington, Delaware, Robert L. Fila, Columbia, Maryland, for Defendant W. Lawrence Patrick, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I.75), and Defendant W. Lawrence Patrick's Motion to Dismiss (D.I.79), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Court will grant the motions.

BACKGROUND
The Amended Complaint filed in this action alleges the following facts. Plaintiff Quentin Ketterson ("Mr.Ketterson") is an investment banker based in New Jersey who is engaged in the business of facilitating transactions in the broadcast and computer software industries. Mr. Ketterson created Plaintiff Triangle Broadcasting Company, L.L.C. ("Triangle")(collectively "Plaintiffs"), which is a Delaware limited liability company, in the fall of 1995 "for the express purpose of specializing in acquiring control of, or in any way facilitating the sale of, the stock of broadcasting companies, which own groups of TV and/or radio stations." Defendant Douglas H. Wolf ("Mr.Wolf"), from San Francisco, California, and Defendant Richard G. Buckingham ("Mr.Buckingham"), from New York, are both attorneys and businessmen who specialize in "facilitating tax-driven business transactions." Defendant W. Lawrence Patrick ("Mr.Patrick") is a Maryland attorney who owns Patrick Communications Corporation, a radio and television station brokerage firm (the individual defendants are collectively "Defendants").

Mr. Ketterson and Mr. Patrick, who were introduced by a mutual friend in early 1995, agreed to become equal partners in a business of "soliciting broadcast station sellers, buyers and brokers." In July of 1995, as a result of their initial work on this venture, Mr. Ketterson and Mr. Patrick were introduced to Mr. Buckingham, who at the time was affiliated with Mr. Wolf in an unincorporated association. Mr. Ketterson and Mr. Patrick were impressed with some of Mr. Buckingham's business proposals and sought to work with him in the future. In anticipation of working with Mr. Buckingham and Mr. Wolf, on or about August 1, 1995, Mr. Ketterson and Mr. Patrick executed a letter agreement establishing a partnership in which they would equally share any compensation earned as a part of their dealings with Mr. Buckingham and Mr. Wolf. At the end of October 1995, after several weeks of frequent communications among all four individuals, Mr. Ketterson and Mr. Patrick agreed with Mr. Buckingham and Mr. Wolf to formalize their business relationship by executing an agreement to create Triangle, a Delaware limited liability company, in which each individual would have a 25% interest. According to the terms of the agreement, Triangle's existence was effectuated on November 20, 1995. The purpose of Triangle was to "pursue and facilitate broadcast station sales transactions."

During the ensuing months, Mr. Ketterson and Mr.

Not Reported in F.Supp.2d  
2001 WL 940909 (D.Del.)  
**(Cite as: 2001 WL 940909 (D.Del.))**

Page 2

Patrick began working on Triangle's behalf, when, in February of 1996, they learned that Mr. Buckingham and Mr. Wolf had recently completed a $165 million broadcast station stock sale separate from Triangle's business operations. Mr. Ketterson and Mr. Patrick continued to learn of other independent business activities in which Mr. Buckingham and Mr. Wolf had been engaging, and the controversy among the four escalated in July of 1996 when Mr. Wolf expressed reluctance "to honor his contractual commitment to share equally Triangle's earnings with [Mr. Ketterson and Mr. Patrick]."

*2 Despite their concerns about Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick continued to work in securing transactions for Triangle, and they regularly sent Mr. Buckingham and Mr. Wolf update letters to detail their progress. In response to one of these letters, in August of 1996, Mr. Buckingham and Mr. Wolf informed Mr. Ketterson and Mr. Patrick of their desire to "redefine" their relationship. Rather than resisting and possibly irreparably damaging their relationship with Mr. Buckingham and Mr. Wolf, Mr. Ketterson and Mr. Patrick drafted a modification of their agreement reducing their respective share of Triangle's profits.

