IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WERNER L. POLAK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN M. KOBAYASHI, | ) | C.A. No. 05-330 (JJF) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| POKOBO, L.L.C., | ) | |
| | ) | |
| Nominal Defendant. | ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT
## OF HIS MOTION TO REMAND

MORRIS, NICHOLS, ARSHT & TUNNELL
Martin P Tully (#465)
David A. Harris (#3568)
Susan W. Waesco (#4476)
Samuel T. Hirzel, II (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  Attorneys for Plaintiff

July 11, 2005

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                              ii

PRELIMINARY STATEMENT                                                                   1

ARGUMENT                                                                                           3

I.  THIS CASE MUST BE REMANDED FOR LACK OF SUBJECT
    MATTER JURISDICTION BECAUSE DEFENDANT HAS
    FAILED TO ESTABLISH THAT COMPLETE DIVERSITY
    EXISTS AMONG THE NAMED PARTIES.                                                3

    A.  Pokobo's Citizenship Must Be Considered for Purposes of
        Determining Whether Diversity Jurisdiction Exists.                            4

        1.  The Petition Asserts Derivative Claims to which
            Pokobo Is A Real Party in Interest.                                          5

        2.  No Principled Reason Exists to Depart from the
            Well-Settled Rule that the Citizenship of A
            Noncorporate Entity Is Determined by Looking at
            the Citizenship of Each of Its Members.                                    10

    B.  Plaintiff Should Be Awarded His Fees, Costs and Expenses
        of Opposing Removal.                                                              13

II. EVEN IF SUBJECT MATTER JURISDICTION EXISTS, THIS
    COURT SHOULD FOLLOW PRECEDENT AND DECLINE TO
    EXERCISE ITS JURISDICTION ON ABSTENTION
    GROUNDS.                                                                                  13

CONCLUSION                                                                                   17

<u>TABLE OF CITATIONS</u>

                                                                                    <u>Page(s)</u>

<u>Cases</u>

*Agostino v. Hicks,*
    2004 WL 443987 (Del. Ch.)                                                      10

*Alkire v. Interstate Theatres Corp.,*
    379 F. Supp. 1210 (D. Mass. 1974)                                              15

*Am. Soc. for Testing & Materials v. Corrpro Cos., Inc.,*
    292 F. Supp. 2d 713 (E.D. Pa. 2003)                                             6

*Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.,*
    829 A.2d 143 (Del. Ch. 2003)                                                    8

*Carden v. Arkoma Assoc.,*
    494 U.S. 185 (1990)                                                         4, 11, 12

*Caudill v. Eubanks Farms, Inc.,*
    301 F.3d 658 (6th Cir. 2002)                                                   15

*Codos v. Nat'l Diagnostic Corp.,*
    711 F. Supp. 75 (E.D.N.Y. 1989)                                                15

*Cosgrove v. Bartolotta,*
    150 F.3d 729 (7th Cir. 1998)                                                4, 11, 12

*Feiwus v. Genpar, Inc.,*
    43 F. Supp. 2d 289 (E.D.N.Y. 1999)                                             15

*Fiege v. Sechrest,*
    90 F.3d 846 (3d Cir. 1996)                                                     14

*Friedman v. Revenue Mgmt. of N.Y.,*
    38 F.3d 668 (2d Cir. 1994)                                                     15

*Gatz v. Ponsoldt,*
    297 F. Supp. 2d 719 (D. Del. 2003)                                             5

*GMAC Comm. Credit LLC v. Dillard Dept. Stores, Inc.,*
    357 F.3d 827 (8th Cir. 2004)                                                 11, 12

*Graphic Scanning Corp. v. Yampol,*
    677 F. Supp. 2d 256 (D. Del. 1988)                                             5

iii.

## TABLE OF CITATIONS (continued)

Page(s)

*Hale v. Mastersoft Int'l Property Ltd.*,
    93 F. Supp. 2d 1108 (D. Colo. 2000)                  12

*Handelsman v. Bedford Village Assocs. Ltd. P'ship*,
    213 F.3d 48 (2d Cir. 2000)             4, 11, 12

*In re Cencom Cable Income Partners*,
    2000 WL 130629 (Del. Ch.)             8, 10

*In re English Seafood (USA) Inc.*,
    742 F. Supp 281 (D. Del. 1990)            15

*Int'l Flavors and Textures, LLC v. Gardner*,
    966 F. Supp. 552 (W.D. Mich. 1997)        12

