# EXHIBIT 1

## EXHIBIT 1

### STATEMENT OF FACTS THAT ARE ADMITTED
### AND REQUIRE NO PROOF

The parties agree that the following facts are admitted and require no proof:

1.      On March 21, 1997, Werner L. Polak and John M. Kobayashi formed Pokobo by filing a certificate of formation with the Delaware Secretary of State.

2.      The operation and management of Pokobo is governed by the Limited Liability Company Agreement of Pokobo, L.L.C. (the "LLC Agreement"), dated March 1, 1997.

3.      Pursuant to Section 5.01 of the LLC Agreement, management of Pokobo is vested jointly in Plaintiff and Defendant.

4.      Plaintiff owns a 50% interest in Pokobo.

5.      Defendant owns a 50% interest in Pokobo.

6.      Pokobo is a Delaware limited liability company.

7.      Pokobo was formed for the purposes set forth in the LLC Agreement.

8.      Pursuant to Section 2.01 of the LLC Agreement, each party contributed approximately $450,000 to Pokobo as an initial capital contribution, which was used to purchase real property located on the big island of Hawaii.

9.      On or about April 4, 1997, Pokobo acquired 64.266 acres of land south of Kona, Hawaii (the "64-Acre Parcel") for a purchase price of $900,000.

10.      Pursuant to a warranty deed recorded in the State of Hawaii Bureau of Conveyances, title to the 64-Acre Parcel is in Pokobo's name.

11.      Plaintiff has regularly paid annual Delaware LLC taxes to the State of Delaware for Pokobo and annual registered agent fees to Pokobo's registered agent.

12.    On or about July 3, 2002, Defendant commenced litigation in the Circuit Court of the Third Circuit for the State of Hawaii, entitled *Pokobo LLC and John M. Kobayashi v. County of Hawaii, the County of Hawaii Department of Public Works, the Director of the Department of Public Works, and the State of Hawaii Department of Transportation*, Civil No. 02-1-0126K (the "Permit Litigation").

13.    On or about July 8, 2002, Pokobo and John Does 1-100 were named as defendants in a condemnation proceeding filed in the Circuit Court of the Third Circuit for the State of Hawaii, entitled *County of Hawaii v. Pokobo LLC et al.*, Civil No. 02-1-0129K (the "Condemnation Litigation").

14.    By letter dated December 5, 2002, Plaintiff informed the attorney that Defendant hired to represent Pokobo in the Permit Litigation and the Condemnation Litigation that such attorney was not authorized to represent either Plaintiff or Pokobo on Plaintiff's behalf in any litigation pertaining to Pokobo.

15.    Shortly after the formation of Pokobo in 1997, Defendant retained Colin M. Grubb to serve as the accountant for Pokobo.

16.    Mr. Grubb has also served as Defendant's personal accountant in various capacities.

17.    At no time since the formation of Pokobo has the Plaintiff or Defendant requested or invoked the provisions of Paragraph 5.02 of the LLC Agreement.

# EXHIBIT 2

**EXHIBIT 2**

**PLAINTIFF'S STATEMENT OF ISSUES OF FACT
THAT REMAIN TO BE LITIGATED**

All paragraphs listed in Plaintiff's statement of issues of law are incorporated herein to the extent that the Court may rule that they are issues of fact. Plaintiff specifically incorporates and realleges those portions of Plaintiff's issues of law that may be considered to raise issues of fact.

## I.    JUDICIAL DISSOLUTION

1.    Whether Pokobo should be dissolved pursuant to 6 *Del. C.* §§ 18-801 and 18-802.

2.    Whether Defendant's refusal to communicate with Plaintiff regarding the management of Pokobo has made it not reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

3.    Whether Defendant's failure to comply with his management and fiduciary obligations has made it not reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

4.    Whether Defendant's actions have resulted in a lack of cooperation and trust between the parties that makes it not reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

5.    Whether Defendant's failure to respond to Plaintiff's proposal that the parties agree to dissolve Pokobo pursuant to the LLC Agreement is tantamount to a rejection of Plaintiff's proposal.

6.    Whether the parties' inability to agree on the desirability of dissolving Pokobo and disposing of the 64-Acre Parcel and the 17-Acre Parcel makes it not reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

7.    Whether it is equitable to use a coin flip to determine whether and on what terms to dissolve a limited liability company.

## II.    BREACH OF FIDUCIARY DUTY

1.    Whether, as a co-manager of Pokobo, Defendant owes fiduciary duties of care, loyalty, good faith and fair dealing to Plaintiff and to Pokobo.

2.    Whether Defendant negotiated for the purchase of the 17-Acre Parcel on Pokobo's behalf.

3.    Whether Plaintiff and Defendant agreed that Pokobo would be the owner of the 17-Acre Parcel.

4.    Whether, in breach of his fiduciary duties, Defendant usurped a corporate opportunity of Pokobo and misappropriated the 17-Acre Parcel for himself when it rightfully belongs to Pokobo.

5.    Whether Pokobo was presented with the business opportunity to purchase the 17-Acre Parcel.

6.    Whether Pokobo was: (a) financially able to purchase the 17-Acre Parcel; (b) interested in purchasing the 17-Acre Parcel; and (c) had an interest and expectation in purchasing the property.

7.    Whether Defendant took for himself land that the parties had agreed to purchase in Pokobo's name.

8.    Whether the acquisition of the 17-Acre Parcel -- which was adjacent to the 64-Acre Parcel owned by Pokobo -- was within Pokobo's line of business.

9.    Whether Defendant's purchase of the 17-Acre Parcel in his own name was contrary to the interests of Pokobo and placed him in an adverse position with respect to his duties as a member of Pokobo.

10.    Whether Plaintiff has been irreparably injured as a result of the Defendant's usurpation of the corporate opportunity to purchase the 17-Acre Parcel.

11.    Whether, in breach of his fiduciary duties, Defendant failed to consult and communicate with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in Hawaii.

12.    Whether, in breach of his fiduciary duties, Defendant failed to provide Plaintiff with a full accounting of Pokobo, including a full description of each Partner's capital contributions from 1997 to the present, and a full accounting of Pokobo's expenses.

## III.    BREACH OF CONTRACT

1.    Whether Section 5.01 of the LLC Agreement requires that Pokobo shall be managed jointly by Plaintiff and Defendant in accordance with the LLC Agreement.

2.    Whether Defendant breached Section 5.01 of the LLC Agreement by: (a) improperly titling the 17-Acre Parcel, which rightfully belongs to Pokobo, in his own name; (b) failing to consult and communicate with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in the State of Hawaii; and (c) failing to provide Plaintiff with a full accounting of Pokobo, despite Plaintiff's repeated requests for such an accounting.

3.      Whether Plaintiff has been damaged as a result of Defendant's breach of Section 5.01 of the LLC Agreement.

## IV.    UNJUST ENRICHMENT

1.      Whether the parties agreed, during discussions concerning the acquisition of the 17-Acre Parcel that Pokobo would be the purchaser of the property.

2.      Whether Defendant wrongfully titled the 17-Acre Parcel in his own name.

3.      Whether, as a result, Defendant enjoys all of the rights and benefits associated with ownership of the 17-Acre Parcel.

4.      Whether Defendant has benefited from the significant capital contributions that Plaintiff made to Pokobo to cover costs and expenses, including real estate taxes, associated with the 17-Acre Parcel.

5.      Whether the 17-Acre Parcel rightfully belongs to Pokobo.

6.      Whether, under the circumstances, it would be inequitable to allow Defendant to retain ownership of the 17-Acre Parcel.

7.      Whether, if permitted to retain the 17-Acre Parcel, Defendant will be unjustly enriched.

8.      Whether it would be inequitable to allow Defendant to benefit from the expenses that Plaintiff paid in connection with the 17-Acre Parcel, if Defendant is determined to be the rightful owner of the 17-Acre Parcel.

9.      Whether Plaintiff should be reimbursed for any and all expenses he paid -- either directly or in the form of contributions to Pokobo -- associated with the 17-Acre Parcel, if Defendant is determined to be the rightful owner of the 17-Acre Parcel.

## V.    DECLARATORY JUDGMENT

1.    Whether an actual controversy exists between Plaintiff and Defendant concerning the ownership of the 17-Acre Parcel.

2.    Whether Plaintiff and Defendant intended that ownership of the 17-Acre Parcel would be in Pokobo's name.

3.    Whether the original offer to purchase land from the Lutheran Church was made on Pokobo's behalf.

4.    Whether Defendant contributed funds to Pokobo in the form of a capital contribution to cover the purchase price of the 17-Acre Parcel.

5.    Whether the parties agreed that Plaintiff would make capital contributions to Pokobo to cover the expenses relating to both parcels of land until the parties' capital contributions were equal.

6.    Whether, following Pokobo's purchase of the 17-Acre Parcel, Plaintiff made significant capital contributions to Pokobo to cover expenses in connection with both the 17-Acre Parcel and the 64-Acre Parcel.

7.    Whether Defendant caused the 17-Acre Parcel to be titled improperly in his own name, and has failed to transfer the property to Pokobo.

8.    Whether the 17-Acre Parcel rightfully belongs to Pokobo, and is being held in constructive trust for Pokobo.

9.    Whether Defendant should be directed to transfer title of the 17-Acre Parcel to Pokobo.

## VI.    ACCOUNTING

1.    Whether Defendant dealt properly with the assets and corporate funds of Pokobo.

2.    Whether certain expenses were properly charged to, and paid by, Pokobo.

3.    What the parties' respective contributions to the capital account of Pokobo have been since Pokobo was formed.

## VII.    **DEMAND EXCUSED**

1.    Whether, because Plaintiff and Defendant are the only members of Pokobo and share joint responsibility for its management, demand on the members of Pokobo would be futile.

2.    Whether Defendant is able to consider disinterestedly and independently a demand because he has substantially profited as a result of the actions challenged by Plaintiff.

3.    Whether Defendant's actions were the product of a valid business judgment.

## VIII.    **EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT**

1.    Whether the applicable statutes of limitations should be tolled under the doctrines of equitable tolling and fraudulent concealment.

2.    Whether Defendant owes fiduciary duties of care, loyalty, good faith and fair dealing to Plaintiff and to Pokobo.

3.    Whether Defendant abused this fiduciary relationship and engaged in unfair self-dealing when he misappropriated the 17-Acre Parcel for his personal use by titling it in his name, rather than Pokobo's.

4.    Whether Defendant knowingly and purposefully titled the 17-Acre Parcel in his own name in March 1999, but assured Plaintiff that title to the 17-Acre Parcel would be transferred to Pokobo.

5.     Whether Defendant failed to inform Plaintiff from 1999 until 2002 that he had no intention of ever transferring title to the 17-Acre Parcel to Pokobo.

6.     Whether Defendant breached his fiduciary duties by failing to disclose to Plaintiff that an asset of Pokobo was actually titled to Defendant, and that Defendant had no intention of ever transferring title to Pokobo.

7.     Whether Defendant affirmatively concealed from Plaintiff the improper titling of the Parcel.

8.     Whether Defendant assured Plaintiff on numerous occasions from 1999 to early 2002 that the 17-Acre Parcel was going to be titled in Pokobo's name.

9.     Whether Defendant concealed from Plaintiff the fact that the 17-Acre Parcel had not been transferred to Pokobo, and that Defendant had no intention of ever transferring title to Pokobo.

10.     Whether Defendant sent correspondence, including expense documents and reports, to Plaintiff indicating that the 17-Acre Parcel belonged to Pokobo.

11.     Whether Plaintiff was unaware of Defendant's actionable self-dealing and fraudulent concealment until the Fall of 2002, when Plaintiff learned that title to the 17-Acre Parcel was still in Defendant's name and had not been transferred to Pokobo.

12.     Whether, prior to the Fall of 2002, Plaintiff had reason to suspect that the property had not been transferred to Pokobo, or that Defendant had no intention of ever transferring title to Pokobo.

## IX.     LACHES

1.     Whether any alleged delay by Plaintiff in bringing his claims was unreasonable.

2.    Whether Defendant was disadvantaged or prejudiced by any alleged delay in Plaintiff bringing his claims.

## X.    ATTORNEYS' FEES

1.    Whether Defendant acted in bad faith, vexatiously, wantonly, for oppressive reasons, or in an unjustified manner.

2.    Whether Defendant placed his own economic interests ahead of Pokobo, thus forcing Plaintiff to enforce his rights through litigation.

3.    Whether Defendant's actions necessitated judicial intervention to secure a clearly defined and established right of the Plaintiff.

4.    Whether Defendant's actions were designed to force Plaintiff to resort to litigation for the purpose of causing unreasonable delay.

# EXHIBIT 3

**EXHIBIT 3**

**DEFENDANT'S STATEMENT OF ISSUES OF FACT
THAT REMAIN TO BE LITIGATED**

All paragraphs listed in Defendant's statement of issues of law are incorporated

herein to the extent that the Court may rule that they are issues of fact. Defendant specifically

incorporates and realleges those portions of Defendant's issues of law that may be considered to

raise issues of fact.

The issues of fact identified herein are in addition to, or restatements of the Issues

of Fact to be Litigated identified by the Plaintiff in Exhibit 2. Defendant incorporates herein the

Issues of Fact to be Litigated, identified by the Plaintiff in Exhibit 2 as if set forth herein

verbatim. [Note: In Plaintiff's Statement of Issues of Fact that Remain to be Litigated,

assertions of usurpation of corporate opportunity and tolling of the statute of limitations are

included. Such issues are presented only in the event that this Court shall grant Plaintiff's

pending Motion to Amend his Complaint. In incorporating the Plaintiff's Statement of Issues of

Fact that Remain to be Litigated in this Exhibit, Defendant is not consenting to the pending

Motion or agreeing that issues that are raised by the proposed Amended Complaint are in fact,

issues presently presented to this Court for resolution.]

**I.    JUDICIAL DISSOLUTION**

1.    Whether statutory grounds for judicial dissolution of Pokobo  pursuant to

6 *Del. C.* §§ 18-801 and 18-802 exist in this case.

2.    Whether the provisions of paragraph 5.02 of the Pokobo LLC, which have

not been invoked by the Plaintiff, preclude Plaintiff's right to seek judicial dissolution of

Pokobo.

3.       If grounds for judicial dissolution are determined to exist by this Court, then the factual matters relating to the manner and method of dissolution, the identity and appointment of the liquidating trustee, the identity, authority and directives to be provided to the liquidating trustee and provision for payment of fees and costs of the liquidating trustee and any consultants or agents desired to be retained by the liquidating trustee, if any, need be addressed.

4.       If a liquidating trustee is appointed for Pokobo LLC, the factual issues relating to the defense and prosecution of the pending condemnation action in the State of Hawaii, being CIVIL NO. 02-1-129K (consolidated with CIVIL NO. 02-1-132K) , presently set for hearing on November 6, 2007, need be addressed.

## II.    BREACH OF FIDUCIARY DUTY

1.       The nature and extent of management authority for Pokobo LLC that was granted to the Defendant by the Plaintiff following its formation in 1997.

2.       The nature and extent to which Plaintiff acquiesced in Defendant's management decisions with respect to the operation and management of Pokobo.

3.       The existence and terms of the purported agreement between the Plaintiff and Defendant (which the Defendant denies) with respect to the 17-Acre Parcel and the facts comprising any breach thereof.

4.       The actions and acquiescence by the Plaintiff with regard to the operation and management of Pokobo LLC.

## III.   BREACH OF CONTRACT

1.       The existence and terms of any contract that are purported to have been entered by the Plaintiff and Defendant regarding the operation and management of Pokobo LLC,

the management of the condemnation actions and the Permit Action pending in the State of Hawaii or the acquisition of the 17-Acre Parcel by the Defendant.

