EXHIBIT A

# LIMITED LIABILITY COMPANY AGREEMENT

## OF

## POKOBO, L.L.C.

Dated as of:

March 1, 1997



2

THIS LIMITED LIABILITY COMPANY AGREEMENT OF POKOBO,
L.L.C. ("Operating Agreement"), made as of the 1st day of March, 1997, by and between
John M. Kobayashi, 455 Forest St., Denver, Colorado 80220, and Werner L. Polak, 126
Rutter DuBois Lane, Irvington, New York 10533, hereafter together referred to as Partners
or singularly as Partner.

WHEREAS, the Partners desire to form a limited liability company for the
purposes and upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the premises and the mutual
covenants herein contained, the Partners hereby mutually covenant and agree as follows:

## ARTICLE I

### ORGANIZATION

SECTION 1.01.  Formation.  (a) The Partners hereby form and confirm the
formation of a limited liability company (the "Company"), pursuant to the Delaware Limited
Liability Company Act (as the same is amended from time to time, the "Act") and all other
pertinent laws of the State of Delaware, for the purposes and upon the terms and conditions
hereinafter set forth.



3

(b)    Each Partner shall execute and cause to be filed and recorded an appropriate certificate of formation on behalf of the Company as required by and in conformance with Section 18-201 of the Act (the "Certificate"). Each Partner shall further execute and cause to be filed and recorded and shall publish, if required by law, such other and further certificates or other instruments as may be necessary or desirable under the laws of any state in which the Company does business in connection with the formation of the Company, the commencement and carrying on of its business and the establishment and preservation of the limited liability of the Partners.

SECTION 1.02.  Name and Office.  The name of the Company shall be "POKOBO, L.L.C." All business of the Company shall be conducted under such name, and title to all property, real, personal, or mixed, owned by or leased to the Company shall be located at 455 Forest St., Denver, CO  80220.  The Company may have such offices and places of business as the Partners may from time to time designate

SECTION 1.03.  Purpose.  The purpose of the Company shall be to engage in any lawful act or activity for which a limited liability company may be organized under the Delaware Limited Liability Company Act, as amended, including the acquisition, development and sale of real property.



4

SECTION 1.04.  Term.  The term of the Company shall commence on the effective date of formation of the Company under the Act and shall continue until terminated pursuant to the provisions hereof.

ARTICLE II

CAPITAL

SECTION 2.01.  Initial Capital Contributions.  On the effective date of formation of the Company or as soon thereafter as is practicable, each Partner shall contribute to the Company (an "Initial Capital Contribution") of $450,000.  The amount contributed by each Partner shall be credited to such Partner's Capital Account (as defined in Section 3.02 hereof).

SECTION 2.02.  Further Capital Contributions.  The Partners shall determine from time to time what further capital contributions are needed and should be made to the Company.

SECTION 2.03.  No Other Beneficiaries.  The rights and obligations of the Partners under this Article II are for the exclusive benefit of the Partners, and no creditor or other party having dealings with the Company shall have any right or claim hereunder.



5

## ARTICLE III

## <u>INTERESTS</u>

SECTION 3.01.  <u>Interests</u>.  Each Partner shall have a 50% interest in the Company.

SECTION 3.02.  <u>Capital Accounts</u>.  A capital account ("Capital Account") shall be maintained for each Partner on the books of the Company.  The Capital Account for each Partner shall be maintained in accordance with the following provisions.  Each Partner's Capital Account initially shall equal his Initial Capital Contribution and shall be:

    (a)    increased by (i) the amount of cash and the fair market value of any other property contributed by such Partner (net of liabilities assumed by the Company and liabilities, if any, to which such property is subject) and (ii) such Partner's distributive share of Net Profit and any items of income or gain specially allocated to such Partner; and

    (b)    decreased by (i) such Partner's distributive share of Net Loss, any items of deduction or loss specially allocated to such Partner and (ii) the amount of cash and the fair market value of any property distributed to such Partner (net of

6

liabilities assumed by such Partner and liabilities, if any, to which such property is subject).

The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Section 1.704-1(b) of the Income Tax Regulations (the "Regulations"), and shall be interpreted and applied in a manner consistent with such Regulations.

SECTION 3.03.  <u>Return of Capital</u>.  No Partner shall be liable for the return of the Capital Contributions (or any portion thereof) of the other Partner, it being expressly understood that any such return shall be made solely from the assets of the Company.  No Partner shall be entitled to withdraw any part of such Partner's Capital Contributions or Capital Account, to receive interest on such Partner's Capital Contributions or Capital Account or to receive any distributions from the Company, except as expressly provided for in this Operating Agreement or under the Act as then in effect.



## ARTICLE IV

## <u>DISTRIBUTIONS AND ALLOCATIONS</u>

SECTION 4.01.  <u>Distributions</u>.  Distribution of cash or property by the Company shall be made to the Partners equally as determined from time to time by the Partners.

SECTION 4.02.  <u>Allocations</u>.

(a)    <u>General Allocations</u>.  The Company's net profit and net loss shall be allocated for each fiscal year to the Partners <u>pro rata</u> in accordance with their respective Interests.  It is the intent that the Partners shall share equally in the profits, losses, and expenses of the Company.

