IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WERNER L. POLAK, Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN M. KOBAYASHI, Defendant, | ) | C.A. No. 05-330 SLR |
| | ) | |
| and | ) | |
| | ) | |
| POKOBO, L.L.C., | ) | |
| | ) | |
| Nominal Defendant | ) | |

MOTION FOR REASONABLE ACCOMODATION
PURSUANT TO THE AMERICANS WITH DISABILITIES ACT

Defendant, John M. Kobayashi, through his counsel, hereby respectfully moves this Court for the following reasonable accommodations related to his physical, neurological and visual disabilities for all future proceedings as follows: [The following has been read to and confirmed by Mr. Kobayashi as accurately stating his condition. Due to time constraints in submitting this Request, as part of the Defendant's Answer to the Amended Petition, a notarized affidavit is not submitted herewith. One has been prepared and has been submitted for Mr. Kobayashi's signature, which affidavit will be provided to the Court as soon as obtained.] A copy of an affidavit provided by Mr. Kobayashi in a judicial proceeding in the State of Hawaii dated the 13th of September 2006, providing further details of Mr. Kobayashi's general medical condition is attached hereto. Mr. Kobayashi's medical conditions have not improved since the date of the affidavit, and his eyesight has significantly deteriorated.

It is recognized that this Court has stated that Mr. Kobayashi's health condition will be addressed on the first day of the trial scheduled for August 27, 2007. With respect for such scheduling, the Defendant believes that as set forth in this section, the health condition of the

Defendant is such that addressing his circumstances on the first day of trial may not be a practical or reasonable accomodation for Defendant's disabilities.

This request is made pursuant to 42 U.S.C. 12131-12165 ("ADA"). The right of access to Courts and meaningful participation in the judicial process has been recognized as a basic right to which the ADA applies. *See,* Tennessee v. Lane, U.S. Supreme Court, 541 U.S. 509, 124 S.Ct. 1978 (1978). As a litigant in a civil proceeding, the Defendant has the right to meaningfully participate in the proceeding. *See,* Badillo-Santiago v. Andreu-Garcia, 70 F.Supp.2d 84 (U.S. Dist. Ct., Puerto Rico 1999).

The current health condition of the Defendant is as follows:

1.     Mr. Kobayashi suffers from advanced adult onset diabetes, which has resulted in significant and adverse complications. His diabetes is ongoing and increasingly severe and has resulted in a medically certified disability determination in 2002. Daily mitigation of diabetic glucose levels require a minimum of 4 injections of insulin of a minimum of 100 units up to more than a dozen injections sometimes totaling 200 units of insulin per day. The diabetes has been described as the probable source of the following diseases and medical problems: Heart disease including atrial fibrillation, diminished pumping and pulmonary function and arythmia, periodic severe anemia, ongoing renal failure associated with renal hypertension and related kidney diseases, diabetic neuropathy, and diminution and loss of various neurological functions.

2.     In addition, there is a severe loss of eyesight. At his deposition in June, 2007, Mr. Kobayashi had the ability to read the expanded font type in the documentary exhibits with difficulty, using two magnifying glasses. That ability, temporarily or permanently, has now been lost.

2
DB02:6190134.1                                                                                                                                     065694.1001

3. Mr. Kobayashi was scheduled for eye surgery in late June, 2007. His health condition in June did not permit the surgery to go forward as scheduled. Principally, Mr. Kobayashi is treated with coumadin and other clot reducing medications. These medications had to be cleared from his system to a level that would allow surgery to occur, and that level was not able to be reached until July, 2007. In the last week of July, 2007, Mr. Kobayashi underwent "high risk" eye surgery in a hospital due to the prospect of serious complications. The initial surgery consumed 3 ½ hours. Complications arose in the initial surgery, including the collapse of Mr. Kobayashi's lens and he was re-scheduled for additional emergency surgery the following day. In the succeeding two weeks, Mr. Kobayashi has returned to the eye surgeons every third day for continued treatment and evaluation.