In October 1996, Mr. Ketterson received a copy of a letter authored by Mr. Patrick that indicated that Mr. Ketterson had been completely excluded from a number of completed and pending Triangle transactions. On November 11, 1996, Mr. Ketterson received a letter from Mr. Buckingham and Mr. Wolf in which the two "purported to 'withdraw' from Triangle retroactively to August 1996." Mr. Ketterson quickly objected in writing to "the impropriety of the action of [Mr. Buckingham and Mr. Wolf in totally usurping Triangle's business and circumventing the LLC Agreement." In December 1996, Mr. Buckingham and Mr. Wolf informed Mr. Patrick that he could maintain his financial relationship with them, and could be indemnified by them, only if Mr. Patrick agreed to (1) withdraw from Triangle, (2) accept $140,000 as his share of earnings for all of his contributions to Triangle to that date, (3) exclude Mr. Ketterson from any future broadcast station transaction, and (4) deprive Mr. Ketterson of any monies owed to him and of any legal rights that he may have possessed. Mr. Patrick eventually sent a letter to Mr. Ketterson on December 24, 1996, that expressed his desire to formally end his business relationship with Mr. Ketterson and stating that he would continue doing business with Mr. Buckingham and Mr. Wolf. On May 27, 1997, Mr. Ketterson authored a letter to Mr. Buckingham and Mr. Wolf which demanded an accounting of all of Triangle's profits, but Mr. Ketterson received no response. His follow-up phone calls in late 1997 and early 1998 also went unanswered.

On November 10, 1998, Plaintiffs (Mr. Ketterson and Triangle) filed an action in the United States District Court for the District of New Jersey. (D.I. 88 at 1). Plaintiffs' Amended Complaint asserts claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of fiduciary duties, (4) conversion, (5) oppressive conduct, (6) fraud and conspiracy to defraud, (7) unjust enrichment, and (8) tortious interference with business opportunities, and it also demands an accounting of all of Triangle's profits. On October 14, 1999, the New Jersey court transferred the action to this Court because of improper venue. (D.I. 88 at 2). Defendants filed the instant motions on March 10, 2000, seeking dismissal of Plaintiffs' Amended Complaint due to lack of subject matter jurisdiction. (D.I. 88 at 2).

DISCUSSION

*3 In order for the Court to have subject matter jurisdiction of an action containing only state law claims, there must be "complete diversity [of citizenship] between all plaintiffs and all defendants." _Development Fin. Corp. v. Alpha Hous. & Health Care, Inc._, 54 F.3d 156, 158 (3d Cir.1995). The burden to establish jurisdiction is on the plaintiff. _Kokkonen v. Guardian Life Ins. Co of Am._, 511 U.S. 375, 377 (1994). Thus, in this case, if Plaintiffs fail to establish that the citizenship of every Defendant is different than the citizenship of every Plaintiff, the Court lacks jurisdiction and it must grant Defendants' motions.

A. Citizenship of a Delaware Limited Liability Company

In order to resolve Defendants' motions, the Court must resolve the issue of a Delaware limited liability company's citizenship for diversity of jurisdiction purposes. After a review of the available case law, the Court concludes that a limited liability company is a citizen of the states of which its individual members are citizens. See _Carden v. Arkoma Assocs._, 494 U.S. 185, 187-192 (1990)(holding that only corporations, and not other business entities such as limited partnerships, are considered citizens of the state which created it); _Handelsman v. Bedford Vill. Assocs. Ltd. P'ship_, 213 F.3d 48, 51-52 (2d Cir.2000)(holding that limited liability companies have the citizenship of all of its members).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 940909 (D.Del.)
(Cite as: 2001 WL 940909 (D.Del.))

Page 3

Since Plaintiff Triangle is a Delaware limited liability company and Defendants were all indisputably members of Triangle, the only way for there to be complete diversity in the instant case is if each Defendant effectively withdrew from Triangle, and that after such withdrawal, each Defendant was a citizen of a different state than each Plaintiff. However, as explained below, the Court concludes that Plaintiffs have failed to adequately allege such facts.