*JMTV Enters., LLC v. Duchin*,
    42 F. Supp. 2d 87 (D. Mass. 1999)         12

*Ketterson v. Wolf*,
    2001 WL 940909 (D. Del.)             4, 11, 12

*Litman v. Prudential-Bache Props., Inc.*,
    611 A.2d 12 (Del. Ch. 1992)            6

*Mints v. Educ. Testing Serv.*,
    99 F.3d 1253 (3d Cir. 1996)            13

*Moore v. Permanente Med. Group, Inc.*,
    981 F.2d 443 (9th Cir. 1992)           13

*Morgan Guar. Trust v. Republic of Palau*,
    971 F.2d 917 (2d Cir. 1992)            13

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989)                14

*Newman-Green, Inc. v. Alfonzo-Larrain*,
    490 U.S. 826 (1989)                3

*Nomura Asset Capital v. Overland Co., Inc.*,
    2003 WL 138093 (D. Del.)             5, 6

iv.

TABLE OF CITATIONS (continued)

Page(s)

*Pennsylvania v. Williams*,
    294 U.S. 176 (1935)      15

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996)      14

*Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*,
    374 F.3d 1020 (11th Cir. 2004)      4

*Shamrock Holdings of California, Inc. v. Arenson*,
    2005 WL 400198 (D. Del)      12

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004)      passim

Statutes

28 U.S.C. § 1132(c)(1)      11

28 U.S.C. § 1332(a)      3

28 U.S.C. § 1332(c)      13

28 U.S.C. § 1404(a)      4

28 U.S.C. § 1447(c)      3, 13

28 U.S.C. § 1653      3

6 *Del. C.* § 18-802      7

Other Authorities

15 *Moore's Federal Practice* § 102.57[8]      4

16 *Moore's Federal Practice* § 107.06 (3d ed. 2005)      3

16 *Moore's Federal Practice* § 107.14[2][b]      4

16 *Moore's Federal Practice*, § 107.14[2][c]      8

1.

PRELIMINARY STATEMENT

Contrary to Defendant's repeated assertions, *see, e.g.*, Ans. Br. at 1-2, 4, 5, 15, 24, 25 (D.I. 13), this action does *not* hinge on Plaintiff's breach of contract claim. Rather, the thrust of Plaintiff's Petition for Dissolution (the "Petition) is (as the name itself suggests) his request for judicial dissolution and an accounting of Pokobo, L.L.C. ("Pokobo), a Delaware limited liability company formed and governed by the Delaware Limited Liability Company Act (the "Delaware LLC Act"). Pet. ¶ 1; Op. Br. at 5, 20 (D.I. 9). In connection with the dissolution of Pokobo, Plaintiff also seeks a judicial declaration -- prior to dissolution -- that land currently titled in Defendant's name (referred to in the Petition as the "17-Acre Parcel") rightfully belongs to Pokobo. Pet. ¶¶ 1, 56-61. These claims are at the heart of this action. Affidavit of Werner L. Polak ("Polak Aff.") ¶ 3 (D.I. 9, Ex. A).

In contrast, Plaintiff's breach of contract claim -- for which he seeks monetary damages -- is predicated on Defendant's mismanagement of Pokobo and failure to provide Plaintiff with a full accounting. Pet. ¶¶ 47-50. It is not (as Defendant claims) "the claim that will determine whether the Plaintiff or Pokobo has any rights whatsoever to the 17-Acre Parcel." Ans. Br. at 25 (D.I. 13). Plaintiff's declaratory judgment claim -- not his breach of contract claim -- will resolve the issue of who owns the 17-Acre Parcel. Indeed, should this matter be remanded to the Court of Chancery and Plaintiff prevail on his remanded claims, he will not pursue his breach of contract claim in this Court. Polak Aff. ¶ 4 (D.I. 9, Ex. A).

These claims do not belong in federal court. To avoid remand, Defendant mischaracterizes Plaintiff's claims as direct claims. However, under the principles

2.

articulated by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) (a case which Defendant fails to cite), the Petition includes derivative claims brought on Pokobo's behalf.   Pokobo's citizenship must therefore be considered for purposes of determining whether removal on the basis of diversity jurisdiction was proper.   Under well-established law regarding the citizenship of unincorporated entities, Pokobo's citizenship destroys diversity and leaves this Court without subject matter jurisdiction to hear this matter.