       2.      The nature and specific actions that are asserted to constitute any breach of contract by the Plaintiff.

       3.      The existence and value of any damages that Plaintiff has suffered as a result of any breach of the LLC Agreement by Defendant.

## IV.    UNJUST ENRICHMENT

       1.      The factual bases underlying the Plaintiff's claim for unjust enrichment, specifically in his individual capacity.

       2.      The extent and value of the Plaintiff's claim of unjust enrichment, to the extent that the factual and legal basis for such is determined to exist, with specific regard to the extent and amount of Defendant's contribution of time and expenses incurred individually on behalf of and for the benefit of Pokobo LLC.

## V.    DECLARATORY JUDGMENT

       1.      The factual issues relating to the Plaintiff's Declaratory Judgment claim incorporate the individually stated claims for breach of fiduciary duty, breach of contract and unjust enrichment and claim for constructive trust. The factual issues to be resolved with each of the specific claims are stated with regard to each subject area.

## VI.    ACCOUNTING

       1.      Whether Plaintiff has all the financial data from which he can resolve the accounting for Pokobo LLC.

2.      Whether Plaintiff has fully performed the contribution obligations that he asserts to have fulfilled the purported agreement with regard to the acquisition of the 17 Acre Parcel by or on behalf of Pokobo.

**VII.    STATUTE OF FRAUDS**

1.      Whether the Plaintiff's claims for breach of contract and breach of fiduciary duty relating to the acquisition of the 17-Acre Parcel are barred by the applicable statute of limitations by the Plaintiff's failure to bring any action for such claims within the statutory period provided.

**VIII.    LACHES**

1.      The nature and extent of any actions, management oversight or participation that were undertaken by the Plaintiff with regard to the acquisition of the 17-Acre Parcel, the management of the Hawaii litigation, the and the operation and management of Pokobo LLC that would sustain Plaintiff's claims against the Defendant as a matter of equity.

**IX.    LIQUIDATING TRUSTEE**

1.      In the event that a liquidating trustee is to be appointed by this Court for Pokobo LLC, then the identity, qualification, authority, and means and methods of addressing the affairs of Pokobo LLC will be required to be addressed.  Also to be addressed is the manner of financing costs and fees for the trustee and agents, attorneys and consultants to be retained by the trustee, and the security, if any, for such expenses need be determined.

**X.    AFFIRMATIVE DEFENSES**

1.      The nature and extent of all actions undertaken by the Defendant in good faith reliance on professional expertise as a bar to the Plaintiff's claims of breach of contract and breach of fiduciary duty.

## XI.    <u>DAMAGES</u>

      1.    The nature and extent of any damages asserted by the Plaintiff is disputed and need be determined.

# EXHIBIT 4

**EXHIBIT 4**

**PLAINTIFF'S STATEMENT OF ISSUES OF LAW
THAT REMAIN TO BE LITIGATED**

I.    **JUDICIAL DISSOLUTION**

Under the Delaware Limited Liability Company Act, a limited liability company ("LLC") may be judicially dissolved "whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement." 6 *Del. C.* § 18-802.

The Court of Chancery has held that the standard for judicial dissolution of an LLC is not whether it is *impossible* to continue the business, but whether it is *reasonably practicable* to continue the business. *See In re Silver Leaf, L.L.C.*, C.A. No. 20611, 2005 WL 2045641, at *10 (Del. Ch. 2005).

In *Haley v. Talcott*, 864 A.2d 86, 94 (Del. Ch. 2004), plaintiff, a member of a two-member LLC, in which each member held a fifty percent interest, sought judicial dissolution of the LLC under § 18-802, claiming that it was not reasonably practicable to carry on the business of the LLC due to deadlock. In deciding whether to dissolve the LLC, the court looked to a deadlock provision in the general corporate law dealing with joint venture corporations having only two stockholders. *Id.*. A joint venture will be dissolved if two 50% shareholders are "unable to agree on whether to discontinue the business or how to dispose of its assets." *Id.* Haley wanted to dissolve the company and sell the assets, and his partner Talcott did not respond. The court found that the "very fact that dissolution has not occurred," and that Talcott opposed the lawsuit seeking dissolution was a clear indication that the two were deadlocked. *Id.* at 95. The court also found that the partners' failure to interact in over a year supported the finding of an impasse between the two. *Id.* at 96. Thus, because of the two-person ownership

structure, and the partners' inability to agree, the court determined that it was not reasonably practicable for the LLC to continue the business and ordered dissolution.

Section 8.02 of the LLC Agreement provides that "[i]n all cases of dissolution of the Company, the business of the Company shall be wound up and the Company terminated as promptly as practicable thereafter . . . ." The Delaware Limited Liability Company Act grants a manager who has not wrongfully dissolved the LLC the power to wind up the affairs of the LLC. *See* 6 *Del. C.* § 18-803(a).

The persons conducting the winding up of an LLC may settle and close the LLC's business, dispose of the LLC's property, discharge the LLC's liabilities, and distribute the remaining assets to the LLC's members. *See* 6 *Del. C.* § 18-803(b). Section 8.02(b) of the LLC Agreement provides that, upon dissolution, the "property and assets of the Company shall be liquidated by the Partners or their representatives as promptly as possible." Upon dissolution of an LLC whose sole asset is real property, the property shall be sold by the parties. *See Haley v. Talcott*, 864 A.2d 86, 98 (Del. Ch. 2004) (ordering the parties "to sell the Property owned by the LLC within a commercially reasonable time frame").

## II.    SECTION 5.02 – THE COIN FLIP PROVISION

Delaware courts will refuse to enforce an otherwise valid section of an LLC Agreement where the result would be inequitable. In *Haley v. Talcott*, 864 A.2d 86 (Del. Ch. 2004), the Court of Chancery did not enforce an "exit mechanism" provision of the LLC Agreement because it would have imposed an inequitable result on one of the members. *Haley*, 864 A.2d at 97-98.

Courts have refused to allow a coin flip to make a potential end-of-life decision for a company on the grounds that it would be inequitable. In the case of a partnership in which

both partners agreed to decide who would buy out the other partner by flipping a coin, the court stated that "[w]e can hardly consider [the coin toss] to constitute a balancing of the equities of the case and, instead, feel that it violates public policy." *Kandalepas v. Economou*, 547 N.E.2d 496, 498 (Ill. App. Ct. 1989). The court refused to sanction a pure act of chance as a method for making an end-of-life decision for the partnership.

## III.    BREACH OF FIDUCIARY DUTY

"Delaware law . . . governs the internal affairs of a Delaware limited liability company, regardless of its place of operations." *Facchina v. Malley*, 2006 WL 2328228, at *3 (Del. Ch. 2006). Delaware's well-established internal affairs doctrine "requires that the law of the state of incorporation should determine issues relating to internal corporate affairs." *McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987); *see also VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1115 (Del. 2005). The relationships between members and managers of a limited liability company are considered internal affairs of a company under Delaware law. *See McDermott*, 531 A.2d at 215; *see also Assist Stock Management L.L.C. v. Rosheim*, 753 A.2d 974, 981 (Del. Ch. 2000) ("Delaware has a strong interest in providing a forum for disputes relating to the ability of managers of an LLC formed under its law to properly discharge their respective managerial functions.").

The Delaware LLC Act does not itself impose fiduciary duties on members of an LLC, such as the duty of loyalty implicated in a corporate opportunities case. It does provide, however, that any existing duties, including common law fiduciary duties, can be "expanded or restricted or eliminated" by the LLC agreement. 6 *Del. C.* § 18-1101(c).

In cases where an LLC agreement is silent on the fiduciary duties of members, the courts default to traditional corporate governance fiduciary duties. *See* Myron T. Steele, *Judicial*

*Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies*, 32 Del. J. Corp. L. 1, 26 (2007). General "corporate standards often serve as the default rule in the alternative entity context unless they are preempted by valid contracting decisions." *Metro Commun. Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 156 n.78 (Del. Ch. 2004).

As a manager and member of Pokobo, Defendant owes fiduciary duties of care, loyalty and good faith to Plaintiff and to Pokobo. *Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004) (holding that the managers of an LLC owe fiduciary duties of loyalty and care to the LLC and its members). Defendant is required to exercise the appropriate degree of care in the performance of his managerial duties, and "to refrain from doing anything that would work injury to the [Company] . . . ." *Guth v. Loff, Inc.*, 5 A.2d 503, 510 (Del. Ch. 1939).

The corporate opportunity doctrine is based upon "broad considerations of corporate duty and loyalty," recognizing that a director's obligation to a corporation cannot be ignored in the pursuit of private gain. *Guth*, 5 A.2d at 511. As the Delaware Supreme Court has stated, "[t]he doctrine of corporate opportunity represents but one species of the broad fiduciary duties assumed by a corporate director or officer." *Broz v. Cellular Information Sys., Inc.*, 673 A.2d 148, 154 (Del. 1995).

The standard for proving usurpation of a corporate opportunity is a four-factor balancing test:

> [A] corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity

for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation.

*Id.* at 155.    The four factors are analyzed to determine "whether or not the director has appropriated for himself something that in fairness should belong to his corporation." *Johnston v. Greene*, 121 A.2d 919, 923 (Del. 1956).

## IV.    BREACH OF CONTRACT

Under Delaware law, the elements of a breach of contract are: (1) a contractual obligation; (2) breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). A breach of an LLC agreement is a breach of contract. *See Chase Manhattan Bank v. Iridium Africa Corp.*, 307 F. Supp. 2d 608, 612 (D. Del. 2004) (granting summary judgment on a breach of contract claim because of a party's failure to comply with an LLC Agreement).

## V.    UNJUST ENRICHMENT, RESTITUTION, AND CONSTRUCTIVE TRUST

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988).    Unjust enrichment can arise from both a breach of fiduciary duty and a breach of contract. *See* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 12-1 [b] at 12-12. The elements of unjust enrichment are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999).

Restitution is appropriate when a defendant is unjustly enriched at the expense of the plaintiff. *Fleer Corp.*, 539 A.2d at 1062. "Restitution serves to deprive the defendant of

benefits that in equity and good conscience he ought not to keep," and may be invoked regardless of whether or not the defendant is found to be a wrongdoer. *Id.* at 1063. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Pepsi-Cola Bot. Co. of Salisbury, Md. v. Handy*, 2000 WL 364199, at *6 (Del. Ch. 2000). Restitution provides for "not only the restoration of the property to its rightful owner but also compensation or reimbursement for the benefits enjoyed by the defendant through the use or possession of plaintiff's property." *Fleer Corp.*, 539 A.2d at 1063.

"A constructive trust is proper when a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty." *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393-94 (Del. Ch. 1999). Constructive trusts "are traditional remedies for unfair, overbearing, or fraudulent conduct . . . [and] . . . are used to place property in the hands of the rightful owner." *McKee v. McKee*, 2007 WL 1378349, at *4 (Del. Ch. 2007). Moreover, constructive trusts are "most often imposed to remedy breaches of fiduciary duty or the wrongful acquisition of title to property through fraud, duress, or other unconscionable conduct." *Teachers' Retirement System of Louisiana v. Aidinoff*, 900 A.2d 654, 671 n.22 (Del. Ch. 2006). Constructive trusts are most often utilized as a remedy in cases involving a usurpation of corporate opportunity. *See* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 12-7 [b] at 12-97; *Stephanis, by Sterianou v. Yiannatsis*, 1993 WL 437487, at *8 (Del. Ch. 1993) (imposing a constructive trust on stock improperly purchased by a director of a corporation in violation of the duty of loyalty and corporate opportunity doctrine).

## VI.    <u>DECLARATORY JUDGMENT</u>

A declaratory judgment under the Delaware Declaratory Judgment Act defines the rights, status, and other legal relations of the parties to a lawsuit. *See* 10 *Del. C.* § 6501. Declaratory relief requires the presence of an "actual controversy" between the parties. *Stroud v. Milliken Enterprises, Inc.*, 552 A.2d 476, 479 (Del. 1989). The elements of an actual controversy are: (1) a controversy involving the rights or other legal relations of the plaintiff; (2) a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; and (4) the issue must be ripe for judicial determination. *Cantor Fitzgerald, L.P. v. Cantor*, 1999 WL 413394, at *4 (Del. Ch. 1999). "[T]he legitimate interest of the plaintiff in a prompt resolution of the question presented and the hardship that further delay may threaten is a major concern" in determining the applicability of declaratory relief. *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987).

## VII.    <u>ACCOUNTING</u>

"It is a well established principle of equity that fiduciaries have a duty to account to their beneficiaries for their disposition of all assets that they manage in a fiduciary capacity." *Technicorp Intern. II, Inc. v. Johnston*, 2000 WL 713750, at *2 (Del. Ch. 2000). *See also* Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 12-6 [a] at 12-86 ("It is well established that corporate directors in some instances will have a fiduciary duty to account with respect to property that they control for the benefit of the corporation and its stockholders.").

An accounting is an appropriate remedy for breach of fiduciary duty by a manager, especially when the fiduciary has improperly usurped a corporate opportunity. *See Loft, Inc. v. Guth*, 2 A.2d 225, 238 (Del. Ch. 1938) (stating that a fiduciary who has wrongfully usurped a corporate opportunity "must account for the profits resulting form an unlawful act done to promote his own interest"). Fiduciaries have the burden of showing that they dealt properly with company assets and have a duty to account for their disposition of the assets by establishing the "purpose, amount, and propriety of the disbursements." *Technicorp*, 2000 WL 713750, at *16. "An accounting for profits is a means of measuring the benefits bestowed on an unjustly enriched defendant, . . . [who] . . . may be ordered to turn over to the plaintiff the profits earned through the use or possession of the plaintiff's property." *Fleer Corp.*, 539 A.2d at 1063-64. Moreover, a fiduciary is not liable to account solely for the value of the company opportunity he took for his own, but also for "all the gains and profits derived therefrom." *Loft*, 2 A.2d at 238.

## VIII.  DAMAGES

If the 17-Acre Parcel is found to belong to Defendant, as opposed to Pokobo, Plaintiff is entitled to reimbursement of any expenses he paid -- either directly, or in the form of contributions to Pokobo -- associated with the 17-Acre Parcel. *See Pepsi-Cola Bot. Co. of Salisbury, Md. v. Handy*, 2000 WL 364199, at *6 (Del. Ch. 2000) (noting that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other").

## IX.  EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

The statute of limitations for breach of fiduciary duty and breach of contract is three years. 10 *Del. C.* § 8106. Statutes of limitations may be tolled under the doctrines of equitable tolling and fraudulent concealment. Underlying both doctrines is the policy that "a

defendant should not be permitted to use the statute of limitations as a shield where the defendant possesses information critical to the existence of an actionable claim of wrongdoing and prevents the plaintiff from discovering that information in timely fashion." *In re MAXXAM, Inc./Federated Development Shareholders Litigation*, 1995 WL 376942, at *6 (Del. Ch. 1995). If either doctrine applies, the statute of limitations is tolled until plaintiff knew or had reason to know of the facts constituting the wrong. *Id.*

A.    **Equitable Tolling**

Under the doctrine of equitable tolling, the statute of limitations is tolled if there has been an abuse of a fiduciary relationship through a defendant's actionable self dealing. *See In re Fruehauf Trailer Corp.*, 250 B.R. 168, 193 (D. Del. 2000). Equitable tolling requires: (1) a fiduciary relationship between plaintiff and defendant; (2) actionable self-dealing by defendant; and (3) lack of inquiry notice by plaintiff. *Id.*

Managers of limited liability companies owe significant fiduciary duties to each other and the LLC. *See Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004) (holding that the managers of an LLC owe fiduciary duties of loyalty and care to the LLC). Trust and good faith are the "essence" of a fiduciary relationship, and it is unreasonable to punish a plaintiff's reasonable reliance on a fiduciary relationship. *Kahn v. Seaboard Corp.*, 625 A.2d 269, 275 (Del. Ch. 1993); *see also In re Dean Witter*, 1998 WL 442456, at *6 ("Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing, even in the absence of actual fraudulent concealment, where a plaintiff reasonably relies on the competence and good faith of a fiduciary.").