(b)    <u>Tax Allocations</u>.  The Company's items of income, gain, loss and deduction shall be allocated for federal, state and local income tax purposes between the Partners proportionately to the allocation of Net Income and Net Loss between the Partners as set forth in Section 4.02(a); <u>provided</u>, <u>however</u>, that, in accordance with Section 704(c) of the Code and the Regulations thereunder, income, gain, loss and deduction with respect to any asset contributed to the capital of the Company shall, solely for tax purposes, be allocated between the Partners so as to take account of any variation between the adjusted



8

basis of such property to the Company for federal income tax purposes and its gross fair market value upon contribution to the Company.

SECTION 4.03.  <u>Distributions in Kind</u>.  The Company may make distributions to its Partners in kind as provided in Section 4.01.  Solely for the purpose of adjusting the Capital Accounts of the Partners, and not for tax purposes, if any property is distributed in kind to any partner, the difference between its fair market value and its book value at the time of distribution shall be treated as gain or loss recognized by the Partnership and allocated pursuant to the provisions of Section 4.02.

# ARTICLE V

## MANAGEMENT

SECTION 5.01.  The Company shall be managed jointly by the Partners in accordance with this Operating Agreement.  If either Partner dies, is incapacitated, resigns from or leaves the Company or is otherwise unable to manage the Company, such Partner's responsibility for the management of the Company shall be transferred to the remaining Partner.



9

SECTION 5.02.  In the event that the Partners cannot agree on a course of action, they shall flip a coin 3 times and the recommendation of the winner of 2 of the 3 coin flips shall be followed.

SECTION 5.03.  <u>Tax Decisions</u>.  The Partners shall make all applicable elections, determinations and other decisions for the Company relating to federal, state or local tax matters including, without limitation, whether the Company shall make the election described in Section 754 of the Code and the positions to be taken on the Company tax returns.  The Company shall retain an accountant to prepare the necessary tax returns and such accountant shall furnish to each Partner the Company information necessary for preparation of the federal, state and local income tax returns of each Partner.

SECTION 5.04.  <u>Qualification in Other Jurisdictions</u>.  The Partners shall cause the Company to be qualified, formed, reformed or registered under limited liability company statutes or similar laws in any jurisdiction in which the Company owns property or transacts business if such qualification, formation, reformation or registration is necessary in order to protect the limited liability of the Partners or to permit the Company lawfully to own property or transact business, and shall cause the Company not to transact business in any such jurisdiction until it is so qualified, formed, reformed or registered.  The Partners shall execute, file and publish all such certificates, notices, statements or other instruments necessary to permit the Company to conduct business as a limited liability company in all



10

jurisdictions where the Company elects to do business and to maintain the limited liability of the Partners.

## ARTICLE VI

## BOOKS AND RECORDS; RESERVES

SECTION 6.01. <u>Bank Accounts</u>.  The Partners shall have authority to open bank accounts and designate signatories with respect thereto on behalf of the Company and may authorize agents and independent contractors of the Company to open such bank accounts as it shall deem necessary or desirable for the conduct of Company business.

SECTION 6.02. <u>Books of Account</u>.  The Partners shall cause to be kept full and proper ledgers and other books of account of all receipts and disbursements and other financial activities of the Company and shall retain such information for all necessary tax reporting by the Company and its Partners and for the benefit of the Partners generally.

SECTION 6.03. <u>Reserve</u>.  The Partners shall determine from time to time what funds, if any, are necessary to establish a working capital reserve.  The Partners shall determine whether such reserve should be established from current income or from further contributions by the Partners.



11

# ARTICLE VII

## TRANSFER OF COMPANY INTERESTS

SECTION 7.01.  No Transfer.  No Partner may sell, assign, transfer, give, hypothecate or otherwise encumber (any such sale, assignment, transfer, gift, hypothecation or encumbrance being hereinafter referred to as a "Transfer"), directly or indirectly, or by operation of law or otherwise, any interest in the Company, except as hereinafter set forth in this Article VII.  Any Transfer of any interest in the Company in contravention of this Article VII shall be null and void.

SECTION 7.02.  Succession by Operation of Law.  In the event of the death or incapacity of either Partner, all of such Partner's rights hereunder (except such Partner's rights to manage the Company), including such Partner's Interest, shall pass to such Partner's personal representative, heir or distributee.

SECTION 7.03.  New Partners.  Notwithstanding Sections 7.02 hereof, no person not then a partner shall become a partner hereunder under any of the provisions hereof unless such person shall expressly assume and agree to be bound by all of the terms and conditions of this Agreement.  Each such person or entity shall also cause to be delivered to the Company, at his or its sole cost and expense, a favorable opinion of legal



12

counsel reasonably acceptable to the remaining Partner to the effect that (i) the contemplated Transfer of such Company interest to such person does not violate any applicable securities law, (ii) that such person or entity has the legal right, power and capacity to own the interest, and (iii) that the contemplated Transfer will not cause a termination of the Company within the meaning of Section 708 of the Code. All reasonable costs and expenses incurred by the Company in connection with any Transfer of an interest and, if applicable, the admission of a person as a partner hereunder shall be paid by the transferee. Upon compliance with all provisions hereof applicable to such person becoming a partner, the remaining Partner agrees to execute and deliver such amendments hereto as are necessary to constitute such person a partner of the Company.