4. Mr. Kobayashi remains scheduled for eye treatment and evaluation for Friday August 17, 2007, Monday August 20, 2007 and Wednesday August 23, 2007. He will not know whether he will, of necessity, continue to be rescueduled for the following Monday August 27, 2007 and Wednesday August 29, 2007, until his examination on August 23, 2007. There is a prospect that he will not be required to continue his treatment and evaluation schedule for August 27, 2007 and Wednesday August 29, 2007, but his current condition provides no basis to assume that he will have recovered from his eye surgery sufficiently by August 27, 2007 to be able to participate in the trial.

5. Presently, Mr. Kobayashi is functionally blind. His vision in each eye is less than 20/200, a commonly set value for classification as being legally blind. In his right eye (the one that was operated on in July), he can only sense light, he has no vision for shape or content. In his left eye, Mr. Kobayashi's vision is 20/200, which in common experience does not allow Mr. Kobayashi to recognize fingers or a fist at the length of an arm. Mr. Kobayashi cannot read

documents.

6.    Even were Mr. Kobayashi able to insure his presence for trial on August, 27, 2007, his present condition makes it very difficult to review materials and to adequately prepare for trial.

7.    Mr. Kobayashi's other complications include erratic sugar/insulin balance, renal impairment, circulatory damage and neurological impairment, resulting in extreme fatigue and inability to sit or stand for more than one or two hours.

The Defendant requests a reasonable accommodation to his currently ongoing treatment and evaluation for his critically serious eye condition and the other diseases and their effects as previously described in that the Court vacate the currently scheduled trial date of August 27, 2007, and provide the appropriate accomodations.

Should it be necessary to appear at trial on August 27, 2007, and assuming that the Defendant would be able to do so, the following accomodations would be requested:

A.    Trial days not to exceed 4 hours, with sufficient medical breaks for Mr. Kobayashi to regulate his blood sugar by insulin injections or ingestion of sugar. As occurred during Mr. Kobayashi's deposition in Denver, over the course of four hours, Mr. Kobayashi's blood sugar varied from 80-150, each excursion above and below 100 and above 120 requiring either dosing with insulin or sugar. Mr. Kobayashi tests for and attempts to regulate his blood sugar level approximately every 20 minutes, or whenever he begins to notice fatigue and similar symptoms. The blood sugar variances cause significant fatigue and inability to concentrate.

B.    Mr. Kobayshi has not until the last month been fully functionally blind so, candidly, we are unsure of exactly what accommodations would be required. We have requested assistance in this regard from organizations that assist the blind to provide a more complete list

of accommodations. At present, however, it would be clear that all documents will have to be read to Mr. Kobayashi during the course of the trial.

  C. Adjournment upon request for emergency recesses in the event of imminent or actual incontinence episodes.

  D. A room where Mr. Kobayashi can rest, as necessary, to recover from incidents of fatigue and for recovery of appropriate blood sugar levels which will almost certainly happen over the course of a four hour process.

  E. Earphones

  F. A wheelchair and a wheelchair accessable courtroom.

Dated: August 17, 2007    YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Ben T. Castle/*

Ben T. Castle (#520)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
 *Attorneys for Defendant*
 *John M. Kobayashi*

OF COUNSEL:

John P. Akolt, III
*Pro hac vice*
AKOLT & AKOLT LLC
1880 Arapahoe Street, #2005
Denver, CO 80202

[Previous affidavit of medical condition]

77-6408 Alii Drive
Kailua-Kona, Hawaii 96740

Pro Se Defendant

IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| COUNTY OF HAWAII, a municipal corporation of the State of Hawaii,<br><br>Plaintiff,<br><br>vs.<br><br>POKOBO, LLC; John Does 1-100; et al.;<br><br>Defendants. | CIVIL NO. 02-1-129K<br>(Condemnation)<br><br>CIVIL NO. 02-1-132K<br><br><br>**AFFIDAVIT OF JOHN M. KOBAYASHI** |
| COUNTY OF HAWAII, a municipal corporation of the State of Hawaii,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN M. KOBAYASHI; John Does 1-100; et al.;<br><br>Defendants. | |