B. Defendants' Motions Raise Facial Challenges to the Court's Jurisdiction

Two types of Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may be brought by a defendant. One is a facial challenge to the Court's jurisdiction. _Gould Elecs. Inc. v. United States_, 220 F.3d 169, 176 (3d Cir.2000). When asserting a facial challenge, a defendant contends that the complaint alleges facts that, even if true, would not be sufficient to establish the court's jurisdiction. _Id._ In deciding a facial challenge, a Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." _Id._ However, a defendant can also assert a factual challenge to the court's subject matter jurisdiction, which contends that the allegations in the complaint establishing jurisdiction are not sufficiently supported by the facts. _Id._ When considering a factual challenge, a court can consider evidence outside of the pleadings. _Id._

In the instant case, Defendants' motions present facial challenges to the Court's jurisdiction. In their motions, Defendants contend that Plaintiffs refuse to allege in their Amended Complaint that Defendants effectively withdrew from Triangle. (D.I. 96 at 7)(noting that the Amended Complaint repeatedly refers to Defendants' "purported" withdrawal). Thus, the Court concludes that it can only review and consider the Amended Complaint and its attached documents when resolving Defendants' motions.

*4 After reviewing Plaintiffs' Amended Complaint, it is clear that Plaintiffs do not allege that Defendants effectively withdrew from Triangle. Thus, Plaintiffs have failed to satisfy their burden of pleading the basis for the Court's jurisdiction, and Defendants' motions to dismiss must be granted.

C. Plaintiffs Do Not Even Contend that the Amended Complaint Sufficiently Pleads the Basis of the Court's Jurisdiction

Plaintiffs contend that the Court should not construe Defendants' challenge as a facial challenge because there is a dispute of material fact as to whether or not Defendants effectively withdrew from Triangle. In particular, Plaintiffs cite to a complaint and its attached documents that Defendants filed in the Delaware Court of Chancery ("Chancery Court") seeking a declaratory judgment that Defendants had effectively withdrawn from Triangle in 1996. [FN1] (D.I. 88 at 2, 11-12). Because Defendants' present motions raise facial challenges to the Court's jurisdiction, the Court concludes that whether or not Defendants actually withdrew is irrelevant. What is relevant is whether Plaintiffs have pleaded facts that establish that Defendants withdrew. Plaintiffs have not, and therefore, their contentions in opposition to Defendants' motions are unsupported. [FN2]

> FN1. The Chancery Court action has been stayed pending resolution of the instant action. (D.I. 88 at 2).
>
> FN2. It appears that Plaintiffs have made certain tactical decisions when drafting their pleadings, but the Court is limited by the facts pleaded when deciding Defendants' motions. _Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co._, 177 F.3d 210, 222 n. 13 (3d Cir.1999)(stating that, even if the parties do not dispute that diversity of citizenship exists, the complaint still must allege facts establishing diversity, or dismissal is warranted).

Plaintiffs contend that the Chancery Court complaint can be considered by the Court in resolving the instant motions, despite the Court's conclusion that Defendants' motions raise facial challenges, because the complaint is a public record. (D.I. 88 at 11)(citing _Pension Benefit Guar. Corp. v. White Consol. Indus., Inc._, 998 F.2d 1192, 1196-97 (3d Cir.1993)). However, the cases that have allowed consideration of public records involved Rule 12(b)(6) motions to dismiss, and the Court concludes that to allow consideration of public records on a Rule 12(b)(1) facial challenge would be to disregard the facial challenge/factual challenge distinction. _See Gould_, 220 F.3d at 176 n. 6 (extending _Pension Benefit_ to allow consideration of documents attached to a complaint when deciding a Rule 12(b)(1) facial attack, but not discussing whether or not it would also allow consideration of public records); _Bell Atl.-Pa., Inc. v. Pennsylvania Pub. Util. Comm'n_, 107

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 940909 (D.Del.)
**(Cite as: 2001 WL 940909 (D.Del.))**

Page 4

F.Supp.2d 653, 658-59 (E.D.Pa.2000)(discussing how Courts can consider public records when analyzing Rule 12(b)(6) motions to dismiss, but recognizing that Rule 12(b)(1) motions to dismiss are analyzed under a different standard than Rule 12(b)(6) motions, and further, that can courts can consider documents outside the pleadings when analyzing Rule 12(b)(1) motions only if the motion presents a factual challenge). [FN3]