Defendant also seeks to avoid application of the *Burford* abstention doctrine by claiming that "the law of the State of Delaware is not even applicable to the operative facts upon which the Plaintiff's claims lie."   Ans. Br. at 24 (D.I. 13). Defendant ignores the fact that Plaintiff's central claim for dissolution under Section 18-802 of the Delaware LLC Act will necessarily involve application of Delaware law on dissolution.   Moreover, Defendant has offered no reason why this case is any different from those in which federal courts have declined to interfere with state courts' regulation of the dissolution of corporate entities.   Unlike the federal courts, state courts have a significant interest in regulating business entities formed under, governed by, and dissolved under applicable state law.   Accordingly, remand is appropriate on abstention grounds.

<u>ARGUMENT</u>

I.     THIS CASE MUST BE REMANDED FOR LACK OF
       SUBJECT    MATTER    JURISDICTION    BECAUSE
       DEFENDANT HAS FAILED TO ESTABLISH THAT
       COMPLETE    DIVERSITY   EXISTS   AMONG   THE
       NAMED PARTIES.

Because Defendant's Notice of Removal is predicated exclusively on the

purported existence of diversity jurisdiction, *see* Notice of Removal ¶¶ 3-4 (D.I. 1), this

Court has removal jurisdiction only if Defendant satisfies the requirements necessary to

establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).   As described in

Plaintiff's Opening Brief, *see* Op. Br. at 7-11 (D.I. 9), and herein, because diversity of

citizenship does not exist between the named parties, the removal statutes require that the

case be remanded.  *See* 28 U.S.C. § 1447(c) (mandating remand if the district court lacks

subject matter jurisdiction over a removed case).[1]

---

[1]     Defendant does not dispute that it is his burden to demonstrate that diversity
jurisdiction exists among the parties. Ans. Br. at 6 (D.I. 13).  Nor does he dispute
that the removal statutes are strictly construed.  *Id.*  Defendant, however, takes
issue with Plaintiff's characterization of the presumption against removal as a
"strong presumption."  *Id.* at 6-7.  In disputing this relatively minor point,
Defendant relies on inapposite authorities from outside the removal context,
including 28 U.S.C. § 1653, which permits amendments to defective allegations
of jurisdiction.  Because Plaintiff filed his claims in the Delaware Court of
Chancery -- not in federal court -- Section 1653 is inapplicable.  *See Newman-*
*Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989) (noting that Section
1653 allows courts to "remedy inadequate jurisdictional allegations, but not
defective jurisdictional facts").  Moreover, there is nothing "misleading" about
Plaintiff's statement that there is a strong presumption against removal.  Indeed, a
leading treatise on federal civil procedure shares the exact same view.  *See* 16
*Moore's Federal Practice* § 107.06 (3d ed. 2005) ("A strong presumption exists
against removal jurisdiction.").

A.    Pokobo's Citizenship Must Be Considered for Purposes of Determining Whether Diversity Jurisdiction Exists.

For diversity jurisdiction purposes, an individual is a citizen of the state in which he or she is domiciled. See 16 *Moore's Federal Practice* § 107.14[2][b]. Plaintiff is a citizen of New York. Polak Aff. ¶ 1 (D.I. 9). Defendant is a citizen of Colorado. Defendant's Opening Brief in Support of his Motion to Transfer Venue Under 28 U.S.C. § 1404(a), Ex. A ¶ 1 (D.I. 5).

Pokobo, a limited liability company, is a citizen of the states of which its individual members are citizens. *See, e.g.,* 15 *Moore's Federal Practice* § 102.57[8] ("For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members."); *Ketterson v. Wolf*, 2001 WL 940909, at *3 (D. Del.)[2]; *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) (all holding that the citizenship of an LLC is determined by the citizenship of its members). *See also Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990) (holding that unincorporated entity's citizenship is determined by looking to the citizenship of its members). Pokobo is therefore a citizen of both New York and Colorado, destroying diversity jurisdiction.

Recognizing that Pokobo's citizenship is fatal to his efforts to have this case heard in federal court, Defendant poses two arguments in an attempt to convince this

---

[2]    Copies of all unreported cases not previously submitted to the Court in Plaintiff's Appendix of Unreported Cases Cited in Plaintiff's Opening Brief in Support of His Motion to Remand (D.I. 10) are attached hereto.