Self-dealing is defined as "participation in a transaction that benefits oneself instead of another who is owed a fiduciary duty." Black's Law Dictionary (8th Ed. 2004). Self

dealing occurs when a defendant usurps a corporate opportunity and takes for himself something that rightfully belonged to the company. *See Strougo v. Carroll*, 1991 WL 9978, at *3 (Del. Ch. 1991) ("The definition of 'self-dealing' . . . involves the misuse of corporate information by a director for his own personal benefit.").

A plaintiff is on inquiry notice when he "is in possession of facts sufficient to make him suspicious, or that ought to make him suspicious" of the underlying wrong. *In re Dean Witter Partnership Litigation*, 1998 WL 442456, at *7 (Del. Ch. 1998). The statute of limitations begins to run only when plaintiff is "*objectively* aware of the facts giving rise to the wrong." *EBS Litigation LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302, 305 (3d Cir. 2002).

B.    **Fraudulent Concealment**

Under the doctrine of fraudulent concealment, the statute of limitations is tolled if plaintiff can prove "an affirmative act of concealment by the defendant -- an 'actual artifice' that prevents a plaintiff from gaining knowledge of the facts or some misrepresentation that is intended to put the plaintiff off the trail of inquiry." *In re Fruehauf Trailer*, 250 B.R. at 186.

Fraudulent concealment can involve either:    (1) affirmative acts of misrepresentation; or (2) failure to disclose facts when there is a duty to disclose. *Id.* To establish an affirmative act of misrepresentation, plaintiff must demonstrate that defendant had actual knowledge of the wrong, and that defendant acted affirmatively to conceal the wrong from plaintiff. *Id.* Fraudulent concealment can also be established by establishing "a business fiduciary relationship between Defendants and Plaintiffs and a duty to disclose." *Id.*

X.    **LACHES**

"The defense of laches will not lie unless there has been an unreasonable delay which has resulted in a change of condition prejudicial to defendant." *Atkinson v. B.E.T.,*

-10-

*Inc.*, 1984 WL 159375, at *4 (Del. Ch. 1984). The elements of laches are: (a) the plaintiff must have knowledge of the claim; and (b) there must be prejudice to the defendant arising from an unreasonable delay by plaintiff in bringing the claim. *Fike v. Ruger*, 752 A.2d 112, 113 (Del. 2000). "Mere delay alone will not give rise to the equitable defense of laches." *Wechsler v. Abramowitz*, 1984 WL 8244, at *1 (Del. Ch. 1984). "Some change in position to the disadvantage of another is essential" to the doctrine of laches. *Bovay v. H.M. Byllesby & Co.*, 22 A.2d 138, 142 (Del. Ch. 1941). "The burden to prove the elements of laches-both delay and prejudice to defendants-rests upon the defendant." *Hudak v. Procek*, 806 A.2d 140, 154 (Del. 2002).

## XI.    ATTORNEYS' FEES

Attorneys' fees may be awarded when the "losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Brice v. State, Dept. of Correction*, 704 A.2d 1176, 1179 (Del. 1998). Attorneys' fees are appropriate where "the action giving rise to the suit involves bad faith, fraud, conduct that was totally unjustified, or the like." *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *4 (Del. Ch. 2001).

Bad faith includes "[a]ctions by a defendant which necessitate judicial intervention to secure a clearly defined and established right" and actions "designed to force an opposing party to resort to litigation for the purpose of causing unreasonable delay." *Abex Inc. v. Koll Real Estate Group, Inc.*, 1994 WL 728827, at *20 (Del. Ch. 1994). Bad faith also includes "where a party misleads the court, alters his testimony or changes his position." *Jacobson v. Dryson Acceptance Corp.*, 2002 WL 31521109, at *16 (Del. Ch. 2002). Delaware courts have found bad faith where "defendants placed their own economic interests ahead of the partnership and forced the plaintiff into a position where it had no choice but to defend its interests by litigation." *Cantor Fitzgerald, L.P. v. Cantor*, 2000 WL 307370, at *32 (Del. Ch. 2000).

In cases of a breach of the duty of loyalty, "potentially harsher rules come into play and the scope of recovery . . . is not to be determined narrowly." *Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *3 (Del. Ch. 2001). Attorneys' fees have been awarded when a defendant's conduct "constituted an egregious breach of the partnership agreement and their duty of loyalty." *Id.* at *4.

# EXHIBIT 5

## EXHIBIT 5

## DEFENDANT'S STATEMENT OF ISSUES OF LAW
## THAT REMAIN TO BE LITIGATED

[Note: Plaintiff's Motion to Amend his Complaint, if granted, would raise factual and legal issues that are not presently included in the case as it presently stands. If the Court should grant the Plaintiff's Motion, and if further, the Court shall determine that it retains diversity jurisdiction over this action, the Defendant would supplement this statement of issues of law that remain to be litigated.]

1.    In the event that this Court shall grant Plaintiff's Motion to Amend his Complaint, the Defendant has brought to the notice of this Court the legal issue of whether this Court retains its diversity jurisdiction. The legal issues and precedent are as set forth in the Defendant's Response in Opposition to the Plaintiff's Motion to Amend.

2.    The issues of law set forth below are in addition to those set forth by the Plaintiff in Exhibit 4.

3.    Determination of the applicable law to be applied to the Plaintiff's allegations of breach of fiduciary duty. Defendant asserts that the actions complained of by the Plaintiff occurred in the State of Hawaii, and the law of the State of Hawaii should be applied. HRS § 414-221 provides for a contractual standard of good faith, not a fiduciary duty for the director of a corporation.

4.    Statute of Limitations.

   A.    As a matter of law, Werner L. Polak's claims of breach of contract, breach of fiduciary duty, unjust enrichment and constructive trust arising from the acquisition of the Lako Street Parcel by John M. Kobayashi in his individual capacity, are barred by the applicable statute of limitations of the State of Delaware.

   In *Hood v. McConemy*, 53 F.R.D. 435 (D. Del. 1971) this Court recognized that summary judgment was appropriate when there is no genuine issue as to any material fact and

the moving party is entitled to summary judgment. At page 440, this Court stated:

> Summary judgment is appropriate when 'there is no genuine issue as to
> any material fact and * * * the moving party is entitled to a judgment as a
> matter of law.' Rule 56(c), Federal Rules of Civil Procedure. The movant
> bears the burden of producing the requisite undisputed evidence to entitle
> him to summary judgment, and the party opposing the motion is entitled to
> all favorable inferences which can be drawn from the evidence. See *Cram
> v. Sun Insurance Office, Ltd.*, 375 F.2d 670 (4th Cir. 1967), 6 Moore
> Federal Practice ¶ 56.15[3] (2nd ed. 1966). Disputed factual issues cannot
> be decided on summary judgment. *Toebelman v. Missouri-Kansas Pipe
> Line Co.*, 130 F.2d 1016 (3rd Cir. 1942).

B.    As to the exhaustion of the statutory period of time in which the plaintiff
Werner L. Polak need have asserted his claims of breach of contract, breach of fiduciary duty,
unjust enrichment and constructive trust, there are no genuine issues of material fact at issue, and
on that basis summary judgment is appropriate as a matter of law.

C.    Plaintiff Werner L. Polak made no claim against Kobayashi relating to
Kobayashi's acquisition of the Lako Street Parcel until the filing of this action in the Court of
Chancery for the State of Delaware on February 28, 2005. This was a period of five years and
nine months after Kobayashi purchased the Lako Street Parcel in May 1999 with his own
personal funds and after he titled the Lako Street Parcel to his own name. All of Polak's claims
relating to the Lako Street Parcel are barred by the running of the applicable statute of limitation,
10 *Del. C.* § 8106 which provides:

> No action to recover damages for trespass, no action to regain possession
> of personal chattels, no action to recover damages for the detention of
> personal chattels, no action to recover a debt not evidenced by a record or
> by an instrument under seal, no action based on a detailed statement of the
> mutual demands in the nature of debit and credit between parties arising
> out of contractual or fiduciary relations, no action based on a promise, no
> action based on a statute, and no action to recover damages caused by an
> injury unaccompanied with force or resulting indirectly from the act of the
> defendant shall be brought after the expiration of 3 years from the
> accruing of the cause of such action; subject, however, to the provisions of
> § § 8108-8110, 8119 and 8127 of this title.

In *Youell v. Maddox*, 692 F.Supp. 343 (D. Del. 1988), the U.S. District Court for

the District of Delaware determined that the law of the State of Delaware was the applicable law

for an action brought in the State of Delaware for breach of contract notwithstanding the contract

was entered in the State of Pennsylvania and the location of the incident where the claim arose

was the District of Columbia.

Applying Delaware law to the claims before it, the Court stated, at pages 354-355:

The Court must now determine the limitations period to be applied.   In
following the *Erie* doctrine, this Court must apply Delaware's law
regarding statutes of limitations.  *See Wells v. Simonds Abrasive Co.*, 345
U.S. 514, 516-17, 73 S.Ct. 856, 857-58, 97 L.Ed. 1211 (1953); *Ontario
Hydro v. Zallea Systems, Inc.*, 569 F.Supp. 1261, 1265 (D. Del.1983);
*Freedman v. Beneficial Corp.*, 406 F.Supp. 917, 921 (D. Del.1975).
However, Delaware has adopted a "borrowing statute" in an effort to
prevent nonresident plaintiffs from "forum-shopping" for a statute of
limitations that is longer than the one imposed by the state in which the
action arose.  *See 10 Del. C. § 8121*. The "borrowing statute" provides
that when a cause of action arises outside of Delaware, a federal court
sitting in diversity in Delaware must apply whichever is *shorter:* the
statute of limitations of Delaware, or that of the jurisdiction in which the
claim arose. *Id.*

In the instant case, both parties agree that Delaware's statute of limitations
should apply to plaintiff's causes of action.   Thus, even though the parties
disagree as to whether the law of Pennsylvania (where the contract was
signed) or the District of Columbia (where the incident occurred) governs
the substantive contract issues, neither party has offered the respective
statutes of limitations of those states for comparison.  Nevertheless, the
Court finds that Delaware's three-year limitations period, as set forth in 10
Del. C. § 8106, does indeed apply to plaintiff's breach of contract claim.
This would be the case whether the action arose in Pennsylvania or the
District of Columbia, because Delaware's limitations period is shorter than
that of Pennsylvania, and equal to that of the District of Columbia.

To the same effect, in *Hood v. McConemy,* 53 F.R.D. 435 (D. Del.1971), this

Court stated at page 445:

In a civil action in which jurisdiction is predicated on diversity of
citizenship, a federal court will apply the conflict of law rules of the forum
state.  *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S.

487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Addressing the time at which the statute of limitations begins to run, also applying

Delaware law, in *Youell*, at page 355, this Court determined:

> Delaware follows the generally accepted principle that a cause of action
> for breach of contract accrues at the time of the breach. *Hood v.
> McConemy*, 53 F.R.D. 435, 445 (D. Del.1971); *Lembert v. Gilmore*, 312
> A.2d 335, 337 n. 3 (Del. Super.1973); *Nardo v. Guido DeAscanis & Sons*,
> 254 A.2d 254, 256 (Del. Super.1969).

Delaware's three year statute of limitations has further been determined to apply

to claims arising from a claim of conversion, the imposition of a constructive trust and for

recognition of equitable title. This statute was applied by the Delaware Court of Chancery in

*Spano v. Morse*, C.A. 20121, 2003 WL 22389542, at *1 (Del.Ch. Oct. 8, 2003) as follows:

> The court is satisfied that the gravamen of the petition is the legal claim of
> conversion. The other claims for relief all clearly arise out of and depend
> upon proof of that claim because, if the petitioners are unable to prove that
> Morse misappropriated the money, they cannot be entitled to an order
> imposing a constructive trust on Morse's interest in the Property. In the
> circumstances, the court should apply, by analogy, the three-year statute of
> limitations found in 10 *Del. C.* § 8106.

In *Fike v. Rugger*, 754 A.2d 254 (Del. Ch. 1999), the Delaware Court of Chancery

expressly determined that Delaware's three year statute of limitations applied to a claim for

breach of contract and breach of fiduciary duty and also stated that such statute began to run as

of the date that the cause of action accrued. The Court of Chancery stated at pages 260-261:

> Under Delaware law, a three-year statute of limitations applies to claims
> for breach of contract or breach of fiduciary duty.  10 *Del. C.* §  8106.
> While this Court is not specifically bound to apply the statute of
> limitations, "equity follows the law and, in appropriate circumstances,
> applies the statute of limitations by analogy, denying relief when claims
> are brought after the analogous statutory period." *Merck & Co., Inc. v.
> SmithKline Beecham Pharms. Co.*, Del. Ch., C.A. No. 15443, mem. op. at
> 100, Chandler, C. (Aug. 5, 1999); *see also United States Cellular Inv. Co.
> of Allentown v. Bell Atlantic Mobile Sys., Inc.*, Del. Supr., 677 A.2d 497,
> 502 (1996). "[W]here the relief sought in equity in a so-called complaint

for an accounting is actually the mere recovery of money, as is the case here," the case is analogous to an action for monetary damages. *Artesian Water Co. v. Lynch,* Del. Ch., 283 A.2d 690, 692 (1971).

A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong. *In re Dean Witter Partnership Litig.,* C.A. No. 14816, mem. op. at 11, 1998 WL 442456, Chandler, C. (July 17, 1998).

The Delaware Court of Chancery in *Artesian Water Co. v. Lynch,* 283 A.2d 690, 692 (Del. Ch. 1971), where a claim in equity is based upon the same facts as the action at law (*i.e.* breach of contract), the applicable statute of limitations as to each claim was stated to be the same.

> In other words, the period of the applicable statute of limitations should be applied as a bar in those cases which fall within that field of equity jurisdiction which is concurrent with analogous suits at law, *Bush v. Hillman Land Co.,* 22 Del.Ch. 374, 2 A.2d 133.   And where the relief sought in equity in a so-called complaint for an accounting is actually the mere recovery of money, as is the case here, an action for such type of relief is analogous to an action at law for the same or equivalent relief, 1 Mechem on Agency, § 1342 (Second Ed.), *Perkins v. Cartmell's Adm'r,* supra.   Cochran v. F. H. Smith Co., 20 Del.Ch. 159, 174 A. 119, and 1 Pomeroy's Eq. Jur., § 186a (Fifth Ed.).

> [FN 3] In the cited case the recovery sought in equity was not a money judgment but the cancellation of shares of stock, a purely equitable remedy.