SECTION 7.04.    Right of First Refusal/First Offer - Partner.    If either Partner wishes to sell his Partner's interest, he must first offer to sell his interest to the other Partner and negotiate in good faith a fair price for his interest. The other Partner shall have 120 days to accept the offer. If the other Partner fails to accept the offer within 120 days of the offer, the Partner is free to sell his interest to a third party at that negotiated price or higher.

In the event either Partner receives a good faith offer in writing from an independent third party soliciting the purchase of such Partner's interest in the Company and such Partner wishes to accept such offer, that Partner must first offer to sell his interest to the other Partner at the price offered by the third party. The other Partner shall have 120



13

days to accept the offer. If the other Partner fails to accept the offer within 120 days of the offer, the Partner may sell his interest to the third party at the offering price of the third party or higher.

SECTION 7.05. <u>Rider First Refusal/First Offer – Death or Incapacity.</u> In the event of death or incapacity of either Partner and his representative, heir or distributee wishes to sell that Partner's interest, his representative, heir or distributee must first offer to sell his interest to the other Partner and negotiate in good faith a fair price for his interest. The other Partner shall have 120 days to accept the offer. If the other Partner fails to accept the offer within 120 days of the offer, the representative, heir or distributee of the Partner is free to sell his interest to a third party at that negotiated price or higher.

In the event of the death or incapacity of either Partner and his representative, heir or distributee receives a good faith offer in writing from an independent third party soliciting the purchase of such Partner's interest in the Company and the representative, heir or distributee of such Partner wishes to accept such offer, the representative, heir or distributee of such Partner must first offer to sell his interest to the other Partner at the price offered by the third party. The other Partner shall have 120 days to accept the offer. If the other Partner fails to accept the offer within 120 days of the offer, the representative, heir or distributee of such Partner may sell his interest to the third party at the offering price of the third party or higher.



14

SECTION 7.06. Binding. This agreement shall be binding on the representatives, successors, heirs or distributees of each Partner.

# ARTICLE VIII

## TERMINATION

SECTION 8.01. Dissolution. The Company shall be dissolved and its business wound up upon the happening of any of the following events, whichever shall first occur:

     (a)     the sale of all or substantially all the Company's assets and the receipt of all consideration therefor;

     (b)     the death, insanity, bankruptcy, retirement or resignation of both Partners;

     (c)     the decision of the Partners to dissolve the Company.

SECTION 8.02. Termination. In all cases of dissolution of the Company, the business of the Company shall be wound up and the Company terminated as promptly as practicable thereafter, and each of the following shall be accomplished:

15

(a)    The Partners or its representatives shall cause to be prepared a statement setting forth the assets and liabilities of the Company as of the date of dissolution.

(b)    The property and assets of the Company shall be liquidated by the Partners or their representatives as promptly as possible, but in an orderly and businesslike and commercially reasonable manner. The Partners or their representatives may, in the exercise of their business judgment and if commercially reasonable, determine not to sell all or any portion of the property and assets of the Company, in which event such property and assets shall be distributed in kind pursuant to subsection (d) below.

(c)    Any gain or loss realized by the Company upon the sale of its property and assets shall be allocated to the Partners in the manner set forth in Article IV hereof.

(d)    The proceeds of sale and all other assets of the Company shall be applied and distributed as follows and in the following order of priority:

(i)    To the payment of (x) the debts and liabilities of the Company (including any outstanding amounts due on any recourse indebtedness

16

encumbering the Property or any part thereof) and (y) the expenses of liquidation.

(ii)    To the setting up of any reserves which the Partners or their representatives shall determine to be reasonably necessary for contingent, unliquidated or unforeseen liabilities or obligations of the Company.  Such reserves may, in the discretion of the Partners or their representatives, be paid over to a national bank or national title company selected by them and authorized to conduct business as an escrowee to be held by such bank or title company as escrowee for the purposes of disbursing such reserves to satisfy the liabilities and obligations described above, and at the expiration of such period as the Partners or representatives may reasonably deem advisable, distributing any remaining balance as provided in clause (iii) below; provided, however, that, to the extent that it shall have been necessary, by reason of applicable law or regulation, to create any reserves prior to any and all distributions which would otherwise have been made under this subsection (d) and, by reason thereof, a distribution under clause (i) hereof has not been made, then any balance remaining shall first be distributed pursuant to clause (i) hereof.

17

(iii)    The balance, if any, to the Partners or other representatives in equal proportion.

IN WITNESS WHEREOF, the Partners have duly executed this Operating Agreement as of the day and year first above written.

POKOBO, L.L.C.