**AFFIDAVIT IN SUPPORT OF JOHN M. KOBAYASHI**

1.      I, John M. Kobayashi, a citizen of the United States being of lawful age and duly sworn upon oath, submit this affidavit in support of my Motion for Reasonable Accommodation, pursuant to the merican's with Disabilities Act in connection with my status as *pro se* counsel in the Third Circuit Court, in the State of Hawaii

2.      The Affidavit and its related Motion are submitted pursuant to the American's with Disabilities Act and applicable state and federal regulations and standards and practices.

3.      During the Spring of 2002, I was certified as physically and neurologically disabled from continuing employment in my specialized profession and any othergainful employment as an attorney and for other formal activities. Such employment and activities were precluded or substantially restricted.

4.      The following diseases were diagnosed and/or certified as the bases for my disabilities.

5.      Re:     Ophthalmology.

        A.      My eyesight became increasingly impaired during the Summer and Fall of 2001, and various examinations and consultations with ophthalmologists and retinal specialists resulted in a determination in the Spring of 2002 that I was "functionally legally blind" due to the affects of the disease known diabetic retinopathy and that in my case it resulted in the attack on the blood vessels in each retina with results that the central part,

which was formally my field of vision, is now fully closed. Only a limited peripheral vision remains. The cataract in the right way will soon render the rights eyes peripheral vision ineffective. This diagnosis and certification of vision disability was determined principally by a professor of retinal diseases of the University of Colorado Medical School (hereinafter "UCMC") in conjunction with a practicing ophthalmologists was one of 2 ophthalmologists in the Rocky Mountain Region qualified and authorized by the US Government to certify sight disabilities for the military and other federal and state agencies. That ophthalmologist continues as my treating physician for eye sight problems.

   B. The practical effects on my vision are varied. For example, I cannot drive an automobile of any kind. I have been nearly struck down by taxis, buses and other vehicles because unless I catch a glance peripherally of their approach, I cannot tell whether they are approaching and where they are located. I early on discovered that people are discomforted and become uncomfortable when I was speaking to them and trying to look at them
"sideways" in order to see their faces, so I trained myself to stare in the direction of the source of their voice in a manner that is equivalent to looking for a target on a dimly lighted wall and guessing where the target might, in fact be. I have bumped into a substantial number of stationary objects and have fallen down enough stairways that unless I can remember them from previous associations with them as hallways or rooms that I have traveled, I need assistance or guidance or need wheel chairs in large areas such as airports and hotels.

   C. The principal problem is the nearly total inability to read. I cannot read ordinary type and can only distinguish letters and individuals words if they are ¾" high and must use a powerful magnifying glass in order to see such expanded print. This is a painstaking process that required readers and other assistance in order for me to understand any printed material.

6.   Re:   Neurology.

   A.   Another type of serious collateral damage caused by severe damage is neurological dysfunctions and disabilities known as diabetic neuropathy. I board-certified neurologist who specifies in severe neurological disorders was consulted and upon his examination during the later part of 2001 and the later part of 2002, determined and certified that I was neurologicallydisabled.

   B.   The basic problems have amounted to lack of control and balance, significantly diminished strength and chronic and acute pain attacks.

   C.   The affects are many and varied, including serious instances of pain thatrequire doses of Oxycotin and occasionally other narcotics. I can no longer grasp or pick up items of any weight, including ordinary brief cases. I am also unable to button collared shirts or tie a men's tie or often times my shoes or pull socks on my feet, without some form of assistance. Also, there are unpredictable instances of inconsistent attacks, including a few that have occurred at the courthouse. I have also had instances of falling or collapsing without warning.