> FN3. One court has held that public records can be considered by a court in deciding a Rule 12(b)(1) facial challenge. *Hunter v. United States,* 2000 WL 1880257, at *3 (M.D.Pa. Dec. 15, 2000). The court noted that, when discussing what materials may be considered by a court in determining a Rule 12(b)(1) facial challenge, the *Gould* court cited *Pension Benefit,* which involved a Rule 12(b)(6) motion. *Id.* Since the *Pension Benefit* court allowed consideration of public records, the court in *Hunter* reasoned that *Gould* implicitly allows for the consideration of public records when deciding a Rule 12(b)(1) facial attack. *Id.* The court reasoned that this conclusion "comports with the fact that both a Rule 12(b)(6) motion and a Rule 12(b)(1) facial attack argue that the propriety of dismissal is apparent from the face of the complaint." *Id.* The Court concludes that the reasoning in *Hunter* is not helpful for two reasons. First, the Court believes *Hunter* inaccurately characterizes the *Gould* court's citation of *Pension Benefit. Gould* merely cited *Pension Benefit* for the proposition that the Third Circuit could "think of no principled reason why a court, in resolving a 12(b)(1) facial attack should not also consider documents *attached to the complaint." Gould,* 220 F.3d at 176 n. 6 (emphasis added). *Gould* did not hold that public records can be considered in resolving a Rule 12(b)(1) facial challenge. Second, even if *Gould* had intended to suggest that public records could be considered in resolving a Rule 12(b)(1) facial attack, the Court concludes that the instant circumstances present a "principled reason" why they should not be considered. Plaintiffs hope to avoid dismissal on jurisdictional grounds by relying on public records, but Plaintiffs also do not want to be "bound" by the allegations in the public records for other issues, such as damages. It would be unfair to Defendants to allow Plaintiffs to rely on public records for purposes of jurisdiction, yet avoid having to plead the same facts in their Complaint because they may adversely affect other issues in the case.

Plaintiffs also contend that the Court should deny Defendants' motions because (1) it would be an abuse of discretion to rule on the jurisdictional issue without affording them an opportunity to conduct jurisdictional discovery, and (2) the decision resolving the jurisdictional issue should be postponed until trial because the jurisdictional issue is so intertwined with the merits of the case. (D.I. 88 at 13-16). As to Plaintiffs' first contention, because the Court concludes that Plaintiffs' Amended Complaint is facially deficient, the deficiency could not be cured by discovery. As to Plaintiffs' second contention, the Court concludes that it would be inappropriate to accept jurisdiction and consider the case on its merits where the challenge to the Court's jurisdiction is facial in nature. *See Society Hill Towers Owners, Ass'n v. Rendell,* 210 F.3d 168, 175 (3d Cir.2000)(noting that the Supreme Court "has recently cautioned against the practice of assuming jurisdiction and reaching the merits of a dispute," because issuing a decision based on such "hypothetical jurisdiction" is essentially an advisory opinion)(quoting *Steel Co. v. Citizens for Better Env't,* 523 U.S. 83, 93 (1998)).

*5 In sum, the Court concludes that Plaintiffs fail to meet their burden to affirmatively plead facts necessary to establish the basis of the Court's jurisdiction. Thus, the Court concludes that Defendants' motions should be granted.

CONCLUSION
For the reasons discussed, the Court will grant Defendants' motions to dismiss for lack of subject matter jurisdiction.

An appropriate Order will be entered.

ORDER
At Wilmington this 14 day of August, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1. Defendants Douglas H. Wolf's and Richard G. Buckingham's Motion to Dismiss for Lack of Diversity Jurisdiction (D.I.75) is *GRANTED.*
2. Defendant W. Lawrence Patrick's Motion to Dismiss (D.I.79) is *GRANTED.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 940909 (D.Del.)
**(Cite as: 2001 WL 940909 (D.Del.))**

Page 5

3. Motion of Defendants Wolf and Buckingham to Compel Discovery (D.I.73) is *DENIED AS MOOT*.

2001 WL 940909 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.