Court that Pokobo's citizenship should be disregarded. First, Defendant argues that Pokobo's citizenship need not be considered because the Petition does not assert a derivative claim. Second, Defendant urges this Court to ignore applicable law from the United States Supreme Court and various federal courts, including this Court. Defendant's arguments run contrary to well-settled law and should be rejected.

1.    The Petition Asserts Derivative Claims to which Pokobo Is A Real Party in Interest.

When a complaint asserts derivative claims on behalf of a corporation, the corporation's citizenship must be taken into account for diversity jurisdiction purposes. *See Graphic Scanning Corp. v. Yampol*, 677 F. Supp. 2d 256, 259 (D. Del. 1988) (noting that the corporation is the real party in interest in derivative actions); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 733 (D. Del. 2003) (dismissing direct and derivative state law claims for lack of subject matter jurisdiction because the citizenship of the corporation on whose behalf the derivative claims were brought destroyed diversity). This Court has also applied the same reasoning to reach a similar result in the partnership context. *See Nomura Asset Capital v. Overland Co., Inc.*, 2003 WL 138093, at *2-3 (D. Del.) (finding that because the plaintiff's complaint included derivative claims seeking recovery on behalf of a Delaware limited partnership, the citizenship of the partnership must be considered for diversity jurisdiction purposes and remanding the case to the Court of Chancery for lack of subject matter jurisdiction).

Here, the Petition alleges derivative claims that seek recovery on behalf of Pokobo. *See* Pet. ¶¶ 51-55, 56-61, 62-65.[3]  Plaintiff is pursuing his claims for breach of fiduciary duty, declaratory judgment and unjust enrichment on Pokobo's behalf and any recovery (*i.e.*, the 17-Acre Parcel) will go directly to Pokobo. Pokobo is therefore a real party in interest in this action. *See Am. Soc. for Testing & Materials v. Corrpro Cos., Inc.*, 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003) ("A 'real party in interest' defendant is one who, by substantive law of the state, has the duty or right sought to be enforced.").

Nonetheless, Defendant argues that this is not a derivative action. Defendant's analysis is flawed, however, in that it fails to apply the test for determining whether a claim is direct or derivative recently set forth by the Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004). Defendant appears to be advocating application of the so-called "special injury" test to determine whether Plaintiff's claims are direct or derivative. *See* Ans. Br. at 12-14 (D.I. 13) (arguing that because Plaintiff's claims would only benefit Plaintiff, he has suffered a special injury and the claims are direct). That test was expressly disavowed by the Delaware Supreme Court last year in *Tooley* and has no application here.

In *Tooley*, the Delaware Supreme Court held that the issue of whether a claim is derivative or direct "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and

---

[3]    The Court should look at the nature of the claims alleged in the Petition -- and whether Pokobo has an interest in those claims -- to determine whether they are derivative or direct. *See Nomura*, 2003 WL 138093, at *2-3; *Litman v. Prudential-Bache Props., Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992) ("[I]n determining whether a claim is derivative or direct in nature, I must look to the nature of the wrongs alleged in the body of plaintiffs' complaint, not plaintiffs' characterization or stated intention.").

(2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley*, 845 A.2d at 1033 (emphasis in original). In reaching this result, the Court explicitly rejected the concept of "special injury" in distinguishing between derivative and direct claims that had developed under earlier case law. *Id.* at 1035 ("In our view, the concept of 'special injury' that appears in some Supreme Court and Court of Chancery cases is not helpful to a proper analytical distinction between direct and derivative actions. We now disapprove the use of the concept of 'special injury' as a tool in that analysis."). Yet, Defendant relies heavily on these pre-*Tooley* cases and the special injury concept in his argument that the Petition does not include a derivative claim. *See, e.g.*, Ans. Br. at 11-15 (D.I. 13) (relying on cases decided prior to *Tooley* to support the argument that because Plaintiff "was damaged differently from the Defendant as a 50% member of Pokobo", Plaintiff's claims are direct).

Plaintiff's claims for breach of fiduciary duty, declaratory judgment and unjust enrichment allege that Defendant's actions have harmed Pokobo and seek recovery for the Company.[4] Under the two-part test set forth in *Tooley*, these claims are

---

[4]    Defendant's suggestion that the Court should dismiss Pokobo as a party to this action "[i]f necessary to preserve the jurisdiction of this Court" (Ans. Br. at 18 (D.I. 13)) has no merit. Plaintiff did not include derivative claims or name Pokobo to "defeat" diversity jurisdiction. Rather, he elected to file this action for dissolution in the Delaware Court of Chancery, the forum contemplated by the Delaware LLC Act for such a proceeding. *See* 6 *Del. C.* § 18-802 ("On application by or for a member or manager the Court of Chancery may decree dissolution of a limited liability company . . . ."). Defendant's reliance on cases where the citizenship of a corporate entity named in an action originally filed in federal court was disregarded for purposes of determining whether diversity jurisdiction existed, *see* Ans. Br. at 15-18 (D.I. 13), are therefore inapposite. Defendant does not allege that Pokobo was fraudulently joined in the Petition to

(continued . . .)

derivative -- Pokobo has been harmed by the loss of the 17-Acre Parcel and would receive the benefits of recovery of the land.[5]  In disregarding *Tooley*, Defendant fails to acknowledge that the test on which he relies is no longer the law in Delaware.

Moreover, the cases upon which Defendant primarily relies for his assertion that the Plaintiff's claims are direct involve application of the now-defunct "special injury" test, rather than the two-prong test set forth in *Tooley. See Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 150 (Del. Ch. 2003); *In re Cencom Cable Income Partners*, 2000 WL 130629, at *4-5 (Del. Ch.).  For this reason alone, they are not persuasive.

These cases are also readily distinguishable.   In *Anglo*, the Court's holding that claims alleging diminution of the value of a partnership's assets were direct claims was based on the unique facts of that case and the specific limited partnership agreement at issue.  *See Anglo*, 829 A.2d at 152 ("I conclude that the operation and function of the Fund as specified in the [limited partnership] Agreement diverge so radically from the traditional corporate model that the claims made in the complaint must be brought as direct claims.")   In contrast, the Petition alleges that Pokobo has been

---

(. . . continued)

defeat diversity jurisdiction.   Indeed, such allegations must be pleaded with particularity and supported by clear and convincing evidence.  *See* 16 *Moore's Federal Practice*, § 107.14[2][c].

[5]    Defendant also mischaracterizes the claims asserted in the Petition.  *See* Ans. Br. at 10 (D.I. 13) ("These are not allegations that the Defendant . . . wrongfully titled property to his name that was acknowledged to be a corporate asset.").   The Petition explicitly alleges (and describes in considerable detail) the wrongful acquisition of the 17-Acre Parcel by Defendant -- an asset that was intended by the parties to be an asset of Pokobo.  *See* Pet. ¶¶ 11-17, 56-61.

9.

deprived of an asset to which it is rightfully entitled and seeks to recover that asset for

Pokobo -- a classic derivative claim.[6]

            *Cencom* is similarly distinguishable on its facts. In that case, the

partnership had already been dissolved and its limited partners asserted claims involving

conduct of the general partner as part of the partnership's liquidation. Thus, the Court

limited its holding to the following:

> If: (1) a business association consists of only two parties in interest, one a putative class of injured plaintiffs and the other the defendant party that controls the business association; and, (2) the business association is effectively ended, but for the winding up of its affairs; and, (3) the two sides oppose each other in the final dispute over the liquidation of that association; then a claim brought in that context is direct.

*Cencom*, 2000 WL 130629, at *1. Such a situation does not exist here. Pokobo has not

been dissolved; rather, the crux of this case is Plaintiff's request for an order dissolving

Pokobo. Prior to dissolution, however, Plaintiff seeks to recover assets belonging to

Pokobo so that they may be properly distributed in the event that the Court finds that

dissolution is appropriate under applicable Delaware law. *Cencom* should not be

extended to apply to these circumstances.

---

[6]      Citing *Anglo*, Defendant also argues that Plaintiff's breach of fiduciary duty claim -- which is based in part on Defendant's failure to provide Plaintiff with an accounting -- is a direct claim. Ans. Br. at 12 (D.I. 13). *Anglo* does not support this argument, as in that case the general partner was contractually required under the parties' limited partnership agreement to provide certain financial reports to the limited partners. In contrast, Defendant is under no specific obligation (apart from his general obligation to manage Pokobo jointly pursuant to Section 5.01 of the Limited Liability Company Agreement of Pokobo, L.L.C. (the "LLC Agreement")) to provide Plaintiff with an accounting. Rather, Defendant's obligations to do so arise from the fiduciary duties he owes to Plaintiff and to Pokobo.

In *Agostino v. Hicks*, 2004 WL 443987 (Del. Ch.) -- a case decided days before *Tooley* but cited with approval in the *Tooley* opinion -- the Court of Chancery explained the limited precedential value of *Cencom*. In *Agostino*, the Court of Chancery rejected the same argument advanced by Defendant here that Plaintiff's claims should be considered direct because Defendant, the alleged wrongdoer, would share in any recovery by Pokobo. *See Agostino*, 2004 WL 443987, at *9 (noting that *Cencom* "is limited to its own unique set of facts").[7]

Given the derivative nature of certain of Plaintiff's claims, Pokobo has a real interest in their outcome. Accordingly, the citizenship of Pokobo must be considered when determining whether removal was proper on diversity jurisdiction grounds. Because Pokobo's presence destroys diversity, this Court lacks subject matter jurisdiction to hear this case.

2.    No Principled Reason Exists to Depart from
the Well-Settled Rule that the Citizenship of
A Noncorporate Entity Is Determined by
Looking at the Citizenship of Each of Its
Members.

In the face of settled law to the contrary, Defendant argues that limited liability companies should be treated differently from other unincorporated entities for purposes of diversity jurisdiction. Defendant acknowledges that there is significant legal

---

[7]    Furthermore, if the 17-Acre Parcel is ultimately found to belong to Pokobo, a "benefit" will not be conferred on Defendant (the alleged wrongdoer). Defendant will receive only that which he would have been rightfully entitled to in a dissolution had the land been properly titled in Pokobo's name when it was purchased (*i.e.*, his *pro rata* share of the sale proceeds of the land). *See* Ans. Br. at 14-15 (D.I. 13). If Plaintiff's claims were deemed direct (as Defendant argues), Plaintiff would receive 100% of the recovery and Defendant would receive nothing. Plaintiff does not seek to recover such a windfall.

authority against him, but nonetheless argues that cases decided by the United States Supreme Court (*Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)), the Court of Appeals for the Second Circuit (*Handelsman v. Bedford Village Assoc. Ltd. P'ship*, 213 F.3d 48 (2d Cir. 2000)), the Court of Appeals for the Seventh Circuit (*Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998)), the Court of Appeals for the Eight Circuit (*GMAC Comm. Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827 (8th Cir. 2004)), and this Court (*Ketterson v. Wolf*, 2001 WL 940909 (D. Del.)) "provide very little discussion of their basis for" treating limited liability companies like limited partnerships for purpose of diversity jurisdiction and should therefore be disregarded. Ans. Br. at 19 (D.I. 13). Defendant's attempt to change the law on this topic is unpersuasive.

In 1958, Congress passed a statute requiring that corporations be treated differently for purposes of diversity jurisdiction. *See Carden*, 494 U.S. at 196. 28 U.S.C. § 1132(c)(1) instructs that "a *corporation* shall be deemed to be a citizen of any state in which it has been incorporated and of the state where it has its principal place of business." (emphasis added). As the United States Supreme Court made clear in *Carden*, there is no similar exception for other unincorporated entities: "While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have . . . just as firmly resisted extending that treatment to other entities." *Id.* at 189. The Court noted that "[n]o provision was made for the treatment of artificial entities other than corporations, although the existence of many new . . . forms of commercial enterprises . . . must have been obvious." *Id.* at 196-97.

Both before and after *Carden*, federal courts -- including this court -- have steadfastly applied this rule to noncorporate entities, including limited liability

companies. *See, e.g., Handelsman*, 213 F.3d at 51-52; *Cosgrove*, 150 F.3d at 731;

*GMAC Comm. Credit*, 357 F.3d at 828-29; *JMTV Enters., LLC v. Duchin*, 42 F. Supp. 2d

87, 93-94 (D. Mass. 1999); *Int'l Flavors and Textures, LLC v. Gardner*, 966 F. Supp.

552, 554-55 (W.D. Mich. 1997); *Hale v. Mastersoft Int'l Property Ltd.*, 93 F. Supp. 2d

1108, 1112 (D. Colo. 2000); *Ketterson*, 2001 WL 940909, at *3; *Shamrock Holdings of

California, Inc. v. Arenson*, 2005 WL 400198, at *4 (D. Del) (SLR).

> As the Eighth Circuit noted in *GMAC*:
>
>> We recognize numerous similarities exist between a
>> corporation and an LLC, but Congress is the appropriate
>> forum to consider and, if it desires, to apply the same
>> 'citizenship' rule for LLCs as corporations for diversity
>> jurisdiction purposes.   This issue appears resolved by
>> Justice Antonin Scalia's analysis in *Carden*: '[T]he course
>> we take today does not so much disregard the policy of
>> accommodating our diversity jurisdiction to the changing
>> realities of commercial organization, as it honors the more
>> important policy of leaving that to the people's elected
>> representatives. . . . We have long since decided that,
>> having established special treatment for corporations, we
>> will leave the rest to Congress; we adhere to that decision.'

*GMAC*, 357 F.3d at 829 (quoting *Carden*, 494 U.S. at 197).[8]

> Under settled precedent, limited liability companies are treated like

partnerships or other unincorporated entities for purposes of determining diversity

---

[8]    Even if this Court were to entertain Defendant's suggestion and depart from
settled law to "provide the United States Supreme Court with the opportunity to
decide whether its decision in *Carden, supra,* is to be further extended to limited
liability companies" (Ans. Br. at 22 (D.I. 13)), under the facts of this case, Pokobo
-- a limited liability company whose two members share equal 50% interests in
the entity and are jointly responsible for its management -- would be treated more
like a partnership.  Consequently, the partnership rules for determining Pokobo's
citizenship would apply and the Court would look to the citizenship of its
members.  *See Carden*, 494 U.S. at 195-96.  Complete diversity would still be
lacking and this Court would be required to remand this action to the Delaware
Court of Chancery where it was originally filed.

jurisdiction. The authority to extend 28 U.S.C. § 1332(c) to limited liability companies is vested in Congress, not in the federal courts. Defendant's arguments to the contrary are without support and should be rejected.

> B.    Plaintiff Should Be Awarded His Fees, Costs and Expenses of Opposing Removal.

Under 28 U.S.C. § 1447(c), a plaintiff may be awarded his attorney's fees, costs and expenses incurred as a result of an improper removal. Bad faith is not a prerequisite for an award of fees and costs under 28 U.S.C. § 1447(c). *See Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996); *Morgan Guar. Trust v. Republic of Palau*, 971 F.2d 917, 923 (2d Cir. 1992); *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 446-47 (9th Cir. 1992). None of the reasons offered by Defendant to support his claim that diversity jurisdiction exists are compelling. Accordingly, because Plaintiff has expended significant fees and costs in connection with his motion to remand and in opposing Defendant's corresponding motion to transfer venue, this Court should not hesitate to grant Plaintiff's request for fees and costs under the liberal fee shifting standards of Section 1447(c).

> II.    EVEN IF SUBJECT MATTER JURISDICTION EXISTS, THIS COURT SHOULD FOLLOW PRECEDENT AND DECLINE TO EXERCISE ITS JURISDICTION ON ABSTENTION GROUNDS.

As explained in Plaintiff's Opening Brief, the *Burford*[9] doctrine permits a "federal court sitting in equity" to abstain from exercising jurisdiction where: (1) "timely and adequate state-court review is available" and a case presents "difficult questions of

---

[9]    *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

Case 1:05-cv-00330-SLR    Document 15    Filed 07/11/2005    Page 19 of 23
14.

state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" or (2) federal adjudication of a case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (citations omitted). *Accord Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996); *Fiege v. Sechrest*, 90 F.3d 846, 847 (3d Cir. 1996) (citing *NOPSI*).

In response to Plaintiff's argument that this Court should exercise its discretion and abstain from hearing this matter under *Burford* and *Quackenbush*, Defendant makes the conclusory statement that "it is unlikely that the law of the state of Delaware will even be involved in resolving the central issue of fact to be decided in this case." Ans. Br. at 24 (D.I. 13). This is an inaccurate statement. Plaintiff's goals in bringing this action were to obtain an order dissolving Pokobo and approving the sale of its assets pursuant to the LLC Agreement, to obtain a full accounting of Pokobo, and to recover (on behalf of Pokobo) land wrongfully titled in Defendant's name prior to Pokobo's dissolution. Polak Aff. ¶ 3 (D.I. 9, Ex. A). The crux of the litigation is not -- as Defendant would have this Court believe -- Plaintiff's breach of contract claim.[10] Dissolution of a Delaware limited liability company is governed by Delaware law, namely, the Delaware LLC Act and cases decided thereunder. Delaware law therefore will be "central" to the resolution of this action.

---

[10]    As stated previously, Defendant's assertion that "the breach of contract claim is the claim that will determine whether the Plaintiff or Pokobo has any rights whatsoever to the 17-Acre Parcel" is incorrect. Plaintiff's declaratory judgment claim will determine who (Defendant or Pokobo) owns the 17-Acre Parcel.

As this Court has observed: "Delaware has a strong interest in the formation and termination of corporations under its laws and in the uniform development and application of the statutory scheme that the state legislature and courts have created to regulate those corporations." *In re English Seafood (USA) Inc.*, 742 F. Supp 281, 289 (D. Del. 1990). Removed cases involving claims for dissolution are routinely remanded to state court because "federal courts should abstain from interfering with the development and administration of the complex statutory schemes that states have devised to regulate corporations created under their laws." *Id.* at 288. *See also*, *Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935); *Alkire v. Interstate Theatres Corp.*, 379 F. Supp. 1210 (D. Mass. 1974); *Codos v. Nat'l Diagnostic Corp.*, 711 F. Supp. 75 (E.D.N.Y. 1989); *Friedman v. Revenue Mgmt. of N.Y.*, 38 F.3d 668, 671 (2d Cir. 1994); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289, 296-98 (E.D.N.Y. 1999); *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 663-65 (6th Cir. 2002).

Defendant has no response to this long line of cases. Nor does he have an answer to the fact that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction existed." *Friedman*, 38 F.3d at 671. *Accord Feiwus*, 43 F. Supp. 2d at 296 n.6 ("[T]he federal courts that have addressed the issue have almost uniformly ruled that even if federal courts have subject matter jurisdiction over claims for corporate dissolution, they should abstain from exercising it.") (citations omitted).

Nonetheless, Defendant argues that remanding Plaintiff's claims for equitable or discretionary relief while staying the breach of contract claim would be "wholly impractical and prejudicial" to Defendant. Ans. Br. at 25 (D.I. 13). Again,

Defendant misconstrues Plaintiff's breach of contract claim.  That claim seeks monetary damages resulting from Defendant's mismanagement of Pokobo.  It does not ask this Court to determine who is the true owner of the 17-Acre Parcel; nor are Plaintiff's chances of succeeding on his other claims "wholly dependent upon the Plaintiff prevailing on his breach of contract claim."  *Id.*  The Court of Chancery can determine whether the 17-Acre Parcel belongs to Defendant or to Pokobo, and whether dissolution of Pokobo is warranted under the Delaware LLC Act without first (or ever) deciding whether Defendant has breached the parties' LLC Agreement.  In short, there is no basis for Defendant's unsupported claim that an abstention-based remand of Plaintiff's claims (excluding his breach of contract claim) will be "prejudicial" to Defendant.  Defendant certainly has not identified any specific prejudice in his papers.  *See* Ans. Br. at 25 (D.I. 13).

Should the Court find that it has subject matter jurisdiction over the action (notwithstanding Plaintiff's arguments to the contrary herein), given the overwhelming interest the Delaware state courts have in deciding this action for dissolution of a limited liability company formed under Delaware law, this Court should elect to abstain from hearing Plaintiff's claims for equitable relief and remand those claims to the Court of Chancery.

<u>CONCLUSION</u>

For the foregoing reasons and for reasons set forth in Plaintiff's Opening Brief, Plaintiff respectfully requests that the Court (i) remand this action to the Delaware Court of Chancery and (ii) award Plaintiff his just costs and actual expenses, including attorneys' fees, incurred as a result of Defendants' removal of this action.


MORRIS, NICHOLS, ARSHT & TUNNELL


Martin P. Tully (#465)
David A. Harris (#3568)
Susan W. Waesco (#4476)
Samuel T. Hirzel, II (#4415)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
swaesco@mnat.com
  Attorneys for Plaintiff

July 11, 2005

CERTIFICATE OF SERVICE

I, Susan W. Waesco, hereby certify that on July 11, 2005 I electronically filed **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO REMAND**, with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

> Kevin F. Brady, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building, 1007 North Orange Street
> Wilmington, Delaware 19801

I also certify that copies were caused to be served on July 11, 2005 upon the following in the manner indicated:

**<u>BY HAND</u>**

> Kevin F. Brady, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building, 1007 North Orange Street
> Wilmington, Delaware 19801

Martin P Tully (#465)
David A. Harris (#3568)
Susan W. Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  Attorneys for Plaintiff
swaesco@mnat.com