> The statute of limitations applicable to a legal action analogous to the one at bar provides that a plaintiff must file his action within three years after his cause of action accrues, 10 *Del. C.* § 8106.  Thus, in the case at bar, when the individual plaintiff failed to receive a full share of Artesian stock for the defendant Laird, Bissell & Meeds in January, 1960, and thereafter failed to receive any of the dividends declared on any of his Artesian stock, a fact which is reflected in the individual plaintiff's tax returns filed after the taxable year 1959, his cause of action arose.  Furthermore, the fact that the individual plaintiff was unaware of the mistake in question at the time it was made does not, under the circumstances of record, stand in the way of the running of the statute, *Mastellone v. Argo Oil Corp.,* 46 Del. 102, 82 A.2d 379. *Artesian Water Company, supra* at page 692.

D.    Polak's claims are based upon his assertion that Kobayashi's acquisition of the Lako Street Parcel and titling the Parcel to his own name, which occurred on May 27, 1999, was a breach of contract and a breach of fiduciary duty.  Under Delaware law, the statute of limitations began to run on May 27, 1999 and expired on May 28, 2002.

Delaware law is clear that the date of the occurrence of the event is the date from which the statute of limitations begins to run.  In *Hood, supra* at page 445, this Court stated:

> The second contention, that the cause of action does not accrue until the plaintiffs were aware of it, is without merit in these circumstances. Numerous Delaware cases have rejected this 'time of discovery' rule and have held that, absent other factors, the plaintiffs' ignorance of a cause of action does not affect the date on which the action accrues, *Mastellone v. Argo Oil Corp.*, 7 Terry 102, 82 A.2d 379 (Del. Sup. Ct.1951); *Klein v. Lionel Corp.*, 130 F.Supp. 725 (D. Del.1955); *Leibowitz v. Hicks*, 42 Del. Ch. 209, 207 A.2d 371 (1965).  The only case in which the doctrine was accepted was *Layton v. Allen*, 246 A.2d 794 (Del. Sup. Ct.1968).  That case involved a suit for medical malpractice where the plaintiff felt no discomfort until seven years after the initial operation.  Subsequent examination revealed that a hemostat had not been removed during the initial operation.  The court concluded that the limitations period did not commence to run until the plaintiff's injury manifested itself.  However, the court clearly delineated the factors relevant to its conclusion by citing the 'inherently unknowable' aspect of the internal injury situation.  In light of the Delaware Supreme Court's specific and narrowly defined application of the 'time of discovery' doctrine in *Layton,* this Court cannot accept plaintiffs' argument that the statute of limitations does not accrue until their discovery of the dismissal of the first action.  A dismissal of a lawsuit, unlike a faulty operation, was ascertainable on and after April 18, 1966.  Accepting plaintiffs' contention would produce a substantial alteration of Delaware's substantive law.  For the above reasons, the Court concludes that the Hoods' cause of action against McConemy and Wilson accrued on April 18, 1966 for purposes of the running of the statute of limitations.

E.    Under all applicable statutes of limitation, Polak's claims that relate to the Lako Street Parcel whether such claims are asserted individually or through Pokobo, arising from breach of contract, breach of fiduciary duty, unjust enrichment and constructive trust are barred from consideration by 10 *Del. C.* §  8106.

4.    Whether the failure to comply with the provisions of Paragraph 5.02 of the LLC

Agreement precludes, as a matter of law, the Plaintiff's right to a judicial dissolution of Pokobo.

(The legal issues and applicable precedent are as set forth in the Plaintiff's Statement of Issues,

in Exhibit 4).

5.    Plaintiff has not identified the measure or extent of any damages, generally and

with specific regard to his claims for breach of contract, breach of fiduciary duty or declaratory

judgment.  Absent proof to the nature and extent of actual damages, Plaintiff states no claim

upon which relief may be granted.

In *Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, C.A. No. 20405-

NC, 2005 WL 3502054, at *20 (Del.Ch. Dec. 15, 2005) the Court stated:

> In summary, Thriftway has failed to show that NWL caused it quantifiable damages, either in terms of loss of profits or the cost to regain loss of customers. The burden, of course, is on the plaintiff to show damages. [FN108] In terms of lost profits, Thriftway's damage calculation was inflated by an overly expansive and overly simplistic methodology. In terms of loss of customers and profits, Thriftway's argument that competition from Dollar Tree, the Basin Road construction, and, most importantly, the Fleming bankruptcy, did not have any effect on its sales or customers is unpersuasive. These events had *some* meaningful impact on Thriftway's customer count and sales and, in the face of Thriftway's representation to the Bankruptcy Court regarding Fleming's bankruptcy, assertions to the contrary from Thriftway here have little credibility.  [FN111] Accordingly, Thriftway has not met its burden of proving damages.
>
> FN108. *See, e.g., Kronenberg v. Katz*, 872 A.2d 568, 609 (Del. Ch. 2004) ("Under Delaware law, plaintiffs must prove their damages with a reasonable degree of precision and cannot recover damages that are merely speculative or conjectural.") (internal quotations omitted).

# EXHIBIT 6

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 1 | 03/01/97 | | | Polak Dep. Exh. 3 | Limited Liability Company Agreement of Pokobo LLC |
| 2 | 05/09/90 | WLP000896 | WLP000984 | | Letter from J. Hallstrom to Y. Tokunaga re: appraisal of a 64.266 Acre Land Parcel, Kailau-Kona, North Kona, Hawaii |
| 3 | 02/09/97 | WLP002246 | WLP002246 | | Check from W. Polak to Pokobo - amount of $25,000 - Check no. 4550 |
| 4 | 02/10/97 | JMKO02531 | JMKO02531 | Polak Dep. Exh. 4 | Memorandum from W. Polak to J. Kobayashi re: down payment on Alii Drive Purchase |
| 5 | 02/11/97 | JMKO02532 | JMKO02552 | Polak Dep. Exh. 5 | Memorandum from W. Polak to J. Kobayashi with attached draft of limited liability partnership agreement |
| 6 | 02/21/97 | WLP002247 | WLP002247 | | Wire Transfer |
| 7 | 03/24/97 | JMKO02597 | JMKO02598 | Polak Dep. Exh. 13 | Letter from L. Bennett to W. Polak re: signature on card for Pokobo account at Mountain States Bank in Denver Colorado |
| 8 | 03/28/97 | JMKO02259 | JMKO02259 | Polak Dep. Exh. 14 | Fax from J. Kobayashi to W. Polak acknowledging receipt of signature card from L. Bennett |
| 9 | 04/08/97 | JMKO02329 | JMKO02329 | Polak Dep. Exh. 15 | Memo from W. Polak to J. Kobayashi re: Alii Drive Purchase; transmitting memo from B. McCourt (not attached) and requesting that the $604.54 be placed into the Pokobo account |
| 10 | 04/15/97 | WLP002248 | WLP002248 | | Check from W. Polak to Pokobo - amount of $5,000 - Check no. 4622 |
| 11 | 08/19/97 | WLP002249 | WLP002249 | | Check from W. Polak to Pokobo - amount of $2200.00 - Check no. 4755 |
| 12 | 11/13/97 | WLP002250 | WLP002250 | | Check from W. Polak to Pokobo - amount of $2000.00 - Check no. 4848 |
| 13 | 11/21/97 | C6000431 | C6000431 | Grubb Dep. Exh. 2 | 1997 Contributions / Expenses |
| 14 | 12/31/97 | C6000179 | C6000179 | Grubb Dep. Exh. 3 | Pokobo Balance Sheet as of 12/31/97 |
| 15 | 12/31/97 | C6000425 | C6000425 | Grubb Dep. Exh. 4 | Pokobo Trial Balance Sheet as of 12/31/97 |
| 16 | 12/31/97 | C6000080 | C6000085 | Grubb Dep. Exh. 7 | Pokobo General Ledger as of 12/31/97 |
| 17 | 01/07/98 | WLP000354 | WLP000354 | | W. Polak Handwritten notes re: J. Kobayashi |
| 18 | 01/27/98 | C6000405 | C6000407 | Grubb Dep. Exh. 5 | Fax from L. Bennett to C. Grubb transmitting Pokobo accounting 1997 and Projected Pokobo Expenses for 1998 |
| 19 | 01/28/98 | WLP002251 | WLP002251 | | Check from W. Polak to Pokobo - amount of $2,500.00 - Check no. 4928 |
| 20 | 02/12/98 | WLP000413 | WLP000426 | Grubb Dep. Exh. 6 | Letter from C. Grubb to W. Polak enclosing Schedule K-1, Partner's Share of Income, Credits, Deductions |
| 21 | 03/06/98 | WLP002252 | WLP002252 | | Check from W. Polak to CT Corporation - amount of $186.33 - Check no. 4964 |
| 22 | 04/10/98 | WLP002253 | WLP002253 | | Check from W. Polak to State of Delaware - amount of $100.00 - Check no. 5003 |
| 23 | 09/01/98 | C6000432 | C6000432 | Grubb Dep. Exh. 8 | 1998 Contributions / Expenses |
| 24 | 11/10/98 | JMKO04982 | JMKO04982 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project - summary of Telephone conversation |
| 25 | 11/13/98 | JMKO04960 | JMKO04960 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project - meeting with C. Matsunaga |
| 26 | 12/21/98 | WLP002483 | WLP002483 | | Memo from S. Fuke to J. Kobayashi re: Past and Current Billing - Kona Project |
| 27 | 12/31/98 | C6000086 | C6000086 | Grubb Dep. Exh. 9 | Pokobo General Ledger as of 12/31/98 |
| 28 | 01/19/99 | MIF000071 | MIF000075 | Olson Dep. Exh. 7 | Letter from H. Olson to G. Oogan re: Kailua-Kona HI/HI 275/Study Documents |
| 29 | 01/27/99 | MIF000406 | MIF000408 | Olson Dep. Exh. 8 | Memorandum to C. Schneider from A. Waters re: HI-275/Church of the Holy Trinity, Kailua-Kona, HI |
| 30 | 01/28/99 | JMKO05460 | JMKO05469 | | Fax cover sheet from B. McCourt to J. Kobayashi with a note on the fax cover sheet stating that faxed S. Fuke fax cover letter and the fax records information on the Lutheran Church property. |

1

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 31 | 01/29/99 | MIF000380 | MIF000384 | Polak Dep. Exh. 6<br>Olson Dep. Ex. 9 | Letter from J. Kobayashi to H. Olson re: offer to purchase not less than one and a half acres and not more than three acres of land of National Church's 22.86 acres in Kailua-Kona, Hawaii |
| 32 | 01/29/99 | WLP000349 | WLP000349 | | W. Polak Handwritten notes re: J. Kobayashi |
| 33 | 01/29/99 | WLP002484 | WLP002484 | | Memo from S. Fuke to J. Kobayashi re: Past and Current Billing - Kona Project |
| 34 | 02/01/99 | JMK005363 | JMK005366 | Kobayashi Dep. Exh. 2 | Handwritten Notes |
| 35 | 02/02/99 | WLP000350 | WLP000350 | Olson Dep. Exh. 10 | W. Polak Handwritten notes re: J. Kobayashi |
| 36 | 02/04/99 | JMK005413 | JMK005413 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project - thanking the council and consolidating two parcels |
| 37 | 02/08/99 | JMK005389 | JMK005393 | | Memo from S. Fuke to J. Kobayashi re: Lutheran Church Property - Consolidation/Resubdivision; Requirements for A 3-Lot Subdivision with maps attached - with marginalia |
| 38 | 02/08/99 | JMK005381 | JMK005382 | | Memo from S. Fuke to J. Kobayashi re: Lutheran Church Property - Consolidation/Resubdivision; Requirements for A 3-Lot Subdivision with maps attached - with marginalia |
| 39 | 02/08/99 | JMK005379 | JMK005380 | | Memo from S. Fuke to J. Kobayashi re: Lutheran Church Property - Consolidation/Resubdivision; Requirements for A 3-Lot Subdivision with maps attached - with marginalia |
| 40 | 02/08/99 | WLP000355 | WLP000355 | | W. Polak Handwritten notes re: J. Kobayashi |
| 41 | 02/08/99 | JMK005383 | JMK005386 | | Memo from S. Fuke to J. Kobayashi re: Lutheran Church Property |
| 42 | 02/09/99 | WLP000314 | WLP000325 | Olson Dep. Exh. 11 | Fax from J. Kobayashi to W. Polak with attached letter to H. Olson re: Confirmation of Acceptance of Pokobo's Offer to Purchase 1½ acres to 3 acres of TMK: 7-7-456 |
| 43 | 02/09/99 | WLP000314 | WLP000325 | Kobayashi Dep. Exh. 1 | Fax from J. Kobayashi to W. Polak with attached letter to H. Olson re: Confirmation of Acceptance of Pokobo's Offer to Purchase 1½ acres to 3 acres of TMK: 7-7-456 |
| 44 | 02/09/99 | WLP000314 | WLP000319 | Polak Dep. Exh. 7 | Fax from J. Kobayashi to W. Polak attaching letter from J. Kobayashi to H. Olson re: confirmation of acceptance of Pokobo's offer to purchase 1 1/2 acres to 3 acres of TMK |
| 45 | 02/09/99 | WLP000308 | WLO000309 | Olson Dep. Exh. 12 | Fax from J. Kobayashi to W. Polak attaching a copy of a letter to S. Fuke and W. Polak re: Pokobo's offer to purchase 1-1/2 acres to 3 acres of TMK: 7-7-456 dated 2/9/99 |
| 46 | 02/09/99 | JMK005372 | JMK005372 | Polak Dep. Exh. 17 | Letter from J. Kobayashi to S. Fuke and W. Polak re: Pokobo's offer to purchase 1 1/2 acres to 3 acres of TMK and correcting the price of 30 cents per sq. ft to .33 cents per sq. ft |
| 47 | 02/10/99 | CG000430 | CG000430 | Grubb Dep. Exh. 11 | Pokobo Account Balance as of 02/10/99 |
| 48 | 02/13/99 | JMK005403 | JMK005403 | | Handwritten notes re: Pokobo |
| 49 | 02/16/99 | WLP000433 | WLP000434 | | Fax cover sheet from L. Bennett to W. Polak w/ attached statement re: the Pokobo account |
| 50 | 02/16/99 | WLP000357 | WLP000357 | | W. Polak Handwritten notes re: J. Kobayashi |
| 51 | 02/17/99 | WLP000356 | WLP000356 | | W. Polak Handwritten notes re: J. Kobayashi |
| 52 | 02/18/99 | JMK006564 | JMK006564 | | Memo from S. Fuke to J. Kobayashi re: Pokobo/Lutheran Church Subdivision Recordation |
| 53 | 02/18/99 | WLP002254 | WLP002254 | | Check from W. Polak to Pokobo - amount of $10,000 - Check no. 5309 |
| 54 | 02/19/99 | LCHT000030<br>WLP000326 | LCHT000032<br>WLP000329 | Olson Dep. Exh. 14 | Fax from J. Kobayashi to W. Polak re: charitable donation for Community Center in Kona, Hawaii |
| 55 | 02/19/99 | WLP000326 | WLP000329 | Kobayashi Dep. Exh. 3 | Fax from J. Kobayashi to W. Polak attaching letter to H. Olson re: Charitable Donation for Community Center in Kona, Hawaii |

2

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 56 | 02/19/99 | JMK005977 | JMK005978 | Grubb Dep. Exh. 12 | Memo from C. Grubb to J. Kobayashi re: Land Acquisition; Handwritten notes |
| 57 | 02/22/99 | JMK006591 | JMK006595 | | Memo from S. Fuke to J. Kobayashi re: Consolidation/Resubdivision Timetable |
| 58 | 02/22/99 | JMK006552 JMK006551 JMK006555 | JMK006554 JMK006561 JMK006556 | | Memo from S. Fuke to J. Kobayashi re: Church Property and Meeting with Planning Director w/ marginalia |
| 59 | 02/23/99 | JMK008358 | JMK008359 | Kobayashi Dep. Exh. 8 | Letter from L. Bennett to L. Marshall enclosing retainer check for preparation of the Purchase and Sell documents |
| 60 | 02/23/99 | JMK005976 | JMK005976 | Kobayashi Dep. Exh. 12 | Memo from S. Fuke to C. Yamasaki cc: J. Kobayashi re: Subdivision Map - Evangelical Lutheran Church in America TMK: 7-7-04: 56 (Subdivision File NO. 94-91) |
| 61 | 02/23/99 | JMK05799 | JMK005820 | | Fax cover sheet from L. Higashi to J. Kobayashi with attached draft of purchase and sale agreement and deed from seller with marginalia |
| 62 | 02/24/99 | MIF000361 | MIF000379 | Olson Dep. Exh. 15 | Fax cover to H. Olson from L. Higashi enclosing a Form of Purchase and Sale Contract and a subdivision map [pg numbering out of order] |
| 63 | 02/24/99 | MIF000221 | MIF000239 | Olson Dep. Exh. 16 | Mutual Grant of Easement; draft letter to H. Olson from J. Kobayashi re: charitable donation for Community Center in Kona, Hawaii; fax cover sheet to H. Olson from S. Lim w/calculations of the sales price/gift to ELCA; fax cover to S. Lim from H. Olson w/name change certificates & Good Standing Certificate; letter to S. Lim from H. Olson attaching affidavit of H. Olson |
| 64 | 02/24/99 | unnumbered | unnumbered | Kobayashi Dep. Exh. 5 Grubb Dep. Exh. 13 | Memorandum from C. Grubb to J. Kobayashi re: Land Acquisition |
| 65 | 02/24/99 | JMK005821 | JMK005840 | | Fax cover sheet from L. Higashi to J. Kobayashi with attached final purchase and sale agreement and exhibits with marginalia |
| 66 | 02/25/99 | MIF000340 | MIF000360 | Kobayashi Dep. Exh. 6 Olson Dep. Exh. 15-A | Fax from H. Olson to S. Lim transmitting draft purchase and sale contract |
| 67 | 03/01/99 | WLP002485 | WLP002485 | | Memo from S. Fuke to J. Kobayashi re: Past and Current Billing - Kona Project |
| 68 | 03/02/99 | JMK005731 | JMK005732 | | Memo from S. Fuke to J. Kobayashi re: Council Appropriation - Lako Street and Lutheran Church Subdivision |
| 69 | 03/03/99 | JMK005729 | JMK005730 | | Handwritten notes |
| 70 | 03/04/99 | JMK005568 | JMK005569 | | Handwritten notes |
| 71 | 03/04/99 | WLP002255 | WLP002255 | | Check from W. Polak to CT Corporation - amount of $179.00 - Check no. 5319 |
| 72 | 03/09/99 | WLP000436 | WLP000438 | Grubb Dep. Exh. 10 | Letter from C. Grubb to W. Polak enclosing Schedule K-1 |
| 73 | 03/10/99 | MIF000029 | MIF000070 | Olson Dep. Exh. 17 | Handwritten fax cover sheet to J. Kobayashi & H. Olson from L. Higashi attaching signature copies of the Purchase and Sale Contract |
| 74 | 03/10/99 | WLP002256 | WLP002256 | | Check from W. Polak to Pokobo - amount of $40,000 - Check no. 5332 |
| 75 | 03/18/99 | MIF000174 | MIF000175 | Olson Dep. Exh. 19 | Notice of Property Assessment addressed to Evangelical Lutheran Church, Chicago, Illinois |
| 76 | 03/18/99 | MIF000176 | MIF000220 | Olson Dep. Exh. 20 | Handwritten notes with attached fax |

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 77 | 03/19/99 | CG000467 | CG000474 | Grubb Dep. Exh. 14 | Spreadsheets: Werner Polak - Pokobo Contributions; John Kobayashi - Pokobo Contributions; Pokobo Checking Account |
| 78 | 03/20/99 | JMK008313 | JMK008336 | Olson Dep. Exh. 21 | Executed Purchase And Sale Contract [03/15/99, 03/20/99] |
| 79 | 03/20/99 | JMK008313 | JMK008336 | Kobayashi Dep. Exh. 7 | Purchase and Sale Contract between J. Kobayashi and Mission Investment Fund of the Evangelical Lutheran Church in America |
| 80 | 04/02/99 | JMK005969 | JMK005971 | | Memo from S. Fuke to J. Kobayashi re: Pokobo, LLC Kona Project |
| 81 | 04/02/99 | WLP002486 | WLP002486 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 82 | 04/08/99 | WLP002257 | WLP002257 | | Check from W. Polak to State of Delaware - amount of $100.00 - Check no. 5353 |
| 83 | 05/03/99 | WLP002487 | WLP002487 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 84 | 05/12/99 | JMK002791 | JMK002805 | Olson Dep. Exh. 24 | Fax cover from L. Higashi to H. Olson re: J. Kobayashi/Mission Investment Fund forwarding copies of:  (1) Revised Deed for .771 interest; Exhibit A and (2) Revised Mutual Grant of Easement; Exhibit A and Exhibit B |
| 85 | 05/12/99 | JMK005966 | JMK005966 | Olson Dep. Exh. 25 | Letter from J. Kobayashi Firm to L. Higashi (1st page only) re: lack of progress in closing |
| 86 | 05/12/99 | JMK005962 | JMK005965 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project - Roadway and Subdivision Information |
| 87 | 05/17/99 | JMK002788 | JMK002790 | | Handwritten notes with attached Replacement Property River's Closing Statement |
| 88 | 05/29/99 | JMK006029 | JMK006032 | | Letter agreement from C. Yamasaki to J. Kobayashi cc: S. Fuke re: ALTA Certification of Proposed Lot 2 Portion of Grant 1856 to Kawaihoa at Holualoa 3rd, North Kona, Hawaii |
| 89 | 06/01/99 | WLP002488 | WLP002489 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 90 | 07/02/99 | WLP002489 | WLP002489 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 91 | 07/28/99 | MTF000137 | MTF000141 | Olson Dep. Exh. 28 | Letter from H. Olson to J. Kobayashi re: Kailua Kona HI - HI-275 - attaching tax bills for the property from 7/1/99-6/30/00 |
| 92 | 08/02/99 | WLP002490 | WLP002490 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 93 | 08/09/99 | WLP000351 | WLP000351 | | W. Polak Handwritten notes re: J. Kobayashi |
| 94 | 09/07/99 | JMK006005 | JMK006007 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project |
| 95 | 09/17/99 | JMK005988 | JMK005993 | | Fax cover sheet from S. Fuke to J. Kobayashi with memo attached re: Possible Planning and Development Scenario - POKOBO property |
| 96 | 09/30/99 | LCH-T000029 | LCH-T000029 | Olson Dep. Exh. 27 | Letter from H. Olson to J. Kobayashi re: lot line adjustment (cc'd Rev. Frederick J. Sapp) |
| 97 | 11/01/99 | WLP002491 | WLP002491 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 98 | 11/04/99 | MTF000143 | MTF000143 | Olson Dep. Exh. 30 | Letter from H. Olson to J. Kobayashi re: lot line adjustment |
| 99 | 11/12/99 | JMK006077 | JMK006077 | | Handwritten notes |
| 100 | 11/16/99 | JMK006070 | JMK006070 | | Handwritten notes |
| 101 | 11/17/99 | MTF000151 | MTF000158 | Olson Dep. Exh. 31 | Letter from H. Olson to J. Kobayashi with attached Carlsmith Ball dated 06/14/99 |
| 102 | 11/25/99 | JMK006052 | JMK006054 | | Handwritten notes |
| 103 | 12/10/99 | WLP000330 | WLP000336 | Olson Dep. Exh. 32 | Memo from S. Fuke to J. Kobayashi re: church property attaching a copy of the proposed subdivision map |
| 104 | 12/16/99 | JMK006090 | JMK006092 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Property |
| 105 | 12/29/99 | WLP000341 | WLP000341 | Kobayashi Dep. Exh. 11 | John Kobayashi - Pokobo  Contributions, 5/31/97 - 12/29/99 |

4

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 106 | 12/31/99 | CG000214 | CG000222 | Grubb Dep. Exh. 15 | Werner Polak's Schedule K-1 (Partner's Share of Income, Credits, Deductions, etc.) for year ended 12/31/99 |
| 107 | 12/31/99 | CG000092 | CG000097 | Grubb Dep. Exh. 18 | Pokobo General Ledger as of 12/31/99 |
| 108 | 01/00/00 | JMK008034 | JMK008035 | | Pokobo Expenses |
| 109 | 01/03/00 | WLP002492 | WLP002492 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 110 | 01/11/00 | CG000460 | CG000464 | Grubb Dep. Exh. 19 | Handwritten note from C. Grubb to L. Bennett attaching spreadsheet re: Pokobo Expenses and Werner Polak Contributions |
| 111 | 01/13/00 | JMK006186 | JMK006189 JMK006355 | Olson Dep. Exh. 34-A | Fax cover sheet from J. Kobayashi to W. Polak attaching letter dated 1/13/00 to Pastor Sapp (pages out of order) |
| 112 | 01/14/00 | LCHT000024 | LCHT000026 | Olson Dep. Exh. 13 | Letter from J. Kobayashi to F. Sapp transmitting a cut and paste photocopy reproduction of a surveyor's map |
| 113 | 01/19/00 | CG000457 | CG000459 | Grubb Dep. Exh. 17 | Spreadsheet: Pokobo Transaction Detail by Account, January through December 1999 |
| 114 | 01/21/00 | JMK006223 | JMK006226 | Kobayashi Dep. Exh. 13 | Memo from S. Fuke to J. Kobayashi re: Lako Street and Other Matters with marginalia |
| 115 | 01/21/00 | JMK006223 | JMK006228 | | Memo from S. Fuke to J. Kobayashi re: POKOBO, LLC - Lako Street and Other Matters |
| 116 | 01/24/00 | JMK006167 | JMK006167 | | Memo from S. Fuke to C. Matsunaga cc: J. Kobayashi re: Request for Proposal - TMK: 7-7-04; 56 & 53 |
| 117 | 01/24/00 | JMK006168 | JMK006168 | | Memo from S. Fuke to P. Rosendahl re: Request for Proposal - TMK: 7-7-04: 56 |
| 118 | 01/24/00 | WLP000352 | WLP000353 | | W. Polak Handwritten notes re: J. Kobayashi |
| 119 | 01/28/00 | JMK006154 | JMK006157 | | Fax cover sheet from J. Kobayashi to W. Polak re: memo from S. Fuke dated 1/28/00 re: Lako Street Extension (pages out of order) |
| 120 | 02/03/00 | WLP002493 | WLP002493 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 121 | 02/04/00 | MIF000142 | MIF000142 | Olson Dep. Exh. 35 | Letter from H. Olson to J. Kobayashi re: lot line adjustment |
| 122 | 02/14/00 | WLP000337 | WLP000339 | Kobayashi Dep. Exh. 15 | Fax from J. Kobayashi to W. Polak transmitting memo re: Projected Expenses for next 6 months and Associated Payables |
| 123 | 02/23/00 | JMK006149 | JMK006151 | | Letter from A. Haun to S. Fuke re: Haun & Assoc proposes to conduct an archaeological inventory survey of a 17-acre portion of TMK: 7-7-04:56, Holualoa 3rd, North Kona, Island of Hawaii |
| 124 | 02/23/00 | WLP000440 | WLP000440 | | Check from W. Polak to Pokobo - amount of $25,000 - Check no. 5686 |
| 125 | 02/24/00 | JMK006199 | JMK006202 | | Memo from S. Fuke to J. Kobayashi re: Lako Street Extension Project |
| 126 | 02/28/00 | LCHT000013 | LCHT000023 | Olson Dep. Exh. 37 | Letter to Pastor Sapp from J. Kobayashi attaching copy of Holualoa, North Kona, Hawaii Island: Archaeological Survey prepared for Lutheran Church of the Holy Trinity |
| 127 | 02/28/00 | JMK006273 | JMK006279 | Kobayashi Dep. Exh. 14 | Letter from J. Kobayashi to A. Haun (cc: S. Fuke) authorizing archeological survey for the 17.6 acre portion of TMK:7-7704:56 |
| 128 | 03/01/00 | MIF000007 | MIF000024 | | Transmittal Memorandum from L. Higashi to J. Nagasako, H. Olson and J. Kobayashi attaching the 2/25/00 Recorded Affidavit of Shrystal Thomas Yamasaki |
| 129 | 03/07/00 | WLP002259 | WLP002259 | | Check from W. Polak to Delaware Secretary of State - amount $100.00 - check no. 5701 |
| 130 | 03/07/00 | WLP002260 | WLP002260 | | Check from W. Polak to CT Corporation - amount of $187.00 - Check no. 5702 |
| 131 | 03/09/00 | WLP002494 | WLP002494 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 132 | 03/17/00 | MLF000001 | MLF000001 | Olson Dep. Exh. 39 | Corrected 2000 Notice of Property Assessment as of January 1, 2000 |
| 133 | 04/05/00 | JMK006253 | JMK006254 | | Memo from S. Fuke to J. Kobayashi re: Fuku - Bonsai Property |
| 134 | 04/13/00 | WLP002495 | WLP002495 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Property |
| 135 | 04/26/00 | JMK006251 | JMK006252 | | Letter from S. Fuke to J. Sumada cc: Planning Director; Pokobo, LLC re: Lako Street Extension |
| 136 | 05/06/00 | JMK006246 | JMK006246 | | Memo from S. Fuke to J. Kobayashi re: Pokobo and Fuku - Bonsai Matter |
| 137 | 05/09/00 | WLP002496 | WLP002496 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 138 | 05/24/00 | WLP000001 | WLP000001 | | Photograph of Hawaii Property |
| 139 | 07/05/00 | WLP002497 | WLP002497 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 140 | 07/26/00 | LCHT000001 | LCHT000012 | | Executed Copy of Deed (05/25/99; 05/27/99) - Mission Investment Fund of the Evangelical Lutheran Church in America and J. Kobayashi is paid by Lutheran Church of the Holy Trinity |
| 141 | 07/26/00 | MLF000134 | MLF000136 | Olson Dep. Exh. 41 | Letter to J. Kobayashi from H. Olson enclosing the 08/20/00-2/20/01 tax bill |
| 142 | 07/26/00 | N/A | N/A | Olson Dep. Exh. 42 | Certified copy of Deed and a letter dated 11/06/00 to J. Kobayashi from J. Nagasako enclosing Title Insurance Policy |
| 143 | 08/07/00 | WLP002498 | WLP002498 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 144 | 09/08/00 | WLP002500 | WLP002500 | | Invoice from A. Haun to S. Fuke (Pokobo, LLC) re: Final Payment |
| 145 | 09/30/00 | JMK006324 | JMK006332 | | Memo from S. Fuke to J. Kobayashi re: LAKO Street Matters |
| 146 | 09/30/00 | JMK006268 | JMK006270 | | Memo from S. Fuke to J. Kobayashi re: Lako Street Matters w/ attached draft letter to Mr. Sumada attached |
| 147 | 10/04/00 | JMK006318 | JMK006319 | | Letter from S. Fuke to J. Sumada re: Lako Street Extension Task Force |
| 148 | 10/04/00 | WLP002499 | WLP002499 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Kona Project |
| 149 | 10/10/00 | WLP002261 | WLP002261 | | Check from W. Polak to Pokobo - amount of $7,000.00 - Check no. 5919 |
| 150 | 10/16/00 | CG000223 | CG000223 | Grubb Dep. Exh. 16 | Werner Polak - Pokobo Contributions |
| 151 | 12/04/00 | WLP002501 | WLP002501 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 152 | 12/31/00 | CG000098 | CG000103 | Grubb Dep. Exh. 20 | Pokobo General Ledger as of 12/31/00 |
| 153 | 01/02/01 | JMK006311 | JMK006312 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project - follow-up conversation from telephone call |
| 154 | 01/04/01 | WLP002502 | WLP002502 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 155 | 01/10/01 | CG000004 | CG000004 | Grubb Dep. Exh. 21 | Letter from C. Grubb to J. Kobayashi re: Pokobo Capital Accounts |
| 156 | 01/25/01 | CG000228 | CG000234 | | Fax cover sheet with attached Pokobo Checking Account from 5/5/97 - 12/8/00; List of Werner Polak-Pokobo Contributions from 97-00; 1099 Interest Income Statement |
| 157 | 02/05/01 | WLP002503 | WLP002503 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 158 | 03/05/01 | WLP002262 | WLP002262 | | Check from W. Polak to CT Corporation - amount of $195.00 - Check no. 6213 |
| 159 | 03/19/01 | WLP002263 | WLP002263 | | Check from W. Polak to Delaware Secretary of State - amount of $100.00 - Check no. 6235 |
| 160 | 04/03/01 | WLP002504 | WLP002504 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 161 | 04/30/01 | JMK006535 | JMK006535 | Polak Dep. Exh. 8 | Memo from J. Kobayashi to W. Polak requesting any information on any person or firm who can investigate and provide information about an individual and firm in Telluride Colorado |
| 162 | 06/04/01 | WLP002505 | WLP002505 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |

6

EXHIBIT 6
*Polak v. Kobayashi 05-330 (SLR)*
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 163 | 06/26/01 | JMK003021 | JMK003024 JMK003006 | | JMK Pokobo Time Sheet Entries |
| 164 | 08/20/01 | WLP000445 | WLP000445 | | Memo from W. Polak to J. Kobayashi re: 2001-2002 Real Property Tax bill for Pokobo, LLC |
| 165 | 08/27/01 | JMK003128 | JMK003128 | | Pokobo Find Report re: Pokobo Property Taxes |
| 166 | 09/07/01 | WLP002506 | WLP002506 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 167 | 10/05/01 | WLP002507 | WLP002507 | | Memo from S. Fuke to J. Kobayashi re: Current Billing - Pokobo Project |
| 168 | 10/05/01 | JMK008048 | JMK008059 | | Fax cover sheet from R. Reed to J. Kobayashi with attached expenses |
| 169 | 10/05/01 | JMK003127 | JMK003127 | | Werner - Pokobo Expenses (Draft) |
| 170 | 10/29/01 | C6000062 | C6000063 | Grubb Dep. Exh. 22 | Pokobo Property Taxes Paid 1997 - 2001 and 2001 - 2002 Real Property Tax Bill |
| 171 | 11/21/01 | C6000235 | C6000237 | Grubb Dep. Exh. 24 | Fax from Rose [Kobayashi Law Firm] to C. Grubb transmitting spreadsheet re: expenses |
| 172 | 11/30/01 | JMK002731 | JMK002731 | | Travel Expense Report for J. Kobayashi for 10/17/01-10/20/01 |
| 173 | 12/05/01 | WLP000446 | WLP000446 | Polak Dep. Exh. 10 | Memo from J. Kobayashi to W. Polak enclosing check in the amount of $35,000 payable to Pokobo to cover bills discussed. |
| 174 | 12/05/01 | WLP002264 | WLP002264 | | Check from W. Polak to Pokobo - amount $35,000 - Check no. 6479 |
| 175 | 12/14/01 | WLP000008 | WLP000013 | Polak Dep. Exh. 11 | Letter from J. Kobayashi addressed to Partner expressing thanks for consent and approval of the proposed Deus ex machina strategy; acknowledging receipt of $35,000 to cover outstanding payables and requesting additional $134,000; transmitting summary of expenditures, contributions and bills for Pokobo. |
| 176 | 12/31/01 | C6000475 | C6000477 | Grubb Dep. Exh. 23 | Pokobo Journal Entries Report: Adjusting Entries |
| 177 | 12/31/01 | C6000054 | C6000055 | Grubb Dep. Exh. 25 | Spreadsheet re Expenses, 02/24/97 to 12/31/01 |
| 178 | 01/10/02 | C6000051 | C6000053 | Grubb Dep. Exh. 26 | Spreadsheet re Pokobo Expenses, 02/24/97 to 12/31/01 - Revised 1/10/02 |
| 179 | 02/06/02 | C6000132 | C6000132 | Grubb Dep. Exh. 27 | Spreadsheet: Pokobo Trial Balance as of 02/06/02 |
| 180 | 02/08/02 | WLP002265 | WLP002265 | | Check from W. Polak to Pokobo - amount of $20,000 - Check no. 6565 |
| 181 | 02/12/02 | JMK005938 | JMK005941 | | Letter from J. Kobayashi to M. Van Pernis re: offer of settlement of amounts of outstanding bills for claimed legal services |
| 182 | 02/15/02 | C6000009 | C6000009 | Grubb Dep. Exh. 29 | Letter from C. Grubb to W. Polak re: Pokobo Expenses and Capital Account |
| 183 | 02/28/02 | WLP000092 | WLP000095 | Grubb Dep. Exh. 28 | Letter from C. Grubb to W. Polak enclosing Form 1065, Schedule K-1 for Pokobo for the year ended 12/31/01 |
| 184 | 03/07/02 | WLP002266 | WLP002266 | | Check from W. Polak to Delaware Secretary of State - amount of $100.00 - Check no. 6594 |
| 185 | 03/07/02 | WLP002267 | WLP002267 | | Check from W. Polak to CT Corporation - amount of $204.00 - Check no. 6595 |
| 186 | 04/01/02 | JMK008073 | JMK008074 | | Memo from S. Fuke to J. Kobayashi re: Pokobo Project with attached draft letter from S. Fuke to D. Lee (Luka Street Extension Project - Notification Request) |
| 187 | 04/19/02 | JMK005852 | JMK005853 | | Letter from J. Kobayashi to A. Inoue re: Alii Highway |
| 188 | 05/03/02 | WLP000448 | WLP000448 | Polak Dep. Exh. 19 | Letter from W. Polak to R. Reed enclosing check payable to Pokobo as additional capital contribution and request for confirmation re: expense allocation related to property taxes (cc: J. Kobayashi) |
| 189 | 05/04/02 | WLP002268 | WLP002268 | | Check from W. Polak to Pokobo - amount of $25,000 - Check no. 6651 |
| 190 | 05/08/02 | C6000027 | C6000028 | Grubb Dep. Exh. 31 | Spreadsheet: Pokobo Capital Account Analysis (from 12/31/97- 5/8/02) |

EXHIBIT 6
*Polak v. Kobayashi 05-330 (SLR)*
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 191 | 05/08/02 | CG000168 | CG000172 | Grubb Dep. Exh. 32 | Spreadsheet: Pokobo Capital Account Analysis (from 12/31/97 – 5/8/02) |
| 192 | 05/08/02 | CG000050 | CG000050 | Grubb Dep. Exh. 34 | Spreadsheet: Pokobo Polak Valuation (12/31/97 – 5/8/02) |
| 193 | 05/15/02 | CG000010 | CG000010 | Grubb Dep. Exh. 30 | Letter from C. Grubb to W. Polak re: Pokobo Expenses and Capital Account |
| 194 | 05/22/02 | WLP000559 | WLP000564 | | Letter from R. Reed to W. Polak re: Pokobo Expenses w/ attached copies of Colin Grubb & Assoc invoices 885500 and 885557; as well as copies of the 64 Acres and 17 Acres property tax statements |
| 195 | 07/08/02 | JMK007678 | JMK007707 | | Ex Parte Motion for Order Putting Plaintiff in Possession with attached Order Putting Plaintiff in Possession |
| 196 | 07/09/02 | JMK007442 | JMK007477 | | Ex Parte Motion for Order Putting Plaintiff in Possession with attached Affidavit of Dennis K. Lee |
| 197 | 09/23/02 | WLP000449 | WLP000449 | Polak Dep. Exh. 20 | Memo from W. Polak to J. Kobayashi regarding article related to overproduction of coffee and its effect on Kona coffee; also requesting status of Pokobo. |
| 198 | 10/07/02 | WLP000565 | WLP000566 | | Letter from W. Polak to M. Matsukawa re: Pokobo, LLC |
| 199 | 10/29/02 | WLP000548 | WLP000548 | Grubb Dep. Exh. 37 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, R. Reed) requesting Schedule K-1 and an accounting of the capital contribution and payments from capital contribution |
| 200 | 11/18/02 | WLP000567 | WLP000567 | | Letter from W. Polak to J. Kobayashi re: break in relationship |
| 201 | 12/05/02 | WLP000237 | WLP000237 | Polak Dep. Exh. 9 | Letter from W. Polak to M. Matsukawa advising him that he is not authorized to represent Pokobo |
| 202 | 12/19/02 | WLP000236 | WLP000236 | Polak Dep. Exh. 25 | Letter from W. Polak to J. Kobayashi cc: Pokobo, LLC File, M. Bronster, R. Reed, C. Grubb, M. Matsukawa re: being represented by M. Bronster and requesting a copy of Schedule K-1 with respect to Pokobo, LLC for the year 2002 |
| 203 | 12/27/02 | WLP000216 | WLP000223 | | Letter from M. Matsukawa to W. Polak re: Pokobo, LLC |
| 204 | 12/31/02 | CG000112 | CG000118 | Grubb Dep. Exh. 36 | Pokobo General Ledger as of 12/31/02 |
| 205 | 12/31/02 | WLP000099 | WLP000124 | | Fax cover sheet from J. Kobayashi to W. Polak re: Statement and Threats of Litigation and the Future of Pokobo LLC |
| 206 | 12/31/02 | CG000478 | CG000479 | | Hartom General Ledger as of 12/31/02 |
| 207 | 12/31/02 | CG000481 | CG000482 | Grubb Dep. Exh. 35 | Pokobo Journal Entries Report: Adjusting Entries as of 12/31/02 |
| 208 | 01/20/03 | WLP000209 | WLP000212 | | Letter from W. Polak to J. Kobayashi re: return of telephone calls |
| 209 | 02/21/03 | WLP000603 | WLP603 | Grubb Dep. Exh. 38 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, M. Bronster) re: Schedule K-1, requesting explanation of computations |
| 210 | 03/17/03 | WLP000605 | WLP000605 | Grubb Dep. Exh. 39 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, M. Bronster) re: explanation for the decrease in the share of partnership liabilities and inquiring as to an accounting re Pokobo |
| 211 | 03/21/03 | WLP002269 | WLP002269 | | Check from W. Polak to Delaware Secretary of State - $100.00 - Check no. 7018 |
| 212 | 04/01/03 | WLP002270 | WLP002270 | | Check from W. Polak to CT Corporation - amount of $280.00 - Check no. 7038 |
| 213 | 04/15/03 | WLP000610 | WLP000610 | Grubb Dep. Exh. 40 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, R. Reed) re: repeated requests for an accounting re: Pokobo |
| 214 | 05/16/03 | WLP000611 | WLP000611 | Grubb Dep. Exh. 41 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, R. Reed) re: repeated request for an accounting re: Pokobo |
| 215 | 08/01/03 | WLP000612 | WLP000612 | Grubb Dep. Exh. 42 | Letter from W. Polak to C. Grubb (cc: J. Kobayashi, R. Reed) re: requests for an accounting re: Pokobo |

8

EXHIBIT 6
Polak v. Kobayashi 05-330 (SLR)
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Dep. Exh. No. | Description |
|---|---|---|---|---|---|
| 216 | 08/21/03 | WLP000190 | WLP000197 | Polak Dep. Exh. 21 | Letter from M. Matsukawa to J. Kobayashi, W. Polak and M. Bronster re: status report on pending litigation: County of Hawaii condemnation actions; Blasman SMA permit application |
| 217 | 12/02/03 | CG000015 | CG000015 | Grubb Dep. Exh. 43 | Memo from C. Grubb to J. Kobayashi re: Pokobo |
| 218 | 12/10/03 | WLP000451 | WLP000458 | Grubb Dep. Exh. 44 | Letter from C. Grubb to W. Polak |
| 219 | 12/23/03 | WLP000623 | WLP000623 | | Letter from W. Polak to J. Kobayashi re: Polak - no response to letter of 12/10 |
| 220 | 12/31/03 | CG000119 | CG000124 | | Pokobo General Ledger as of 12/31/03 |
| 221 | 01/23/04 | WLP000624 | WLP000624 | | Letter from W. Polak to C. Grubb re: Schedule K-1 for the year of 2003 with respect to Pokobo, LLC |
| 222 | 02/17/04 | WLP000625 | WLP000625 | | Letter from W. Polak to C. Grubb re: Schedule K-1 for the year of 2003 with respect to Pokobo, LLC |
| 223 | 02/29/04 | WLP002271 | WLP002271 | | Check from W. Polak to CT Corporation - amount of $280.00 - Check no. 7482 |
| 224 | 03/05/04 | WLP002272 | WLP002272 | | Check from W. Polak to Delaware Sec. of State - amount of $200.00 - Check no. 7488 |
| 225 | 03/09/04 | WLP000175 | WLP000175 | | Memo from W. Polak to J. Kobayashi cc: C. Grubb, M. Bronster, J. Calloway re: requesting a Schedule K-1 for Pokobo for the year 2003 |
| 226 | 03/11/04 | WLP000630 | WLP000630 | Grubb Dep. Exh. 45 | Letter from C. Grubb to W. Polak responding to request for a K-1 from the partnership |
| 227 | 03/29/04 | WLP000096 | WLP000098 | Grubb Dep. Exh. 46 | Fax from C. Grubb to W. Polak transmitting Werner Polak's 2003 Schedule K-1 |
| 228 | 04/09/04 | CG000018 | CG000018 | Grubb Dep. Exh. 47 | Letter from C. Grubb to W. Polak re: inquiries into the Pokobo partnership |
| 229 | 12/31/04 | CG000491 | CG000494 | Grubb Dep. Exh. 49 | Pokobo Trial Balance Worksheet |
| 230 | 01/31/05 | CG000166 | CG000167 | | Letter from W. Polak to J. Kobayashi cc: J. Calloway re: conversation to form a partnership to buy 64 acres that became available in Kona |
| 231 | 02/22/05 | WLP000159 | WLP000162 | | Check from W. Polak to Del Sec of State - amount of $200.00 - Check no. 239 |
| 232 | 02/23/05 | | | Polak Dep. Exh. 2 | Summons and Petition for dissolution served upon J. Kobayashi and Pokobo LLC |
| 233 | 03/11/05 | WLP000156 | WLP000158 | | Letter from W. Polak to C. Grubb cc: J. Kobayashi, J. Calloway re: payment for period 4/1/05-5/31/06 - w/attached check in the amount of $290.00 - check no. 268 |
| 234 | 12/31/05 | CG000495 | CG000495 | Grubb Dep. Exh. 50 | Pokobo Trial Balance |
| 235 | 02/20/06 | WLP002275 | WLP002275 | | Check from W. Polak to Delaware Secretary of State - amount $200.00 - Check no. 694 |
| 236 | 02/28/06 | WLP002276 | WLP002276 | | Check from W. Polak to CT Corp - amount of $309.00 - Check no. 706 |
| 237 | 03/06/06 | CG000159 | CG000162 | Grubb Dep. Exh. 48 | Letter from C. Grubb to W. Polak enclosing Schedule K-1 for the partnership for 2005 |
| 238 | 09/20/06 | WLP002472 | WLP002472 | Kobayashi Dep. Exh. 9 | Map |
| 239 | 10/13/06 | unnumbered | unnumbered | Kobayashi Dep. Exh. 10 | Defendant John Kobayashi's Answers and Responses to Plaintiff's First Set of Interrogatories Directed to Defendant |
| 240 | 05/20/07 | MIF000490 | MIF000491 | Olson Dep. Exh. 5 | Letter to C. Yamaotaki from H. Olson re: requesting subdivision applications getting renewed for another year |
| 241 | Undated | LCHT000028 | LCHT000028 | Olson Dep. Exh. 4 | Exploratory and Preliminary meeting -- land possibilities with "Pokobo, LLC." In attendance were G. Ogin, K. Hart, C. Hart and Pastor Sapp |
| 242 | Undated | LCHT000027 | LCHT000027 | Olson Dep. Exh. 22 | Undated letter to J. Kobayashi from Pastor Sapp re: conditions of the proposal |
| 243 | Undated | MIF000003 | MIF000006 | Olson Dep. Exh. 33 | Notice of Property Assessment 2000 - handwritten note says "HI 275 property excess sold balance to congregation" |

EXHIBIT 6
*Polak v. Kobayashi 05-330 (SLR)*
Plaintiff's Trial Exhibit List

| Trial Exh. No. | Date | Beg. Production No. | End Production No. | Depo. Exh. No. | Description |
|---|---|---|---|---|---|
| 244 | Undated | N/A | N/A | Olson Dep. Exh. A | Lot 2 property description |
| 245 | Undated | N/A | N/A | Olson Dep. Exh. B | Map - Plan Showing The Remainder of Gnt 1856 to Kawaihoa situated at Holualo 3, North Kona, Hawaii |
| 246 | Undated | N/A | N/A | Olson Dep. Exh. C | Map showing Subdivision of a Portion of A.P. Grant 1856 to Kawaihoa Into Lots 1 and 2 |
| 247 | Undated | CG000013 | CG000014 | Grubb Dep. Exh. 33 | Memo from C. Grubb to W. Polak re: Return of Capital |
| 248 | Undated | JMK006000 | JMK006004 | Kobayashi Dep. Exh. 4 | Handwritten notes |
| 249 | Undated | MJF000174 | MJF000175 | | Notice of Property Assessment-1999 |
| 250 | Undated | JMK005315 | JMK005340 | | Handwritten notes re: Pokobo conference |
| 251 | Undated | JMK008033 | JMK008033 | | Werner - Pokobo Expenses |
| 252 | Undated | JMK002627 | JMK002633 | | JMK Trip Expense Chart |
| 253 | Undated | JMK003136 | JMK003145 | | Werner - Pokobo Expenses with attached documentation |
| 254 | Undated | JMK008042 | JMK008044 | | Guesstimated Projected Expenses for Pokobo Last Qtr 2000-2001 |
| 255 | 6/28/02 - 4/30/07 | N/A | N/A | | Pokobo Bank Statements and cancelled checks (from UMB Bank) |

10

# EXHIBIT 7

## EXHIBIT 7

## DEFENDANT'S EXHIBIT LIST

1. All Exhibits identified by Plaintiff

2. All Pleadings, specifically all discovery and responses thereto.

3. Limited Liability Agreement of Pokobo, LLC dated March 1, 1997

4. Memorandum dated February 10, 1997, from Polak to Kobayashi (JMK 002531)

5. Memorandum dated February 11, 1997, from Polak to Kobayashi w/ attachment (JMK 002532-002552)

6. Letter dated January 29, 1999 from Kobayashi to Olson w/ attachments (MIF000380-384)

7. Fax dated February 9, 1999 from Kobayashi to Polak (WLP000314-319)

8. Memorandum dated April 30, 2001 from Polak to Kobayashi (JMK006535)

9. Letter dated December 5, 2002 from Polak to Matsukawa

10. Memorandum dated December 5, 2001 from Polak to Kobayashi (WLP000446)

11. Letter dated December 14, 2001 from Kobayashi w/ attachments (WLP000008-13)

12. Letter dated March 24, 1997 from Bennet to Polak w/ attachment (JMK002597-98)

13. Fax cover sheet dated March 28, 1997 from Polak to Kobayashi (JMK002259)

14. Memorandum dated April 8, 1997 from Polak to Kobayashi (JMK002329)

15. Letter dated February 9, 1999 from Kobayashi to Fuke, et al (JMK005372)

16. Letter dated May 3, 2002 from Polak to Reed (WLP000448)

17. Memorandum dated September 23, 2002 from Polak to Kobayashi (WLP000449)

18. Letter dated August 21, 2003 from Matsukawa to Kobayashi, et al (WLP000190-197)

19. Notice of Service and Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories.

20. Letter dated February 20, 2006 from Polak to Grubb (WLP000141)

21. Letter dated January 25, 2006 from Polak to Grubb (WLP000142)

22. Letter dated January 6, 2006 from Polak to Grubb (WLP000143)

23. Letter dated December 23, 2003 from Polak to JMK (WLP000180)

24. Purchase and Settlement Agreement signed by JMK December 10, 2003 between Polak and Kobayashi (WLP000459-WLP000475)

25. Letter dated December 10, 2003 from Kobayashi to Polak (WLP000181-WLP000186)

26. Letter dated August 27, 2003 from Polak to Rose Reed at The Kobayashi Law Firm (WLP000189)

27. Letter dated March 17, 2003 from Polak to Grubb (WLP000205)

28. Letter dated February 21, 2003 from Polak to Grubb (WLP000207)

29. Letter dated December 27, 2002 from Matsukawa to Polak (WLP000216-WLP000219)

30. Letter dated December 20, 2002 from Matsukawa to Polak (WLP000228-WLP000234)

31. Letter dated November 25, 2002 from Polak to Bronster (WLP000551)

32. Letter dated October 29, 2002 from Polak to Grubb (WLP000239)

33. Memo dated ? from Sidney Fuke to Department of Public Works (JMK006280)

34. Memo dated April 1, 2002 from Fuke to Kobayashi (JMK005862)

35.  Letter dated ? from Fuke to Department of Public Works (JMK005863)

36. Letter dated May 3, 2002 from Polak to Rose Reed at The Law Offices of John Kobayashi (WLP000448)

37. Memo dated March 7, 2002 from Polak to Kobayashi (JMK003130)

38. Letter dated March 7, 2002 from Polak to CT Corporation System (JMK003133)

39. Letter dated March 7, 2002 from Polak to The Corporation Trust Company (JMK003131)

40. Memo dated August 20, 2001 from Polak to Kobayashi (WLP000445)

41. Memo dated April 24, 2001 from Fuke to Kobayashi (JMK005095-JMK005099)

42. Letter dated February 15, 2001 from Matsukawa to Kobayashi (WLP000262-WLP000270)

43. Letter dated February 15, 2001 from Matsukawa to Kobayashi (WLP000079)

44. Memo dated May 6, 2000 from Fuke to Kobayasyi (JMK006247-JMK006248)

45. Letter dated April 24, 2000 from Rev. Fred Sapp to Kobayashi (JMK006272-JMK006274)

46. Letter dated February 23, 2000 from Haun & Associates to Pokobo c/o Fuke (JMK006275-JMK006278)

47. Memo dated January 21, 2000 from Fuke to Kobayashi (JMK006223-JMK006225)

48. Replacement Property-Buyers Closing Statement (JMK002789-JMK002790)

49. Memo dated February 23, 1999 from Fuke to Chrystal Yamasaki at Wes Thomas Associates (JMK005976)

50. Draft letter dated ____, 1999 from Kobayashi to Olson (JMK005844-JMK005846)

51. Pokobo Partnership Land Acquisition figures (JMK005977)

52. Memo dated February 22, 1999 from Fuke to Kobayashi (JMK006552-JMK006553)

53. Memo dated February 22, 1999 from Fuke to Kobayashi (JMK006562-JMK006563)

54. Memo dated February 19, 1999 from Grubb to Kobayashi (JMK005978)

55. Memo dated February 18, 1999 from Fuke to Kobayasyi (JMK006564)

56. Letter dated January 29, 1999 from Kobayashi to Olson (JMK006081-JMK006083)

57. Letter dated February 9, 1999 from Kobayashi to Pastor Sapp (JMK005718-JMK005720)

58. Letter dated February 9, 1999 from Kobayashi to Fuke and Polak (JMK005372)

59. Memo dated February 8, 1999 from Fuke to Kobayashi (JMK005721-JMK005724)

60. Memo dated February 4, 1999 from Fuke to Kobayashi (JMK005413)

61. Letter dated February 3, 1999 from Kobayashi to Hawaii County Council (JMK005414-JMK005417)

62. Letter dated January 13, 2000 from Kobayashi to Pastor Sapp (JMK006186-JMK006188)

63. Memo dated October 16, 1998 from Fuke to Kobayashi (WLP000075-WLP000076)

64. Memo dated January 28, 1998 from Polak to Kobayashi (JMK003092)

65. Letter dated January 14, 1998 from Kobayashi to Van Pernis (JMK002669-JMK002671)

66. Memo dated August 19, 1997 from Laura Bennett to Polak (JMK003109)

67. Memo dated August 19, 1997 from Laura Bennett to Kobayashi and Polak (JMK003108)

68. Memo dated August 19, 1997 from Polak to Kobayashi (JMK003099)

69. Memo dated August 19, 1997 from Polak to Kobayashi (JMK002970-JMK002971)

70. Memo dated June 16, 1997 from Polak to Kobayashi (JMK003000)

71. Memo dated June 16, 1997 from Linus Chung to Polak (JMK002999)

72. Letter dated June 16, 1997 from Laura Bennett to Polak (JMK002995-JMK002997)

73. Memo dated April 23, 1997 from Polak to Kobayashi (JMK002998)

74. Letter dated April 15, 1997 from Polak to Kobayashi (JMK002993)

75. Memo dated March 20, 1997 from Polak to Kobayashi (JMK002674-JMK002691)

76. Memo dated June 28, 1995 from County of Hawaii Acting Division Chief to the Planning Director (JMK006555)

77. Letter dated July 13, 1995 from Planning Director to Wes Thomas and Associates (JMK006557-JMK006558)

78. JMK Pokobo Time Sheet Entries 1997-2000 (JMK002977-JMK002981)

79. Memo dated October 29, 2002 from Polak to Bronster (WLP000566)

80. Letter dated October 7, 2002 from Polak to Matsukawa (WLP000565)

81. Any additional document used for impeachment or rebuttal.

# EXHIBIT 8

## EXHIBIT 8

## PLAINTIFF'S LIST OF WITNESSES

Plaintiff identifies the following witnesses whom he may call live or by deposition at trial. This list is not indicative of the order in which the witnesses may be called at trial, nor is it a commitment that Plaintiff will call any particular witness at trial or a representation that any of the witnesses listed are available or will appear for trial. If any of Defendant's witnesses fail to appear at trial, Plaintiff reserves the right to use their deposition testimony. Plaintiff also reserves the right to call any witness called by Defendant.

## I.    WITNESSES WHO MAY BE CALLED IN PERSON

Plaintiff identifies the following potential witnesses who may be called at trial to testify in person:

Werner L. Polak
660 White Plains Road, Suite 505
Tarrytown, NY  10591

Sidney Fuke
100 Pauahi Street, Suite 212
Hilo, HI  96720

Rose Reed
Energy Outreach Colorado
225 East 16th Avenue, Suite 200
Denver, CO  80203

Laura Bennett
Brownstein, Hyatt, Farber and Schreck
410 17th Street, Suite 2200
Denver, CO  80202

## II. WITNESSES WHO MAY BE CALLED BY DEPOSITION

Plaintiff identifies the following potential witnesses who may be called at trial to testify by deposition:

Laura Bennett
Brownstein, Hyatt, Farber and Schreck
410 17th Street, Suite 2200
Denver, CO 80202

Colin M. Grubb
Colin M. Grubb & Associates, LLC, CPAs
20 West Dry Creek Circle, #200
Littleton, CO 80120

John M. Kobayashi
1633 Fillmore Street, Suite 2100
Denver, CO 80206

G. Harvey Olson
Mission Investment Fund
8765 West Higgins Road
Chicago, IL 60631

Rose Reed
Energy Outreach Colorado
225 East 16th Avenue, Suite 200
Denver, CO 80203

## III. DEPOSITION DESIGNATIONS

A.    Colin M. Grubb (June 12, 2007)

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 10:25 | to | 12:10 |
| 21:23 | to | 23:5 |
| 23:24 | to | 24:1 |
| 24:11 | to | 26:11 |
| 36:10 | to | 38:1 |
| 39:19 | to | 40:2 |
| 40:7 | to | 40:12 |

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 40:23 | to | 41:5 |
| 42:5 | to | 44:8 |
| 48:25 | to | 50:1 |
| 50:7 | to | 50:15 |
| 51:4 | to | 51:17 |
| 54:1 | to | 54:16 |
| 54:24 | to | 57:23 |
| 58:8 | to | 58:22 |
| 61:6 | to | 61:15 |
| 61:17 | to | 61:19 |
| 62:11 | to | 63:1 |
| 63:11 | to | 64:4 |
| 65:9 | to | 65:25 |
| 67:1 | to | 67:5 |
| 67:18 | to | 68:23 |
| 70:18 | to | 71:21 |
| 72:21 | to | 73:4 |
| 78:11 | to | 78:16 |
| 79:12 | to | 80:1 |
| 81:3 | to | 81:10 |
| 81:15 | to | 82:2 |
| 82:23 | to | 83:16 |
| 83:19 | to | 83:20 |
| 84:6 | to | 85:6 |
| 88:8 | to | 88:11 |
| 89:5 | to | 89:20 |
| 90:4 | to | 90:23 |
| 93:13 | to | 96:4 |
| 96:11 | to | 96:13 |
| 96:24 | to | 97:11 |

| Beginning Page: Line No. | | End Page: Line No. |
| --- | --- | --- |
| 98:10 | to | 98:23 |
| 99:14 | to | 101:11 |
| 103:12 | to | 105:2 |
| 105:13 | to | 118:24 |
| 119:1 | to | 127:1 |
| 128:3 | to | 130:11 |
| 131:5 | to | 142:2 |
| 142:9 | to | 144:18 |
| 145:13 | to | 146:15 |
| 147:2 | to | 149:8 |
| 149:18 | to | 153:6 |
| 153:9 | to | 153:11 |
| 154:3 | to | 156:17 |
| 157:11 | to | 157:12 |
| 157:21 | to | 163:17 |
| 164:8 | to | 164:14 |
| 165:14 | to | 167:11 |
| 167:23 | to | 168:10 |
| 170:8 | to | 171:17 |
| 172:21 | to | 174:17 |
| 174:20 | to | 174:21 |
| 175:8 | to | 178:13 |
| 178:16 | to | 180:8 |
| 184:20 | to | 184:24 |
| 185:17 | to | 185:23 |
| 188:4 | to | 189:17 |
| 192:7 | to | 192:9 |
| 192:18 | to | 192:25 |
| 194:2 | to | 196:18 |
| 196:22 | to | 196:24 |

| Beginning Page: Line No. | | End Page: Line No. |
| --- | --- | --- |
| 197:9 | to | 200:23 |
| 202:2 | to | 202:4 |
| 202:13 | to | 205:3 |
| 208:17 | to | 209:17 |
| 209:20 | to | 213:16 |
| 214:4 | to | 215:2 |
| 216:1 | to | 218:2 |
| 219:6 | to | 223:12 |
| 223:17 | to | 225:23 |
| 227:15 | to | 229:19 |
| 242:9 | to | 243:22 |
| 243:24 | to | 246:23 |
| 248:8 | to | 250:13 |
| 251:21 | to | 253:18 |
| 256:21 | to | 259:15 |
| 260:11 | to | 262:22 |
| 265:19 | to | 268:21 |
| 271:21 | to | 272:16 |
| 272:18 | to | 273:16 |
| 273:19 | to | 275:8 |
| 275:10 | to | 277:21 |
| 277:23 | to | 279:5 |
| 279:16 | to | 279:20 |
| 279:25 | to | 282:10 |
| 292:20 | to | 295:10 |
| 295:19 | to | 297:13 |
| 299:1 | to | 300:5 |
| 300:10 | to | 301:20 |
| 301:24 | to | 302:2 |
| 302:9 | to | 302:19 |

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 302:21 | to | 305:1 |

B.    John M. Kobayashi (June 13, 2007)

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 3:9 | to | 3:22 |
| 4:3 | to | 4:11 |
| 9:15 | to | 9:22 |
| 10:12 | to | 10:21 |
| 11:6 | to | 11:11 |
| 12:17 | to | 14:2 |
| 21:2 | to | 22:5 |
| 28:17 | to | 32:9 |
| 32:14 | to | 40:20 |
| 41:5 | to | 41:11 |
| 42:1 | to | 43:20 |
| 44:19 | to | 45:3 |
| 46:14 | to | 46:21 |
| 47:10 | to | 48:1 |
| 48:7 | to | 48:14 |
| 49:2 | to | 52:19 |
| 55:4 | to | 56:3 |
| 57:24 | to | 60:8 |
| 64:18 | to | 65:16 |
| 74:23 | to | 75:3 |
| 76:4 | to | 76:12 |
| 77:20 | to | 78:18 |
| 94:18 | to | 95:11 |
| 95:17 | to | 99:5 |
| 99:16 | to | 100:21 |
| 101:1 | to | 102:25 |

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 103:5 | to | 103:12 |
| 103:20 | to | 104:2 |
| 105:18 | to | 107:3 |
| 112:9 | to | 112:18 |
| 113:11 | to | 114:1 |
| 116:7 | to | 117:11 |

C.    John M. Kobayashi (June 14, 2007)

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 142:9 | to | 142:15 |
| 143:17 | to | 146:6 |
| 150:3 | to | 150:14 |
| 151:25 | to | 154:15 |
| 158:13 | to | 160:8 |
| 162:10 | to | 163:17 |
| 164:7 | to | 165:16 |
| 165:24 | to | 166:17 |
| 167:7 | to | 167:19 |
| 180:6 | to | 180:20 |
| 183:16 | to | 183:19 |
| 212:3 | to | 212:7 |
| 224:6 | to | 226:14 |
| 227:18 | to | 228:7 |
| 233:12 | to | 236:13 |
| 237:2 | to | 240:8 |
| 240:20 | to | 241:16 |
| 245:15 | to | 246:11 |

D.     G. Harvey Olson (January 8, 2007)

| Beginning Page: Line No. | | End Page: Line No. |
|---|---|---|
| 8:24 | | 9:19 |
| 10:18 | | 10:24 |
| 12:7 | | 12:13 |
| 12:23 | | 13:24 |
| 19:12 | | 19:15 |
| 20:8 | | 20:21 |
| 23:6 | | 24:10 |
| 24:21 | | 27:10 |
| 28:9 | | 32:14 |
| 35:12 | | 37:6 |
| 39:8 | | 44:1 |
| 44:9 | | 44:19 |
| 45:21 | | 48:8 |
| 49:4 | | 50:18 |
| 56:8 | | 57:2 |
| 61:24 | | 62:21 |
| 74:8 | | 74:20 |
| 75:2 | | 75:5 |
| 75:13 | | 75:23 |
| 76:4 | | 76:15 |
| 82:6 | | 82:17 |
| 87:1 | | 87:20 |
| 90:11 | | 91:2 |
| 102:22 | | 103:23 |

Plaintiff reserves the right to identify additional witnesses based on Defendant's submissions. Plaintiff also reserves the right to designate testimony from Ms. Reed's and Ms. Bennett's depositions after they have been taken.

# EXHIBIT 9

**EXHIBIT 9**

**DEFENDANT'S LIST OF WITNESSES**

Defendant identifies the following witnesses whom he may call live or by deposition at trial. Plaintiff also reserves the right to call any witness called or identified by Plaintiff.

**I.    WITNESSES WHO MAY BE CALLED IN PERSON**

Defendant identifies the following potential witnesses who may be called at trial to testify in person:

> John M. Kobayashi
> 455 Forest St.
> Denver, CO 80220
>
> Werner L. Polak
> 660 White Plains Road, Suite 505
> Tarrytown, NY 10591
>
> Sidney Fuke
> 100 Pauahi Street, Suite 212
> Hilo, HI 96720

**II.    WITNESSES WHO MAY BE CALLED BY DEPOSITION**

Defendant identifies the following potential witnesses who may be called at trial to testify by deposition:

> G. Harvey Olson
> Mission Investment Fund
> 8765 West Higgins Road
> Chicago, IL 60631
>
> Colin M. Grubb
> Colin M. Grubb & Associates, LLC, CPAs
> 20 West Dry Creek Circle, #200
> Littleton, CO 80120

III.    **DEPOSITION DESIGNATIONS**

G. Harvey Olson (January 8, 2007)

Pages 76-105 inclusive. (also including all deposition Exhibits)

Colin M. Grubb (June 12, 2007)

Page 302:2-9


Defendant reserves the right to designate additional witnesses relating to the additional claims and defenses of the Plaintiff set forth in his proposed Amended Complaint in the event that the Court shall grant Plaintiff's pending Motion to Amend.

# EXHIBIT 10

**EXHIBIT 10**

**PLAINTIFF'S STATEMENT OF INTENDED PROOFS**

1.      Plaintiff intends to introduce evidence to prove that Pokobo should be dissolved pursuant to 6 *Del C.* §§ 18-801 and 18-802 because it is no longer reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

2.      Plaintiff intends to introduce evidence to prove that Defendant has breached his fiduciary duties by usurping a corporate opportunity that belonged to Pokobo and misappropriated the 17-Acre Parcel for himself when it rightfully belongs to Pokobo.

3.      Plaintiff intends to introduce evidence to prove that Defendant has breached his fiduciary duties by failing to consult with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in Hawaii.

4.      Plaintiff intends to introduce evidence to prove that Defendant has breached his fiduciary duties by failing to provide Plaintiff with an accounting of Pokobo, including a full description of each Partner's capital contributions from 1997 to the present, and a full accounting of Pokobo's expenses.

5.      Plaintiff intends to introduce evidence to prove that Defendant breached Section 5.01 of the LLC Agreement by:  (a) improperly titling the 17-Acre Parcel, which rightfully belongs to Pokobo, in his own name; (b) failing to consult and communicate with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in Hawaii; and (c) failing to provide Plaintiff with a full accounting of Pokobo, despite Plaintiff's repeated requests for such an accounting.

6.      Plaintiff intends to introduce evidence to prove that if Defendant were permitted to retain the 17-Acre Parcel, he would be unjustly enriched.

7.      Plaintiff intends to introduce evidence to prove that, if Defendant is found to be the rightful owner of the 17-Acre Parcel, Plaintiff should be reimbursed for any and all expenses he paid -- either directly or in the form of contributions to Pokobo -- associated with the 17-Acre Parcel.

8.      Plaintiff intends to introduce evidence to prove that Defendant caused the 17-Acre Parcel to be titled improperly in his own name, and has failed to transfer the 17-Acre Parcel to Pokobo.

9.      Plaintiff intends to introduce evidence to prove that the 17-Acre Parcel rightfully belongs to Pokobo and is being held in constructive trust for Pokobo.

10.     Plaintiff intends to introduce evidence to prove that demand on the members of Pokobo is excused because it would be futile.

11.     Plaintiff intends to introduce evidence to prove that the applicable statutes of limitations should be tolled under the doctrines of equitable tolling and fraudulent concealment.

12.     Plaintiff intends to introduce evidence to prove that, based on Defendant's misconduct, Plaintiff is entitled to a full accounting of Pokobo, including a full description of each Partner's capital contributions from 1997 to the present, and a full accounting of Pokobo's expenses.

13.     Plaintiff intends to introduce evidence to prove that the enforcement of the coin flip provision in Section 5.02 of the LLC Agreement would be inequitable.

# EXHIBIT 11

## EXHIBIT 11

## <u>DEFENDANT'S STATEMENT OF INTENDED PROOFS</u>

[Note: Plaintiff's claim for usurpation of corporate opportunity is not presently included in this action. In the event that this Court shall grant Plaintiff's Motion, and shall maintain its jurisdiction over this case, the Defendant will address the factual and legal bases of such claim.]

1.      Defendant intends to introduce evidence to prove that the Plaintiff failed to invoke the provisions of Paragraph 5.02 of the LLC Agreement, which failure precludes the Plaintiff from asserting that there is a statutory basis for judicial resolution.

2.      Defendant intends to introduce evidence to prove that the Plaintiff agreed to and acquiesced in the Defendant being the "on site" manger of Pokobo, and that the Plaintiff concurred with the operation and management of Pokobo by the Defendant at least for the period from 1997 through 2003, at which time the Plaintiff purported to revoke the Defendant's management authority, but assumed no management activity in his own management capacity.

3.      Defendant intends to introduce evidence to prove that he acted in accord with legal standards of conduct as a member and member/manager of Pokobo.

4.      Defendant intends to introduce evidence to prove that the Plaintiff was aware of and concurred with the retention of Mr. Michael Matsukawa, Esq. with regard to the pursuit and defense of litigation in the State of Hawaii (the "Permit" litigation and the Condemnation litigation).   Further, that the Plaintiff independently monitored the Hawaii litigation without objection until 2003, that the Plaintiff has become an individual party defendant Plaintiff intends to introduce evidence to prove that Defendant has breached his fiduciary duties by usurping a corporate opportunity that belonged to Pokobo and misappropriated the 17-Acre Parcel for himself when it rightfully belongs to Pokobo.

5.      Defendant intends to introduce evidence to prove that the alleged agreement between the Plaintiff and Defendant with regard to the 17-Acre Parcel was never concluded, lacked essential terms of contract, and was not a binding agreement upon the Defendant.

6.      Defendant intends to introduce evidence to prove that the Plaintiff was aware in fact (and was additionally constructively aware) of Defendant's acquisition of the 17-Acre Parcel in his own name more than 3 years prior to the initiation of this litigation.

7.      Defendant intends to introduce evidence to prove that the Plaintiff has failed to contribute the measure of funds that he asserts he had agreed to with regard to the acquisition of the 17-Acre Parcel and therefore states no claim in equity or law with regard to the constructive trust, breach of contract or breach of fiduciary duty with respect to the same as claimed by the Plaintiff for the 17-Acre Parcel.

8.      Defendant intends to introduce evidence to prove that the Plaintiff made no objection to the Defendant's management of Pokobo, or to the expenses incurred and paid on behalf of Pokobo by the Defendant that were disclosed to the Plaintiff.

9.      Defendant intends to introduce evidence to prove that the Defendant has not been unjustly enriched by his acquisition of the 17-Acre Parcel in his own name, that he has incurred significant costs and expenses and investment of time in the defense of the 17-Acre Parcel regarding claims by the County of Hawaii to condemn a portion of said property and in the prospective development of such property.  In the event that any constructive trust is upheld by this Court, the Defendant is entitled to offset costs, expenses and the value of services provided which have preserved the 17-Acre Parcel and benefited Pokobo (or the Plaintiff).

10.    Defendant intends to introduce evidence to prove that the Plaintiff is subject to the equitable defense of laches with regard to his claim to a constructive trust for the 17-Acre Parcel and for expenses incurred and paid by the Defendant which were for the benefit of Pokobo and the 17-Acre Parcel.

11.    Defendant intends to introduce evidence to prove that the Plaintiff was afforded all such opportunities as he may have wished to directly participate in the operation and management of Pokobo, but has taken no action in such regard from the initiation of Pokobo to and through the present date.

12.    Defendant intends to introduce evidence to prove that the Plaintiff has suffered no monetary damages relating to his claims of breach of contract, breach of fiduciary duty or any other substantive claim included in his assertion of a declaratory judgment (such is the Plaintiff's burden to prove)

13.    Defendant intends to introduce evidence to prove that the Plaintiff has been provided access to or copies of all financial records that exist regarding the operation and management of Pokobo LLC.

14.    Defendant intends to introduce evidence to prove that in the event that the Court were to sustain the Plaintiff's claim for a constructive trust for the 17-Acre Parcel, that it is the Plaintiff that would be unjustly enriched, not the Defendant.

# EXHIBIT 12

# EXHIBIT 12

## PLAINTIFF'S STATEMENT OF OTHER MATTERS

1.　　On June 26, 2007, Plaintiff moved to amend his Complaint to conform his pleading to the evidence concerning: (a) Defendant's breach of fiduciary duties, including his usurpation of a corporate opportunity; and (b) the tolling of the statute of limitations under the doctrines of equitable tolling and fraudulent concealment (D.I. 77). That motion is currently pending.

# EXHIBIT 13

## EXHIBIT 13

## DEFENDANT'S STATEMENT OF OTHER MATTERS

1.     On June 26, 2007, Plaintiff moved to amend his Complaint.  Plaintiff characterizes his motion as an amendment:  "… to conform his pleading to the evidence concerning:  (a) Defendant's breach of fiduciary duties, including his usurpation of a corporate opportunity; and (b) the tolling of the statute of limitations under the doctrines of equitable tolling and fraudulent concealment (D.I. 77)".

2.     The Defendant asserts that the Amendment to include a claim of usurpation of a corporate opportunity is the assertion of a substantive claim that is a derivative claim under Delaware law that belongs to the corporate entity for which the claim is made.  As such, the inclusion of a specific derivative claim on behalf of Pokobo LLC, if granted, would destroy the diversity jurisdiction of this Court over the pending matter.

Where an issue of the Court's jurisdiction is raised at any stage of the proceeding, the Court need address such claim before it can proceed with any further adjudication.   In *McNutt, et al. v. GMAC*,  298 U.S. 178, 184 (1936) the U.S. Supreme Court stated:

> The Act of 1875, in placing upon the trial court the duty of enforcing the statutory limitations as to jurisdiction by dismissing or remanding the cause at any time when the lack of jurisdiction appears, applies to both actions at law and suits in equity.  The trial court is not bound by the pleadings of the parties, but may, of its own motion, if led to believe that its jurisdiction is not properly invoked, 'inquire into the facts as they really exist.'  *Wetmore v. Rymer*, 169 U.S. 115, 120, 18 S.Ct. 293, 295, 42 L.Ed. 682; *Gilbert v. David*, 235 U.S. 561, 567, 35 S.Ct. 164, 166, 59 L.Ed. 360; *North Pacific Steamship Co. v. Soley*, 257 U.S. 216, 221, 42 S.Ct. 87, 88, 66 L.Ed. 203.