By: _____
John M. Kobayashi

By: _____
Werner L. Polak

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT ~~OF CHANCERY OF~~
FOR THE ~~STATE~~DISTRICT OF DELAWARE

~~IN AND FOR NEW CASTLE COUNTY~~

WERNER L. POLAK,                          )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )
                                          )
JOHN M. KOBAYASHI,                        )          C.A. No. ─────────── 05-330
(SLR)                                     )
                                          )
                    Defendant,            )
                                          )
          and                             )
                                          )
POKOBO, L.L.C.,                           )
                                          )
                    Nominal Defendant.    )

### AMENDED PETITION FOR DISSOLUTION

Plaintiff Werner L. Polak, by his attorneys, Morris, Nichols, Arsht and Tunnell,

for his Amended Complaint, alleges as follows:

### Nature ~~of the~~Of The Action

1.      This is an action for an Order of the Court : (i) decreeing that nominal

Defendant Pokobo, L.L.C. ("Pokobo" or the "Company") is dissolved pursuant to 6 *Del. C.* §§

18-801 and 18-802; (ii) approving the winding up of Pokobo's business and affairs by Plaintiff

pursuant to the terms of the parties' LLC Agreement and 6 *Del. C.* §§ 18-803 and 18-804; ~~and~~

(iii) ordering a full accounting of each member's capital account and Pokobo's expenses.  In

connection with the dissolution of Pokobo, Plaintiff seeks a judicial declaration that certain

property currently titled solely in Defendant's name rightfully belongs to Pokobo and is being

held in constructive trust for Pokobo, and that title should be transferred to Pokobo. Plaintiff also asserts breach of contract and breach of fiduciary duty claims against Defendant based on: (i) Defendant's mismanagement of Pokobo, namely in the acquisition of real property; (ii) Defendant's repeated failure to provide Plaintiff with an accounting; and, (iii) Defendant's handling of ongoing litigation involving Pokobo.

2.      Plaintiff Werner L. Polak ("Plaintiff") is one of two members of Pokobo. Plaintiff owns a 50% interest in Pokobo and, along with Defendant, is responsible for the management of Pokobo.

3.      Defendant Kobayashi is the only other member of Pokobo. Defendant owns a 50% interest in Pokobo and, along with Plaintiff, is responsible for the management of Pokobo.

4.      Nominal Defendant Pokobo is a Delaware limited liability company. Pokobo's registered agent in Delaware is The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Pokobo was formed for the purpose of engaging in any lawful act or activity for which a limited liability company may be organized under the Delaware Limited Liability Company Act (the "Act"), as amended, including the acquisition, development and sale of real property.

**The Formation ofOf Pokobo**

5.      On March 21, 1997, the parties formed Pokobo by filing a certificate of formation with the Delaware Secretary of State.

6.      The operation and management of Pokobo is governed by the Limited Liability Company Agreement of Pokobo, L.L.C. (the "LLC Agreement"), dated March 1, 1997,

which defines the parties obligations to Pokobo and to each other.  A true and correct copy of the LLC Agreement is attached hereto as Exhibit A.

7.    Pursuant to Section 5.01 of the LLC Agreement, management of Pokobo is vested jointly in Plaintiff and Defendant.  Section 5.01 further provides that in the event one party dies, is incapacitated, resigns, or leaves the Company, or is otherwise unable to manage the Company, such party's management interest shall be transferred to the remaining party.

### Pokobo Acquires 64 Acres ofOf Land inIn Hawaii

8.    Pursuant to Section 2.01 of the LLC Agreement, each party contributed approximately $450,000 to Pokobo as an initial capital contribution.  These funds were used to purchase real property located on the big island of Hawaii.

9.    On or about April 4, 1997, Pokobo acquired 64.266 acres of land south of Kona, Hawaii (the "64-Acre Parcel") for a purchase price of $900,000.  Pursuant to a warranty deed recorded in the State of Hawaii Bureau of Conveyances, title to the 64-Acre Parcel is in Pokobo's name.

10.    Following Pokobo's acquisition of the 64-Acre Parcel in 1997, Plaintiff has made regular capital contributions to Pokobo to cover costs and expenses, including real estate taxes,  relating to the 64-Acre Parcel.  In addition, Plaintiff has regularly paid annual Delaware LLC taxes to the State of Delaware and annual registered agent fees to Pokobo's registered agent.

### Pokobo Acquires An Additional 17 Acres ofOf Land

11.    In early 1999, Pokobo began negotiating with the Lutheran Church, the owner of property adjacent to Pokobo's 64-Acre Parcel, for the purchase of 22.86 acres of land contiguous to Pokobo's 64-Acre Parcel.

12.    Plaintiff and Defendant agreed that if the Lutheran Church decided to sell to Pokobo the 22.86 acres of land contiguous to Pokobo's 64-Acre Parcel, Pokobo would donate approximately 5 acres of that land to the Lutheran Church, leaving Pokobo as the owner of approximately 17 additional acres of land (the "17-Acre Parcel").

13.    Defendant served as Pokobo's primary negotiator for the purchase of the 17-Acre Parcel.  Upon information and belief, Defendant conducted all of his discussions with the Lutheran Church for the purchase of the 17-Acre Parcel on Pokobo's behalf and not in his individual capacity.  Throughout the negotiations, Pokobo, not Defendant, was to be the acquiror of the 17-Acre Parcel.

14.    Plaintiff and Defendant agreed that Defendant would contribute to Pokobo the funds necessary to cover the full purchase price of the 17-Acre Parcel by making a capital contribution to Pokobo in the amount of approximately $194,000.  The parties also agreed that because Defendant contributed the funds for the acquisition of the 17-Acre Parcel, Plaintiff would pay future operating expenses associated with both the 17-Acre Parcel and the 64-Acre Parcel until his aggregate contribution to Pokobo was equal to Defendant's aggregate contribution.  Although the purchase of the 17-Acre parcel was funded by Defendant, title to the 17-Acre Parcel was to be placed in Pokobo's name.

15.    Upon information and belief, on May 24, 1999, Defendant made a capital contribution in the amount of $194,047.77 to Pokobo to finance Pokobo's acquisition of the 17-Acre Parcel, or contributed the land itself (valued at $194,047.77) to Pokobo.  Although Defendant told Plaintiff that, for consolidation and/or subdivision purposes, the 17-Acre Parcel may need to be titled temporarily in Defendant's name (or in the name of a trust or foundation

controlled by Defendant). Defendant repeatedly reassured Plaintiff that the 17-Acre Parcel would ultimately be transferred to Pokobo.

16.    Following the purchase of the 17-Acre Parcel, Plaintiff has made significant capital contributions to Pokobo to cover costs and expenses, including real estate taxes, associated with the 17-Acre Parcel.

17.    In November 2002, Plaintiff first learned that, notwithstanding the parties' agreement to titlethat the 17-Acre Parcel would ultimately be titled in Pokobo's name, title to the 17-Acre Parcel was still in Defendant's name.

### Pokobo Becomes Involved inIn Litigation

18.    Upon information and belief, on or about July 3, 2002, Defendant commenced litigation in the Circuit Court of the Third Circuit for the State of Hawaii on behalf of Pokobo and also on his own behalf against the County of Hawaii and several related entities (the "Permit Litigation"), entitled *Pokobo LLC and John M. Kobayashi vsv. County of Hawaii, the County of Hawaii Department of Public Works, the Director of the Department of Public Works, and the State of Hawaii Department of Transportation*, Civil No. 02-1-0126K.  Upon information and belief, the litigation challenged the adequacy of the County's Special Management Area permit procedures.

19.    On or about July 8, 2002, Pokobo was named as a defendant in a condemnation proceeding filed in the Circuit Court of the Third Circuit for the State of Hawaii, entitled *County of Hawaii v. Pokobo LLC et al.*, Civil No. 02-1-0129K (the "Condemnation Litigation").

20.    Upon information and belief, Defendant has filed papers on behalf of Pokobo in both the Permit Litigation and the Condemnation Litigation without first consulting

with Plaintiff. Defendant has also failed to inform Plaintiff of the substance of his negotiations with the County of Hawaii on Pokobo's behalf concerning the Condemnation Litigation.

21.    By letter dated December 5, 2002, shortly after Plaintiff became aware of the pending litigation, he informed the attorney Defendant hired to represent Pokobo in both proceedings that such attorney was not authorized to represent either Plaintiff or Pokobo on Plaintiff's behalf in any litigation pertaining to Pokobo.

### Plaintiff's Repeated Requests for anFor An Accounting

22.    Shortly after the formation of Pokobo in 1997, Defendant retained Colin M. Grubb to serve as the accountant for Pokobo. Upon information and belief, Mr. Grubb has also served as Defendant's personal accountant and acts only at the direction of Defendant in matters relating to Pokobo.

23.    On October 29, 2002, Plaintiff wrote to Mr. Grubb, requesting an accounting of the capital contributions made by Plaintiff and Defendant to Pokobo and any payments made from the parties' capital contributions, as well as a complete set of Pokobo's most recent financial statements. Plaintiff sent a copy of his October 29, 2002 letter to Defendant at both his home address and his work address. Neither Mr. Grubb nor Defendant responded to Plaintiff's request.

24.    On December 19, 2002, Plaintiff wrote to Defendant regarding Plaintiff's request for an accounting with respect to Pokobo. Plaintiff sent a copy of his December 19, 2002 letter to Mr. Grubb.

25.    On December 31, 2002, Defendant sent a letter to Plaintiff addressing various issues relating to Pokobo. In his letter, Defendant informed Plaintiff that Mr. Grubb had

contacted Defendant concerning Plaintiff's request for an accounting, and that Defendant and Mr. Grubb had agreed not to have Mr. Grubb prepare an accounting until year end.

26.    On or about February 17, 2003, Mr. Grubb sent Plaintiff a copy of his Form 1065, Schedule K-1 for Pokobo for the year ended December 31, 2002. No mention was made of Plaintiff's previous requests for an accounting.

27.    Shortly thereafter, on February 21, 2003, Plaintiff wrote to Mr. Grubb and again requested that he prepare an accounting with respect to Pokobo, including an accounting of the capital accounts of Plaintiff and Defendant. Again, Plaintiff sent a copy of his letter to Defendant. Plaintiff did not receive any response from either Mr. Grubb or Defendant.

28.    On March 17, 2003, Plaintiff again wrote to Mr. Grubb, asking him to advise Plaintiff when he would be preparing an accounting with respect to Pokobo. Plaintiff also requested that Mr. Grubb advise Plaintiff if he did not intend to prepare such an accounting. Once again, Plaintiff sent a copy of his letter to Defendant, and, once again, Plaintiff did not receive any response from either Mr. Grubb or Defendant.

29.    On April 15, 2003, May 16, 2003, and August 1, 2003, Plaintiff sent letters to Mr. Grubb requesting him to advise Plaintiff when Plaintiff could expect to receive an accounting with respect to Pokobo. Plaintiff sent copies of each of these three letters to Defendant. Plaintiff did not receive a response from either Mr. Grubb or Defendant to any of his letters, nor did he receive the requested accounting.

30.    On December 10, 2003, Defendant wrote to Plaintiff, enclosing a schedule prepared by Mr. Grubb of Plaintiff's capital contributions to Pokobo since its formation in 1997. Defendant did not enclose a schedule of Defendant's capital contributions to Pokobo since 1997.

31.    By letter dated December 23, 2003, Plaintiff responded to Defendant's letter, wherein he again reiterated his request that a full accounting be prepared by Mr. Grubb. Plaintiff sent a copy of his December 23, 2003 letter to Mr. Grubb.  Neither Defendant nor Mr. Grubb responded to Plaintiff's December 23, 2003 letter.

32.    On January 23, 2004, and again on February 17, 2004, Plaintiff wrote to Mr. Grubb requesting that he prepare a full accounting.  Plaintiff sent copies of each of these letters to Defendant.  Plaintiff did not receive any response from either Mr. Grubb or Defendant.

## Defendant's Declining Health ~~and~~And His Refusal ~~to~~To Communicate ~~with~~With Plaintiff

33.    In late 2001 or early 2002, Plaintiff learned that Defendant suffers from diabetes.  Subsequently, in his December 31, 2002 letter to Plaintiff, Defendant informed Plaintiff that he had become "legally blind" and was unable to read materials unless the text was significantly magnified.  Defendant also revealed that unspecified "neurological issues and problems" had disabled him from writing legibly.  In his letter, Defendant also acknowledged that the letter, as well as any future correspondence, would likely be "segmented, disjointed, [and] less than fully organized or complete."

34.    From the spring of 2002 until Plaintiff received Defendant's December 31, 2002 letter, Plaintiff repeatedly wrote Defendant and left telephone messages for him concerning Pokobo.  Defendant did not respond to Plaintiff's correspondence and refused to answer or return the telephone calls placed by Plaintiff to both Defendant's work and home.

35.    By letter dated January 20, 2003, Plaintiff responded to Defendant's December 31, 2002 letter and raised concerns over Defendant's failure to respond to Plaintiff's repeated telephone calls and letters relating to Pokobo.  Defendant did not respond to Plaintiff's

January 20, 2003 letter, nor has he resumed communications with Plaintiff concerning the management of Pokobo.

36.    Defendant's refusal to communicate with Plaintiff regarding the management of Pokobo effectively prevents the parties from managing Pokobo jointly pursuant to the LLC Agreement.

### Plaintiff Proposes Dissolving Pokobo

37.    On January 31, 2005, Plaintiff wrote to Defendant, proposing to dissolve Pokobo pursuant to the LLC Agreement due to the breakdown in the parties' relationship. Specifically, Plaintiff proposed that the parties agree to sell both the 64-Acre Parcel and the 17-Acre Parcel, distribute the proceeds, conduct an accounting and dissolve Pokobo. Plaintiff indicated that if he did not hear from Defendant on or before February 15, 2005, he would consider Defendant's silence to be a rejection of his proposal.

38.    Plaintiff has not responded to Defendant's January 31, 2005 letter.

### The Statute Of Limitations Is Tolled

39.    The applicable statute of limitations is tolled under the doctrines of equitable tolling and fraudulent concealment.

40.    The statute of limitations is tolled due to equitable tolling because Defendant abused his fiduciary relationship with Plaintiff by engaging in actionable self-dealing. As a 50% manager of Pokobo, Defendant owes fiduciary duties of care, loyalty, good faith and fair dealing to Plaintiff. Defendant abused this fiduciary relationship and engaged in unfair self-dealing when he misappropriated the 17-Acre Parcel for his own personal use by titling it in his own name, rather than Pokobo's.

41.     The statute of limitations is also tolled because Defendant fraudulently concealed his misappropriation of the 17-Acre Parcel from Plaintiff.

42.     Defendant knowingly and purposefully titled the 17-Acre Parcel in his own name in March 1999, but assured Plaintiff that title to the 17-Acre Parcel would be transferred to Pokobo.  From 1999 until 2002, Defendant failed to inform Plaintiff that he had not transferred title to the 17-Acre Parcel to Pokobo, and that he had no intention of ever transferring title to the 17-Acre Parcel to Pokobo.  As co-manager of Pokobo, Defendant breached his fiduciary obligation to Plaintiff by failing to disclose that an asset of Pokobo was actually titled to Defendant, and that Defendant had no intention of ever transferring title to Pokobo.

43.     Defendant also affirmatively concealed from Plaintiff the improper titling of the Parcel.  Defendant assured Plaintiff on numerous occasions from 1999 to early 2002 that the 17-Acre Parcel was going to be titled in Pokobo's name.  Defendant concealed from Plaintiff the fact that the Parcel had not been transferred to Pokobo, and that Defendant had no intention of ever transferring title to Pokobo.

44.     Defendant also sent correspondence, including expense documents and reports, to Plaintiff indicating that the 17-Acre Parcel belonged to Pokobo.  These documents included, but are not limited to:

•     A letter to the Lutheran Church dated February 9, 1999 from Pokobo detailing Pokobo's interest in purchasing the 17-Acre Parcel;

•     An expense report detailing Defendant's "Pokobo Contributions" that Plaintiff received on or around January 2000, after Defendant had purchased the property for himself.  The report indicates that on May 24, 1999, Defendant made a contribution to Pokobo,

described as "JMK Property Exchange" in the amount of $194,047.77 -- the purchase price of the 17-Acre Parcel;

> • A memorandum from Defendant to Plaintiff, dated February 14, 2000, listing Pokobo's anticipated expenses, which included engineering and survey work for the 17-Acre Parcel. The memorandum requested payment from Plaintiff for expenses relating to the Parcel, indicating that the Parcel belonged to Pokobo, not Defendant.

> • A summary of Pokobo's expenses, which was attached to a letter from Defendant to Plaintiff dated December 14, 2001, listing the property taxes on the 17-Acre Parcel as an expense of Pokobo's.

45. The above documents and representations constitute affirmative acts of concealment by Defendant, as they all indicate that the 17-Acre Parcel belonged to Pokobo when, in fact, the Parcel was actually titled in Defendant's name, and Defendant had no intention of transferring title to Pokobo.

46. Plaintiff was unaware of Defendant's actionable self-dealing and fraudulent concealment until the Fall of 2002, when Plaintiff learned that title to the 17-Acre Parcel was still in Defendant's name and had not been transferred to Pokobo. Prior to this, Plaintiff had no reason to suspect that the property had not been transferred to Pokobo, or that Defendant had no intention of ever transferring title to Pokobo.

47. Accordingly, the applicable statute of limitations should be tolled.

### Demand Excused

48. ~~39.~~ Because Plaintiff and Defendant are the only members of Pokobo and share joint responsibility for its management, demand on the members of Pokobo would be futile. Defendant is not able to consider disinterestedly and independently ~~consider~~ a demand

because he has substantially profited as a result of the actions challenged herein.   Moreover,
Defendant's actions were not the product of a valid business judgment.

<u>**COUNT I (Judicial Dissolution)**</u>

49.    40.-Plaintiff repeats and realleges the allegations of paragraphs 1-4048
hereof.

50.    41.-Although Plaintiff has repeatedly attempted to communicate with
Defendant regarding Pokobo since mid-2002, Defendant has failed to respond to Plaintiff's
telephone calls and letters.   Defendant's refusal to communicate with Plaintiff on a regular basis
has made it not reasonably practicable to carry on the business of Pokobo in conformity with the
LLC Agreement.

51.    42.-Moreover, Defendant has failed to comply with his management and
fiduciary obligations pursuant to the parties' LLC Agreement.   Among other things, Defendant
improperly titled the 17-Acre Parcel, which rightfully belongs to Pokobo, in his own name.   In
addition, since mid-2002, Defendant has failed to consult Plaintiff before making decisions
regarding ongoing litigation in the State of Hawaii involving Pokobo, and, despite Plaintiff's
continued requests for an accounting of capital contributions and other financial information
relating to Pokobo, Defendant has refused to provide Plaintiff with the requested information.
Defendant's actions have resulted in a lack of cooperation and trust between the parties that
makes it not reasonably practicable to carry on the business of Pokobo in conformity with the
LLC Agreement.

52.    43.-In addition, Defendant has failed to respond to Plaintiff's proposal that
the parties agree to dissolve Pokobo pursuant to the LLC Agreement.   Defendant's silence is
tantamount to a rejection of Plaintiff's proposal.   The parties' inability to agree on the desirability

of dissolving Pokobo and disposing of the 64-Acre Parcel and the 17-Acre Parcel makes it not reasonably practicable to carry on the business of Pokobo in conformity with the LLC Agreement.

53. 44. Accordingly, Plaintiff is entitled to an Order pursuant to 6 *Del. C.* § 18-802 decreeing that Pokobo is dissolved.

54. 45. Plaintiff has no adequate remedy at law.

## COUNT II (Breach of Contract)

55. 46. Plaintiff repeats and realleges the allegations of paragraphs 1-4654 hereof.

56. 47. Section 5.01 of the LLC Agreement provides, *inter alia*, that the Company shall be managed jointly by Plaintiff and Defendant in accordance with the LLC Agreement.

57. 48. Defendant has breached his obligation under Section 5.01 of the LLC Agreement by : (i) improperly titling the 17-Acre Parcel, which rightfully belongs to Pokobo, in his own name; (ii) failing to consult and communicate with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in the State of Hawaii; and, (iii) failing to provide Plaintiff with a full accounting of Pokobo, despite Plaintiff's repeated requests for such an accounting.

58. 49. Plaintiff has been damaged as a result of Defendant's breaches of Section 5.01 of the LLC Agreement.

## COUNT III (Breach of Fiduciary Duty)

59. 50. Plaintiff repeats and realleges the allegations of paragraphs 1-5058 hereof.

60.    51. Plaintiff brings this claim derivatively on behalf of Pokobo and in his own right as a member of Pokobo.  As a co-manager of Pokobo, Defendant owes fiduciary duties of care, loyalty, good faith and fair dealing to Plaintiff and to Pokobo.

61.    52. When the parties purchased the 17-Acre Parcel, they agreed that Pokobo would be the owner of the property.  In breach of his fiduciary duties, Defendant has misappropriated the 17-Acre Parcel for his personal use by titling the property in his own name.

62.    53. Also in breach of his fiduciary duties, Defendant has failed to consult and communicate with Plaintiff regarding the ongoing business of Pokobo, including the management of litigation involving Pokobo in the State of Hawaii.

63.    54. In further breach of his fiduciary duties, Defendant has failed to provide Plaintiff with a full accounting of Pokobo, including a full description of each Partner's capital contributions from 1997 to the present, and a full accounting of Pokobo's expenses.

**COUNT IV (Declaratory Judgment)**

64.    55. Plaintiff repeats and realleges the allegations of paragraphs 1-55 63 hereof.

65.    56. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the ownership of the 17-Acre Parcel.

66.    57. Ownership of the 17-Acre Parcel was always intended to be in Pokobo's name.  The original offer to purchase the land from the Lutheran Church was made on Pokobo's behalf.  Although Defendant contributed funds to Pokobo in the form of a capital contribution to cover the purchase price for the land, the parties agreed that Plaintiff would make capital contributions to Pokobo to cover the expenses relating to both parcels of land until the parties' capital contributions were equal.  Following Pokobo's purchase of the 17-Acre Parcel,

14

Plaintiff made significant capital contributions to Pokobo to cover the expenses in connection with both the 17-Acre Parcel and the 64-Acre Parcel.

67. 58. Notwithstanding the parties' intent, Defendant has improperly titled the 17-Acre Parcel in his own name and has failed to transfer the property to Pokobo.

68. 59. Plaintiff therefore desires seeks a judicial declaration that the 17-Acre Parcel properly belongs to Pokobo, that it is being held in constructive trust for Pokobo, and that title should be transferred from Defendant to Pokobo.

69. 60. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff and Pokobo may ascertain its their rights and duties under the LLC Agreement with respect to the 17-Acre Parcel.

**COUNT V (Unjust Enrichment)**

70. 61. Plaintiff repeats and realleges the allegations of paragraphs 1-61 69 hereof.

71. 62. During discussions concerning the acquisition of the 17-Acre Parcel from the Lutheran Church, the parties agreed that Pokobo would be the purchaser of the property. Nonetheless, Defendant wrongfully titled the 17-Acre Parcel in his name. As a result, Defendant, not Pokobo, enjoys all of the rights and benefits associated with ownership of the property. Moreover, Defendant has benefited from the significant capital contributions that Plaintiff made to Pokobo to cover costs and expenses, including real estate taxes, associated with the 17-Acre Parcel.

72. 63. The 17-Acre Parcel rightfully belongs to Pokobo. Under the circumstances, it would be inequitable to allow Defendant to retain ownership of the 17-Acre Parcel. Moreover, if permitted to retain the 17-Acre Parcel, Defendant will be unjustly enriched.

73.    Alternatively, if Pokobo is determined to have no claim to the 17-Acre Parcel, it would be inequitable to allow Defendant to benefit from the expenses that Plaintiff paid for in connection with the 17-Acre Parcel. Plaintiff should be reimbursed for any and all expenses he paid -- either directly, or in the form of contributions to Pokobo -- associated with the 17-Acre Parcel.

74.    64. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff Werner L. Polak seeks the entry of an Order:

(a)    Declaring that the 17-Acre Parcel rightfully belongs to Pokobo and is being held by Defendant in constructive trust for Pokobo, and directing Defendant to transfer title of the 17-Acre Parcel to Pokobo;

(b)    Decreeing that Pokobo is dissolved pursuant to 6 *Del. C.* §§ 18-801 and 18-802;

(c)    Approving the winding up of the affairs and business of Pokobo by Plaintiff in accordance with the LLC Agreement and 6 *Del. C.* §§ 18-803 and 18-804;

(d)    In connection with the winding up of the affairs and business of Pokobo, ordering the sale of both the 17-Acre Parcel and the 64-Acre Parcel pursuant to Section 8.02(b) of the LLC Agreement;

(e)    Ordering a full and complete accounting of Pokobo's expenses, and of each Partner's capital contributions to Pokobo since its formation in 1997;

(f)    Granting Plaintiff monetary damages;

(g)    Awarding Plaintiff its costs in bringing this action, including reasonable attorneys' fees; and

(h)     Granting such other and further relief as may be appropriate in the circumstances.

MORRIS,
NICHOLS, ARSHT AND TUNNELL ~~LLP~~

_____

Martin        P. Tully (#465)
~~David A. Harris (#3568)~~
<u>Rodger D. Smith II (#3778)</u>

Susan Wood

Waesco (#4476)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
_Attorneys for Plaintiff_

<u>August 6, 2007</u>

~~February 23, 2005~~