   D.   There are major problems associated with walking and ambulation. Depending on the accommodation and severity of cardio logical influences, I am generally unable to walk more than a few steps without having to stop to rest or to allow relief of muscle problems including cramping or loss of strength. ON good days I am able to walk 20 steps in succession; on bad days, I am able to only walk 3 or 4 steps before I need to rest. With the assistance of hand rails, I can climb stairs slowly and with the problem of walking any distance without a wheelchair or other assistance is ever present. Climbing stairs without a handrail is not anoption. Even on good days, I cannot climb a full flight of stairs without stopping on every second or third step.

7.   Re:   Cardiology.

   A.   Just before Mother's Day weekend 2001, I was having difficulty reading and was short on muscle activity sufficient to climb stairs. I was referred to a professor of cardiology at UCMC Heart Clinics, who upon examination would not let me leave the hospital and immediately after examination was put into intensive care. The concern was that I had suffered a heart attack, and in particular, was unstable and subject to angina attacks. After angiograms and other procedures, the determination was made that confirmation of a heart attack was unclear, but the risk of angina and possible stroke was ongoing and ever present.

    B.    It was also determined at that time that I suffered from significant arterial fibrillation (af) and high blood pressure and lack of cardiac capacity. AF has the affect of uncontrolled excessive pulse rate and irregular heart beat. My pulse rate has on many occasions exceeded 140 beats per minute and the blood pressure has been fluctuating wildly during the times.

    C.    The cardiology problems were associated with what has been described to me as a "pulminating attack of diabetes" and compounded the cardiology and neurology problems.

    D.    Since 2001 I have been hospitalized in intensive care for problems due to "episodes" related to AF and the neurological problem.

    E.    These episodes are identified by pulse rates, expanded blood pressures, increased weakness and shortness of breath and increasing exhaustion. Under these circumstances I have often had to crawl up and down steps. The UCMC medical professors and private doctors have instructed me that whenever these episodes occur, I am to return to Denver as soon as reasonably possible.

    F.    The episodes have occurred periodically. The most recent in the past year have been in October and the end of November 2005, January, February, April and May of 2006, and most recently, as the court knows, in July of 2006.

    G.    I appreciated greatly the courts invitation and direction at the end of the July hearing to submit an ADA Motion because during the summer of 2005, a person whose name I believe was Colin at the District Court in Kona, told me that all Circuit Court ADA matters were to be handles by the court in Hilo. My recollection is that I left four (4) separate telephone messages with the clerk's staff requesting that there be a call back from that clerk and I was finally told that the clerk of the court was extremely busy with, among other things, the construction and completion of the drug courts and he would have to get back to me later. I never received a call from someone in the clerks office in Hilo regarding the ADA. I have even asked I friend of mine, who is also friends with the court clerk to provide an ADA information and request (as well as a request for the clerk to speak to the totally unresponsive Mr. Matsukawa, so that grievances or other complaints would be avoided).

    H.    From late July 2006, I have undergone multiple examinations and consultations and have been hospitalized for approximately five (5) days for various procedures and test monitoring and will be undergoing furthertests for ophthalmology at the UCMC renal department and continuing other tests.

8.    Re    Endocrinology

    A.    The diabetes problem is the basic cause of the other diseases and health problems. Since late 2001 examined and consulted with a professor of endocrinology, who, like the others, continues to be my treating physician.

    B.    I am constantly testing my blood glucose levels 8 to 15 times per day and by taking related insulin injections adjusted to various measures of intake that requires a minimum of 125-250 units of insulin today, but the diabetesis in life support mode and is comparatively stable.

9.    Although the difficulties continue, I have learned that is more efficient for me to dictate motions and briefs and thus such motions and briefs have been dictated, although, not often reviewed with the care that I would have given them had I not have these disabilities.

10.    The combined effect of all these various diseases is a substantial disability toperform daily tasks and to have the energy sufficient to accomplish any task beyond working for a period of any longer than 2 hours per day.

11.    In the event that the court should desire supporting correspondence from thetreating specialists can be submitted to the court under seal.

Dated this 13th day of September, 2006

_____
John M. Kobayashi, pro se

Subscribed and affirmed, or sworn to before me in the County of Denver, State of Colorado, this 13th day of September, 2006.

_____
Notary Public
My commission expires: